1  PETER C. MEIER (NSB No. 9123)
   petermeier@paulhastings.com
2  DANIEL PRINCE (admitted *pro hac vice*)
   danielprince@paulhastings.com
3  ADAM J. FEE (admitted *pro hac vice*)
   adamfee@paulhastings.com
4  D. SCOTT CARLTON (admitted *pro hac vice*)
   scottcarlton@paulhastings.com
5  PAUL HASTINGS LLP
   515 South Flower Street, 25th Floor
6  Los Angeles, CA  90071
   Telephone:  (213) 683-6000
7  Facsimile:  (213) 627-0705

8  TAMARA BEATTY PETERSON (NSB No. 5218)
   tpeterson@petersonbaker.com
9  PETERSON BAKER, PLLC
   701 S. 7th Street
10 Las Vegas, NV  89101
   Telephone:  (702) 786-1001
11 Facsimile:  (702) 786-1002

12 Attorneys for Plaintiff
   Mirae Asset Securities Co., Ltd.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Mirae Asset Securities Co., Ltd., a Republic of Korea company,<br><br>Plaintiff,<br><br>vs.<br><br>Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,<br><br>Defendants. | CASE NO. 2:23-cv-01492-APG-NJK<br><br>**PLAINTIFF MIRAE ASSET SECURITIES CO., LTD.'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF**<br><br>Judge:  Hon. Andrew P. Gordon<br>Action Filed:  September 22, 2023<br><br>Jury Trial Demanded |

Plaintiff Mirae Asset Securities Co., Ltd. ("Mirae Asset"), by and through its attorneys, alleges as follows against Defendants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC (collectively, "Ryze"):

**SUMMARY OF THE ACTION**

1. Ryze has initiated an arbitration against Mirae Asset for damages arising out of its claimed loss of enterprise value stemming from Mirae Asset's failure to fund a syndicated loan transaction to which the company never agreed in the first place. What's more, Ryze asserts that Mirae Asset is bound to arbitrate the dispute because the claimed signature of a former, mid-level employee—with no authority to bind Mirae Asset to any transaction—appears on the alleged loan agreements.

2. Here, Ryze, an experienced borrower which has secured loans guaranteed by the U.S. Department of Agriculture, inexplicably failed to seek or obtain documentation upon which a reasonable commercial borrower would rely to form a deal. Its negligence is particularly egregious here because Ryze also had retained sophisticated counsel on the purported transaction. In fact, Ryze has admitted in legal proceedings that it all along doubted whether this rogue former employee, Kyung Hyun Lee ("Lee"), had authority to enter into any loan agreement on behalf of Mirae Asset—a publicly-traded Korean financial services firm operating in North and South America, Europe, and Asia. Notwithstanding, Ryze continues to pursue arbitration against Mirae Asset without Mirae Asset's consent to arbitrate. Judicial intervention is needed. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010) (a court should order arbitration only if it is convinced that an agreement has been formed); *AT&T Techs., Inc. v. Comm'ns Workers*, 475 U.S. 643, 648 (1986) ("[A] party cannot be required to submit [to arbitration] any dispute which [it] has not agreed so to submit[.]").

3. In or about spring 2020, Lee identified a potential opportunity for Mirae Asset to consider, namely whether to fund the construction of a renewable diesel facility in Las Vegas, Nevada. By March 2021, Mirae Asset had dropped the opportunity

because, among other reasons, (a) it did not have relevant prior experience in renewable diesel facilities; (b) it could not conduct proper due diligence on the project during the height of Covid-19 shutdowns and travel restrictions; (c) it feared supply chain issues, labor shortages, and significant cost over-runs due to pandemic-related delays; (d) and its internal standards for approval were not satisfied (including with respect to the proposed interest rate, fundraising structure, use of funds, structure of collateral, exit structure, sponsor risks, etc.). Mirae Asset told Lee that it did not want to do a deal with Ryze and Lee understood that Mirae Asset would not proceed with the deal.

