UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MIRAE ASSET SECURITIES CO., LTD.,<br><br>    Plaintiff<br><br>v.<br><br>RYZE RENEWABLES HOLDINGS, LLC, et al.,<br><br>    Defendants | Case No.: 2:23-cv-01492-APG-NJK<br><br>**Order Denying Ryze's Motions to Dismiss, Granting Mirae's Motions to Supplement, and Granting in Part Mirae's Motion for Judgment on the Pleadings**<br><br>[ECF Nos. 163, 199, 213, 218, 230, 234] |

      Mirae Asset Securities Co., Ltd. sued Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC (collectively, Ryze) seeking a declaration that there was no valid contract between the parties and therefore no obligation to arbitrate.  Ryze countersued, asserting claims for breach of contract, abuse of process, wrongful use of civil process, and to compel arbitration.  Ryze now moves to dismiss Mirae's suit arguing that it is moot or that I should abstain due to developments in Ryze's state court case. ECF Nos. 163, 199.  Mirae responds that its declaratory judgment claim remains relevant even without the threat of arbitration and that the state court case has since been dismissed.  Mirae also moves for judgment on the pleadings on Ryze's counterclaims. ECF No. 230.  Ryze responds that its claims are properly pleaded or that it should be given leave to amend.

      I deny Ryze's motions to dismiss because Mirae still has a live claim about whether there was a valid contract between the parties and because the state court case was dismissed.  I grant Mirae's motion for judgment on the pleadings as to Ryze's wrongful use of civil process claim and deny it as to all other claims.

# I. BACKGROUND[1]

Ryze began converting a Las Vegas biodiesel refinery into a renewable diesel facility utilizing emerging technologies. Ryze secured an initial $198 million loan from a nonparty lender, backed by the United States Department of Agriculture (USDA). As the project progressed, Ryze needed additional funding. Ryze was introduced to Mirae through one of its consultants and dealt primarily through a Mirae employee named Kyunghun Lee, who Ryze asserts "was authorized to act as Mirae Asset's agent." ECF No. 31 at 13.

After several months of negotiation, Mirae and Ryze signed a $210 million convertible loan agreement (CLA). Two weeks after signing the CLA, Ryze completed all conditions precedent and informed Mirae, who then needed to obtain final committee approval of the loan within 14 business days. The day before the approval deadline, "Lee conveyed on behalf of Mirae asset that final investment committee approval by Mirae Asset had indeed been obtained." *Id.* at 15. This approval triggered a 10-day deadline for Mirae to fund the loan. Mirae did not provide any funding by that deadline.

After the deadline passed, Lee informed Ryze that "there are other extracontractual internal requirements which are not necessarily reflected in the CLA" and that the committee approval was an "ongoing function, not just one single event." *Id.* at 16 (simplified). Ryze attempted to renegotiate with Mirae for two more months. After these negotiations failed, Ryze sent a letter to Mirae advising it that the CLA had been terminated. Mirae responded with its own communications indicating it was withdrawing and terminating the CLA.

---

[1] All facts are taken from Ryze's counterclaim (ECF No. 31), which I construe as true when considering Mirae's motion for judgment on the pleadings. Mirae presents a different version of the facts, which I need not describe in detail because Ryze's motions to dismiss are not based on Mirae's factual allegations.

2

Ryze sought new funding and executed a term sheet with a substitute lender. Before that deal could be consummated, however, Mirae sued Ryze in Nevada state court seeking specific performance of, and monetary damages under, the CLA. Ryze asserts that the "transparent purpose of the lawsuit was to thwart the imminent deal Ryze had secured with the Substitute Funder and force Ryze to resume negotiations with Mirae Asset." *Id.* at 17. According to Ryze, "the lawsuit contained a myriad of frivolous allegations." *Id.* at 18. After this lawsuit was filed, the substitute lender suspended its deal with Ryze.

Hoping to salvage the substitute funding opportunity, Ryze arranged for a settlement conference with Mirae. At the settlement conference, Mirae refused to discuss the merits of the case and threatened to walk away if Ryze attempted to do so. Ryze asserts that Mirae instead used the settlement conference to threaten Ryze with ruinous litigation if it did not agree to a new loan with terms unfavorable to Ryze. Fearing that it would default on the USDA guaranteed loan, Ryze agreed to a binding term sheet, which would eventually become the parties' second loan agreement (SLA). Under the SLA, "Ryze would receive a $21 million loan from a 'to be determined lender'—supposedly, a newly formed special purpose entity controlled by Mirae Asset." *Id.* at 22. Mirae would be entitled to $7 million in fees under this deal, despite the much smaller principal value.

