DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com
JOHN M. EDGAR
*(Admitted Pro Hac Vice)*
JOHN F. EDGAR
*(Admitted Pro Hac Vice)*
MICHAEL R. OWENS
*(Admitted Pro Hac Vice)*
ALEXANDER C. MELIN
*(Admitted Pro Hac Vice)*
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Suite 440
Kansas City, Missouri 64108
Telephone: 816.531.0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
**MILLER SHAH LLP**
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

*Attorneys for Defendants/Counter-Claimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Mirae Asset Securities Co., Ltd., a Republic of Korea company,<br><br>Plaintiff,<br><br>v.<br><br>Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,<br>Defendants.<br><br>Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,<br><br>Counterclaimants, | CASE NO. 2:23-cv-01492-APG-NJK<br><br>**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BY RYZE RENEWABLES HOLDINGS LLC AND RYZE RENEWABLES NEVADA LLC**<br><br>Judge: Andrew P. Gordon<br><br>Date Action Filed: September 22, 2023 |

v.

Mirae Asset Securities Co., Ltd., a Republic of Korea company,
Counterdefendant.

**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BY**
**RYZE RENEWABLES HOLDINGS LLC AND RYZE RENEWABLES NEVADA LLC**

Defendants-Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC (together, "Ryze") respectfully submit this Response to Plaintiff's Motion for Summary Judgment (ECF No. 331, hereinafter "MSJ").

Dated: December 9, 2025.

Respectfully submitted,

**BAILEY❖KENNEDY**

DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
8984 Spanish Ridge Ave.
Las Vegas, NV 89148
(702) 562-8820
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

**MILLER SHAH LLP**

BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
1845 Walnut St., #806
Philadelphia, PA 19103
(866) 540-5505
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com

**EDGAR LAW FIRM**

JOHN M. EDGAR
*(Admitted Pro Hac Vice)*
JOHN F. EDGAR
*(Admitted Pro Hac Vice)*
MICHAEL R. OWENS
*(Admitted Pro Hac Vice)*
ALEXANDER C. MELIN
*(Admitted Pro Hac Vice)*
2600 Grand Blvd., #440
Kansas City, MO 64108
(816) 531-0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

*Attorneys for Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## INTRODUCTION

Mirae moves for summary judgment on a foundation of concealed witnesses, mischaracterized pleadings, and admissions that prove Ryze's case. Its motion hinges on the declaration of Eun Mi Park, *see* ECF No. 333 ("E. Park Dec.")—a witness Mirae concealed for the entirety of a 17-month, thrice-extended discovery period. Mirae never identified E. Park in initial disclosures, never identified her in response to interrogatories, never identified her in amended disclosures served weeks before discovery closed. Ryze learned of E. Park only when she signed an interrogatory verification page after the close of discovery. The motion should be denied in its entirety for the following reasons:

*First*, E. Park's declaration must be excluded. Mirae's failure to disclose her was neither substantially justified nor harmless. Rule 37(c)(1) mandates exclusion, and a new declarant unveiled at summary judgment is the paradigm of unfair surprise. Much of E. Park's declaration compounds the problem: conclusory assertions about her "understanding" of events—statements that lack foundation, constitute hearsay, and fail Rule 56(c)(4)'s personal knowledge requirement.

*Second*, Mirae's pervasive reliance on Ryze's alternative pleadings in the Snell litigation as binding "judicial admissions" is a gimmick, not law. A party may plead inconsistent facts when legitimately in doubt, and alternative pleadings lack the essential character of admissions. This Court recognized as much 18 months ago when it rejected Mirae's identical argument and found "factual issues" requiring discovery. Summary judgment should turn on what the record reveals, not "gotcha" quotes from pleadings filed when the facts were unclear.

*Third*, genuine disputes of material fact preclude summary judgment on the CLA breach. Three witnesses testified that Mirae's employee confirmed Investment Committee approval on the March 1, 2021 call. Mirae counters with E. Park—a witness in Seoul who was not on the call and whose existence was never disclosed. This direct conflict in sworn testimony is a textbook jury question. Mirae's own documents deepen the conflict: [redacted]

[redacted]

*Fourth*, even accepting Park's declaration, it admits breach. E. Park states the Investment Committee never convened. [redacted] Mirae now claims it didn't. [redacted] A lender who never asks has refused to perform. The prevention doctrine independently bars Mirae's defense: a party cannot invoke the non-occurrence of a condition it actively prevented.

*Fifth*, the SLA claim survives because a jury could find LV Renewables A was Mirae's alter ego. Mirae's own deal counsel—Victor Roehm, who formed LV Renewables A and drafted the transaction documents—testified that this special purpose vehicle was merely a "lending vehicle" (Ex. 85, Appx. at 1939:17-1940:2) structured to give Mirae all the economic expectancies and governance rights of a direct lender while avoiding regulatory consequences. Through assignments of payment rights, loan documents, and collateral, Mirae ensured "that at any moment in time Mirae could exert control." Ex. 85 at Appx 1941:9-15. Confronted with the position Mirae now asserts here—that the SLA was *not* a contract with Mirae—Roehm answered: "I disagree with that." Ex. 84, Appx. at 1919:6-13. Mirae counters only with E. Park's conclusory attestation that LV Renewables A is "not affiliated" with Mirae. A jury crediting the deal architect over an undisclosed declarant could readily find alter ego liability.

*Sixth*, contrary to Mirae's argument that the signatories to a contract lack standing to enforce it and the targets of abusive litigation lack standing to challenge it, Ryze has standing to assert its own contractual rights and seek redress for a lawsuit filed against it. Under Delaware law—which Nevada applies to determine whether claims are direct or derivative—a party to a commercial contract may always sue directly to enforce its own rights. Every case Mirae cites involves one entity asserting another's rights. This case is the opposite.

BAILEY❖KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
702.562.8820

*Seventh*, the abuse of process claim survives. This Court already rejected Mirae's litigation privilege defense at Rule 12(c), holding that the privilege does not protect communications made for an improper purpose rather than a good-faith effort to settle. The record now proves what the Court held was adequately pleaded: [redacted]. Issue preclusion does not bar the claim. The state court made no merits ruling as to Mirae, dismissed solely under the first-to-file rule without prejudice, and explicitly preserved all arguments for this Court. Ex. 95, State Court Tr. Appx., 2091:19-2092:1; Ex. 96, Order, Appx. 2097-2099. Mirae waived the defense anyway by failing to plead it—even after amending its Answer following the rulings it now invokes.

Summary judgment should be denied on all claims.

## I. SUMMARY OF DISPUTED AND ADDITIONAL MATERIAL FACTS

### A. Mirae Lures Ryze Away from a $600 Million Bond Offering, Then Drags Out Diligence for a Year

In early 2020, Mirae Asset Securities, a Korean investment bank, agreed to fund a $210 million convertible loan for a renewable diesel refinery in North Las Vegas. That commitment carried weight: it came at the onset of the COVID-19 pandemic, when Mirae lured Ryze away from a pending $600 million bond offering with promises of a direct deal funded within eight weeks. What followed the next two years was a series of broken commitments, each worse than the last.

