# EXHIBIT 31

*Declaration of Matthew Pearson*

DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com
JOHN M. EDGAR
*(Admitted Pro Hac Vice)*
JOHN F. EDGAR
*(Admitted Pro Hac Vice)*
MICHAEL R. OWENS
*(Admitted Pro Hac Vice)*
ALEXANDER C. MELIN
*(Admitted Pro Hac Vice)*
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Suite 440
Kansas City, Missouri 64108
Telephone: 816.531.0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
**MILLER SHAH LLP**
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

*Attorneys for Defendants/Counter-Claimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Mirae Asset Securities Co., Ltd., a Republic of Korea company,

Plaintiff,

v.

Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,
Defendants.

---

Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,

Counterclaimants,

CASE NO. 2:23-cv-01492-APG-NJK

**DECLARATION OF MATTHEW G. PEARSON**

Judge: Andrew P. Gordon

Date Action Filed: September 22, 2023

v.

Mirae Asset Securities Co., Ltd., a Republic of Korea company,
Counterdefendant.

**DECLARATION OF MATTHEW PEARSON IN SUPPORT OF RYZE'S OPPOSITION TO MIRAE ASSET SECURITIES CO., LTD.'S MOTION FOR SUMMARY JUDGMENT**

I, Matthew G. Pearson, declare as follows:

I am a principal and manager of Ryze Renewables Holdings, LLC and manager of its wholly owned subsidiary, Ryze Renewables Nevada, LLC (collectively "Ryze"). I have personal knowledge of the facts stated in this Declaration and, if called as a witness, could and would testify competently thereto. I submit this Declaration in support of Ryze's Opposition to Mirae's Motion for Summary Judgment.

1. Ryze was developing a renewable diesel facility in North Las Vegas, Nevada, valued at approximately $1.3 billion upon completion of the facility. The project aimed to convert an existing biodiesel refinery into a state-of-the-art renewable diesel facility using innovative refining methods. This was one of the first renewable diesel facilities to be built in the United States by an independent company not owned or operated by a major petroleum company.

2. To ensure the facility's success, Ryze secured a 15-year supply and offtake agreement with Phillips 66. This arrangement provided continuous feedstock supply, guaranteed sales, and transportation of output under an industry-unique netting arrangement. Both the procurement of input and the profitable sale of output were guaranteed by enforceable contractual commitments with one of the largest energy companies in the world.

3. Reputable firms including Duff & Phelps (now Kroll) and Stancil & Co. provided third-party assessments valuing the enterprise at approximately $1.3 billion. Notably, Mirae itself agreed to and endorsed this valuation when setting the price for its equity option in the convertible loan agreement it later signed with Ryze.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

4. Ryze obtained initial funding via a $198 million loan from Georgia's Own Credit Union, backed by a USDA 9003 Loan Guarantee as part of an initiative to promote emerging environmental technologies.

5. The USDA 9003 Loan Guaranty Program initially encouraged borrowers to license non-commercially deployed technology. After construction began, development plans were amended to permit previously deployed and proven technology, which was allowed under amended guidelines within the USDA. Ryze immediately began working on a mid-construction transition to this commercially proven technology.

6. The Project remained viable despite this technology change because of the secured Phillips 66 agreement. However, implementing the transition would require additional funding.

7. By late 2019, Ryze had retained B.C. Ziegler and Company ("Ziegler"), an established investment bank, to sell a $600 million bond to raise additional financing for the Project, with plans to complete the offering in early 2020.

8. In January 2020, a Ryze consultant introduced Mirae Asset Securities Co., Ltd. as a potential bond purchaser. Mirae's representative Kyunghyun Lee expressed keen interest during preliminary due diligence, suggesting Mirae might purchase the entire issuance outright.

9. Before Ziegler could complete the offering, Mirae changed course. Through Lee and others, Mirae pitched direct financing through a convertible loan. Mirae's representatives emphasized that they could fund within weeks of an offering memorandum and that Mirae would backstop the entire amount under the promised timeline without regard to other investors' participation.

