# EXHIBIT 95

*State Court Hearing Transcript of Mirae Motion to Dismiss Premised on Snell Ruling or, Alternatively, Under First to File Rule*

*(May 28, 2025)*



%%%%%%%%%%///

Electronically Filed
5/30/2025 10:16 AM
Steven D. Grierson
CLERK OF THE COURT

TRAN

DISTRICT COURT

CLARK COUNTY, NEVADA

* * * * *

| | |
|---|---|
| RYZE RENEWABLES HOLDINGS, LLC, RYZE RENEWABLES NEVADA, LLC, ) Plaintiffs, ) vs. ) SNELL & WILMER, LLP, ET AL., ) Defendants. ) | CASE NO. A-23-863908-B<br>DEPT. NO. XV<br>**Transcript of Proceedings** |

BEFORE THE HONORABLE JOE HARDY, DISTRICT COURT JUDGE

**MIRAE ASSET SECURITIES CO., LTD.'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT; PLAINTIFFS' MOTION TO STRIKE MOTION TO DISMISS AND TO ENTER DEFAULT**

WEDNESDAY, MAY 28, 2025

APPEARANCES:

For the Plaintiffs: DANIEL R. ORMSBY, ESQ. [Via Zoom]
MICHAEL R. OWENS, ESQ.

For Mirae Asset: TAMARA BEATTY PETERSON, ESQ.
DANIEL PRINCE, ESQ.
DANIEL SCOTT CARLTON, ESQ.

RECORDED BY: MATTHEW YARBROUGH, DISTRICT COURT
TRANSCRIBED BY: KRISTEN LUNKWITZ

Proceedings recorded by audio-visual recording; transcript produced by transcription service.

WEDNESDAY, MAY 28, 2025, AT 9:16 A.M.

THE CLERK: A863908, *Ryze Renewable Holdings, LLC, versus Snell and Wilmer, LLP.*

THE COURT: Go ahead and state your appearances.

MR. OWENS: Good morning, Your Honor. Michael Owens on behalf of plaintiffs, Ryze Renewables Holdings and Ryze Renewables Nevada. And Nevada counsel, Dan Ormsby, is on the Zoom line as well.

THE COURT: Can you hear us, Mr. Ormsby?

MR. ORMSBY: I can. Thank you, Your Honor.

THE COURT: Okay. Thank you.

MS. PETERSON: And, good morning, Your Honor. Tammy Peterson, bar number 5218, on behalf of third-party defendant, Mirae Asset. With me this morning is Mr. Daniel Prince, who is admitted pro hac vice in this case and, also, sitting next to me is Mr. Daniel Scott Carlton, who has filed a Motion to Associate in this case.

THE COURT: Okay. Good morning.

MR. CARLTON: Good morning, Your Honor.

THE COURT: So, I think we have two Motions on for today. Is that right? A Motion to Strike the Untimely Motion to Dismiss and, then, the Motion to Dismiss itself?

MR. OWENS: Correct, Your Honor.

THE COURT: Okay. Okay. You all can have a seat.

So, I think we do the Motion to Strike first. On both of them, I'll tell you what I'm inclined to do.

So, you all know I have a bunch of 9:30 status checks and I'm also in trial. So, I'm going to limit your time. But I have reviewed all the briefs, and, on the Motion to Dismiss, also a number of cases.

On the Motion to Strike, I'm inclined to deny it. I hesitate to call a motion frivolous, but this one might be borderline. I guess it's based on, oh, we were -- Mirae, or however you say it, supposedly filed the Motion to Dismiss maybe late. But no default was ever entered and -- I mean, I'm not sure I've seen a motion like this.

But I welcome arguments.

MR. OWENS: Sure, Your Honor.

So, the reason that the Motion to Dismiss and the responsive pleading, generally, was untimely is because Mirae had voluntarily appeared in this case. If you remember back to May -- April and May of 2024, there was a privilege dispute involving documents that Ryze had requested from Snell and Wilmer. And, as a protocol for resolving that privilege dispute, you had entered an Order inviting, but not compelling, Mirae to appear and be heard on the Motion. Mirae took up that offer, voluntarily appeared, and not only offered their views on the discovery dispute, but affirmatively moved for relief, sought

protective orders, sought a stay, which was, in fact, granted. And this case was stayed for more than four and a half months. And, so, -- and, then, renewed the Motion for Protective Order.

I mean, there's hundreds of pages of filings that Mirae put on the docket throughout the year 2024. So, when Ryze filed a Complaint against Mirae, their prior appearance in the case meant that service proceeded under Rule 5, not Rule 4. Nevada's Rule 4 says: Unless a defendant voluntarily appears, plaintiff is responsible for serving the Summons.

