DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

JOHN M. EDGAR
*(Admitted Pro Hac Vice)*
JOHN F. EDGAR
*(Admitted Pro Hac Vice)*
MICHAEL R. OWENS
*(Admitted Pro Hac Vice)*
ALEXANDER C. MELIN
*(Admitted Pro Hac Vice)*
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Suite 440
Kansas City, Missouri 64108
Telephone: 816.531.0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
**MILLER SHAH LLP**
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Mirae Asset Securities Co., Ltd., a Republic of Korea company,

Plaintiff,

v.

Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,

Defendants.

CASE NO. 2:23-cv-01492-APG-NJK

**MOTION TO STRIKE OR DISREGARD EVIDENCE AND ARGUMENTS FROM REPLY BRIEF PURSUANT TO FED. R. CIV. P. 37(C)(1) AND 56(C)(2) BY RYZE RENEWABLES HOLDINGS LLC AND RYZE RENEWABLES NEVADA LLC**

Judge: Andrew P. Gordon

Date Action Filed: September 22, 2023

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,

Counterclaimants,

v.

Mirae Asset Securities Co., Ltd., a Republic of Korea company,

Counterdefendant.

Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC (collectively, "Ryze") submit this Motion to Strike or Disregard Evidence and Arguments from Reply Brief under Fed. R. Civ. P. 37(c)(1) and 56(c)(2).

**INTRODUCTION**

The Federal Rules exist to preclude trial by ambush. Yet Mirae's Reply relies on a concealed witness and a legal theory invented after Ryze filed its Response.

*First*, Mirae hopelessly attempts to salvage its case using a witness it hid for 17 months and never disclosed in discovery. Rule 26(a) is the foundation of federal discovery; it exists so parties can rely on their opponent's witness list rather than guess whom the opponent might call. For 17 months, Mirae's disclosures identified just three witnesses; E. Park was not among them. Ryze learned her identity only after discovery closed. Yet Mirae now presents Park as its load-bearing summary judgment witness—notwithstanding Ryze's objections that she was never disclosed, that her testimony to matters "discussed and understood" by others lacks foundation, and that Mirae's nondisclosure forecloses any opportunity to probe the bases for her assertions. Rule 37(c)(1)'s self-executing sanctions enforce this system by excluding such surprise testimony.

*Second*, Mirae rewrites its summary judgment motion on reply. A reply brief is an opportunity to rebut the response, not a second chance to introduce new and distinct arguments after the first iteration did not fare well. In its opening brief, Mirae argued that Ryze "lacked

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

standing" to seek damages. In its Reply, Mirae abandons standing entirely, conceding that "Mirae Asset does not contend that Ryze lacks standing to sue as a contract party." Mirae Asset's Reply in Support of Motion for Summary Judgment, ECF No. 380 ("Reply") at 10. Instead, it pivots to an entirely new argument: that Ryze failed to prove damages with sufficient certainty. To support its new position, Mirae introduces four new exhibits and a new expert critique—material available months ago but disclosed for the first time on Reply.

Mirae chose to rely principally on an undisclosed witness and assert that a standing barrier prevented Ryze from pursuing the breach of contract claims it brings here—or from establishing Article III standing at all. It must live with those decisions. Accordingly, Ryze requests that the Court strike E. Park's declarations and the new damages evidence.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

## ARGUMENT

Mirae's Reply relies on material withheld until Ryze could no longer respond. E. Park should have been disclosed during discovery; the proof-of-damages arguments should have been raised in the opening Motion. By withholding both until its Reply, Mirae has effectively insulated its principal witness and its new valuation theories from adversarial testing. The Rules provide a straightforward remedy: strike E. Park's declarations and Exhibits 102–105 and decline to consider the new damages arguments.

### I. LEGAL STANDARDS

Three rules govern this motion. First, Rule 37(c)(1) mandates exclusion of witnesses not disclosed under Rule 26(a)—the sanction is "self-executing" and "automatic," and the burden to prove harmlessness falls on the nondisclosing party. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001). Second, Rule 56(c)(2) permits objections that evidence "cannot be presented in a form that would be admissible." While the ordinary vehicle for this argument is the opposition brief. *Tomahawk Mfg., Inc. v. Spherical Indus., Inc.*, No. 2:23-cv-01007-APG-NJK, 2025 WL 1413730, at *2 (D. Nev. May 15, 2025) (refusing to consider "separately filed objections" to summary judgment evidence), when evidence first appears on

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Reply, a motion to strike is the only mechanism. Finally, it is an elementary rule of motion practice that a "district court need not consider arguments raised for the first time in a reply brief"; the remedy is to strike or disregard the new matter. *Tovar v. USPS*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993); *accord Meggs v. Boulevard Ventures, LLC*, No. 214CV01535APGGWF, 2016 WL 1259390, at *3 (D. Nev. Mar. 30, 2016); *FortuNet v. Eqube Int'l Inc.*, No. 215CV00312APGCWH, 2016 WL 344514, at *5 (D. Nev. Jan. 27, 2016).

