DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone:  702.562.8820
Facsimile:  702.562.8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

JOHN M. EDGAR
*(Admitted Pro Hac Vice)*
JOHN F. EDGAR
*(Admitted Pro Hac Vice)*
MICHAEL R. OWENS
*(Admitted Pro Hac Vice)*
ALEXANDER C. MELIN
*(Admitted Pro Hac Vice)*
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Suite 440
Kansas City, Missouri 64108
Telephone:  816.531.0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

JAMES C. SHAH
(Admitted Pro Hac Vice)
BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
**MILLER SHAH LLP**
jcshah@millershah.com
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA  19103

*Attorneys for Defendants/Counter-Claimants Ryze
Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Mirae Asset Securities Co., Ltd., a Republic of Korea company,<br><br>Plaintiff,<br><br> v.<br><br>Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,<br><br>Defendants. | CASE NO. 2:23-cv-01492-APG-NJK<br><br>**DEFENDANTS' OPPOSITION TO MIRAE ASSET'S MOTION FOR ISSUANCE OF LETTERS OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**<br><br>Judge: Andrew P. Gordon<br><br>Date Action Filed:  September 22, 2023 |

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,

Counterclaimants,

v.

Mirae Asset Securities Co., Ltd., a Republic of Korea company,

Counterdefendant.

Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC (collectively, "Ryze") respectfully submit this Opposition to Plaintiff Mirae Asset Securities Co., Ltd.'s ("Mirae") Motion for Issuance of Letters of Request Under the Hague Convention on the Taking of Evidence Abroad (ECF No. 418).

**INTRODUCTION**

After persuading this Court to reopen discovery for a four-week deposition window—and then persuading the District Court to extend that window to May 22, 2026—Mirae's counsel assured the District Court he would "certainly … be diligent about pursuing" these depositions. ECF No. 405 at 22. He was not. Mirae waited sixty days, took no action, and filed a motion for the slowest discovery mechanism available under federal law: Letters of Request to the Republic of Korea's National Court Administration, a process that takes six to eighteen months to complete.

The Court should deny the Motion for three reasons. *First*, the Motion is untimely: Mirae waited seventeen months of active discovery and then sixty of the sixty-six days remaining after the Court extended the deadline for its benefit. The Korean NCA's reported execution data show that most Letters of Request are never executed at all, those that are take six months or longer, and summary judgment will almost certainly be decided before any testimony could arrive. *Second*, the proposed Letters are so deficient that they independently warrant denial: they exclude all cross-examination questions and exhibits from Ryze, omit any request for counsel attendance, and depend on documents Mirae is withholding in violation of this Court's January 30 production order—the very documents Ryze needs to examine these witnesses. *Third*, if the Court

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

nevertheless issues the Letters, it should not do so on Mirae's one-sided terms: the Letters should include Ryze's cross-examination questions, correct Mirae's leading questions, request counsel attendance, and include additional witnesses.

## I.   BACKGROUND.

Hyunjoo Park and Huijun Yang are Mirae's witnesses. They are the only current or former Mirae employees ever disclosed under Rule 26(a). Mirae relied on their declarations—prepared with Paul Hastings' assistance—at the outset of this litigation (ECF Nos. 4-1, 11), again in support of summary judgment in November 2025 (ECF Nos. 334, 335), and at every critical juncture in between. Ryze has sought their depositions for over a year and does not dispute their importance.

Yet across seventeen months of active discovery—during which Mirae deposed more than twenty witnesses and served forty-seven third-party subpoenas—Mirae never once noticed depositions of Park or Yang. When Mirae moved to reopen discovery, Ryze opposed, arguing that any extension would cascade through the case schedule and reward seventeen months of inaction. ECF No. 319 at 18–22. This Court granted a bounded reopening—four weeks, with a deadline of February 6, 2026—concluding that a brief extension was proportionate given the limited scope of the depositions. ECF No. 390.

Mirae then noticed the depositions from Korea. Ryze objected under Rule 72, arguing that remote depositions in which the witness appears from the Republic of Korea are unlawful under Korean law. The District Court denied Ryze's objection in pertinent part because this Court's order did not purport to authorize depositions from Korea—but the District Court added a prohibitory clarification: the depositions "cannot take place in South Korea without following the Hague Evidence Convention or otherwise complying with South Korean law." ECF No. 405 at 20. The District Court was careful to frame this as a clarification, stating that it would "clarify, not overrule or change" this Court's order. *Id.* It directed "the parties [to] figure out where is the proper place to take these depositions." *Id.* at 21. And it extended the deadline approximately 120 days—to

May 22, 2026—after Mirae's counsel assured the Court he would "certainly … be diligent about pursuing" the depositions. *Id.* at 22.