4. Unbeknownst to Mirae Asset, Lee, who lacked actual authority to bind the company to a syndicated loan, appears to have signed two agreements with Ryze (the first in January 2021 and another in November 2021), ostensibly committing Mirae Asset to more than US$250 million in loan obligations. Those agreements, according to the Demand for Arbitration ("Arbitration Demand") that Ryze filed with the Judicial Arbitration and Mediation Services ("JAMS"), purport to obligate Mirae Asset to arbitrate any dispute with Ryze over these alleged loan commitments, for which Ryze asserts damages based on a claimed loss of enterprise value. *See* Exhibit 1 (*Ryze Renewables Holdings, LLC, et al. v. Mirae Asset Securities Co., Ltd.*, JAMS Ref. No. 5260000299, dated July 21, 2023 (the "JAMS Arbitration")), at pp. 3-5.

5. To be clear, until it received the Arbitration Demand, Mirae Asset never knew that Lee appeared to have signed loan documents on its behalf. These documents were never authorized, never ratified, and never consented to by Mirae Asset. As a matter of law, Mirae Asset did *not* form any loan agreement with Ryze—to provide financing, to arbitrate, or to anything else—and this Court has jurisdiction to make that finding. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-42 (9th Cir. 1991) (reversing and remanding for a determination as to whether the signatory had authority to bind a party, and finding that "a party who contests the making of a contract

containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate.") (emphasis in original).

6. Ryze had actual and/or constructive knowledge that Lee lacked actual or apparent authority to bind Mirae Asset to any overseas loan financing. In other legal proceedings pending in Nevada courts—not brought against Mirae Asset—Ryze admitted that it understood that Lee did *not* have clear authority to bind Mirae Asset to any loan agreement. Ryze conceded that it was negotiating with "a front runner claiming to be affiliated with Mirae [Asset]," which explained why it had serious reservations about whether Mirae Asset "was actually involved in the deal." Even more telling, Ryze acknowledged that its *own* "representative," Sung Hee Han ("Han"), facilitated "all communication[s]" with Mirae Asset by "translat[ing]" the discussions between Ryze and Lee, whom Ryze admits "did not speak English." *See* Exhibit 2 (*Ryze Renewables Holdings, LLC et al. v. Snell & Wilmer, LLP, et al.*, Case No. A-23-863908-B, filed in Clark County (the "Snell & Wilmer Lawsuit"), First Amended Complaint ("FAC"), dated July 10, 2023), at pp. 2, 4-5, 8-9, 15 and 17-19, ¶¶ 1-2, 13-14, 39, 41, 45, 71, and 86-97.

7. Ryze cannot point to communications it had with individuals at Mirae Asset who could bind the company. No such communications exist because Ryze's principals dealt with Lee, whom Ryze admitted to lacking authority to bind Mirae Asset. Indeed, due to its concerns about Lee's lack of authority to bind Mirae Asset, Ryze even asked for Lee to connect Ryze with others at Mirae Asset. But when Lee refused to make the connection, Ryze did not take steps to independently contact others at Mirae Asset whom had authority to approve loan transactions. Had Ryze done so, all of this likely could have been avoided because Mirae Asset would have confirmed that it had decided *not* to pursue a deal with Ryze. Ryze instead elected to bury its head in the sand.

8. Ryze's experienced lending counsel highlighted the need for direct confirmation—beyond Lee and Han—that Mirae Asset had authorized a loan to Ryze. Upon information and belief, Ryze ignored the admonition.

9.     Ultimately, for there to be an agreement, there must be a meeting of the minds. To bind a company—a corporate enterprise—that means there must be corporate approval. This fundamental legal rule cannot be satisfied here. Because Mirae Asset was never a party to any Ryze deal, and because neither a rogue employee nor Ryze's own agent ever had authority to bind Mirae Asset to a loan transaction, the company itself never furnished Ryze with documentation evidencing an agreement to extend hundreds of millions of dollars in overseas loan financing. There was no letter of commitment. No board resolution. No incumbency certificates. No authorization from a Mirae Asset officer. No authorization issued from Mirae Asset's legal department. No confirmation from Mirae Asset's Investment Assessment Committee or any internal committee. No approvals from Korean or U.S. regulators. And, as Ryze admits, its primary "contact" at Mirae Asset was Lee, who "did not speak English" and whose conversations were all "translated" by Han, Ryze's own agent. *See* Exhibit 2 (Snell & Wilmer Lawsuit, FAC at pp. 4 and 8-9, ¶¶ 13, 41).