Mirae failed to fund the loan by the SLA funding deadline. Mirae initially cited issues with Korean regulators but eventually ceased responding to Ryze's communications. Ryze defaulted on its USDA guaranteed loan and lost its diesel plant enterprise.

////

////

////

## II. DISCUSSION

### A. Ryze's Motions to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must also make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

#### 1. Mootness (ECF No. 163)

Ryze argues that Mirae's declaratory judgment claim is moot and should therefore be dismissed. Ryze further argues that because it has waived any arbitration rights it may have had under the putative contracts, Mirae no longer needs a declaration relieving it of the obligation to arbitrate. *See* ECF Nos. 160; 161. Mirae responds that it seeks a declaration that no valid contract exists between it and Ryze, of which arbitration is only a single claim.

Mirae's complaint asks me to "enter a declaratory judgment, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, that no contract was formed between Mirae Asset and Ryze with respect to the CLA and the SLA, and that Mirae Asset has no obligation to arbitrate the claims asserted by Ryze under the CLA or the SLA in the JAMS Arbitration." ECF No. 21 at 17-18.

Because Mirae seeks a declaratory judgment that no contract was formed and Ryze alleges breach of these contracts in its counterclaims, Mirae's claim is still a live case or controversy. Thus, I deny Ryze's motion to dismiss Mirae's declaratory judgment claim as moot.

### 2. Abstention (ECF No. 199)

Ryze argues that because it has now filed third-party claims against Mirae in a separate state court case, Mirae can adjudicate its contract formation issue as a defense to Ryze's state court suit. Ryze further argues that because the controversy can be settled in the state court, I should abstain from deciding Mirae's declaratory judgment claim under the principles from either *Brillhart* or *Colorado River*.[2] Mirae responds that it selected the federal forum for its claim, other parties brought it into the state court proceeding, and the abstention factors do not favor abstaining. Since completing the briefing on this issue, Mirae filed three motions for leave to file supplemental documents showing that the primary state court defendant filed an anti-SLAPP special motion to dismiss, the state court judge dismissed the primary claims against that defendant with prejudice, and the state court judge dismissed all claims between Ryze and Mirae. ECF Nos. 213; 218; 234.

Federal Rule of Evidence 201(b) allows me to judicially notice "a fact that is not subject to reasonable dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Although I do not take judicial notice of the substantive findings of the state court, I take notice that Judge Hardy of Nevada's Eighth Judicial Court dismissed Ryze's third-party claims against Mirae in case A-23-863908-B on May 28, 2025. Ryze does

---

[2] *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

not dispute that the state court case is dismissed. Because there is no longer a parallel state case, abstention is no longer warranted. So I deny Ryze's motion to dismiss or stay these proceedings under abstention principles.

### B. Mirae's Motion for Judgment on the Pleadings (ECF No. 230)

A party may move for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial." Fed. R. Civ. P. 12(c). "[A] Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion," so "the same standard of review applies to motions brought under either rule." *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (simplified). In addition to the complaint, I may consider documents incorporated into the complaint by reference and matters of which I may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Gregg*, 870 F.3d at 887 (quotation omitted). Consequently, I must determine whether the complaint contains "sufficient factual matter . . . to state a claim of relief that is plausible on its face." *Harris v. Orange Cnty.*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

#### 1. Breach of the CLA

Mirae argues that it could not breach the CLA because it never gave final committee approval to trigger its obligation to fund the loan. It further argues that Ryze admits in its counterclaim that the loan automatically terminated and that the contract disallows any lawsuits for failure to obtain final Mirae committee approval. Ryze responds that it has plausibly alleged that Mirae's agent informed them that final committee approval had been obtained and the breach was complete when Mirae failed to furnish the funds within 10 days of that approval.

6

To establish a claim for breach of contract, Ryze must plausibly allege (1) a valid contract exists, (2) Ryze performed, (3) Mirae breached, and (4) the breach caused Ryze damages. *See Iliescu, Tr. of John Iliescu, Jr. and Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Trans. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. App. 2022). Mirae attached complete copies of both the CLA and SLA to its first amended complaint and Ryze references these contracts in its counterclaims, so I deem them incorporated by reference for deciding Mirae's motion. ECF Nos. 22-2; 22-3.