Mirae dragged out diligence for nearly a year—not eight weeks—ultimately executing a Convertible Loan Agreement in January 2021. Because the refinery assets were already pledged to senior lenders, Mirae took its security at the holding company level—[redacted] This was the essence of the bargain: Mirae's funding in exchange for Ryze Nevada's



BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

equity. The holding company was where the value underlying that bargain resided—by Mirae's own agreement.

**B. Mirae Pockets the Signed Agreement, Then Walks Away: "Lost Partner"**

After signing, Mirae flouted its funding obligation—even though that obligation was not contingent on any other institution's participation. When Ryze's principal asked Mirae's lead representative why Mirae inked the agreement and confirmed Ryze satisfied its conditions precedent, and then refused to fund, the answer was: "We couldn't. Lost partner. Lost partner." Ex. 83, Appx. at 1888:1-16]. Rather than honor its commitment, [redacted]

**C. Ryze Secures Replacement Funding; Mirae Torpedoes It with a Sham Lawsuit**

Ryze returned to the market and, within weeks, secured a replacement funder—a Chicago-based hedge fund poised to close by July 30, 2021. [redacted] On July 23, Mirae launched a lawsuit demanding specific performance of the CLA—the agreement it abandoned. [redacted] Mirae had no interest in adjudicating any claim. [redacted]

**D. Mirae Extracts a Coerced Deal, Then Stiffs Ryze Again**

The ensuing mediation was an ultimatum session. Ryze was forbidden to discuss the merits—"We are there to do a deal or move on," Ex. 43, Appx. at 1428—and told the session



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

would terminate immediately if it tried. Ex. 32, Appx. at 1271. If Ryze did not sign by midnight, Mirae threatened, an even larger lawsuit would follow, this time by Clifford Chance, that would "destroy" Ryze through years of vexatious litigation. Ex. 31 ¶¶ 49, 51, Appx. at 1259–60; *see also* Ex. 32 ¶¶ 18, 33, Appx. at 1270, 1274. The message was that Ryze had to "bend over and take it." *Id*. at 1260. Mirae extracted a coerced term sheet for $52 million. Ex. 42 at Appx. 1414; Ex. 64 at Appx 1750. It then yanked that proposal and replaced it with a $21 million deal—of which $7 million went to fees for Mirae and its attorneys. Ex. 32, Appx. at 1275. The loan was structured through a shell company, LV Renewables A, that Mirae created, capitalized, and controlled. *See id*. Having strong-armed Ryze into accepting those terms, Mirae stiffed Ryze again. Ryze defaulted on its USDA-guaranteed loan. *Id*. at 1236. [redacted]

## II. EVIDENTIARY OBJECTIONS

### A. Park's Declaration Should Be Stricken Because Mirae Never Disclosed Her Under Rule 26 During the Thrice-Extended, Seventeen-Month Discovery Period

Mirae's motion for summary judgment heavily—and, at times, exclusively—relies on the declaration of E. Park, which attests to her personal involvement in "reviewing" and "reject[ing]" the "potential Ryze deal" underlying this litigation. E. Park's declaration states that she and other members of the Assessment Team "*review[ed]* the potential Ryze deal," "*documented* [the team's] findings in an 'Issue Report,'" "*rejected* the deal in early 2021," and that *as a result thereof*, the deal was "never presented to the Mirae Asset Investment Assessment Committee" such that the committee "never approved a transaction with Ryze." E. Park Dec. at ¶¶ 6–7, 9 (emphasis added).[1] The problem? Mirae *never* disclosed E. Park as a witness.

[1] These statements, purportedly grounded in E. Park's individual experience and involvement with the Ryze transaction, foreclose any argument that Mirae's generic corporate disclosure satisfies Rule 26(a). *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of "each *individual* likely to have discoverable information"). The identification of a corporation is insufficient under Rule 26(a) to permit E. Park's testimony in any capacity. *Bal Seal Eng'ing, Inc.*

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Mirae served Rule 26(a)(1) disclosures on January 30, 2024, identifying three current or former Mirae employees upon whom Mirae may rely to support its claims or defenses, two of whom had already provided written declarations—Hyun-Joo Park ("H.J. Park") and Huijun Yang ("Yang"), ECF No. Nos. 4-1 and 4-2, respectively; E. Park was not included in those disclosures. Ex. 92, Appx. at 2014-2021. Nor was E. Park identified in response to Ryze's written discovery requests. On September 18, 2025, Mirae served amended Rule 26 disclosures, which once again omitted any mention of E. Park. Ex. 93, Appx. at 2027-40. Mirae's amended disclosures again identified H.J. Park and Yang, and further identified "Mirae Asset Securities Co., Ltd." as having "potentially discoverable information." *Id.* Indeed, Mirae waited until October 14, 2025, i.e., *after* the close of discovery, to serve a verification page signed by E. Park to accompany its prior-served Supplemental Objections and Response to Ryze's Second Interrogatories. Ex. 44, Appx. at 1454-55.

Rule 26 imposes upon parties a continuing obligation to identify any witness they may use to support their claims or defense. Fed. R. Civ. P. 26(a), (e). A party who fails to identify a witness as required by Rule 26 cannot use that witness "to supply evidence on a motion … unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Due to the "self-executing and automatic nature of Rule 37(c)(1) sanctions, parties have a right to expect that only disclosed witnesses will be used to support the disclosing party's claims and defenses." *Garcia v. Praxair, Inc.*, No. 1:18-cv-01493-SAB, 2019 WL 7038387, at *4 (E.D. Cal. Dec. 20, 2019) (quotations omitted).

Mirae offers no excuse—much less establishes substantial justification or harmlessness—for its astonishing failure to disclose E. Park as a witness, and Rule 37 <u>mandates</u> her exclusion. E. Park's declaration states she has been employed by Mirae since 2015—eight years before Mirae

---

*v. Nelson Prods., Inc.*, No. 8:13-cv-01880-JLS-KES, 2019 WL 7865198, at *5 (C.D. Cal. Oct. 17, 2019) ("neither the Federal Rules of Evidence, nor the Federal Rules of Civil Procedure anticipate or permit the non-specific listing of a corporation on a witness list as sufficient notice of a previously undisclosed individual employee's testimony at trial").

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

brought this litigation. E. Park Dec. at ¶ 3. There's absolutely no doubt E. Park's "identity, involvement and significance to [Mirae's claims and defenses] w[ere] 'reasonably available' to [Mirae] at all stages of this case." *Wallace v. U.S.A.A. Life Gen. Agency, Inc.*, 862 F.Supp.2d 1062, 1066 (D. Nev. 2012) (striking undisclosed witness, finding defendant should have disclosed witness at "the *outset* of discovery," where witness "personally reviewed Plaintiff's claim for benefits and the insured's disclosed and undisclosed medical information, and he personally made the determination that misstatements and omissions were made and that they were material, justifying denial of Plaintiff's claim." (emphasis added)). But Mirae did not disclose E. Park either initially or by timely supplementation. Nor can Mirae's concealment of E. Park as a witness be deemed "harmless." Mirae's decision to withhold its disclosure of E. Park as a witness until a post-discovery summary judgment motion has materially prejudiced Ryze in its ability to conduct discovery relating to E. Park and her claimed knowledge and involvement with the central Ryze transaction. *In re Twitter Inc. Sec. Litig.*, No. 16-cv-05314-JST, 2020 WL 485547, at *3 (N.D. Cal. Jan. 30, 2020) ("Disclosure of new fact witnesses at the time of summary judgment places the opposing party at a disadvantage and constitutes unfair surprise." (cleaned up)).