10. Based on these assurances of swift and certain funding—specifically that a deal could be funded within eight weeks following execution of an offering memorandum—Ryze suspended and ultimately abandoned the Ziegler bond issuance to pursue Mirae's proposal. The initial offering memorandum required Ryze to negotiate exclusively with Mirae, preventing pursuit of alternative funding sources.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

11. Kyunghyun Lee, a senior Mirae employee, led the transaction for Mirae. Mr. Lee purportedly does not speak English well. His communication with Ryze was largely translated and interpreted by an individual named Sunghee Han, with involvement of other direct Mirae employees as well as known outside Mirae consultants such as Samchully Investment Group and Mirae's outside law firms, Lee & Ko and Kutak Rock.

12. Between March 25, 2020 and April 29, 2020, Ryze's communications with Mirae occurred either directly through Lee or via Ryze's brokers Jeff Hall and Sunghee Han at Paragon Construction Consulting, who communicated directly on Ryze's behalf as intermediaries.

13. Mr. Han was not directly employed by Mirae but claimed affiliations with Berkeley Research Group, Paragon Construction Consulting, Inc., and a joint venture called Paragon-BRG Korea Co., Ltd. At this stage, Han was working for Ryze—he was part of the Paragon engagement that Jeff Hall had set up to help Ryze find financing. Han translated for Lee, facilitated communications, and helped move the deal forward. Ryze contracted with Paragon for these services.

14. Mr. Han attributed his special status with Mirae to his self-described track record and the wealth and prominence of his family in South Korea, claiming they were among Mirae's largest depositors. Together, Mr. Lee and Mr. Han were the face of Mirae's dealings with Ryze.

15. Mirae and Ryze executed an offering memorandum on April 22, 2020. The offering memorandum incorporated Mirae's promise to fund the transaction by June 17, 2020.

16. Following the April 29, 2020 agreements, Ryze continued communicating with Mirae through Lee directly and via brokers Hall and Sunghee Han through Paragon Construction Consulting, who served as intermediaries on Ryze's behalf.

17. Between May 29, 2020 and August 4, 2020, Ryze maintained the established communication pattern with Mirae through Lee directly and via brokers Hall and Sunghee Han, reinforcing through Mirae's continued responsiveness that Ryze was communicating with appropriate and authorized contacts.

18. Following the August 4, 2020 execution of the Third Offering Memorandum bearing Vice Chairman and Co-CEO Cho's signature, Mirae intensified its engagement signals by retaining deal counsel for the transaction. Mirae retained Kutak Rock as its U.S. counsel and Lee & Ko as its Korean counsel. Lee & Ko's Paul H.J. Yoon had previously been identified by Mirae as its designated recipient for receiving notices or other written communications in loan agreements to which Mirae was a party, including a Mezzanine Loan Agreement dated September 21, 2018.

19. Between August 4, 2020 and December 2020, Ryze continued the established communication pattern with Mirae through Lee directly and via brokers Hall and Sunghee Han, with the expanded deal team of U.S. and Korean counsel negotiating transaction terms.

20. Rather than cooperate to advance due diligence and close the loan within the originally agreed timeframe, Mirae instead made endless demands to renegotiate previously agreed-upon terms.

21. Instead of closing within eight weeks as promised, Mirae dragged Ryze through nearly a year of negotiations and expanding due diligence demands. Throughout this period, Mirae repeatedly assured Ryze it was willing to fund the entire loan amount and that final approval was imminent.

22. This process played out month after month. The "prompt" funding assurances that had induced Ryze to forgo its pending bond offering proved false. During the entire seven-to-nine month negotiation period, no one from Mirae, its U.S. counsel Kutak Rock, its Korean counsel Lee & Ko, or any of the consultants and advisors engaged for the transaction ever contacted Ryze to disclaim Lee's authority.