So, similar to a situation where you have an Amended Complaint or a counterclaim, those are against a party that has already appeared in the case. So, service proceeds under Rule 5.

Mirae took the position that it was necessary to serve them under the Hague position. That was wrong, given that service did not need to occur abroad. And, as a result, filed a responsive pleading 77 days late.

The reason there was not a default entered, the Clerk ended up returning it. And my speculation is that this is not the typical default situation where you're counting days from the return of Summons. This is more a legal argument about why Summons was not required in the first instance.

So, I agree that the posture in which it's presented is probably not typical posture that you see default, but this is a situation where Mirae chose to play hyper technical games with the Hague service position, despite having full notice and e-service of the Complaint within, you know, 30 minutes of it being filed on January 17th, and persisted in that position, and ultimately filed a responsive pleading 77 days late.

So, --

THE COURT: So, -- but in what world, though, or what authority -- I mean, again, -- hopefully you heard what I said, but, I mean, this Motion is, at the very least, borderline frivolous because filed after their Motion to Dismiss. There had been -- there's been no default. This is a -- drastic is probably understating it, too, remedy that you're asking me to grant.

So, I mean, what -- give me something that tells me, hey, this is not frivolous and here's why, because what you just said doesn't get you even there.

MR. OWENS: Well, the reason default has not been entered is because they filed the responsive pleading before there was an entry of default. So, we needed the relief of striking the pleading as a predicate relief for the entry of default.

Look, in 99 percent of the cases, this is not a

situation where you're going to wind up in default, but the -- Mirae's position, the whole position they staked out was playing games with service. They had notice of it and they -- the position they took was, no, we're going to make Ryze undertake an unnecessary expense and impose unnecessary delay on these proceedings to insist that service occur under the Hague. And they got that legal calculation wrong.

The best authority I would point to on this is the Arizona case where -- which has a similar rule that says, you know, if the party has appeared in the case, you're not serving Summons. And, so, you're just -- service is effective under Rule 5, which is the typical e-service, just like you -- just like an Amended Complaint with a party that's already in the case, if you have a voluntary appearance.

And, so, what we're asking you to do is strike the pleadings and either enter default or direct the Court to enter the default, which is the -- I understand that it's a deviation from the typical procedure, but this -- the grounds for default is different here because it's not a situation where, you know, you're counting days from return of Summons and it's some sort of, you know, ministerial clerk function. It's because Mirae was mistaken about their entitlement to insist upon service under Hague and

that was a mistake that they made in the course of just inflicting unnecessary delay on the proceeding and costs on Ryze.

THE COURT: Thank you.

Any argument in Opposition?

MS. PETERSON: Your Honor, may we have Mr. Carlton argue this matter? He filed his Motion to Associate, but that has not yet been granted.

THE COURT: When did he file that?

MS. PETERSON: Yesterday, Your Honor.

THE COURT: Yeah. I'm sure one of his colleagues who is admitted can argue this one.

MS. PETERSON: That's fine, Your Honor.

Thank you, Your Honor. Tammy Peterson, again, for third-party defendant, Mirae Asset.

Your Honor, I think your instincts are correct. This is a borderline frivolous motion. What they're seeking to do is ask for, essentially, a default after Mirae has filed a Motion to Dismiss. Their basis for this is also, frankly, borderline frivolous. The idea that a nonparty who was addressing privilege issues with regards to subpoenas somehow can then be served by e-mail with a Complaint would really undo all of our Nevada Rules of Civil Procedure. Mirae was not a party. They were not a part of this case. Your Honor even denied a Motion to

Intervene where we asked to be a part of the case. And, so, they were not a part of the case. They were not served.

THE COURT: I mean, let's say -- even if -- you know, even if -- which it wasn't ever in front of me, but, really, even if they were, quote/unquote, a party, and even if, you know, service, not, you know, the standard service but the service via e-service on the docket was sufficient, I mean, even then, there was no default and the issue never raised before me and never raised before Mirae filed the Motion to Dismiss. Right?

MS. PETERSON: That's correct, Your Honor.

THE COURT: Okay. Thank you.

MS. PETERSON: Thank you.

THE COURT: Any rebuttal?

MR. OWENS: That's all from plaintiff, Your Honor.

THE COURT: Yeah. I mean, -- so, the Motion to Strike, denied, for the reasons articulated in the Opposition. Include in the Order, Ms. Peterson, and your side, of course submit it to Mr. Owens and Mr. Ormsby, but even assuming for sake of argument that e-service would have been proper, which, again, this is, you know, a hypothetical, even assuming that, this Motion to Strike filed after the Motion to Dismiss, which, you know, there was no default ever entered.