## II. THE COURT SHOULD STRIKE THE REPLY DECLARATION OF E. PARK

The Reply Declaration of E. Park should be stricken on two independent grounds. First, it introduces new matter improper on reply—testimony and theories that appear nowhere in the MSJ Declaration and do not respond to anything Ryze argued. Second, even if the substance were proper reply material, the witness herself was never disclosed, and Rule 37(c)(1) bars her testimony.

### A. The Reply Declaration Introduces New Matter Improper on Reply

When inadmissible evidence first appears in a reply brief, the nonmovant may move to strike. *Moore v. Nat. Life Inc.*, No. 2:19-cv-02185-JAD-DJA, 2021 WL 2546270, at *1 (D. Nev. June 18, 2021) (striking undisclosed evidence raised for first time on reply because "there is little question that this evidence . . . would surprise and prejudice" opposing party). Reply evidence must respond to the opposition—not introduce new theories or reverse the movant's own position.

E. Park's MSJ Declaration described a formal gatekeeping process. The Assessment Team reviewed the Ryze deal, "had a negative opinion," and "documented its findings in an 'Issue Report.'" Declaration of Eun-Mi Park in Support of MSJ, ECF No. 333 ("E. Park MSJ Dec.") ¶ 6. "Due to the negative rating, the Assessment Team discontinued its review." *Id.* ¶ 7. "Because the Assessment Team had rejected the deal in early 2021, it was never presented to the Mirae Asset Investment Assessment Committee." *Id.* Lee was told, and he "understood that the deal had been dropped." *Id.* ¶ *8*. On this account, a negative Assessment Team opinion terminated Lee's authority to pursue the transaction. Every Mirae declarant indicates surprise that Lee continued after the

Assessment Team purportedly rejected it. *See* Declaration of Huijun Yang, ECF No. 4-2 ("Yang Dec.") ¶¶ 9–10; Declaration of Hyun-Joo Park, ECF No. 4-1 ("H.J. Park Dec.") ¶ 12; E. Park MSJ Dec. ¶ 8.

The Reply Declaration introduces a different account—one that appears nowhere in the MSJ Declaration and does not respond to anything Ryze argued. *First*, Park now testifies that the Issue Report "was intended to make clear internally" a negative opinion. Reply Declaration of Eun-Mi Park, ECF No. 382 ("E. Park Reply Dec.") ¶ 5. That testimony about her subjective drafting intent is new. *Second*, the Reply Declaration announces that "the Assessment Team does not provide an explicit opinion on each deal" and that deals "may not be marked as officially 'denied.'" *Id.* ¶ 6. The Yang Declaration described a formal system in which the Assessment Team "generally issues one of three opinions, 'positive,' 'neutral,' or 'negative.'" ECF No. 4-2 at 3. The Reply Declaration replaces this with an amorphous, non-standardized process—one that depends on what individual drafters subjectively "intended to make clear internally," E. Park Reply Dec. ¶ 5, rather than the formal ratings system that assigns a "positive," "neutral," or "negative" evaluation to determine a deal's fate. *Compare* Yang Dec. ¶ 4(b), ECF No. 4-2 at 3 (Assessment Team "generally issues one of three opinions, 'positive,' 'neutral,' or 'negative'"), *with* E. Park Reply Dec. ¶ 6 (Assessment Team "does not provide an explicit opinion on each deal"). *Third*, the Reply Declaration announces that when the Assessment Team issues a negative opinion, it does so only "as to the deal as currently structured, meaning other employees at the Company may seek to alter the deal and resubmit it with a different structure as necessary." E. Park Reply Dec. ¶ 6. Park elaborates that "the possibility remained that the deal may be altered in such a manner that it could have been reviewed once again." *Id.* ¶ 7.