The District Court's oral ruling contains no operative mandates beyond the clarification and corresponding extension. It did not order Mirae to pursue letters of request. It did not evaluate the timeline, procedure, or scheduling impact of a Hague Convention process. It did not purport to divest this Court of its ordinary discretion and authority over discovery management—and indeed went out of its way to say that was not its role. *See id.* at 20 ("clarifying, not overruling or changing" this Court's order); *id.* at 21 (directing the parties, not the Court, to "figure out" the appropriate procedure). The question of whether to sign letters rogatory that will initiate a six-to-eighteen-month diplomatic process was never before the District Court, and nothing in its ruling answers it.

What Mirae now proposes bears no resemblance to the depositions that justified the reopening. Mirae went silent for six weeks after the extension, providing no updates until Ryze sent a status inquiry on March 2. On the sixtieth day, Mirae filed this Motion—not for the remote depositions the Court contemplated, but for Letters of Request to the Republic of Korea's National Court Administration, a diplomatic and judicial process that takes six to eighteen months and whose timeline this Court cannot control. Whatever showing of diligence and good cause supported a bounded four-week extension to take two remote depositions does not bind this Court to approve an indefinite international judicial assistance proceeding that is a near-statistical certainty to require yet another extension of the May 22 deadline if it is to serve any purpose at all.

The dramatically changed posture of Mirae's request invites a fresh application of the Court's discretion.

## II.   THE COURT RETAINS DISCRETION WHETHER TO ISSUE LETTERS OF REQUEST.

Whether to issue letters rogatory "is a matter of discretion for the court." *Asis Internet Servs. v. Optin Global, Inc.*, No. C-05-05124 JCS, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007). That discretion extends not only to whether to issue letters but to what form they take, what

- 4 -

scope of discovery they authorize, and what conditions must be satisfied before the court signs them. In *Scalia v. International Longshore & Warehouse Union*, the court narrowed deposition topics, eliminated duplicative witnesses, and modified the letters before issuance. 337 F.R.D. 281, 292–93 (N.D. Cal. 2020). In *Dalrada Financial Corp. v. Bonar*, the court granted depositions but denied document requests that lacked reasonable particularity. No. 24-cv-2166-BTM-BLM, 2026 WL 708354, at *6–7 (S.D. Cal. Mar. 12, 2026).

ARGUMENT

The Court should deny the Motion. Mirae waited too long to invoke a process this slow, and the Korean NCA's track record offers no confidence the process will yield anything at all. If the Court nevertheless concludes that issuance is warranted, it should not sign the Letters in their current form—they are one-sided instruments that would impose months of delay on Ryze while producing testimony inadmissible at trial.

I.   **THE COURT SHOULD EXERCISE ITS DISCRETION TO DECLINE ISSUANCE.**

Letters rogatory are, as the Supreme Court recognized, "a complicated, dilatory and expensive system." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 531 (1987). The Republic of Korea's National Court Administration must receive the Letters, assign them to a Korean district court, arrange Korean-language translation of the questions, schedule the examinations, conduct them through a Korean judge under Korea's inquisitorial civil procedure, prepare stenographic and videographic records, and return the executed Letters to this Court. By all available authority, including the HCCH's own Practical Information questionnaire for Korea, this process takes six to twelve months.

The Korean NCA's track record suggests the process may not produce anything at all. South Korea has reported execution statistics to the HCCH for only three years since acceding to the Convention in 2009. In 2012, the NCA received 19 Letters of Request and returned 13—sixty-eight percent—unexecuted. HCCH, Authority—Republic of Korea (Evidence). In 2014, the NCA received 11 requests, executed only 2, and left 7 pending. *Id.* Even in its best reported year (2018),

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

the NCA received 10 requests, executed 6, and half of those took six months or longer. *Id.* These timeframes reflect only the Korean court execution phase; they do not include the time for this Court to rule on the motion, the preparation and certified translation of all materials into Korean, physical transmission to Seoul, or back-translation of whatever the Korean court returns. The U.S. Department of State estimates the full end-to-end process at six months to a year. 7 FAM 930.