10.    Mirae Asset seeks a judicial declaration that the company did not form a loan agreement with Ryze, and in the absence of such contract, there is no agreement to arbitrate. Mirae Asset also requests preliminary and permanent injunctive relief enjoining Ryze from pursuing claims against Mirae Asset in the JAMS Arbitration. *See Textile Unlimited, Inc. v. A..BMH & Co., Inc.,* 240 F.3d 781, 786-87 (9th Cir. 2001) (arbitration proceedings may be enjoined if the requirements have been satisfied).

## **THE PARTIES**

11.    Plaintiff Mirae Asset Securities Co., Ltd. is a Republic of Korea corporation organized and existing under the laws of the Republic of Korea, with its principal place of business in Seoul, Republic of Korea, and, under Korean law, is a separate juridical person, separate from its shareholders, capable of suing and being sued under its own name. It is a citizen of the Republic of Korea.

12. Defendant Ryze Renewables Holdings, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Las Vegas, Nevada. On information and belief, Ryze Renewables Holdings, LLC has five members: (a) the Daniel Brown 2018 Family Trust; (b) RQNMK, LLC; (c) ADK Advisors, LLC; (d) Nemo Perera; and (e) the Ryze Corporation (together, the "Members").

13. The allegations regarding the Members reflected in paragraphs 13(a)-(e) are based on information and belief following a reasonable and diligent investigation:

(a) <u>The Daniel Brown 2018 Family Trust</u>: According to court filings, this is a trust and Michael Brown is an individual and the trustee of the Daniel Brown 2018 Family Trust. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (a traditional trust has the citizenship of its trustee or trustees). Michael Brown's last known addresses are in Texas, Nevada, and California; however, Brown is registered to vote in California and has a California driver's license. Based on the information available to it, Mirae Asset thus alleges, on information and belief, that Michael Brown and the Daniel Brown 2018 Family Trust are citizens of the State of California and are not citizens of any foreign country.

(b) <u>RQNMK, LLC ("RQNMK")</u>: According to public filings, RQNMK is a limited liability company organized and existing under the laws of the State of Virginia. Based on RQNMK's articles of organization, Kevin McDonough is the "Trustee of a Trust that is a Member or Manager" of RQNMK. Based on voter registration and last known residence information, McDonough is an individual and a citizen of the State of Virginia. Given the information available to it, Mirae Asset thus alleges, based on information and belief, that RQNMK and Kevin McDonough are citizens of the State of Virginia and not citizens of any foreign country. *See Carolina Cas. Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082, 1087-88 (9th Cir. 2014) (a party

may plead diversity for membership interests in LLCs based upon information and belief, including when jurisdictional facts are not readily ascertainable).

    (c) <u>ADK Advisors, LLC ("ADK Advisors")</u>:  There are at least three separate "ADK Advisors" entities in the United States—one is registered in Massachusetts, one is registered in New Jersey, and one is registered in New York.  These entities do not publically list their members.  Mirae Asset pleads the citizenship of ADK Advisors based on information and belief.  *See id.*  Regardless of which ADK Advisors is a member of Ryze Renewables Holdings, LLC, all known ADK Advisors are United States entities and, on information and belief, their members are citizens of the United States, citizens of the States of New Jersey, New York, California or Massachusetts, and not citizens of any foreign country.  However, both the Massachusetts and New Jersey entities list registered agents or officers within those same states, while the New York entity lists a corporate registered agent in California.  Based on the limited information publicly available, Mirae Asset alleges, on information and belief, that the members of ADK Advisors are most likely citizens of New York, Massachusetts, New Jersey, or California and not citizens of any foreign country.  *See id.* at 1087-88 ("it should not be assumed at this stage that a proper basis for jurisdiction cannot be established").

    (d) <u>Nemo Perera</u>:  On information and belief, "Nemo" Perera's full name is Neomal Perera and is an individual with a last known address in the State of Pennsylvania, is registered to vote in Pennsylvania, and according to LinkedIn, is employed in Pennsylvania.  Based on this information, Mirae Asset alleges that Nemo Perera is an individual and citizen of the State of Pennsylvania and not a citizen of any foreign country.