The CLA required Ryze to complete or obtain waiver of a series of conditions precedent before the lending agreement became effective. ECF No. 22-2 at 44, 87-89. Once Ryze satisfied these conditions precedent, Mirae had 14 business days to obtain final approval from its internal committee. *Id.* at 44. If Mirae obtained final committee approval in that time period, then Mirae had an obligation to fund the loan within 10 days of the final committee approval, unless the parties agreed in writing to a later date. *Id.* If Mirae did not, "for any reason, obtain the Final Mirae Committee Approval within such fourteen (14) Business Day period, [the CLA] shall be automatically terminated with immediate effect." *Id.* at 44-45. And all parties waived any right to sue arising from failure of the conditions precedent or failure to obtain the final Mirae committee approval. *Id.* at 44.

Ryze's counterclaim plausibly alleges a breach of the CLA. Ryze alleges that it completed all conditions precedent and informed Mirae by email. It further alleges that Lee informed Ryze by teleconference that the final investment committee approval was obtained. Finally, Ryze alleges that Mirae did not fund the loan within 10 days after the committee's approval. Ryze thus plausibly alleges that the CLA was a valid contract, that Ryze fulfilled its obligations under the CLA, that Mirae's obligation to fund the loan had been triggered, and that

7

Mirae breached by failing to do so. The allegation that the CLA became binding is further supported by Ryze's allegation that Mirae later sued Ryze in state court seeking specific performance of the CLA.

Though the parties continued to negotiate and eventually agreed that the CLA was terminated two months later, that does not demonstrate that the CLA was automatically terminated due to lack of committee approval as Mirae argues. Taking Ryze's assertions as true and construing all inferences in its favor, Mirae's obligation was triggered when it represented that it had obtained committee approval, and the breach was complete when it failed to fund the loan 10 days later. Ryze's openness to renegotiation before terminating the deal to seek alternative funding does not undo this alleged breach. I therefore deny Mirae's motion as to the breach of the CLA.

### 2. Breach of the SLA

Mirae argues that it could not have breached the SLA because the SLA named nonparty LV Renewables A, LLC as the lender, so Mirae had no duty to perform. Ryze responds that its counterclaim alleges Mirae coerced the SLA, dictated its terms, benefited through fees, and controlled the nominal lender.

Ryze plausibly alleges facts that could confer liability against Mirae for breaching the SLA. In addition to alleging that Mirae used coercive tactics to force Ryze to enter into the SLA, Ryze alleges that Mirae concealed key aspects including "basic information about the identity of the nominal counterparty to the loan or the Mirae Asset-affiliate that would hold the 20% equity award." ECF No. 31 at 21. Ryze also alleges that the definitive terms of the SLA provided that "Ryze would receive a $21 million loan from a 'to be determined lender'—supposedly, a newly-formed special purpose entity controlled by Mirae Asset." *Id.* at 22. Taking these allegations as

true in the light most favorable to Ryze, they plausibly allege that LV Renewables A, LLC was an alter ego of Mirae or that Mirae sufficiently controlled this transaction to incur liability under traditional principles of state contract law. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) (citing "traditional principles" such as "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel" as means to hold nonparties liable under a contract); *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008) (recognizing a similar list of theories in Nevada law). Accordingly, I deny Mirae's motion as to breach of the SLA.

### 3. Abuse of Process

Mirae argues that Ryze's counterclaim for abuse of process is barred by the litigation privilege and that it is insufficiently pleaded because filing a complaint does not satisfy the Nevada standard for abuse of process. Ryze responds that Mirae is estopped from arguing litigation privilege, that Mirae failed to raise litigation privilege in its answer, and that the privilege does not extend to sham proceedings or attorney malfeasance. Ryze further asserts that it has met the pleading standard for abuse of process.

#### i. Litigation Privilege

Nevada[3] recognizes "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged, rendering those who made the communications immune from civil liability." *Greenberg Traurig v. Frias Holding Co.*, 331 P.3d 901, 903 (Nev. 2014) (en banc) (simplified). Although the litigation privilege is absolute, applying even to communications made with knowledge and malice, it has limitations.

---

[3] Although the settlement conference took place in California, *see* ECF No. 33 at 19, the underlying litigation was in Nevada and both parties cite to Nevada law to determine the scope of the litigation privilege. *See* ECF Nos. 230 at 8 n.5; 233 at 12.