**B. Park's Declaration is Otherwise Not Based on Personal Knowledge and Must Be Excluded.**

Beyond E. Park's claimed personal knowledge and involvement with the Ryze transaction, *supra*, E. Park attests to her "understanding" of certain matters—particularly, what was *discussed and understood between Yang and Lee* between February and March of 2021 (E. Park Dec. at ¶ 8). Her declaration otherwise consists of a series of conclusory corporate assertions, the foundation for which is wholly unclear (E. Park. Dec. at ¶¶ 10, 13–19). Indeed, E. Park admits at the outset of her declaration that where her statements exceed her personal knowledge, they are based "upon information available to [her]." E. Park. Dec. at ¶ 1. E. Park's declaration leaves it to Ryze and this Court to guess the source of each assertion in Paragraphs ¶¶ 8, 10, 13–19.[2]

[2] These foundationless statements compound the prejudice to Ryze from Mirae's nondisclosure, as Ryze is foreclosed from exploring the bases for E. Park's assertions.

E. Park's recitation of her "understanding" and foundationless assertions are insufficient to meet the requirements of Rule 56, which states that a "declaration used to support … a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the … declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4);[3] *see also Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. 05-2200 MMM (MCx), 2008 WL 11334030, at *15 (C.D. Cal. Mar. 17, 2008) (sustaining foundational objection to summary judgment declaration, explaining "facts alleged on 'understanding' … are not sufficient" (quotation omitted)). As to each statement contained in paragraphs 8, 10, and 13–19, there is simply no indication what E. Park's knowledge or understanding is based on. *See S.E.C. v. Phan*, 500 F.3d 895, 910 (9th Cir. 2007) (district court may disregard declaration that "include[s] facts beyond the declarant's personal knowledge and 'provide[s] no indication how she knows [these facts] to be true'") (quotations omitted). Indeed, "facts" as to what was discussed or understood between Yang and Lee confirm E. Park's statements are "matters of opinion or hearsay." *Boyd v. City of Oakland*, 458 F.Supp.2d 1015, 1023 (N.D. Cal. 2006).

**B. Ryze's Alternative Pleadings in State Court Are Not "Judicial Admissions"**

Mirae's motion is riddled with references to what Ryze supposedly "admits," "concedes," or "knows"—each followed by a citation to Ryze's alternative pleading theories in the *Snell* litigation. *See, e.g.*, MSJ at 15 ("Ryze has admitted in various filings that Han had hired Snell"); *id.* at 16 (Ryze "admitted" it had "serious questions" about Mirae's involvement); *id.* at 16 ("Ryze

---

[3] Mirae cannot bypass the personal-knowledge requirement by casting Park as "Rule 30(b)(6) witness." "The purpose of [Rule 30(b)(6)] is to streamline the discovery process," and where no such deposition occurs, the court may not overlook that a declaration lacks a personal-knowledge foundation. *S.E.C. v. Hemp, Inc.*, No. 2:16-cv-01413-JAD-PAL, 2018 WL 4566664, at *3 (D. Nev. Sept. 24, 2018). Here, E. Park was never designated by Mirae or testified as its Rule 30(b)(6) witness at a deposition, nor does Park claim to be a Rule 30(b)(6) witness in her declaration. Because Rule 30(b)(6) has not been triggered, it does not allow Mirae to avoid Rule 56's personal-knowledge requirement. *See also Tijerina v. Alaska Airlines, Inc.*, No. 22-cv-203-JLS (BGS), 2024 WL 270090, at *2–3 (S.D. Cal. Jan. 24, 2024) (collecting cases and explaining that when a party calls its *own* witness, Rule 30(b)(6) does not alter the personal-knowledge requirement at trial).



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

has judicially admitted that neither entity was affiliated with Mirae Asset"); *id.* at 18 (Ryze "admitted" abuse of process conduct "was undertaken by Snell, not Mirae Asset"); *id.* at 27 (repeating "judicially admitted"); *id.* at 28 ("Ryze's principals have admitted" LV Renewables A was separate). This gimmick—employed throughout this litigation, presumably to compensate for a client unwilling to participate in discovery or offer a single witness—is not how judicial admissions work.

A party may plead inconsistent facts when "legitimately in doubt about the facts in question." *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996); *Total Coverage, Inc. v. Cedant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) (adopting *Galvin*); *Kwasniewski v. Sanofi-Aventis U.S., LLC*, 2013 WL 5882749, at *5 (D. Nev. Oct. 29, 2013) (same). Alternative pleadings "lack the essential character of an admission," and courts "with seeming unanimity deny them status as judicial admissions, and generally disallow them as evidentiary admissions." 2 McCormick on Evid. § 257 (8th ed. 2022).

Mirae raised this identical theory 183 months ago in opposing Ryze's Motion to Compel Arbitration. The Court rejected it, acknowledging the situation was "clear as mud. There's something weird afoot here, and I think everybody sort of acknowledges that," extending latitude to both sides' inconsistent positions, and finding "factual issues" requiring discovery—not summary disposition. ECF No. 112, Tr. at 29:23–30:2, 39:8–12. The parties then spent a year in discovery so these questions could be resolved with evidence, not gimmicky "gotcha" quotes. Summary judgment should turn on what the parties learned through discovery, not what they alleged in good faith from a place of ignorance in another case.

## ARGUMENT

Mirae's motion is premised on undisclosed witnesses ("E. Park"), unpleaded affirmative defenses ("issue preclusion"), legal arguments this Court has already settled ("litigation privilege"), meritless legal theories ("standing"), and facts intensely controverted at every turn

("Investment Committee approval," "alter ego liability," the nature of the August 2021 "mediation"). Summary judgment should be denied on all claims.

## III. THE COURT SHOULD DENY SUMMARY JUDGMENT ON RYZE'S CLAIM FOR BREACH OF THE

Summary judgment must be denied. A reasonable jury could conclude that Mirae's Investment Committee approved the CLA—and Mirae cannot show otherwise as a matter of law. Three witnesses testified that Mirae's own employee confirmed Investment Committee approval; Mirae counters with a declaration from an undisclosed witness in Seoul who was not on the call and whose own business records belie her testimony. These are credibility determinations for the jury, not the Court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Even setting aside these factual disputes, Mirae's motion fails on its own evidence. Mirae's undisclosed witness claims the Investment Committee never convened—the meeting the CLA required Mirae to hold. That is not a defense, but an admission of breach. Accepting Mirae's theory would permit any lender to insert a "committee approval" condition, sabotage that approval internally, and then invoke the contract's automatic-termination clause as a shield. The prevention doctrine forecloses such gambits.