23. Following approximately seven to nine months of negotiations from the April 2020 offering memorandum, the parties executed the CLA on January 27, 2021. Lee signed the CLA on behalf of Mirae and transmitted the executed agreement via email to recipients including Paul Yoon of Lee & Ko and Michael Tobak of Kutak Rock, neither of whom identified any objection or noted any concerns about the propriety of Lee executing the agreement. Notably, Mirae's deal counsel at

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Kutak Rock and Lee & Ko were responsible for preparing the CLA with Lee's signature block and facilitating Lee's execution of the agreement.

24. The CLA contained specific terms regarding funding obligations and deadlines. Schedule 4.02A required Ryze to deliver certain Conditions Precedent, which would trigger Mirae's obligation to hold its final internal committee meeting within 14 business days. Section 4.02 of the CLA then required that once Mirae obtained Final Committee Approval, it must fund within ten days.

25. By February 10, 2021, Ryze delivered all Conditions Precedent items required under Schedule 4.02A via Dropbox link, including completion of Mr. Lee's onsite visit on February 1-2, 2021. This triggered Mirae's obligation to hold its final internal committee meeting by February 24, 2021.

26. After initial silence and a follow-up inquiry from Ryze on February 23, 2021, Mirae responded through Mr. Lee acknowledging receipt of the CP documentation.

27. On March 1, 2021, during a teleconference to discuss the status of the transaction, Mr. Lee conveyed that final investment committee approval had been obtained. I sent a confirmatory email documenting that Ryze was pleased to hear about the Final Mirae Committee Approval, that we accepted his verbal confirmation as documented in the email, and that we would move forward with the closing steps set forth in Schedule 4.02B.

28. Lee's March 1, 2021 confirmation of Final Committee Approval triggered Mirae's obligation to fund within ten days, making March 11, 2021 the contractual funding deadline.

29. On March 11, 2021, I emailed Mr. Lee noting that it had been 10 days since he informed us on March 1st, 2021 that the Final Mirae Investment Committee Approval had been received, transmitted the final Funding Date documentation via Dropbox, and confirmed Ryze was ready for funding.

30. Mirae did not fund by the March 11, 2021 deadline.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

31. On March 15, 2021, Lee acknowledged receipt of all CPs but claimed there were internal requirements not reflected in the CLA, describing committee approval as an ongoing function rather than the single event contemplated by the agreement.

32. Mirae never funded the CLA despite Ryze's complete performance of all conditions precedent.

33. On May 20, 2021, in response to continued inquiries by Ryze regarding Mirae's refusal to fund the CLA, Mr. Lee notified Ryze it was purporting to terminate it, stating: "we will now officially withdraw and terminate. We hope your future is prosperous and wish you good luck." On May 25, 2021, Lee again stated "we have decided to withdraw from the Ryze."

34. Simultaneously with acknowledging Mirae's termination of the CLA, Mr. Lee proposed a new transaction, inviting Ryze to scrap the CLA and begin negotiations anew.

35. Given the urgent funding needs of the company and Mirae's breach of its obligation to fund after thirteen months of negotiations which resulted in no funding, Ryze declined Mirae's attempted renegotiation and returned to the market to find alternative funding. Having received Mirae's written declaration to "terminate" and "withdraw" from the CLA, Ryze reasonably concluded it was appropriate to move on.

36. Ryze located an interested funding source, Magnetar, a Chicago-based hedge fund. Ryze executed a term sheet with Magnetar contemplating a July 30, 2021 closing date. This provided a clear path toward completing construction and making the facility operational.

37. On July 23, 2021, Mirae filed suit against Ryze in District Court of Clark County, Nevada. The lawsuit sought "specific performance" and monetary damages based on Ryze's supposed breach of the CLA—the same CLA that Mirae had failed to fund, attempted to renegotiate, and declared "terminated" and "withdrawn from" in writing.

38. The lawsuit's allegations were frivolous, including claims that: (a) Ryze misrepresented the Project's status, when we had provided comprehensive independent engineer reports and allowed Mirae's preferred construction company to assess the Project directly; (b) Ryze

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

misrepresented pretreatment facility costs, when the $95 million representation was accurate when made and supported by a matching bid from our construction company; (c) Ryze concealed relationships between contractors, when we had clearly disclosed all ties through loan documents; (d) Ryze failed to disclose litigation, when all claims were settled before CLA execution—a fact known to Mirae's counsel who also represented the opposing party; and (e) Ryze failed to fulfill due diligence obligations under CLA provisions that neither mentioned due diligence nor obligated Ryze to provide any.