Ryze's position that e-service was proper is never put in front of me to, you know, order that. This Motion filed after the Motion to Dismiss. Nevada has a strong preference to resolve cases on their merits. This Motion would go directly against that. And, even, you know, whether it's the merits of like the pending Motion to Dismiss or a Motion for Summary Judgment or trial, this remedy is drastic. There's no legal or factual basis for it.

So, -- and it is, the Court -- so, include this, it's a borderline frivolous motion. So, prepare that Order. You know, articulate more of the arguments into the Order, but --

MS. PETERSON: Thank you, Your Honor.

THE COURT: Thank you.

Okay. Motion to Dismiss, bear with me. Let me organize my pile a little more.

I'm probably inclined to grant it, but, primarily, if not exclusively, based on the first-to-file rule. Sometimes you make a bunch of arguments and the last one might be the best one.

You know, there's a Federal Court case, as we are all aware, you all more aware than I am, hopefully. Yeah, the -- that overall case, you know, what we're dealing with is the claims between Ryze and Mirae or Ryze versus Mirae,

I think is what applies here and the claims in this case filed quite recently vis-à-vis Ryze versus Mirae.

The real question, I think, for me is, you know, based on cases like that Federal Court case, *Alltrade*, which the Nevada Supreme Court in *Mesi versus Mesi* incorporated and said, yeah, that's the test we follow.

To me, the main question there is whether stay or dismissal is appropriate. I think dismissal, but I'd like to hear more on that. Perhaps because it was last argument made, I'm not sure the Opposition was very thorough at all on this point, you know, on this overall argument on the first-to-file rule.

I do have a limited amount of time, like I said. I know there are a lot of other arguments raised, but I'd like your arguments today to focus on that portion.

So, I guess, maybe we'll also have to talk about maybe, you know, these AI hallucinating cases. But let's focus on the substance, at least for now, on the first-to-file argument.

MR. PRINCE: Good morning, Your Honor. Daniel Prince for Mirae Asset.

So, thank you for the Court's views on the first-to-file rule. You know, as we argued in the Motion, we think dismissal would be appropriate. The Federal Court action was filed in September of 2023 and a fair amount of

proceedings, and they're fairly extensive briefing, at least I'm presuming maybe the Federal Court might be inclined to believe that as well.

We've got -- notwithstanding several requests, I think, by Ryze to stay that action, we've been actively been moving forward in the action. And the latest Order that we've received from the Magistrate indicates that there will be no further extensions of the schedule and that the parties -- now there is a companion motion, including, substantively, the arguments that we put before the Court on a Motion to Dismiss, also pending before the Federal Court on Motion for Judgment on the Pleadings.

And, so, -- and I know also Ryze, I believe, has a Motion or two to Dismiss, as well, pending in front of the Federal Court. And, so, you know, as far as our view, that action was filed in September '23. This action was filed nearly a year and a half or so later. And, so, our argument here would be that that Court and that matter is further along in terms of discovery. We have, I think, a fairly significant declaration from the Magistrate Judge that there will be no further extensions and that Ryze has withdrawn their request for arbitration.

And, so, right now, we're laser-focused on closing out discovery. I believe the close of discovery in the Federal Court case is October of this year. And we will --

and, you know, there's a number of interim deadlines before then, but, otherwise, we intend to move pretty quickly in that case. And, so, we think dismissal here would be appropriate.

THE COURT: Thank you very much.

MR. OWENS: Thank you, Your Honor.

So, the -- it's helpful to look back at what the actual federal case is. Yes, there is a federal case pending between Ryze and Mirae, but it was initiated because Ryze had commenced an arbitration action against Mirae. Mirae sued to bring a declaratory judgment action saying, no, no, no, we don't know anything about these contracts, we don't know anything about this lawsuit that Snell and Wilmer filed, we're not responsible for the claims that arise out of it, and we're not -- can't be held to, you know, ratifying this contract that provides for arbitration even though we sued on it, at least the Court records here in Clark County disclose that we sued Ryze on it in 2021 because we didn't hire Snell and Wilmer. Snell and Wilmer filed suit on behalf of a fake client without any authority at all. Which, seems to me, a scandal that needs to be resolved by -- between all of the parties.

And what this case has is it has all the parties here. Now you have dismissed Snell and Wilmer from the case for now, but we certainly want to -- you know, we have

a reconsideration motion pending. And, short of that, we want to take that up on appeal. And if that comes back on appeal, this -- it makes sense to resolve this as between all of these parties. The resolution of this case has suffered immensely by the piecemeal cases and the bouncing back and forth.