This is a stark departure from the MSJ Declaration. On the MSJ account, the Assessment Team "rejected the deal" and Lee "understood that the deal had been dropped." E. Park MSJ Dec. ¶¶ 7-8. On the Reply account, a negative opinion applies only to the deal "as currently structured" and "other employees . . . may seek to alter the deal and resubmit." E. Park Reply Dec. ¶ 6. The MSJ Declaration says the Assessment Team's negative opinion ended the matter. The Reply



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Declaration says it invited restructuring—precisely what Lee undertook. None of this responds to Ryze's Opposition. The Reply Declaration introduces a new theory of Assessment Team procedures, a new account of what a negative opinion means, and new testimony about Park's subjective intent. This new and materially different factual contention makes its first appearance on Reply, where Ryze cannot respond.[1]

**B. Even If the Declaration Were Proper Reply Evidence, It Should Be Excluded Under Rule 37(c)(1)**

Even if the Court were to treat the Reply Declaration as proper reply evidence, it should nonetheless be excluded. Rule 37(c)(1) is self-executing: a party that fails to disclose a witness as required by Rule 26(a) "is not allowed to use that . . . witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[2]

*1. Mirae Never Disclosed E. Park as a Witness*

Mirae never identified E. Park in initial disclosures, never identified her in response to interrogatories, never identified her in amended disclosures served weeks before discovery closed, and never identified her as a Rule 30(b)(6) designee—leaving Ryze with no idea whom Mirae intended to produce. Ryze learned of E. Park only when she signed an interrogatory verification page after the close of discovery, and did not learn that Mirae intended to rely on her testimony until Mirae filed her initial declaration in support of its Motion. *See* Resp. at 5–9.

---

[1] A movant whose own testimony shifts between motion and reply has, at minimum, failed to demonstrate the absence of a genuine factual dispute (and, more likely, has created one).

[2] E. Park's attestations as to her subjective intent in drafting the Issue Report *(i.e.*, that the Report "was intended to make clear internally" a negative opinion, E. Park Reply Dec. ¶ 5), foreclose any argument that Mirae's generic corporate disclosure satisfies Rule 26(a). *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of "each *individual* likely to have discoverable information").

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

*2. Mirae Cannot Demonstrate Substantial Justification or Harmlessness*

Should Mirae defend the Reply Declaration the same way it defended the original—by asserting that "documents produced in discovery demonstrate the witness's involvement" and that Ryze "chose not to depose her," Reply at 17—that defense fails. Mirae relies on *Manansingh v. United States*, 2025 WL 1309260 (D. Nev. May 6, 2025), for the proposition that document production can substitute for formal disclosure. But *Manansingh* is inapposite. The undisclosed witness there was named 25 times in the operative complaint and served as the prosecuting attorney in the underlying criminal prosecution—making it "entirely unsurprising" he would testify. *Id.* at *1. E. Park, by contrast, did not appear in Mirae's complaint, its initial disclosures, its interrogatory responses, or its amended disclosures. She surfaced only when she signed an interrogatory verification page after discovery closed.

Nor can Mirae credibly argue that Ryze "declined" to depose E. Park. Even in Mirae's own document production, E. Park's email address appears on just 35 of over 19,000 documents—ranking 15th among 49 Mirae employees by frequency of appearance. Had Ryze been forced to divine witnesses from email metadata rather than Rule 26 disclosures, it would have had to depose 14 other Mirae employees before reaching E. Park—13 of whom were also never disclosed. That shotgun approach is exactly what Rule 26 was designed to prevent.[3] Indeed, Mirae itself foreclosed any opportunity for Ryze to depose E. Park by seeking a protective order to avoid producing any

---

[3] The chronology paints an even more troubling picture than the numbers alone. Before October 4, 2025, Mirae had produced 13,311 documents—only 6 of which came from files maintained by E. Park. On October 4, with nine days left in the discovery period and the six remaining business days occupied by nine already-scheduled depositions, Mirae produced 44 additional documents from E. Park's files—all in Korean—including the "Issues Report" on which Mirae so heavily relies in its Motion. The remaining 6 documents from E. Park's files were produced on October 13—the day after discovery closed. Recall that Mirae insisted it would be trial-ready in February 2025 and urged the Court to try this case in its entirety—not just the arbitration piece—by that date. *See* Joint Status Report, ECF No. 178 at 6-7 (filed Dec. 6, 2024) ("Mirae Asset continues to propose a February 2025 trial date" and asserting that "additional discovery, if any, can be completed in an orderly, efficient, and expeditious manner."). It is hard to conceive of any reasonable or innocent explanation for why documents and witnesses Mirae now contends dispose of the entire case were not disclosed until eight months after Mirae represented to the Court it would be ready for trial.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

witness in the United States. ECF Nos. 284, 285, 288. In opposing that motion, Ryze explicitly objected that Mirae sought protection for witnesses "whose identities remain entirely unknown." ECF No. 291 at 3, 7, 11. Mirae cannot now fault Ryze for failing to depose a witness Mirae never disclosed and actively shielded from examination.