A letter of request is not a notice of deposition under Federal Rule of Civil Procedure 30. It requires this Court's signature and seal, transmits the Court's authority to a foreign sovereign, and commits both countries to a judicial assistance process over which this Court has no control. Once signed, the timeline belongs to the Korean NCA. The Court authorized depositions—proceedings in which both parties examine the witness. Korea's inquisitorial procedure permits only a Korean judge to question the witness from a script. These are material differences, and the Court's prior order cannot be read as pre-approving the process Mirae now seeks.

Mirae's delay places this case squarely within the line of authority denying letters rogatory for lack of diligence. In *Lion Electric Co. v. Nikola Corp.*, the court denied all three motions for letters rogatory to Canada where the requesting party had known about the witnesses for over a year, identified them in its own initial disclosures, and filed just over one month before the discovery cutoff. No. CV-23-00372-PHX-DGC, 2024 WL 4562828, at *1 (D. Ariz. Oct. 23, 2024). The court did not reach relevance; the diligence failure was dispositive. *Id.* at *2. Here, Mirae's position is far weaker. Mirae did not just wait a year; it waited through seventeen months of active discovery and then squandered another sixty days after the Court extended the deadline for its sole benefit. In *HDMI Licensing Administrator, Inc. v. Availink, Inc.*, the court denied letters rogatory to France and the Netherlands filed in the final weeks of discovery, noting that it was "not blind to the tactical use" of the motion's timing. No. 22-cv-06947-EKL, 2025 WL 799036, at *9–10 (N.D. Cal. Mar. 13, 2025). Mirae's conduct mirrors the pattern the *HDMI* court identified: the Motion was filed shortly before Mirae would inevitably need to request a third extension of the discovery deadline—an extension it will justify by pointing to the very letters rogatory it delayed filing.

This Court's own experience confirms the result. In *PlayUp, Inc. v. Mintas*, this Court granted letters rogatory for depositions in Australia on February 21, 2024, noting that the movant "appear[ed] to contemplate completing this foreign discovery before the current cutoff." 2024 WL 726941, at *1. The Australian depositions were never completed. When the movant sought to reopen discovery, this Court denied the request. *PlayUp*, ECF No. 606. Mirae's position is weaker in every respect: in *PlayUp*, the movant filed promptly and the delay was the Australian government's fault; here, Mirae waited sixty days, the Korean NCA's processing timeline is longer than Australia's, and the delay is Mirae's own. As this Court has observed, "parties delay at their own peril in seeking foreign deposition testimony until the waning days of the discovery period." *PlayUp*, 2025 WL 315118, at *4 n.7.

Mirae will contend that the District Court authorized whatever procedure is necessary. It did not. The District Court's ruling contained no operative mandates beyond a prohibitory clarification and a corresponding extension of time. The District Court mentioned the Hague Convention not to authorize it but as an accusation—"Why can't you do that?" ECF No. 405 at 17—and Mirae conceded the obstacle was self-created. The District Court expected the extension to be an outside date for completion, not initiation—it was "simply trying to set an outside date to get them completed." *Id.* at 22.

If the Court is not inclined to deny the Motion outright, it should issue the Letters subject to the modifications in Section II but expressly decline to extend the May 22, 2026 discovery deadline. Summary judgment briefing has been complete since December 2025. Judge Gordon's median time to rule on a motion for summary judgment is 197 days, and sixty-one percent of his rulings issue between 90 and 245 days from filing. Hon. Andrew P. Gordon, Litigation Analytics, Westlaw Edge (time to rule, motions for summary judgment) (last visited Mar. 30, 2026); *see also* U.S. District Court for the District of Nevada, Litigation Analytics, Westlaw Edge (time to rule, motions for summary judgment) (last visited Mar. 30, 2026) (district-wide median of 219 days). These metrics measure filing to disposition, not ripeness to disposition, but the difference here is negligible: the motions were filed on November 12, 2025, and under LR 7-2(b)'s default schedule

would have been ripe by December 3; stipulated extensions added only ten days, making the motions ripe by December 13. Given the routine nature of such extensions in summary judgment practice, the ten-day addition provides no reason to expect an upward departure from Judge Gordon's historical averages. Even a generous estimate would place a ruling no later than mid-June 2026—three to four months before the Korean NCA process has any reasonable prospect of yielding results, and that assumes the Letters are executed at all.

The importance of the testimony is a double-edged sword: if it is as critical as Mirae claims, Mirae's failure to pursue it diligently is all the more inexplicable. *Lion Elec.*, 2024 WL 4562828, at \*2; *HDMI Licensing*, 2025 WL 799036, at \*9 ("if these Founder meeting documents were important to resolving Availink's counterclaims (and not merely relevant), then Availink surely would have sought letters rogatory long ago").