    (e) <u>Ryze Corporation</u>:  Ryze Corporation is a Nevada company formed and existing under the laws of the State of Nevada, with its principal place of business in Nevada.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

14. Defendant Ryze Renewables Nevada, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in Las Vegas, Nevada. On information and belief, Ryze Renewables Nevada, LLC is a wholly-owned subsidiary of Ryze Renewables Holdings, LLC, and on information and belief, Ryze Renewables Holdings, LLC is the sole member of Ryze Renewables Nevada, LLC. Ryze Renewables Nevada, LLC is therefore a citizen of the States of California, Virginia, Pennsylvania, and Nevada. On information and belief, it is also a citizen of Massachusetts, New Jersey, or New York.

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction here, pursuant to 28 U.S.C. § 1332(a), because Ryze Renewables Holdings, LLC's and Ryze Renewables Nevada, LLC's Arbitration Demand seeks damages for its claimed loss of enterprise value, which exceeds the amount in controversy requirement of $75,000, and because, based on the allegations above and on information and belief, Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC are citizens of California, Virginia, Pennsylvania, and Nevada, and also citizens of Massachusetts, New York, or New Jersey, while Mirae Asset is a citizen of the Republic of Korea.

16. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC initiated the JAMS Arbitration in Nevada and because both Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC are citizens of Nevada; therefore, both Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC are subject to the Court's personal jurisdiction.

## FACTUAL BACKGROUND

**A.    Ryze Seeks To Force Mirae Asset Into JAMS Arbitration.**

17. Mirae Asset is a large financial services company that provides brokerage

services, investment banking, wealth management, IPO underwriting, and consulting services to customers across Asia, the United Kingdom, and North and South America.

18.     Upon information and belief, in or about 2020, Ryze searched for funding in connection with the conversion of an existing biodiesel refinery into a renewable diesel facility in Las Vegas, Nevada. *See* Exhibit 1, at p. 1, ¶ 1.

19.     Ryze asserts that Mirae Asset breached two contracts that would have obligated Mirae Asset to extend more than US$250 million in loans to finance the plant conversion in Nevada. Those purported agreements, Ryze alleges, also require Mirae Asset to participate in the JAMS Arbitration. *See* Exhibit 1, at pp. 2-5, ¶¶ 5-6 and 11-15.

20.     Mirae Asset did not agree to an overseas loan transaction with Ryze. Nor did it agree to arbitrate any dispute with Ryze. Mirae Asset could not breach contracts to which it never agreed.

**B.     There Is No Loan Agreement Between Ryze And Mirae Asset.**

21.     The Arbitration Demand asserts three causes of action against Mirae Asset appearing to arise out of or relate to Ryze's contention that Mirae Asset breached a document known as the Convertible Loan Agreement, dated January 27, 2021 (the "CLA"), as well as the SLA. *See* Exhibit 1, at pp. 17-21, ¶¶ 106-133; Exhibit 1A, CLA, at p. 2; Exhibit 1B, SLA, at p. 2.[1]

22.     The CLA appears to identify Ryze Renewables Nevada, LLC as the borrower and Mirae Asset Daewoo Co., Ltd. (later renamed Mirae Asset Securities Co., Ltd.) as the lender for US$210 million in loan obligations. The CLA appears to have been executed by Ryze's Manager, Matthew G. Pearson, and Kyung Hyun Lee, the "Head of the Multi Structured Finance Team," ostensibly on behalf of Mirae Asset. *See* Exhibit 1A,

---

[1] In addition to contract claims, Ryze also alleges a cause of action for abuse of process. Upon information and belief, Han and/or Lee at some point authorized Snell & Wilmer to initiate litigation against Ryze in Nevada, ostensibly on behalf of Mirae Asset. However, Mirae Asset neither empowered Han nor Lee to initiate, participate in, and/or resolve any such legal proceedings.

CLA, at p. 7 and 74.  Mirae Asset disputes that Lee ever had authority to sign the CLA on its behalf or to agree to the CLA's terms on Mirae Asset's behalf.