9

1  *Id.* The privilege is "contingent on the attorney's representation of his or her client because the privilege is designed to ensure that attorneys have the utmost freedom to engage in zealous advocacy." *Id.* at 904. It "applies to communications made by either an attorney or a nonattorney that are related to ongoing litigation or future litigation contemplated in good faith." *Jacobs v. Adelson*, 325 P.3d 1282, 1285 (Nev. 2014) (en banc). Communications that do not further these goals, such as attorney malpractice, are not protected. *Greenberg Traurig*, 331 P.3d at 904. The litigation privilege "is not designed to provide attorneys with the ability to act malfeasant and then hide behind the privilege with impunity." *Dickerson v. Downey Brand LLP*, No. 67768, 2017 WL 6316552, at *3 (Nev. 2017) (unpublished opinion).

In *Dickerson*, an attorney induced an expert witness to agree to a fee reduction in order to facilitate settlement by assuring the expert that the new fee would be in addition to prior payments. *Id.* at *1. When the attorney later deducted the prior payments, the expert witness sued. *Id.* The Supreme Court of Nevada held that the litigation privilege did not protect the attorney's communications even though they were made to facilitate settlement in anticipation of litigation. *Id.* at *3.

The communications that Ryze alleges Mirae made during the settlement conference similarly fall outside the litigation privilege. Ryze asserts that during the settlement conference, Mirae "refused to discuss the lawsuit it filed, stating that if Ryze even attempted to discuss its merits, the conference would summarily be terminated." ECF No. 31 at 20. Rather, Mirae used the "sham settlement conference" to threaten to "destroy Ryze through years of vexatious litigation if they did not sign" the new, unfavorable deal Mirae presented. *Id.* (quotations omitted). Like the communications in *Dickerson*, Ryze plausibly alleges Mirae's communications were made for an improper purpose, not a good-faith effort to settle the case

even though they were made in the context of settlement negotiations in anticipation of litigation. I therefore deny Mirae's motion for judgment on the pleadings as to the litigation privilege.[4]

Mirae alternatively argues that Nevada Revised Statute (NRS) § 48.109(2) or California Evidence Code § 1119 render statements made during mediation or settlement conferences inadmissible so they cannot support Ryze's claim. Ryze responds that it has alleged that the settlement conference was a sham and that there are exceptions that apply in this case.

"The proceedings of [a] mediation session must be regarded as settlement negotiations, and no admission, representation or statement made during the session, not otherwise discoverable or obtainable, is admissible as evidence or subject to discovery." NRS § 48.109(2).[5] Similarly, NRS § 48.105 limits the admissibility of offers to compromise and evidence of conduct or statements made in compromise negotiations. "Such testimony may be admissible, however, if it is offered for another purpose, such as proving bias or proving an effort to obstruct a criminal investigation." *Acuity v. Swanson*, Nos. 85090/85486, 2023 WL 8946299, at * 3 (Nev. 2023) (unpublished opinion); *see also* Fed. R. Evid. 408(b). The Supreme Court of Nevada has allowed evidence of settlement offers in part to show that a party used the legal process with an improper purpose. *See TMX, Inc. v. Volk*, Nos. 74813/75692, 2019 WL 4619524, at *2-3 (Nev. 2019) (unpublished opinion).

Ryze has plausibly alleged that the settlement conference was a "sham settlement conference." ECF No. 31 at 20. It alleges that Mirae "refused to discuss the lawsuit it filed,

---

[4] Because I find that the litigation privilege does not bar Ryze's counterclaims as pleaded, I do not address its estoppel or waiver arguments.

[5] California Evidence Code § 1119 also excludes communications made during mediation and mediation consultations. Although the mediation took place in California, both parties cite Nevada law to illustrate their arguments and neither party asserts that California's rules of evidence should apply to this case.

11

stating that if Ryze even attempted to discuss its merits, the conference would summarily be terminated." *Id.* Ryze may offer evidence supporting this allegation "for another purpose"—to support its abuse of process claim—and not to show the amount of a settlement offer or to prove underlying liability of the original claim. *See* Nev. Rev. Stat. 48.105(2); Fed. R. Evid. 408(b). I therefore deny Mirae's motion as to the evidentiary rules.