### A. Ryze's Evidence That Lee Confirmed Committee Approval Creates a Triable Dispute

Mirae urges this Court to credit its witness over Ryze's—and its declaration over its own business records. That is not the Court's role at summary judgment. Viewing the evidence in Ryze's favor, as the Court must, a jury could conclude that Investment Committee approval was obtained. Mirae's position is undercut by two independent sources: (i) testimony from three witnesses who heard Lee confirm Investment Committee approval, and (ii) Mirae's own business records, [redacted]. Both categories of evidence are admissible; both preclude summary judgment.



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

*1. Lee's Statement Confirming Investment Committee Approval Is Admissible Against Mirae and Contradicts Mirae's Declarations to the Contrary*

Three witnesses present on the March 1, 2021 conference call testified under oath that Mirae's employee, Kyunghyun Lee, confirmed that final Investment Committee approval had been granted. Ex. 83, Appx. at 1891:24-1892:4 ("[D]id we get Investment Committee approval, and that's when Mr. Lee in English said 'Yes, you did.'"); Ex. 83, Appx. at 1890:24-1891:2 (confirming "the decision whether . . . Investment Committee approval had been given . . . was given to you by KH Lee"); Ex. 80, Appx. at 1849:7-17 ("Have we cleared investment committee approval? [H]e said, Yes, we did, quote/unquote."); Ex. 82, Appx. at 1871:25-1872:2 ("We had been told that the committee approval was obtained, and the funding just wasn't coming."); *see also* Ex. 83, Appx. at 1895:21-25 ("[T]hey had to get full Investment Committee approval, which Mr. Lee on the phone said they did.").

Lee's statement is admissible as an opposing party's statement: he was Mirae's employee, and his confirmation as to the status of Investment Committee approval fell within his scope as the deal's lead. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015) (testimony about what manager "said to him" admissible as party admission); *Weil v. Citizens Telecom Servs. Co. LLC*, 922 F.3d 993, 999 (9th Cir. 2019) (statement within scope "even though the declarant did not have final decision-making authority"). Where, as here, such testimony "create[s] material disputes of fact," summary judgment is "inappropriate." *Trenier v. HMS Host, Inc.*, 681 F. App'x 597, 598 (9th Cir. 2017).

Mirae insists Lee could not have made the statement because he did not speak English. MSJ at 22. The record says otherwise. Multiple witnesses testified that Lee "understood [English] and could respond in rudimentary English," Ex. 83, Appx. at 1893:18-22, and that when asked about Investment Committee approval, Lee answered "Yes, we did" in "clear English," Ex. 80, Appx. at 1849:15-21. Mirae dismisses this as a "contrivance" to manufacture a disputed fact. MSJ at 25 n.9. But this is not a last-minute affidavit—it is sworn testimony from witnesses disclosed under Rule 26(a), elicited by Mirae's own counsel in depositions Mirae noticed. Mirae asked the

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

questions; it cannot now disavow the answers. Whether the witnesses are credible is a determination for the jury. *Anderson*, 477 U.S. at 255.

Even assuming Lee's statement passed through Han as translator, MSJ at 23 n.8, Han's allegiance at that time is itself disputed. The record shows Han functioned as Mirae's representative: Snell described Han as "the in person Mirae representative" at the August 2021 mediation, Ex. 43, Appx. at 1448. Lee told Graham that Han had authority to negotiate on behalf of Mirae. Ex. 87 at Appx. 1969 47:48-7, 1970 162:6-167:11: If Han was Mirae's agent, his statements are independently admissible under Rule 801(d)(2)(D); if he was Ryze's, Lee's statements come in through him regardless. *See United States v. Boskovic*, 472 F. App'x 607, 608 (9th Cir. 2012). Either way, a jury must decide.

*2. Mirae's Own Business Records Indicate the Deal Remained Pending and Slated for Review for Nine Months After Park Claims It Was "Rejected" by the Assessment Team*

Mirae's defense rests on the declaration of E. Park, an undisclosed witness. E. Park now insists the deal was "rejected" in "early 2021." E. Park Dec. ¶ 7. But Mirae's contemporaneous business records—produced in discovery and maintained by E. Park—tell a different story. E. Park maintained a [redacted]

These are not stale records. [redacted]

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

[redacted] she now avers under oath the deal was "rejected" in early 2021. A reasonable jury could disbelieve her—and credit her own documents instead. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 330 & n.2 (5th Cir. 2017) (corporate records offered against company are "admissible nonhearsay evidence as a statement by a party opponent" sufficient to create triable issue). The Court cannot weigh this conflicting evidence at summary judgment.

[redacted]

**B. Even If the Court Allows and Fully Credits Mirae's Undisclosed Witness, It Establishes Mirae Breached Its Obligation to Convene the Committee**

Even drawing every inference in Mirae's favor—as if Mirae were the non-movant—its motion collapses. E. Park claims the Investment Committee never convened. The CLA required Mirae to hold that meeting. That is breach on Mirae's own evidence.

---

[4] The Yang Declaration states the Assessment Team "generally issues one of three opinions, 'positive,' 'neutral,' or 'negative.'" ECF. 4-2 at 3. The Issue Report contains none. A jury is entitled to ask why.

[5] Indeed, given Mirae's prior representation that "the Company was unaware the CLA existed until after Ryze filed the arbitration in JAMS [in July 2023]," ECF No. 55 at 22, one might wonder how [redacted]

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

*1. Mirae Admits It Never Convened the Investment Committee Meeting Section 4.02 Required It to Hold*

[redacted]

[redacted]

[redacted] "Shall" is mandatory under New York law. *U.S. Bank Nat'l Assoc. v. Triaxx Prime CDO 2006-1, Ltd.*, No. 15cv10172, 2016 WL 3552272, at *4–5 (S.D.N.Y. June 23, 2016) (use of the mandatory "shall" in indenture required party to perform its specific obligation to sell defaulted security within three years, rather than provide party with discretion to do so), *aff'd*, 687 F.Appx. 8 (2d Cir. 2017). [redacted]

Ryze completed its conditions precedent by February 10, 2021; Mirae's deadline to convene the committee was March 3. ECF No. 31, Countercls. ¶ 39; MSJ at 13-14. E. Park claims the committee never met. E. Park Dec. ¶ 7. Mirae states it "never considered the transaction." MSJ at 21, while the contract required that Mirae shall. That's a straightforward breach.

[redacted]

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

[redacted] The only question is whether that non-performance was excused—and Mirae has offered no evidence of excuse.

*2. The Prevention Doctrine Precludes Mirae from Relying on the Nonoccurrence of a Condition*

[redacted]. A party cannot invoke the non-occurrence of a condition it caused to fail. *ADC Orange, Inc. v. Coyote Acres, Inc.*, 857 N.E.2d 513, 516 (N.Y. Ct. App. 2006); *NGA #2 Ltd. Liab. Co. v. Rains*, 946 P.2d 163, 169 (Nev. 1997). Courts apply this doctrine where a party blocks a transaction from reaching the body designated to approve it. *Jacobs v. Freeman*, 163 Cal. Rptr. 680, 684–87 (Cal. Ct. App. 1980) (breach where agents failed to submit contract to board for required approval); *Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.*, 807 F.Supp. 1007, 1024 (S.D.N.Y. 1992) (condition precedent requiring supervisory board approval excused by defendant's failure to seek approval in good faith); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991) (liability where party "deliberately contravene[d] the intention and spirit of the contract"). The doctrine reflects a basic principle: a party cannot engineer the conditions for its own non-performance and then brandish that non-performance as a defense.

[6] [redacted]



BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

If E. Park is telling the truth, the Assessment Team buried the transaction before it ever reached the Investment Committee, ensuring the contractual condition could never occur. Mirae cannot now invoke that non-occurrence as a shield.

**C. Mirae Cannot Avail Itself of Section 4.01's Waiver and Nonsuit Covenant**

[redacted] MSJ at 13, 21, 33. It does not apply on the plain language of the contract, and even if it did, the ever-inconvenient fact that Mirae sued Ryze to enforce and recover damages under the CLA in 2021 prevents it from invoking its protection here.

*1. Neither Party Contends the Waiver's Predicate Occurred Here*

Far from the general immunity Mirae seeks, the waiver language is limited to a particular scenario. Contracts must be read as a harmonious whole. *Westmoreland Coal Co. v. Entech, Inc.*, 794 N.E.2d 667, 670 (N.Y. 2003). [redacted]

[redacted]

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

[redacted]

*2. Mirae's Prior Material Breach Precludes Enforcement*

Even if the waiver and covenant not to sue applied, Mirae cannot enforce it. [redacted] Mirae breached first.[7] A party who materially breaches a contractual provision cannot thereafter enforce it against the other party. *See, e.g., Daytree at Cortland Square, Inc. v. Walsh*, No. 2:15-cv-02298-FB-AYS, 2021 WL 3190384, at *5 (E.D.N.Y. July 28, 2021) (dismissing plaintiff's breach of contract claim for its prior material breach). Mirae has also waived its right to enforce the covenant by bringing its 2021 lawsuit against Ryze. "It is axiomatic that contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned." *Natale v. Ernst*, 63 A.D.3d 1406, 1407 (N.Y. 3d Dep't 2009) (quotation omitted). *See also, e.g.*, *Acumen Re Mgmt. Corp. v. General Sec. Nat. Ins. Co.*, No. 09 CV

[7] Mirae has attempted to reconcile the dissonance between its present position—that the CLA is not a valid agreement—with its prior lawsuit to enforce it by claiming that Lee also lacked authority to file the state court action. The Court has noted "factual issues... as to the authority to file that State Court lawsuit," ECF 112 at 39:8-19, but Mirae expressly disclaims any request for summary judgment on that point.



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

01796(GBD), 2012 WL 3890128, at *6 (S.D.N.Y. Sept. 7, 2012) (finding party waived contractual right and could not thereafter unilaterally reinstate it). Mirae cannot wield Section 4.01 as a shield when it already used the CLA as a sword.

## IV. SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE A GENUINE DISPUTE EXISTS AS TO WHETHER LV RENEWABLES A WAS MIRAE'S ALTER EGO—A "MERE CONDUIT" MIRAE CREATED, FUNDED, AND CONTROLLED

Mirae argues it has no obligation under the SLA because the agreement names LV Renewables A—not Mirae—as the lender. Mirae paints LV Renewables A as an independent entity operating beyond Mirae's influence, with no unified economic interest or common control. MSJ at 24-229 The record destroys this fiction. To grant summary judgment, the Court would have to disbelieve Mirae's own deal counsel at Snell & Wilmer—the very architect of the transaction. It was Mirae's counsel who formed the entities and designed the behind-the-scenes collateral assignments, straw officer appointments, and governance documents specifically to replicate all incidents of ownership and control within a nominally separate entity. Because the Court cannot weigh the credibility of the deal's architect or ignore his testimony at this stage, the Motion must be denied. *See Anderson*, 477 U.S. at 255 ("Credibility determinations... are jury functions, not those of a judge").

### A. Mirae's Own Deal Counsel Confirmed the SPV Was Designed to Act as a Conduit for Mirae.

Mirae's contention that it is distinct from LV Renewables A is contradicted by its own deal counsel. Victor Roehm, the Snell & Wilmer partner who formed LV Renewables A and drafted the SLA on Mirae's behalf, testified plainly: "Q. **[T]he SLA was <u>not</u> a contract** between Mirae and Ryze. Do you agree or disagree? A. **I <u>disagree</u> with that**." Ex. 84, Appx. at 1919:9-13. Mirae asks this Court to look only to the four corners of the SLA. But the alter ego standard is equitable in nature; it requires the Court to look beyond the face of the contract to the reality of the transaction. *See LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846–47 (Nev. 2000).



BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Here, the reality is that LV Renewables A was a "mere shell, instrumentality, or conduit" for Mirae's single venture. *See Trina Solar US, Inc. v. Carson-Selman*, 2022 WL 18359178, at *2 (D. Nev. Sept. 29, 2022). As Roehm explains, LV Renewables A was merely Mirae's "lending vehicle," created because naming Mirae directly "raised additional needs for . . . CFIUS issues" and "additional taxes." Ex. 84, Appx. at 1914:13-17, 1915:7-14. Through "assignments of the payment rights to Mirae, assignments of all the loan documents, assignments of all the collateral documents," Mirae ensured "that at any moment in time Mirae could exert control." Ex. 85, Appx. at 1941:9-15. This was always "the expectation of the structure . . . that at the end of the day Mirae Asset Securities was going to have collateral interest in all of these loan documents." Ex. 84, Appx. at 1915:14-17. Roehm's role was to "protect[] Mirae Asset Securities' roles" throughout. *Id.* at 1915:1-6; Mirae's objective was to recreate all the economic expectancies and governance rights of a direct lender while avoiding the regulatory and tax consequences of being named as one.

### B. The Record Overwhelmingly Contradicts Mirae's Claims of Separateness

Unsurprisingly, given this above purpose, LV Renewables A was not the separate enterprise Mirae portrays, but a "mere shell, instrumentality, or conduit" for Mirae's single venture. *See Trina Solar US, Inc.*, 2022 WL 18359178, at *2. The SPV was created for a single venture. When Mirae decided not to use it for that venture, the entity withered and died. It has conducted no other business. Its status is now "revoked," its registered agent has resigned, and it sits as a dormant husk in the Nevada Secretary of State's files. Exs. 90-91, Appx. at 2007-13. This "wither and die" lifecycle confirms Roehm's testimony: the entity was a "lending vehicle" designed solely to dodge regulatory consequences while Mirae retained control. Ex. 84, Appx. at 1914:13-17.

Mirae's assertions of separateness crumble under scrutiny—specifically:

- *Mirae acted as the sole Manager.* Mirae acknowledges the SLA identifies it as Manager "albeit incorrectly." MSJ at 26. Yet, the governing documents confirm this was no error. The Operating Agreement explicitly defines "Manager" as "Mirae Asset Securities Co., Ltd." Ex. 36, Appx. at 1305. The BACA identifies



BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Mirae as the "sole manager." Ex. 37, Appx. at 1342. [redacted]

- *Mirae exercised sole discretion over governance.* Mirae claims "[t]here is no evidence that LV Renewables A is influenced and governed by Mirae Asset." MSJ at 26. This is false. The Operating Agreement grants Mirae, as Manager, "sole discretion" over all business operations. Ex. 36, Appx. at 1307. When asked if Mirae was unaware that its director Kyunghyun Lee signed the SLA, Roehm admitted: "It's inaccurate inasmuch as Kyunghyun Lee *is* Mirae." Ex. 84, Appx. at 1912:12-18.

- *Mirae and the SPV shared a unified economic interest.* Mirae claims there is no "common ownership interest" and the SPV is "not a subsidiary or affiliate." MSJ at 26-27. To the contrary, Roehm testified that "Mirae Asset Securities affiliates . . . entered into the second loan agreement," specifically identifying LV Renewables A as that affiliate. Ex. 85, Appx. at 1930:25-1931:7. [redacted] and structured so that Mirae retained the collateral interest in all loan documents. Ex. 84, Appx. at 1915:14-17.

- *Mirae dominated the SPV's operations and financial infrastructure.* Mirae argues the entities do not share "operations, headquarters, or bank accounts." MSJ at 28-29. Yet, LV Renewables A's official address was "c/o Mirae Asset Securities Co. Ltd." at Mirae's Seoul headquarters. Ex. 40, Appx. at 1402. Mirae was to provide the funding. Perhaps most damning, Mirae appointed straw officers solely to open LV Renewables A's bank accounts, then *immediately* terminated their authority. [redacted]

- *Mirae Did Sign the SLA and In Fact Indemnified Ryze for Breaches by the SPV.* [redacted]

Against this mountain of evidence, Mirae offers only the declaration of E. Park—an undisclosed witness—who offers conclusory attestations that the entities are unrelated. *See* E. Park Dec. ¶¶ 13, 15-17. Even crediting this dubious testimony, a jury could—and likely must—conclude that the entity's operating agreement and the testimony of the deal's own architect control over a post-hoc declaration.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

### C. Equity Forbids Mirae from Using a Shell to Immunize Itself from the Settlement It Forced Ryze to Sign

The "fraud or injustice" prong of the alter ego test is satisfied where a party uses the corporate form to shield itself from the consequences of its own wrongful conduct. Here, Mirae weaponized that form to consummate an extortionate litigation scheme. [redacted] Having successfully strong-armed Ryze into a "Binding Term Sheet," Mirae inserted LV Renewables A as the nominal lender. Mirae attempts to sanitize this conduct by arguing that Ryze—a "sophisticated business entity"—voluntarily "proceeded at [its] own risk" by contracting with the SPV. MSJ at 29.

This argument distorts both the record and the law. *Truck Ins. Exch.* applies to voluntary arm's-length transactions, not capitulations extracted through sham litigation. A reasonable jury could find that Ryze did not voluntarily "assume" the risk of Mirae's shell structure; rather, Ryze was forced to accept the structure Mirae imposed as the price of ending the abusive litigation. Drawing all reasonable inferences in Ryze's favor, the SPV was not a risk Ryze *chose*, but a condition Mirae *dictated*. Mirae's domination of this process is laid bare by the timeline: Mirae dismissed its own lawsuit only after its shell entity executed the SLA. This proves the SPV was merely a vessel for the concessions Mirae itself extracted. Yet, having coerced Ryze's assent to the extortionate terms of a deal it never wanted, Mirae refused to fund the loan. To permit Mirae to disclaim liability now would validate its abuse of the judicial process, allowing it to retain the fruits of its coercion while using the corporate veil to sever the causal link between its abusive conduct and the damages caused by its failure to fund. Equity does not countenance such a result. *See Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 888 (Nev. 1987) (the "essence" of alter ego is to "do justice").

Because the record demonstrates that Mirae designed this shell to capture all the economic and governance rights of a direct lender while avoiding regulatory and tax consequences, allowing

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

it to now use that fiction to escape the funding obligation it coerced and breached would sanction a manifest injustice.

## V. RYZE SUES ON ITS OWN CONTRACTS, FOR IT'S OWN DAMGES—NOT A SUBSIDIARY'S

Mirae moves for summary judgment on the ground Ryze "lack[s] the ability to seek damages." MSJ at 24. But Mirae conflates three distinct doctrines—Article III injury in fact, damages as a contract element, and the direct-versus-derivative distinction from shareholder law—without committing to any one. Each fails independently.

Indeed, Mirae asks this Court to bless an absurd conclusion: no one has standing to bring a claim for recovery against it. The named promisee to the CLA lacks standing to sue for Mirae's breach of the CLA. The named promisee to the SLA lacks standing to sue for Mirae's breach of the SLA. The named targets of a sham lawsuit—filed solely to inflict economic injury and enjoy its [redacted]—lack standing to sue for Mirae's abuse of process. A result no doubt convenient for Mirae, but one the law does not recognize.

### A. A Contracting Party May Sue Directly to Enforce Its Own Contractual Rights

A contracting party "may sue to enforce its contractual rights directly, without proceeding by way of a derivative action." *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 179 (Del. 2015).[8] There, the district court had dismissed, reasoning that because plaintiff's injury flowed through subsidiaries, the suit must be derivative. *Id.* at 177. The Second Circuit certified the question: may a promisee sue directly even when its loss "derives indirectly from the loss suffered by [a] third-party beneficiary corporation"? *Id.* at 176. The Delaware Supreme Court answered yes. The Tooley framework for fiduciary claims does "not, and [was] never intended to, subject commercial contract actions to a derivative suit requirement." *Id.* at 179. To hold otherwise

---

[8] *See Black v. Eighth Judicial District Court*, 567 P.3d 326, 330 (Nev. 2025) ("Because Globe was incorporated in Delaware, we analyze this issue under Delaware law."); *accord Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003). All Ryze entities are Delaware LLCs. *See* ECF No. 21 at ¶¶ 13-14; Appx. at 133.

would contradict the "fundamental principle of contract law that the parties to a contract are bound by its terms, and have a corresponding right to enforce them." *Id.* at 180-81.[9]

**B. Ryze Nevada and Ryze Holdings Are the Direct Contracting Parties Asserting Their Own Rights**

This case falls squarely within *NAF Holdings*—and presents an even clearer basis for direct standing given the convertible debt structure. [redacted]

[9] Mirae invokes *Lujan* and *TransUnion*, but those cases address whether a plaintiff suffered any "injury in fact" at all—not whether a contract party may sue directly. Mirae does not (and could not credibly) argue that Ryze suffered no concrete injury or that money damages cannot redress $210 million in lost funding and destroyed equity value. The question here is not *whether* Ryze was injured, but *whether* Ryze may sue directly for breach of its own contracts.

[10] The abuse of process claim follows the same logic. Mirae named Ryze Nevada and Ryze Holdings as defendants in its lawsuit. Ryze—not a subsidiary—bore the burden of defending that suit: the legal fees, the reputational harm, the distraction from business operations, the "leverage" Mirae extracted. Pearson Decl. ¶¶ 41, 44. These are direct injuries to the named defendants, not derivative injuries flowing through another entity.

BAILEY ❖ KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
702.562.8820

Moreover, Ryze seeks recovery for injuries it directly incurred—independent of any harm to subsidiary assets. A parent company has standing where it "suffers independent harm." *Gen. Motors Corp. v. Cal. State Bd. of Equalization*, 815 F.2d 1305, 1308 (9th Cir. 1987); *see EMI Ltd. v. Bennett*, 738 F.2d 994, 997 (9th Cir. 1984) (parent lacks standing only "absent direct harm ... independent from harm to the subsidiary"). The CLA earmarked proceeds to retire "Company Legacy Debts" held by Ryze itself. CLA § 6.01. Because Mirae failed to fund, Ryze continued to carry those obligations and incurred approximately $24 million in penalty interest and carrying costs. Pearson Decl. ¶ 66. Ryze also paid the lawyers and consultants who negotiated these transactions, totaling at least $3.5 million. *Id.* ¶ 67. These direct injuries alone defeat Mirae's motion.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

### C. Mirae's Cases All Involve One Entity Asserting Another's Rights

Every case Mirae cites involves Entity A attempting to vindicate Entity B's rights. Ryze does the opposite: it enforces contracts it signed as the named Borrower and Guarantor.

- In *Ashley Creek*, a subsidiary sued over phosphate leases owned by its parent—and conceded as much. The Ninth Circuit dismissed: the subsidiary "does not contend that the rights belong to it, but to its parent company." 403 F. App'x at 274. Here, Ryze contends exactly the opposite.

- *Quest Software* is inapposite: there, a parent asserted fraud based on misrepresentations made *to its subsidiary* (dismissed because "representations made to one entity [cannot] be relied upon as representations made to the other"). 2024 WL 3512088, at *4. Mirae made its promises directly to Ryze.

- So too *Infinity Global*, where shareholders sued for conversion of a *subsidiary's* assets (dismissed because "shareholders do not own the corporation's assets"). 2021 WL 880391, at *7. Ryze claims its own contract rights.

- *Dole Food* confirms the rule cuts both ways. Just as "a corporate parent ... does not, for that reason alone, own or have legal title to the assets of the subsidiary," 538 U.S. at 475, a subsidiary does not own its parent's contract rights. Under the very corporate formalities *Dole Food* protects, Ryze—and only Ryze—can enforce the CLA and SLA.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**D. To the Extent Mirae Challenges Refinery-Related Damages, That Goes to Measure of Recovery—Not Standing**

Mirae's remaining argument reduces to this: because some of Ryze's claimed damages flow through injury to subsidiary assets, Ryze lacks standing entirely. But that conflates standing with the extent of recoverable damages. A plaintiff with *some* cognizable injury has standing; disputes about additional categories go to the finder of fact—not wholesale dismissal of claims the plaintiff unquestionably has standing to bring. *See Gen. Motors*, 815 F.2d at 1308. Here, Ryze has established over $27 million in direct damages. Whether Ryze may also recover for diminution in enterprise value presents, at most, a triable issue regarding the measure of damages. It does not deprive Ryze of standing to pursue the claims it plainly has.

Mirae's standing argument should be rejected accordingly.

**VI. THIS COURT ALREADY REJECTED THE LITIGATION PRIVILEGE DEFENSE; THE SUMMARY JUDGMENT RECORD SUBSTANTIATES RYZE'S ALLEGATIONS.**

Mirae's litigation privilege argument is identical to the one this Court rejected five months ago. At the 12(c) stage, Mirae contended that "Nevada's absolute litigation privilege" bars Ryze's claim because it arises from "the filing of a state court action in July 2021" and "statements allegedly made during mediation." ECF No. 230 at 8. At summary judgment, Mirae contends the privilege bars Ryze's claim because it "seeks to hold Mirae Asset liable for actions that are quintessential litigation conduct: filing a complaint and negotiations related to the resolution of the same." MSJ at 28. The arguments are indistinguishable.

The Court has already rejected this argument. Applying *Dickerson v. Downey Brand LLP*, 2017 WL 6316552 (Nev. 2017), the Court held that "the litigation privilege does not bar Ryze's counterclaims as pleaded" because the privilege does not protect communications "made for an improper purpose" rather than "a good-faith effort to settle the case." ECF No. 251 at 10-11. The Court separately held that Ryze adequately pleaded the elements of abuse of process: "(1) an ulterior purpose by [Mirae] other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." ECF No. 251 at 12. The

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

law-of-the-case doctrine forecloses relitigation of these legal frameworks. *See Trina Solar US, Inc.,* 2022 WL 18359178, at *2 ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (quotations omitted)); *Clear Conn. Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, 2020 WL 6742889, at *3-4 (E.D. Cal. Nov. 17, 2020). The only question at summary judgment is whether the record substantiates these allegations. It does.

**The August 12 "settlement conference" was a sham—"made for an improper purpose, not a good-faith effort to settle."** When Ryze's counsel proposed discussing "the lawsuit, the claims raised against Ryze, and the potential counterclaims against Mirae," Graham responded: "There isn't anything about the lawsuit that affects our judgment about it. . . . We are there to do a deal or move on." Ex. 43, Appx. at 1428. At the meeting, Ryze was told it could not ask questions about the lawsuit, that the mediation would terminate immediately if Ryze brought it up, and that a second, larger lawsuit would follow if Ryze did not capitulate. Ex. 31 ¶¶ 47-49, Appx. at 1259; Ex. 32 ¶¶ 13-15, Appx. at 1270. Han stated in front of counsel: "Mirae just doesn't understand why Ryze doesn't realize it just has to 'bend over and take it in the ass.'" Ex. 31 ¶¶ 49-50, Appx. at 1259-1260. [redacted] This was not a good-faith settlement effort—it was a coercive shakedown.

**Mirae filed the lawsuit for "an ulterior purpose other than resolving a legal dispute."** [redacted]. [redacted]

[redacted]

**The lawsuit was meritless—supporting the inference of improper purpose.** Counsel acknowledged: "[redacted] One reviewing attorney flagged the incongruity: [redacted] A reasonable jury could find Ryze has satisfied the standards this Court articulated in ECF No. 251—both for escaping the litigation privilege and for proving abuse of process.

**A. Issue Preclusion Does Not Bar Ryze's Abuse of Process Claim.**

Mirae's issue-preclusion argument is its third attempt to import the state court's dismissal of Snell into this case—and it omits that both courts have already rejected the effort. Here is what Mirae does not tell the Court: After the state court dismissed Ryze's claims against Snell on litigation privilege and other alternative grounds, Mirae asked the state court to apply the same reasoning to dismiss Ryze's claims against Mirae. The state court declined. It instead dismissed Mirae under the first-to-file rule and expressly deferred all merits issues to this Court. Appx. at 2098-2099. Mirae then asked this Court to apply the state court's Snell analysis at the Rule 12(c) stage. This Court also declined, holding that Ryze's allegations, if proven, fall outside the privilege and state a claim for abuse of process. ECF No. 251 at 9-12.

Now, on its third attempt, Mirae repackages the same argument as "issue preclusion"—a defense it never pleaded. The premise is that the state court's Snell ruling binds this Court as to

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Mirae. But that is precisely what the state court refused to hold, and what this Court has already rejected. Mirae secured the federal forum it wanted; it does not get to abandon that forum's rulings when they prove unfavorable.

1. *The State Court Already Declined to Give Its Snell Ruling Preclusive Effect as to Mirae.*

The state court dismissed Mirae solely on first-to-file grounds and explicitly declined to reach the litigation privilege or the sufficiency of Ryze's abuse of process allegations: "The Court does not need to consider [Mirae's] other arguments in light of the Court's decision as to the first-to-file rule." Ex. 96 (State Court Order) ¶ 11, Appx. at 2098-2099. It then preserved all merits issues for federal adjudication: "Nothing in this order is intended to, or hereby does, restrict Mirae Asset's right to assert these additional arguments in connection with the federal action." Ex. 96 (State Court Order) ¶ 12, Appx. at 2099. At the hearing, the court confirmed the dismissal was "[w]ithout prejudice, obviously, because some of those same issues are pending perhaps in the federal, first-filed case." Ex. 95 at 20:22-21:1, Appx. at 2091.

2. *The State Court's Ruling Defeats Every Element of Mirae's Issue Preclusion Argument.*

This order supersedes the Snell dismissal as to Mirae. It is an affirmative ruling on the very question Mirae presents: whether the state court's Snell dismissal binds this Court's decision as between these parties. The state court's answer was no—it expressly disclaimed any such effect and allocated the question to this Court. That single fact cascades into every doctrinal requirement for issue preclusion.

- *No merits ruling*. Nevada law requires that the prior ruling be "on the merits and... final." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008). The state court expressly declined to make one. A dismissal without prejudice under the first-to-file rule is a jurisdictional deferral, not a merits adjudication. *See Hicks v. Brownstone Holdings, LLC*, No. 74676-COA, 2018 WL 6818528, at *1 (Nev. App. 2018). There is no "ruling" to give preclusive effect.

- *Express jurisdictional allocation.* The Restatement provides that relitigation is not precluded when "[a] new determination of the issue is warranted by... factors relating to the allocation of jurisdiction between" courts. Restatement (Second) of Judgments § 28(3). The state court dismissed under the first-to-file rule precisely

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

to allocate jurisdiction to this Court. We need not infer this allocation—the state court stated it explicitly. Ex. 96 (State Court Order) ¶ 12, Appx. at 2099. To give that deferral preclusive effect in this Court—the very forum the state court deferred to—would contradict the jurisdictional allocation the state court made.

- *Full faith and credit.* This Court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); 28 U.S.C. § 1738. Mirae invokes *Migra* as if the question of Nevada's intended preclusive effect were open. It is not. We know what preclusive effect the state court intended to give its ruling as to Mirae: none. The state court said so. Giving more preclusive effect here would not honor the state court's judgment—it would override it.

- *Law of the case.* Respecting the state court's directive means respecting that this Court decides. This Court has. At the Rule 12(c) stage, this Court held that Ryze's allegations, if proven, fall outside the litigation privilege and state a claim for abuse of process. ECF No. 251 at 9–12. Mirae cannot use a state court ruling that was never made as to Mirae to overturn a federal ruling that was.

- *Issue Never "Actually and Necessarily Litigated."* Nevada requires an issue be "actually and necessarily litigated" before preclusion attaches. *Five Star Capital Corp.*, 194 P.3d at 713. An issue is not "actually litigated" when the court explicitly declines to reach it. Restatement (Second) of Judgments § 27 cmt. e. Here, Mirae asked the state court to extend its *Snell* analysis to Mirae. The court refused, dismissing on first-to-file grounds without reaching the privilege's application or the sufficiency of Ryze's abuse-of-process claim. The issue was never "actually litigated" as to Mirae. Nor was it "necessarily litigated" even as to Snell. A judgment resting on alternative independent grounds "is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments § 27 cmt. i; *see McKenna v. Chesnoff*, 2016 WL 5019162, at *6 (D. Nev. Sept. 19, 2016). The state court dismissed Ryze's claim against Snell on litigation privilege *and* independent alternative grounds—either sufficient alone. Ex. 94 at 18, Appx. at 2067. Because neither ground was "necessary to the judgment," the "necessarily litigated" element fails.

- *Issues Not Identical.* The *Snell* dismissal adjudicated an *attorney's* liability. Attorneys enjoy a safe harbor clients do not: a lawyer escapes abuse-of-process liability if her acts were designed to secure proper adjudication of the client's claim. *Dutt v. Kremp*, 894 P.2d 354, 360 (Nev. 1995) (distinguishing between same); Restatement (Third) of the Law Governing Lawyers § 57(2). The state court's analysis turned on this attorney-specific immunity—a question distinct from whether Mirae, as the principal directing the litigation, harbored an ulterior purpose.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Whether Mirae, as the principal directing the litigation, harbored an ulterior purpose is a distinct question the state court did not purport to decide.

*3. Mirae Waived the Defense.*

If the foregoing creates any doubt, there is a simpler answer: Mirae never pleaded issue preclusion. Issue preclusion is an affirmative defense that is waived if not pleaded. *See* Fed. R. Civ. P. 8(c)(1); *Deutsch v. Flannery*, 823 F.2d 1361, 1365 n.2 (9th Cir. 1987). Mirae filed its Amended Answer on July 17, 2025—months after the state court rulings it now invokes—yet failed to plead preclusion. ECF No. 256. This failure constitutes waiver. The state court made no merits determination as to Mirae, explicitly deferred all merits issues to this Court, and gave its dismissal no preclusive effect. Summary judgment must be denied.[11]

**CONCLUSION**

Mirae has not carried its summary judgment burden on any of Ryze's counterclaims. Summary judgment should be denied.

Dated: December 9, 2025.

Respectfully submitted,
DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com
**EDGAR LAW FIRM LLC**

*<u>/s/ Michael R. Owens</u>*.
John M. Edgar, (PHV)
John F. Edgar, (PHV)

---

[11] Any ambiguity about the state court's intent should be resolved against Mirae. Mirae had the opportunity to seek clarification or reconsideration of the state court's order; it did neither. And allowing Mirae to invoke issue preclusion at this late stage would materially prejudice Ryze, who could have pursued relief from the state-court judgment had the defense been timely disclosed. *See* NRCP 60(c)(1) (requiring motions for relief from judgment within six months of notice of entry).

Michael R. Owens (PHV)
Alexander C. Melin (PHV)
2600 Grand Boulevard, Ste. 440
Kansas City, Missouri 64108
Telephone: (816) 531-0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

**MILLER SHAH LLP**
BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
*Attorneys for Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820