39. The CLA mandated arbitration for disputes, but private arbitration would not serve Mirae's goal of publicly damaging Ryze's reputation with other potential funders.

40. Promptly upon learning of the lawsuit, Magnetar ordered pencils down on the Ryze deal.

41. The absurdity of Mirae's lawsuit was not lost on anyone. For months, Ryze had been demanding that Mirae honor its commitment and fund the CLA. Ryze stood ready and willing to perform—we had satisfied every condition precedent, delivered every document, and done everything the agreement required of us. If Mirae had genuinely wanted specific performance of the CLA, all it had to do was fund. We would have accepted the money. But Mirae had no interest in funding. The lawsuit was never about obtaining the relief it demanded. It was about inflicting financial harm on Ryze, scuttling our deal with Magnetar, and leaving us with two options: negotiate exclusively with Mirae on whatever terms it dictated, or face insolvency.

42. Sunghee Han's role in this saga illustrates just how badly Ryze was played. When we first engaged with Mirae, Han was our broker—part of the Paragon engagement that Jeff Hall had set up to help Ryze find financing. Han was supposed to be working for us. He translated for Lee, facilitated communications, and helped move the deal forward. Paragon originally stood to be paid upon funding of a loan agreement with Mirae pursuant to Paragon's agreement with Ryze.

43. After Mirae failed to fund the CLA in March 2021, Han's loyalties shifted. By the time of the July 23 lawsuit, Han had resurfaced as Mirae's consultant. He sat on their side of the

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

table at the August 12 meeting. He delivered threats on Mirae's behalf. He was the one who told us Ryze needed to "bend over and take it in the ass." The man we had hired to help us secure financing was now helping Mirae extort us.

44. The lawsuit itself was a weapon. Mirae had breached the CLA by failing to fund. Mirae had sent us written confirmation that it was "withdrawing" and "terminating" the agreement. And then Mirae sued us for specific performance of the very contract it had refused to perform and declared terminated. The lawsuit made no sense as a genuine legal claim—but it made perfect sense as a tool to destroy our Magnetar deal and force us back to the table with no leverage.

45. On August 11, 2021, at approximately 6:30 a.m., I spoke with Magnetar's Steven Shapiro regarding the lawsuit and Mirae's claimed willingness to fund, discussing the lawsuit's allegations, noting there was no evidence to support the specific performance claim, and concluding the lawsuit was being used to force a return to negotiations and that any new Mirae term sheet would likely be on worse terms.

46. On August 11-12, 2021, Ryze met with Mirae's representatives regarding potential resolution, where Ryze was told a second lawsuit with more serious claims would follow if Ryze did not agree to new terms.

47. Following Mirae's July 23, 2021 lawsuit, I arranged a meeting on August 12, 2021 at Snell & Wilmer's Orange County, CA office to resolve the litigation and salvage the Magnetar funding, with participants including myself and Lisa Fuller for Ryze and Sung Hee Han and Snell & Wilmer attorneys Steve Graham and Victor J. Roehm III for Mirae, with Kyunghyun Lee present at times virtually for Mirae, though no neutral mediator was present.

48. During the August 12 meeting, Mirae refused to discuss the lawsuit's merits and admitted it had no intention of funding the CLA despite seeking specific performance just 20 days prior.

49. At the August meeting, Mirae's representatives made this explicit. They refused to discuss the merits of the lawsuit. They admitted they had no intention of funding the CLA. And

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

when we resisted their demands, Roehm, Graham, and Han threatened that if we did not capitulate, Mirae would bring in the law firm Clifford Chance to file a second lawsuit that would "destroy" Ryze through years of vexatious litigation. The message was clear: sign what we put in front of you, or we will litigate you into bankruptcy.

50. At approximately 3:50 p.m., Sung Hee Han stated in front of counsel for both parties: "Mirae just doesn't understand why Ryze doesn't realize it just has to 'bend over and take it in the ass [from Mirae],'" which I understood to mean Ryze should capitulate to Mirae's coercive leverage.

51. At approximately 5:03 p.m., Roehm announced that Mirae's new term sheet would be binding and required a $2 million payment upon execution, prompting me to immediately end discussions and stand to leave before Roehm and Han quickly retracted. Roehm then represented that Director Lee had authority to approve up to 60 billion won (approximately $54 million), and Snell attorneys threatened that if Ryze refused to finalize by midnight, Mirae would initiate a separate "Clifford Chance" lawsuit to "destroy" Ryze through years of vexatious litigation.

52. These threats extended the meeting late into the night and early hours of August 13, 2021. Facing imminent default on the USDA Guaranteed Loan and believing Mirae's threats credible after 18 months of malicious conduct, Ryze concluded it had no viable alternative but to execute a "Binding Term Sheet" for a $52 million loan from Mirae at approximately 2:00 a.m. on August 13, 2021.

53. The term sheet provided for allocation as follows: $28 million for construction; $2 million for working capital; $1 million for project contingency; $10 million for USDA Guaranteed Loan interest reserve; $4.5 million for Mirae's interest reserve; $6.5 million for fees to Mirae and certain consultants and attorneys. Mirae would also receive 20% of all outstanding Ryze membership interests, 12% interest with repayment after 5 years, and two board seats.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

54. The term sheet required execution of definitive agreements within 80 days and funding by November 4, 2021. Failure to meet that deadline would require Mirae to dismiss the lawsuit with prejudice or pay Ryze $50,000 per day to extend.

55. Despite term sheet provisions limiting deliverables and omitting additional due diligence, Mirae demanded extensive due diligence anyway. Ryze tolerated these requests to demonstrate good faith. Meanwhile, Mirae refused to provide basic information about the loan counterparty, the entity holding the equity award, KYC documentation required by our senior lender, or board appointee information.

56. During this period, Ryze's counsel Lisa Fuller had significant concerns about Mirae's inexplicable course of conduct and repeatedly requested a certificate of authority. In response, on October 13, 2021, I received an email forwarding correspondence from Mirae's Kyunggap Kim that included a Letter of Notice bearing the official stamp and seal of Hyun Man Choi, CEO of Mirae Asset Securities, stating: "Kyunghyun Lee, as a Director of Mirae Asset Securities Co., Ltd., is authorized to negotiate and execute the commencement of transaction of project Ryze on behalf of Mirae Asset Securities Co., Ltd."

57. For the time, this mitigated some of our concerns, and given the pressure Mirae's lawsuit had exerted upon us, seemed the best we could do under the circumstances.

58. The November 4, 2021 deadline passed without execution of definitive agreements. When Ryze demanded either payment of the penalty or dismissal of the lawsuit, Mirae refused to discuss the matter.

59. After 21 months of delays, with Ryze teetering on insolvency and lacking time to pursue recourse, we were forced to continue negotiations.

60. The parties executed a Second Loan Agreement on November 29, 2021 for a $21 million loan from a "to be determined lender"—supposedly a newly-formed special purpose entity controlled by Mirae—representing merely 1/10th of the $210 million CLA that Mirae's lawsuit purported to enforce.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

61. We were told that LV Renewables A, LLC was Mirae's entity, set up by Mirae to complete this transaction in the United States. Snell & Wilmer represented that the structure was for tax planning purposes but assured us that Mirae was behind it and controlled it. We understood LV Renewables to be Mirae operating through a US vehicle, not an independent entity.

62. The proceeds were allocated as follows: $3 million for working capital held by Mirae in a controlled account, $1 million for specified business expenses, $10 million for USDA loan interest reserve, and $7 million for fees to Mirae, its attorneys, and consultants—with Mirae's gross fee allocation having increased over successive iterations even as the principal value plunged.

63. As with the CLA's funding deadline in March 2021, Mirae's December 15, 2021 deadline for funding the SLA came and passed without funding, with Mirae ceasing all communications with Ryze and never funding the second loan agreement it had coerced Ryze into accepting.

64. Ryze defaulted on its senior debt on January 18, 2022. During the 630-day period of contractual and involuntary exclusivity with Mirae, the company incurred interest expenses of $49,511 per day, totaling approximately $31,191,930.

65. The entire Mirae transaction was negotiated at the holding company level because traditional asset-based collateral was unavailable at affiliate company levels. Ryze's senior creditors already held liens on Ryze Las Vegas's physical assets—the refinery, the equipment, and the real property. There was nothing left at the operating company level to pledge. Mirae knew this. That is precisely why the CLA and SLA were structured as convertible debt with equity upside: Mirae's security was not a lien on refinery equipment but an option to acquire some 23% of Ryze Nevada's membership units at $2.20 per unit. The consideration was parent-level equity. The collateral was parent-level equity. The entire investment thesis depended on value accreting upstream to the holding company that Mirae could eventually participate in through a conversion to equity.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

66. The CLA contemplated that loan proceeds would flow downstream to fund construction at Ryze Renewables Las Vegas—but a portion of those proceeds was earmarked for Ryze's own obligations. Section 6.01 and the Use of Proceeds schedule expressly identified retirement of "Company Legacy Debts" held by Ryze as an approved use of funds. These were parent-level liabilities that would have been extinguished at closing. Because Mirae failed to fund, Ryze continued to carry those obligations and incurred additional penalty interest and carrying costs of approximately $24 million through July 2025.

67. Ryze—not any subsidiary—also engaged the professionals who negotiated the CLA, the Binding Term Sheet, and the SLA. Ryze paid the lawyers who drafted the convertible equity provisions, the consultants who satisfied Mirae's ever-expanding due diligence demands, and the financial advisors who attempted to restructure the transaction after each successive breach. These were costs of securing parent-level financing and protecting the equity position that Mirae itself had contracted to acquire. They total at least $3.5 million.

68. Ryze's subsidiaries entered Chapter 11 bankruptcy on March 9, 2023, and the facility was sold at auction on June 13, 2023, *see In re Ryze Renewables II, LLC*, No. 1:23-bk-10289 (Bankr. D. Del.). As I suspected at the time, and would later be confirmed by documents obtained in this and related litigation, this was exactly as Mirae and its counsel had contemplated and intended when they formulated the sham litigation strategy.

69. Attached as Exhibit 35 are true and accurate copies of the Delaware Certificates of formation for Ryze Renewables Holdings, LLC; Ryze Renewables Nevada, LLC; Ryze Renewables II, LLC; and Ryze Renewables Las Vegas, LLC.

70. Attached as Exhibit 40 is a true and accurate copy of the Ryze Termination Notice to LV Renewables A, LLC, dated January 3, 2022, signed by me, and which was transmitted to the addresses listed thereon.

71. Attached as Exhibit 41 is a true and accurate copy of an email chain between and among myself, Steven Shapiro for Magnetar, and others, that occurred in August 2021.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

72. Attached as Exhibit 57 is a true and accurate copy of the aforementioned Ryze-Magnetar term sheet for substitute financing.

73. During the course of dealing with Mirae, I and other Ryze employees and consultants were copied from time-to-time on emails with Mirae employees Sooji Hong, Kyunggap Kim, among others, who had @miraeasset.com email-domain email addresses.

74. James Christodoulou is a former interim Chief Financial Officer of Ryze. Attached as Exhibits 70, 72, and 68 are true and accurate copies documents Mr. Christodoulou produced in discovery in this case, with certified Korean-to-English translations of the same obtained by my attorneys.

75. Lisa Fuller is former in-house counsel for Ryze. Attached as Exhibits 73 (with an Exhibit stamp from use in a deposition of Victor Roehm), 74, and 69 are true and accurate copies of documents produced by Snell & Wilmer LLP, along with certified Korean-to-English translations of Exhibits 69 and 74 obtained by my attorneys.

* * *

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 9th day of December, 2025.

[signature]
Matthew G. Pearson