If you recall, that when you stayed -- you stayed the case between May and September of 2024 because Mirae wanted to litigate the question of whether, you know, they were really Snell's client in Federal Court. That yielded a discovery ruling on privilege and the case was reopened in September of 2024. And, at that time, you remarked, you know, we're done deferring to the Federal Court. We have to move this forward.

I would suggest that's the right sentiment to apply here because, you know, whether this all is on appeal or this is all in this court, it makes sense to have this comprehensively adjudicated between all interested parties, the claims they may have against each other, and -- otherwise, we're in a situation where we could have different factual resolutions about this key relationship between Snell and Mirae, one emanating from the Federal Court, one emanating from the State Court.

The other point about the status of the federal case is it -- as I mentioned, it was commenced as in

response to an arbitration demand that Ryze filed. Ryze tried to enforce the res judicata effect of having been sued on this same contract by Mirae back in 2021. The Federal Court denied Ryze the preclusive effect of that Judgment based on Mirae's denial that Snell was ever representing its interest.

And, so, to enforce the arbitration clause on a contract that Ryze was sued under, it would have required a full-blown trial against an international and it would be different language witnesses, different language -- you know, international discovery, etcetera. So, we just threw in the towel and said: You know what? It's not worth it. Let's proceed in court. And, so, there's not a lot of controversy about arbitration anymore.

Now, Ryze has pleaded its counterclaims conditionally to the dec action, but our position to the Federal Court in a Motion that has been pending since November, been ripe since December and not yet ruled, is that this is all moot now. So, I don't want to have a situation where this Court defers to the Federal Court under the first-to-file rule and the Federal Court then dismisses the case on mootness grounds and then, you know, we're just continuing to play this ping pong back and forth between the proceedings.

And I would note that Mirae has defended the non-

mootness of the declaratory judgment claim about this underlying contract in part on the fact that there's a controversy in the sense that Ryze has brought claims in the State Court. So, it's all an intertangled mess and I think the only way to move it forward, whether it's here or on appeal, is to have all parties together in the same proceeding.

THE COURT: So, on that last type of point, I mean, you're talking about how it's this mess, there's two actions. I mean, doesn't that support, hey, go do one action and it's in Federal -- how does that support your argument that you should keep both the Federal and the State Court going? I mean, doesn't that support their argument that, hey, one forum's appropriate or --

MR. OWENS: So, we've expressed to the Federal Court in several Motions that are still pending that it's appropriate to have one forum and it's appropriate to have one forum with all three interested parties, Ryze, Mirae, and Snell, and that forum is the State Court.

And, so, if we're deferring to the Federal Court, then we're going to have Federal Court proceedings and State Court proceedings on appeal. So, we're still going to have multiple forums. If we're deferring to the State Court proceedings, then we're -- we are, you know, either going to have them here or on appeal, but we're all going

to be there together at one time.

And, so, I think it -- I think that clearly is the way that we get this issue resolved in a conclusive way, one way or the other, is to have a full and final adjudication of the respective rights of all three parties, Ryze, Snell, and Mirae in one proceeding. And this is the only case that would have that, whether it's here, again, or on appeal.

THE COURT: Thank you very much.

Any rebuttal?

MR. PRINCE: Thank you, Your Honor. Again, just a very quick rebuttal on the points that Mr. Owens raised.

The first is that, you know, Ryze claims that, you know, the case in the Federal Court was only about whether or not there was an arbitration. That's incorrect. Right? Our action is for declaratory relief that there is no contract at all as between Ryze as well as Mirae Asset. So, it's more broad than just whether or not there was an agreement to arbitrate. That argument, of course, is pending in the Federal Court.

The second is that Ryze presumes that all of the interested parties would be consolidated here in State Court, which I think the basis for that is not supported. Number one, Snell and Wilmer, right, was dismissed as a party. So, the only two parties, if you will, that would

remain here would be Ryze and Mirae Asset. Ryze and Mirae Asset already are litigating in Federal Court and have been since September 2023.

But, in addition to that, Ryze presumes that discovery related to Snell would not occur in the Federal Court action. I will represent to this Court we have two depositions of Snell scheduled next week pursuant to the Federal Court case. One on the 3rd, one on the 5th, and we were also supposed to have one scheduled on the 19th but that date is in flux now, given some scheduling concerns.

But the reality is, I would presume within the next, you know, several weeks, depositions of Snell will be taken. The Federal Court, the Magistrate Judge, has already issued a ruling denying a Motion for Protective Order and a Motion to Quash. And, so, discovery of Snell is going to proceed in the Federal Court. In fact, some of that discovery testimony will come out next week. And, so, I believe that we will have the opportunity to take all that there.

And, then, finally, what we have here is that the test under the first-to-file rule is about whether the cases are substantially similar. What we have here are the same parties, right, in two different courts, the counterclaims that arise as asserted, as well as the dec relief action that we asserted, are all bound up in the

Federal Court and they mirror the allegations that are before this Court.

And, so, having -- and, then, finally, the federal case is actively moving forward. We received no uncertain terms the Magistrate Judge saying there will be no further extensions after five requests by Ryze. That case is going forward and we'll proceed towards resolution.

So, with that, Your Honor, we believe that the case should be dismissed in favor of the first-to-file the Federal Court action. Thank you.

THE COURT: Thank you very much.

So, the Court is going to grant the Motion to Dismiss without prejudice, based on the first-to-file rule. The *Alltrade* Ninth Circuit Federal Court case, you know, is -- applies and has been clearly adopted by the Nevada Supreme Court in the *Mesi* case. That's 136 Nevada 748, 2020 case.

Whether you call them, as the Courts call them, steps, I think is what the Nevada Supreme Court calls them, or factors or elements, they all favor dismissal here without prejudice. So, for example, the parties and the issues are substantially the same, even if not strictly identical. That's super clear.

The Court also considers the suits' chronology. The Federal Court case is more procedurally advanced, in

particular on discovery.

Next, you consider whether equitable concerns militate against application of rule. They do not here. The first suit, which under these circumstances is clearly the federal suit, and I'm quoting or paraphrasing from *Mesi*. So, the first suit should have priority, unless special circumstances weigh in favor of the second suit. There are no special circumstances here weighing in favor of this -- this being -- the State Court case being the second suit.

The Court, the Nevada Supreme Court, went on and said that most of the issues should be resolved and addressed in the first filed suit, which, again, favors the dismissal here.

There is no forum shopping type of issue here.

It goes on, choice -- plaintiff's choice -- generally, plaintiff's choice of forum is entitled to great deference.

The pending issues in Federal Court don't militate against dismissal here. You know, the case there, again, far more procedurally advanced and discovery advanced.

The issue of dismissal in Federal Court is essentially, or substantively, substantially similar to what we would have here if the Court were to consider the remaining merits of the Motion to Dismiss.

So, notwithstanding the general statements where the first filed action presents a likelihood of dismissal, the second suit should be stayed rather than dismissed. Here, that doesn't support a stay because those dismissal issues that are pending in Federal Court would -- substantially similar to dismissal issues that would be here in this case as well. So, that actually doesn't favor a stay. It supports actual dismissal without prejudice here.

The rule's purpose is to promote judicial efficiency. And, as Ryze argues, having these two cases has been anything but judicially efficient, which, again, supports dismissal.

Let's see. The -- as I pointed out, as well, the Opposition on this first-to-file rule is quite limited. It's, you know, two paragraphs, essentially. Well, technically four paragraphs, two of which are like a line or two long. But the Opposition, substantively, you know, -- there's no authority cited in the Opposition and certainly failed completely to address the *Mesi* and *Alltrade* case factors/steps/elements.

The remainder, obviously, becomes moot, the remainder of the Motion to Dismiss, moot.

Without prejudice, obviously, because some of those same issues are pending perhaps in the federal,

first-filed case.

To add, as well, Snell has been dismissed here. So, we -- as pointed out, and incorporate, you know, the more detailed facts and arguments in the Motion and Reply. Certainly, there's a pending Motion for Reconsideration, which I'll decide at that appropriate time, but, as of now, Snell has been dismissed.

So, make a detailed Order. Submit it to Mr. Owens and Ormsby for review and approval.

MS. PETERSON: Thank you, Your Honor. We'll do that.

THE COURT: Thank you.

And, with that, on the -- sorry. On the AI issue, I don't think I need to address it, other than I'm sure you will correctly cite things in the future.

MR. OWENS: And, Judge, while I'm here in front of you, I want to extend my apologies to you and opposing counsel.

THE COURT: Thank you.

MR. OWENS: I take it seriously.

THE COURT: Thank you all.

PROCEEDING CONCLUDED AT 9:50 A.M.

* * * * *

## CERTIFICATION

I certify that the foregoing is a correct transcript from the audio-visual recording of the proceedings in the above-entitled matter.

## AFFIRMATION

I affirm that this transcript does not contain the social security or tax identification number of any person or entity.

Kristen Lunkwitz

KRISTEN LUNKWITZ
INDEPENDENT TRANSCRIBER