## III. THE COURT SHOULD STRIKE OR DISREGARD MIRAE'S NEW ARGUMENTS AND SUPPORTING EVIDENCE ATTEMPTING TO TRANSFORM ITS LEGAL ARGUMENT AS TO STANDING INTO ONE THAT CONTESTS SUFFICIENCY OF DAMAGES PROOF

"A motion to strike is appropriate when new arguments are raised in a reply brief." *Willits v. City of Los Angeles*, No. CV 10-5782 CBM (RZX), 2012 WL 13066520, at *1 (C.D. Cal. May 21, 2012). "The Ninth Circuit has repeatedly held, where new evidence is submitted for the first time in a reply brief, that evidence may be stricken." *Albert v. Astrue*, No. CV 08-267-TUC-FRZ, 2011 WL 2144631, at *15 (D. Ariz. Apr. 4, 2011), report and recommendation adopted, 2011 WL 2144626 (D. Ariz. June 1, 2011). Here, Mirae's Reply abandons the damages argument Ryze answered and substitutes one Ryze never had the opportunity to address. The new theory arrives with new exhibits, a new expert critique, and no opportunity for Ryze to respond. The Court should strike or disregard this new argument and the new evidence it relies upon.

### A. Mirae Abandoned Its Standing Theory on Reply and Substituted a New One Ryze Had No Opportunity to Address

Mirae's Motion and Reply present two different challenges to Ryze's damages. In its Motion, Mirae argued that Ryze was legally barred from seeking damages at all under the theory of cognizability. Because the refinery is owned by Ryze Las Vegas—a subsidiary—Mirae claimed Ryze suffered no injury the law recognizes. Mirae asserted that Ryze "lacks standing to pursue" damages, "cannot seek damages," "is barred from recovering" damages, and is "[l]acking the ability to seek damages." Mirae's Motion for Summary Judgment, ECF No. 331 ("MSJ") at 10, 23–24, 26. The cases matched the theory: *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), for Article III standing; *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), for the proposition that a parent lacks title to subsidiary assets;

*Ashley Creek Props. v. Larson*, 403 F. App'x 273 (9th Cir. 2010), *Infinity Global Consulting v. Tilray*, 2021 WL 880391 (C.D. Cal. 2021), and *Quest Software v. HealthEquity*, 2024 WL 3512088 (C.D. Cal. 2024), for corporate separateness. MSJ at 23–26. Every authority addressed the same question: whether Ryze could even "seek" or "claim" or "pursue" these damages as a matter of law.

Ryze distinguished each of Mirae's standing authorities. *Ashley Creek*, *Quest Software*, and *Infinity Global* involved one entity asserting another's rights—not a contract party enforcing its own agreements. Resp. at 22–25. Ryze also demonstrated that Mirae's standing argument rested on a false premise: that Ryze's only claimed damages flowed through its subsidiary. That premise derived from Mirae's mischaracterization of Ryze's Rule 26 disclosures. *See* Resp. at 23–24. But even accepting Mirae's framing, Ryze showed that it suffered over $27 million in direct harm independent of any subsidiary injury—more than sufficient to establish Article III standing and satisfy the damages element of its contract claim, and dispositive of the standing challenge on its own terms. *Id.* at 24.

Mirae's Reply purports to abandon this theory. It now concedes: "Mirae Asset does not contend that Ryze lacks standing to sue as a contract party." Reply at 10. But in place of the standing challenge Ryze answered, Mirae substitutes a sufficiency-of-proof challenge Ryze never had the opportunity to address. Now, according to Mirae's Reply, Ryze "provides no evidence" of damages; Ryze's expert measured the wrong thing; Pearson's declaration is "conclusory"; Ryze failed to meet the "reasonable certainty" standard. Reply at 10–11.

This is a bait and switch. A challenge to whether damages are legally cognizable—whether a party may seek them at all—calls for an entirely different response than a challenge to whether damages are adequately proven. Ryze answered the first challenge, distinguishing each of Mirae's standing cases and demonstrating that its claimed injuries are legally cognizable. It was denied any opportunity to answer the second—to marshal the valuation evidence, expert testimony, and factual record that the parties invested substantial resources developing through discovery and that

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Ryze stands fully prepared to present. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). This Court should therefore strike this new theory presented solely in Mirae's reply brief.

**B. The New Exhibits Backfill Arguments Available at Filing**

To support its new theory, Mirae submits four exhibits that appeared nowhere in its Motion: a member schedule (Ex. 102), two proposed sale documents (Exs. 103-104), and the Mott damages report (Ex. 105). These exhibits do not respond to anything Ryze raised in opposition. They support an affirmative argument Mirae chose not to make the first time around. But evidence is properly submitted in reply only when it "directly respond[s] to evidence raised in the opposition." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 560 n.87 (C.D. Cal. 2014). Exhibits 102–105 do not meet that standard.

**C. The Prejudice to Ryze Is Incurable**

Mirae's Reply creates two forms of incurable prejudice: it lodges an expert-methodology critique in a posture where the critique cannot be tested, and it advances a sufficiency-of-proof challenge Ryze had no opportunity to rebut.

*1. The Reply's Expert Critique Circumvents Daubert Entirely*

Mirae's Reply attacks Ryze's damages expert in a footnote, asserting that Mr. Mott measured "lost business value . . . of the Las Vegas renewable diesel plant" rather than Ryze's equity loss. Reply at 10 n.13. That is a mischaracterization of the report itself. Mott's express assignment was to "determine the loss in equity value of the project" to the Ryze parent company. *See* Ex. 105, App'x 2486. More importantly, expert-methodology disputes do not belong in Reply footnotes. They warrant fully briefed *Daubert* motions, rebuttal experts, and, in many cases, evidentiary hearings. Mirae seeks to bypass that entire process.

*2. The Reply's Sufficiency-of-Proof Challenge Rests on a Selective Reading of the Record*

Mirae cites two proposed sale documents (Exs. 103–104) to argue that Ryze's equity value is "at most approximately $240 million"—"exceedingly lower" than the damages Ryze claims.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Reply at 10 n.13. One reflects a distressed transfer in satisfaction of an outstanding note; the other reflects an employee transfer structured as compensation. Both involve illiquid membership interests and both carry pricing preferences favoring the acquiring party—neither approximates the fair market value of a going concern. And Mirae ignores valuation evidence in the record: owner testimony valuing the project at over $1 billion, derived from an independent appraisal that Mirae itself demanded and accepted during the parties' negotiations of the underlying transactions in dispute. *See Mort Wallin v. Com. Cabinet Co.*, 784 P.2d 954, 955–56 (Nev. 1989) (owner may testify regarding value of property). The suitability of alternative valuation methods and the factual circumstances surrounding these foundationless draft transaction documents are precisely the kind of disputed issues that require full briefing, and a complete evidentiary record, not a drive-by footnote in a Reply brief.[4]

The Court should strike Exhibits 102–105 and the new damages arguments that depend on them. Alternatively, if the Court is inclined to consider Mirae's sufficiency-of-proof challenge, it should permit supplemental briefing so that Ryze may respond on the merits—not resolve these disputes on the basis of a reply-brief ambush.

* * *

## CONCLUSION

Discovery rules exist to prevent the tactics Mirae employed here; summary judgment procedures exist to ensure claims are tested on a full record, not on arguments raised when the opponent has been silenced. Mirae violated both. The Court should strike the Reply Declaration of E. Park and Exhibits 102–105 and decline to consider the new arguments that depend on them.

---

[4] At the risk of filing what amounts in function to a sur-reply—which this District disfavors, *see* LR 7-2—Ryze does not submit these materials here. It proffers this summary only to illustrate the scope and dimension this dispute would take, and why a drive-by challenge in a reply-brief footnote is not the appropriate vehicle to litigate this extensive and important issue. Ryze will readily comply with any directive from the Court to respond in full.

Dated: January 6, 2026.

Respectfully submitted,

DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com
**EDGAR LAW FIRM LLC**

*<u>/s/ Michael R. Owens</u>*
John M. Edgar, (PHV)
John F. Edgar, (PHV)
Michael R. Owens (PHV)
Alexander C. Melin (PHV)
2600 Grand Boulevard, Ste. 440
Kansas City, Missouri 64108
Telephone: (816) 531-0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

**MILLER SHAH LLP**
BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

*Attorneys for Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*