## II.   IF THE COURT ISSUES LETTERS DESPITE MIRAE'S DELAY, IT SHOULD ENSURE THE PROCESS IS NOT ONE-SIDED.

Ryze's primary position is that the Motion should be denied. But if the Court concludes that issuance is warranted and that the resulting delays should be imposed on both parties, the Letters should not go out in their current form. Korea's inquisitorial procedure means that the form of the Letters determines the substance of the testimony—and once transmitted, the opportunity to correct deficiencies is permanently foreclosed. If this process is going to stall the case, it should at least produce evidence that both sides can use.

### A.  The Letters Must Include Ryze's Cross-Examination Questions.

Korea's civil procedure is inquisitorial. A Korean judge reads written questions to the witness and records the answers. The parties' attorneys do not examine the witness, even if present. Under Article 292 of Korea's Civil Procedure Act, the judge may rephrase or strike questions. The only mechanism for cross-examination is submitting written questions for inclusion in the Letters *before* they are transmitted to Korea. Once transmitted, the opportunity is permanently foreclosed.

Mirae's proposed Letters contain 109 questions for Park and a comparable set for Yang—every one drafted by Mirae's counsel. The Letters exclude cross-examination entirely. No

BAILEY✦KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

mechanism is provided for Ryze to submit questions. No mechanism is provided for Ryze to present exhibits. Mirae's Letters instruct the Korean judge to hand Park five documents, all selected by Mirae. Ryze gets none. If Ryze sought to confront Park with the CLA signature page, the Offering Memorandum, the Assessment Team's Issues Report, or any contemporaneous communication bearing on Lee's authority, there is no way to do so.

This omission is fatal to admissibility—and is itself a reason to deny the Motion, not merely to amend the Letters. Federal Rule of Evidence 804(b)(1) permits admission of former testimony only where the party against whom it is offered "had an opportunity and similar motive to develop [the testimony] by direct, cross-, or redirect examination." Letters transmitted with only Mirae's questions will produce testimony inadmissible against Ryze at trial—an expenditure of judicial resources in two countries to obtain evidence that cannot be used. If the Court nevertheless issues the Letters, Article 3(f) of the Hague Convention requires the Letter to specify "the questions to be put to the persons to be examined," encompassing questions from all parties. The HCCH Model Form, Item 13, lists "cross-examination" as a special method under Article 9. Ryze submits its proposed amended Letters of Request, incorporating Ryze's cross-examination questions and exhibits for both witnesses, as Exhibits A and B to this Opposition. See Exhibit A (Proposed Amended Letter of Request for H. Yang, with Ryze Cross-Examination Supplement); Exhibit B (Proposed Amended Letter of Request for H.J. Park, with Ryze Cross-Examination Supplement).

### B. The Letters Should Not Issue Until Mirae Complies with the Production Order.

The Court should not permit Mirae to defy a production order and then lock in favorable testimony from the very witnesses whose documents are being withheld. Mirae's ongoing noncompliance with this Court's January 30 production order (ECF No. 403) compounds the cross-examination problem. Three categories of withheld documents map directly onto questions Mirae proposes to ask Park: the Korean police investigation documents, withheld under the same Korean privacy objection the Court already rejected; the seal-comparison document, produced with white redactions removing the seal specimen images; and communications with outside

- 9 -

counsel, absent from a privilege log that identifies no attorney by name on the vast majority of its entries. Cross-examination is only as good as the documents the examiner can put before the witness. Ryze does not have those documents because Mirae is withholding them. Courts have required domestic discovery to be completed before authorizing international discovery for precisely this reason. *See Scalia*, 337 F.R.D. at 291 (requiring completion of domestic depositions before permitting foreign discovery); *WhatsApp Inc. v. NSO Group Techs. Ltd.*, No. 19-cv-07123-PJH, 2024 WL 1961068, at *4 (N.D. Cal. May 2, 2024) (requiring movant to produce its own evidence first).

### C.  Mirae's Questions Should Be Modified to Cure Form Deficiencies.

Many of Mirae's proposed questions are improperly leading for direct examination. Question 33(a) asks whether Lee held "the title of president, vice-president, senior executive director, executive director, or any other title suggesting that he had the sole authority to bind the company to a loan agreement"—an argument embedded in a catalogue of suggested answers. The first twenty-one questions walk Park through his three prior declarations and ask him to confirm each is "truthful and accurate," converting a deposition into a declaration-ratification exercise. Ryze reserves its right to object to specific questions under Federal Rule of Evidence 611(c) and lodges its objections to the form of Mirae's proposed questions for Yang and Park as Exhibits D and E, respectively.

### D.  The Letters Should Include a Request for Examination of Paul Yoon.

If this litigation is to be stalled so that Mirae can conduct international discovery through Korea's NCA, the process should not be one-sided. Mirae seeks testimony from Park and Yang to support its defense that Director Lee was a rogue employee acting alone. To test that defense, Ryze respectfully requests leave to include in any letters packet the examination of Paul Yoon, a partner at the Korean law firm Lee & Ko, whose testimony uniquely bears on Lee's authority.

Yoon introduced himself to Ryze and its counsel at Kutak Rock in September 2020 as "advising Mirae and Samchully AMC in this transaction." ECF No. 103 at 4. Over the next

eighteen months, he personally managed the deal on Mirae's side—participating in calls with Ryze, coordinating draft loan documents with Kutak Rock and Latham & Watkins, circulating revisions "within Mirae's internal legal affairs," and working to secure "the green light on legal things" from Mirae. ECF Nos. 103 at 3–4, 267 at 5. A second Lee & Ko partner, Tom Kwon, separately introduced himself to Ryze as "advising the Korean investor/Client (i.e., Mirae/Samchully) on the tax implications with respect to proposed participation in the convertible loan." ECF No. 103 at 3. Lee & Ko attorneys were copied on Director Lee's email transmitting the executed CLA to Ryze in January 2021. ECF No. 103 at 5.

Yoon's testimony bears directly on the question at the heart of this case: whether Lee acted with authority. Mirae's defense is that Lee was a rogue employee acting alone. But Lee & Ko's sustained, open involvement over eighteen months—drafting, reviewing, and commenting on every transaction document while ensuring compliance with "Mirae's internal negotiation and deal approval procedures," ECF No. 247—is powerful evidence of both actual and apparent authority. Mirae never once objected to Lee's authority or to Lee & Ko's role during that period, conduct that "provides a basis for a third party reasonably to believe the principal intentionally acquiesces in the agent's representations or actions." ECF No. 103 at 5 (citing Restatement (Third) of Agency § 3.03). If the Court is prepared to hold this case open for Mirae's witnesses, Ryze's request for the examination of Mr. Yoon should be included in the same letters packet. Ryze submits a proposed Letter of Request for Yoon as Exhibit C.

### E. The Letters Should Request Counsel Attendance Under Articles 7 and 8.

The proposed Letters request notification of the time and place of proceedings under Article 7 but omit any request under Article 8 for counsel to attend. The practical effect is one-sided: Mirae's interests are fully protected by 109 scripted questions already in the Letter, while Ryze will have no representative present, no ability to observe demeanor, and no opportunity for real-time follow-up. Korea requires prior authorization from the competent Korean authority. If Korean authorities deny the request, nothing is lost; if they grant it, the resulting testimony carries

greater reliability and weight. Ryze requests that the Court amend the Letters to include a request under Article 8 for counsel attendance and a request under Article 9 for video-link participation as an alternative.

**CONCLUSION**

The Court should deny the Motion. Mirae's delay, the Korean NCA's track record of non-execution, and the certainty that summary judgment will be decided before any testimony could arrive all counsel against initiating a process that will stall this case indefinitely for evidence that may never materialize. In the alternative, if the Court concludes that the delays inherent in this process should be imposed on both parties, it should ensure the process is not one-sided: adopt Ryze's proposed amended Letters of Request (Exhibits A and B), which incorporate Ryze's cross-examination questions and exhibits alongside Mirae's; defer issuance until Mirae has complied with the January 30 production order; include a request for the examination of Paul Yoon (Exhibit C); request counsel attendance under Article 8; request video-link participation under Article 9; and correct the form deficiencies identified in Exhibits D and E. The Court should expressly decline to extend the May 22, 2026 discovery deadline.

Dated: March 31, 2026.                Respectfully submitted,

DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

**EDGAR LAW FIRM LLC**

*/s/ Michael R. Owens*
John M. Edgar, (PHV)
John F. Edgar, (PHV)
Michael R. Owens (PHV)

Alexander C. Melin (PHV)
2600 Grand Boulevard, Ste. 440
Kansas City, Missouri 64108
Telephone: (816) 531-0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com


**MILLER SHAH LLP**
JAMES C. SHAH
*(Admitted Pro Hac Vice*
BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
jcshah@millershah.com
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA  19103

*Attorneys for Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820