23.     The SLA appears to identify Ryze Renewables Nevada, LLC as the borrower and an entity named LV Renewables A, LLC ("LV Renewables") as the lender. Mirae Asset is not a party to the SLA, and Mirae Asset's claimed affiliation with LV Renewables is, and at all relevant times herein was, a function of (mis)representations by Lee, who appears to be a Managing Member and officer of LV Renewables.  The SLA appears to contain Lee's signature on behalf of LV Renewables and ostensibly for Mirae Asset to acknowledge certain indemnification obligations under the SLA.[2]  *See* Exhibit 1B, SLA, at pp. 8 and 120.  Even though Mirae Asset is not a party to the SLA, Ryze claims that Mirae Asset breached a purported obligation to extend more than US$52 million in loan financing to Ryze pursuant to the SLA.  *See* Exhibit 1, at pp. 2 and 20-21, ¶¶ 5 and 124-33.  Again, Mirae Asset disputes that Lee ever had authority to sign the SLA on its behalf or to agree to the SLA's terms on Mirae Asset's behalf.

24.     Ryze further alleges that the CLA and the SLA contain nearly identical arbitration provisions stating, *inter alia*, that "[a]ny dispute, claim or controversy … arising out of or relating to" those documents shall be resolved in JAMS Arbitration by a single arbitrator in Las Vegas, Nevada, without the opportunity to appeal the arbitrator's award.  *See* Exhibit 1A, CLA, at p. 71, § 10.08; Exhibit 1B, SLA, at p. 52, § 10.5.[3]

---

[2] The acknowledgment of the purported indemnification obligations on the signature page refers to a Section 13.2 of the SLA, however, there is no such provision in the document. The alleged indemnification obligations appear to be included under Section 10.2.  *See* Exhibit 1B, at pp. 50-51.

[3] Section 10.08 of the CLA provides:

> Any dispute, claim or controversy, including tort claims, arising out of or relating to this Agreement or to the breach, termination, enforcement, interpretation, or validity hereof, including the determination of the scope or applicability of this arbitration provision, shall be determined by arbitration in accordance with the JAMS Comprehensive Arbitration Rules and Procedures (the "***Rules***").  In the event of a conflict between such Rules and this Agreement, the provisions of this Agreement will control.  The tribunal will consist of one arbitrator.  The place of arbitration shall be Las Vegas, Nevada.  The language to be used in the arbitral

1    25.    Lee is a Korean citizen. As Ryze has conceded elsewhere, he does not speak English. *See* Exhibit 2, Snell & Wilmer Lawsuit, FAC, at pp. 4-5, ¶¶ 13-14. Lee was employed by Mirae Asset as a "Team Leader" and "Director" on one of the Investment Development teams housed within the Corporate Finance Department. Mirae Asset's corporate structure is hierarchical and multi-layered, and within each layer, there

---

> proceedings will be English. The arbitrator shall be appointed pursuant to the Rules. The arbitrator shall, in the award, allocate all the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party or parties. The arbitrator may not award punitive, exemplary, incidental or consequential damages, and the parties hereby irrevocably waive any claim(s) to such damages in disputes that are subject to this arbitration provision. The result of the arbitration will be final and binding on the parties, and judgment upon any award rendered by the arbitrator may be entered by any court having jurisdiction. The parties hereby agree not to appeal the result of the arbitration. The procedures set forth herein shall not preclude a party from seeking injunctive relief or other provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The interpretation and enforceability of this section shall be governed exclusively by the Federal Arbitration Act, 9 U.S.C. Section 1, et seq.

Further, Section 10.5 of the SLA provides:

> Any dispute, claim or controversy, including tort claims, arising out of or relating to this Agreement or to the breach, termination, enforcement, interpretation or validity hereof, including the determination of the scope or applicability of this arbitration provision, shall be determined by arbitration in accordance with the JAMS Comprehensive Arbitration Rules and Procedures (the "***Rules***"). In the event of a conflict between such Rules and this Agreement, the provisions of this Agreement will control. The tribunal will consist of one arbitrator. The place of arbitration will be Las Vegas, Nevada. The language to be used in the arbitral proceedings will be English. The arbitrator shall be appointed pursuant to the Rules. The arbitrator shall, in the award, allocate all the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party or parties. The result of the arbitration will be final and binding on the parties, and judgment upon any award rendered by the arbitrator may be entered by any court having jurisdiction. The parties hereby agree not to appeal the result of the arbitration. The procedures set forth herein shall not preclude a party from seeking injunctive relief or other provisional remedies in aid of arbitration from a court of appropriate jurisdiction. The interpretation and enforceability of this section shall be governed exclusively by the Federal Arbitration Act, 9 U.S.C. Section 1, et seq.

Exhibit 1A, CLA, at p. 71, § 10.08; Exhibit 1B, SLA, at p. 52, § 10.5.

are multiple individuals that serve in the Team Leader or Director capacity.  For example, there are approximately 42 Team Leaders in the Corporate Finance Department and nearly 194 employees with the same title across the organization (including nearly 170 Directors).

26. As a "Team Leader"/"Director," Lee was a mid-level employee.  He reported to a Division Leader and Managing Director, who then reported further up to various levels of senior management, including Executive Managing Director, Executive Vice President, President, Vice Chair, and ultimately to the Chair.  Lee is not (and was not) a corporate officer; nor is he (or was he) a member of the company's Board of Directors.  He did not have authority to bind Mirae Asset to purported loans like the CLA or indemnity terms like in the SLA.

27. As is common in commercial lending and borrowing, including in Korean investment firms, a person at Lee's level would be responsible for certain duties.  In this case, for example, Lee's duties included researching potential investment opportunities, having preliminary discussions to explore the terms or structure of those opportunities and how they might generate revenue for the firm, and, significantly, bringing those deals to more senior professionals for review and to obtain the requisite approvals in accordance with Mirae Asset's internal policies and procedures.

28. Further, in the commercial space, it is often the case that preliminary discussions are done by lower to mid-level professionals where neither negotiator has nor reasonably expects the other to have authority to bind their principals without further review, diligence, and the requisite approvals on behalf of the company itself.  Indeed, even the CLA that Lee appears to have signed stipulates that all funding would be conditioned upon "Final Investment Committee Approval," reflecting the fact that individuals within Ryze understood that Lee could not act for Mirae Asset on his own or bind the company with respect to any loan financing.  *See* Exhibit 1A, CLA, at p. 43, § 4.01.  While Lee could source potential transactions, he had no authority to commit Mirae

Asset to any loan. At all times relevant herein, Lee knew that he possessed no such authority.

29. In fact, during the preliminary discussions between Ryze and Mirae Asset in spring 2020, Lee was not authorized by the company to sign an Offering Memorandum inviting Ryze to open negotiations concerning a potential deal. Within Mirae Asset's structure, an Offering Memorandum is "not legally binding and does not create an offer capable of acceptance[.]" Even so, Lee was not empowered to sign that document, which should have signaled to Ryze that Lee was incapable of committing Mirae Asset to a syndicated loan financing.

### C. Mirae Asset's Internal Approvals Were Not Satisfied.

30. Upon information and belief, Lee was aware that Mirae Asset had internal processes for approving syndicated loan deals, including cross-border transactions. In addition to any regulatory requirements that may be mandated by governmental agencies, that approval process involves several steps, including:

(a) <u>Review by the Investment Team</u>. The Investment Team is responsible for internally evaluating the feasibility of a deal and to determine whether to initiate the negotiation with a counterparty in a potential deal.

(b) <u>Review and Approval by the Assessment Team</u>. The Assessment Team is responsible for preliminary evaluation of the stability and soundness of the potential deal, taking into account the type of investment and risk factors. The Assessment Team generally issues one of three opinions: "positive," "neutral," or "negative."

(c) <u>Review and Approval by the Legal Department</u>. The Legal Department is responsible for reviewing and approving agreements before execution.

(d) <u>Review and Approval by the Investment Assessment Committee</u>. This is an ad hoc committee responsible for reviewing and giving final approval to invest in a potential deal, which is led by the Chief Risk Officer.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

         (e)    <u>Approval by Department Heads, Assessment Team, and Legal Department</u>.  Various approvals are required before a binding letter of intent or commitment is issued.

         (f)    <u>Authorization by the General Affairs Department</u>.  Following the review and approval process, the General Affairs Department analyzes the internal audit trail and provides authorization for use of corporate seals on contracts.

31.    Upon information and belief, at all relevant times herein, Lee was aware of Mirae Asset's internal policies and procedures relating to the approval of syndicated loan transactions.  These requirements were not satisfied for the CLA or the SLA.

### D. Mirae Asset Rejected The Potential Ryze Transaction.

32.    The proposed Ryze transaction was dropped as part of the Assessment Team's review.  Lee was advised throughout the process of the Assessment Team's negative views on the deal, and by March 2021, Lee was told that Mirae Asset could not proceed with a deal with Ryze for several reasons, including, for example, (a) it did not have relevant prior experience in renewable diesel facilities; (b) it could not conduct proper due diligence on the project during the height of Covid-19 shutdowns and travel restrictions; (c) it feared supply chain issues, labor shortages, and significant cost over-runs due to pandemic-related delays; (d) and its internal standards for approval were not satisfied (including with respect to the proposed interest rate, fundraising structure, use of funds, structure of collateral, exit structure, sponsor risks, etc.).

33.    Once Lee was advised that the company would not pursue any transaction with Ryze, Mirae Asset presumed that Lee would act and was acting consistent with this instruction.  The company was unaware that Lee had purported to enter into loan agreements with Ryze on behalf of Mirae Asset, including his alleged execution of the CLA in late January 2021—*before* the Assessment Team completed its work.

34.    Put simply, the potential Ryze transaction did not progress beyond the Assessment Team for further review or consideration by various internal stakeholders,

including the Investment Assessment Committee, the Legal Department, various Department Heads, and the General Affairs Department.  Nor were the CLA and the SLA (or drafts thereof) approved by the Legal Department for execution.

### E. Ryze Admits That It Was Deceived By Its Own Agent.

35. Nobody from Mirae Asset ever represented to Ryze that Lee could consummate a deal on behalf of the company, and apparently no employee with authority communicated with Ryze regarding the alleged loan transaction.  *See* Exhibit 2, Snell & Wilmer Lawsuit, FAC, at pp. 8-9 and 18, ¶¶ 41 and 88.  In the Snell & Wilmer Lawsuit, Ryze acknowledged, as it must, that Ryze never spoke to anyone in Mirae Asset's legal department, that Lee was its primary "contact" at Mirae Asset, and that Lee "did not speak English"—though he purportedly communicated to Ryze through the "translat[ion]" of Ryze's "representative," Han.  *See id.,* pp. 1-2, 4-5, 8-9, 17-19, ¶¶ 1-2, 13-14, 39, 41, 45, and 86-97.

36. Han has never been an employee of Mirae Asset.  Mirae Asset did not authorize Han to negotiate or approve the CLA or the SLA.  Nor was Lee ever authorized to permit Han to negotiate or enter into the CLA or the SLA, purportedly on behalf of Mirae Asset.  Likewise, neither Han nor Lee were authorized by Mirae Asset to pursue (or resolve) any litigation on behalf of Mirae Asset, including for the purpose of enforcing the terms of the CLA to which the company never agreed in the first instance.

### F. Ryze Had Actual or Constructive Knowledge That Lee And Han Lacked Actual Or Apparent Authority To Enter Into A Loan Transaction On Behalf Of Mirae Asset.

37. Upon information and belief, outside of perhaps communications to Lee, Ryze never asked anyone at Mirae Asset who had authority to bind the company.  Nor were individuals with the ability to bind Mirae Asset copied on communications with Ryze.

38. Upon information and belief, this appeared strange to Ryze. Ryze correctly believed it was negotiating with "a front runner claiming to be affiliated with Mirae [Asset]," which is why it doubted all along that Mirae Asset "was actually involved in the deal." *See* Exhibit 2, Snell & Wilmer Lawsuit, FAC at pp. 2, 8, and 17-18, ¶¶ 1-2, 39, 86, and 91.

39. Ryze's counsel had the same—and likely stronger—doubts. Ryze had retained sophisticated counsel, including a global law firm, in connection with the deal. Ryze's attorneys have advised borrowers in overseas loan transactions and were (are) familiar with the nature and type of documentation required to consummate a deal. During one call among Lee, Han, and Ryze's representatives, Ryze's counsel *specifically inquired* whether Lee and/or Han would provide "anything in writing" to confirm their (mis)representation that "Final Investment Committee Approval" had been granted by the company. Ryze's counsel referenced an extensive discussion about this issue and demanded that Mirae Asset or its counsel respond directly regarding the documentation required to close financing under the CLA. *See also* Exhibit 1, at pp. 8-9, ¶¶ 42-51.

40. To no reasonable actor's surprise, no such documentation was provided by Mirae Asset or its counsel. Ryze conveniently contends that it accepted the "translated" words from its agent, Han, that Lee himself was the "sole" person with authority to obligate Mirae Asset for the CLA and the SLA. So, Ryze chose to proceed without a letter of commitment, a board resolution, any incumbency certificates, without authorization from Mirae Asset's legal department, without authorization from a Mirae Asset officer, with no written confirmation from the Investment Assessment Committee, and no correspondence from any regulators in the U.S. or Korea.

41. Put simply, Ryze knew or should have known that neither Han nor Lee had actual or apparent authority to bind Mirae Asset to any loan agreement whatsoever.

42. Mirae Asset has terminated Lee's employment.

## CLAIM FOR RELIEF

**(Declaratory Judgment)**

43.     Mirae Asset repeats, alleges, and incorporates by reference each of the foregoing statements and allegations as if they were fully set forth herein.

44.     An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C § 2201 in connection with whether Mirae Asset entered into a loan agreement with Ryze containing an agreement to arbitrate.  *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021) (holding that "parties cannot delegate issues of formation to the arbitrator" and that "[i]f no agreement to arbitrate was formed, then there is no basis upon which to compel arbitration.").

45.     Ryze has initiated the JAMS Arbitration claiming lost enterprise value, however, Mirae Asset never entered into any loan agreement with Ryze purporting to waive its right to a judicial determination of the threshold issue of arbitrability.  Declaratory relief is appropriate to decide that question.  *See Three Valleys*, 925 F.2d at 1140-42.

46.     Mirae Asset never authorized Han or Lee to enter into any loan agreement with Ryze.  Nor did Mirae Asset hold out Lee or Han as having authority to bind Mirae Asset to an overseas loan financing, to an agreement to arbitrate, or otherwise.

47.     Mirae Asset therefore seeks a judicial declaration that it never formed an agreement with Ryze as to either the CLA or the SLA, and that, as such, it never formed an agreement to arbitrate claims under either the CLA or the SLA.  Mirae Asset seeks a declaratory judgment that it has no obligation to participate in the JAMS Arbitration.  *See* Fed. R. Civ. P. 57; 28 U.S.C. § 2201.

## PRAYER FOR RELIEF

**WHEREFORE**, Mirae Asset seeks judgment against Ryze and each of them as follows:

A.     To enter a declaratory judgment, pursuant to Fed. R. Civ. P. 57 and 28

U.S.C. § 2201, that no contract was formed between Mirae Asset and Ryze with respect to the CLA and the SLA, and that Mirae Asset has no obligation to arbitrate the claims asserted by Ryze under the CLA or the SLA in the JAMS Arbitration;

      B.      To preliminarily and permanently enjoin Ryze from pursuing any claims against Mirae Asset in the JAMS Arbitration and not require Mirae Asset to post a bond;

      C.      To award Mirae Asset its costs of suit; and

      D.      To grant Mirae Asset any other and further relief as the Court may deem just and proper, including discovery and/or an evidentiary hearing with respect to its request for a declaratory judgment.

      E.      For a jury trial.

DATED: October 13, 2023      Respectfully submitted,

By: _____/s/ Daniel Prince_____
            DANIEL PRINCE

PETER C. MEIER (NSB No. 9123)
petermeier@paulhastings.com
DANIEL PRINCE (admitted *pro hac vice*)
danielprince@paulhastings.com
ADAM J. FEE (admitted *pro hac vice*)
adamfee@paulhastings.com
D. SCOTT CARLTON (admitted *pro hac vice*)
scottcarlton@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

TAMARA BEATTY PETERSON (NSB No. 5218)
tpeterson@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone: (702) 786-1001
Facsimile: (702) 786-1002

Attorneys for Plaintiff
Mirae Asset Securities Co., Ltd.