### ii. Pleading Standard

To plead its abuse of process claim, Ryze must plausibly allege "(1) an ulterior purpose by [Mirae] other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Land Baron Inv. v. Bonnie Springs Fam. LP*, 356 P.3d 511, 519 (Nev. 2015). "[M]erely filing a complaint and proceeding to properly litigate the case" does not constitute abuse of process; there must also be a "willful act that would not be proper in the regular conduct of the proceeding." *Id.* at 519-20 (quotation omitted). Attempting to coerce a settlement in a nonmeritorious lawsuit can meet this standard. *See Bull v. McCuskey*, 615 P.2d 957, 960 (Nev. 1980), *abrogated on other grounds by Ace Truck & Equip. Rentals, Inc. v. Kahn*, 746 P.2d 132 (1987) (abuse of process claim was supported by "offer to settle the case for the minimal sum of $750 when considered in the light of his failure adequately to investigate before deciding to file suit and the total absence of essential expert evidence"); *Volk*, 2019 WL 4619524, at *2 ("The combination of evidence of Mallory's settlement offer [in exchange for recanting prior statements], Mallory's lack of documentary evidence establishing a conspiracy . . ., the fact that some of his claims were facially barred by the statute of limitations, and testimony from Volk and her former counsel, shows that Mallory used the legal process with an improper purpose.").

Ryze plausibly alleges that Mirae filed its lawsuit for an ulterior purpose and then used a settlement conference to coerce a new agreement with less favorable terms. While Mirae's suit sought specific performance of the CLA, Ryze alleges that the "transparent purpose of the lawsuit was to thwart the imminent deal Ryze had secured with the Substitute Funder and force Ryze to resume negotiations with Mirae Asset." ECF No. 31 at 17. Ryze alleges that the underlying suit was meritless, citing "a myriad of frivolous allegations" within it. *Id.* at 18. Finally, Ryze alleges that Mirae committed a willful act by engaging in a sham settlement conference and holding the threat of lawsuits over Ryze to coerce it into an unfavorable new loan transaction. Taking these allegations as true, Ryze has plausibly alleged the elements of abuse of process, so I deny Mirae's motion as to that claim.

### 4. Wrongful Use of Civil Process

Mirae argues that Nevada does not recognize the tort of wrongful use of civil process. Ryze responds that Nevada merely shifted its terminology from malicious prosecution and that Nevada would be an outlier if it did not recognize this tort.

The tort of wrongful use of civil process (or proceedings) occurs where one takes an active part in the initiation, continuation, or procurement of civil proceedings who (1) "acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based," and (2) "the proceedings have terminated in favor of the person against whom they are brought." Restatement (second) of Torts § 674. "Unlike abuse of process, [wrongful use of civil process] does not require pleading an independent, corroborating act to show the suit's improper purpose." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1105 (10th Cir. 2009).

Nevada previously recognized torts brought with similar elements under malicious prosecution. See *Dutt v. Kremp*, 894 P.2d 354, 357 (Nev. 1995). But the Supreme Court of Nevada overruled that portion of *Dutt* in *LaMantia v. Redisi*, holding that malicious prosecution claims must rise out of a prior criminal, not civil, proceeding. 38 P.3d 877, 880 (Nev. 2002). The parties disagree whether *LaMantia* foreclosed any Nevada claims for wrongful use of civil process or merely disallowed them under the terminology of malicious prosecution. But Ryze does not cite any Nevada case of wrongful use of civil process in the 23 years since *LaMantia* was decided. Accordingly, I agree with other judges in this district that Nevada does not recognize this cause of action, and I grant Mirae's motion for judgment on the pleadings as to Ryze's claim for wrongful use of civil process. *See Ralphaelson v. Asthonwood Stud Assocs., L.P.*, No. 2:08-cv-1070-KJD-RJJ, 2009 WL 2382765, at *3 (D. Nev. July 31, 2009).

## III. CONCLUSION

I THEREFORE ORDER that Ryze Renewable Holdings, LLC and Ryze Renewables Nevada, LLC's motions to dismiss **(ECF Nos. 163, 199) are DENIED** and Mirae Asset Securities Co., Ltd.'s motions to file supplemental documents **(ECF Nos. 213, 218, 234) are GRANTED**.

I FURTHER ORDER that Mirae Asset Securities Co., Ltd.'s motion for judgment on the pleadings **(ECF No. 230) is GRANTED in par**t, only as to Ryze's claim for wrongful use of civil process.

DATED this 25th day of June, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE