DANIEL PRINCE (admitted *pro hac vice*)
danielprince@paulhastings.com
D. SCOTT CARLTON (admitted *pro hac vice*)
scottcarlton@paulhastings.com
BRIAN S. KAEWERT (admitted *pro hac vice*)
briankaewert@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

TAMARA BEATTY PETERSON (NSB No. 5218)
tpeterson@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone: (702) 786-1001
Facsimile: (702) 786-1002

Attorneys for Plaintiff and Counter-Defendant
MIRAE ASSET SECURITIES CO., LTD

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| MIRAE ASSET SECURITIES CO., LTD., a Republic of Korea company,<br>Plaintiff,<br>vs.<br>RYZE RENEWABLES HOLDINGS, LLC, a Nevada limited liability company, and RYZE RENEWABLES NEVADA, LLC, a Nevada limited liability company,<br>Defendants. | CASE NO. 2:23-cv-01492-APG-NJK<br><br>**MIRAE ASSET SECURITIES CO., LTD'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S ANSWER TO COUNTERCLAIMS AND FOR ENTRY OF DEFAULT ON LIABILITY (ECF NO. 548)** |
| RYZE RENEWABLES HOLDINGS, LLC, a Nevada limited liability company, and RYZE RENEWABLES NEVADA, LLC, a Nevada limited liability company,<br>Counter-Claimants,<br>vs.<br>MIRAE ASSET SECURITIES CO., LTD., a Republic of Korea company,<br>Counter-Defendant. | Judge: Hon. Andrew P. Gordon<br>Action Filed: September 22, 2023<br>Complaint Served: October 3, 2023 |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 3
A. Ryze Commenced Arbitration Before Mirae Asset Had Notice of Ryze's Allegations. ........ 3
B. Discovery Proceeded in Phases, and Ryze Repeatedly Sought to Delay or Stay It. ........ 3
C. The Court Ordered Targeted Supplemental Production, and Mirae Asset Produced and Supplemented its Production. ........ 4
D. Ryze's Current Motion Is Based Largely on Documents that Mirae Asset Produced. ........ 5
III. LEGAL STANDARD ........ 6
IV. ARGUMENT ........ 8
A. Mirae Asset Complied with the Court's Orders and Its Discovery Obligations. ........ 9
B. Ryze's Specific Withholding Accusations Are Wrong. ........ 10
C. Ryze's Metadata Theory Shows Collection Activity, Not Concealment. ........ 14
D. Mirae Asset's Explanation for Korean Authority Communications Is Reasonable and Unrebutted. ........ 16
E. Supplemental Production Shows Good-Faith Compliance, Not Bad Faith. ........ 17
F. This Case Should Be Decided on the Merits. ........ 18
G. Ryze's Requested Sanctions Are Untethered to Any Proven Violation. ........ 19
H. The Five-Factor Test Confirms That Sanctions Are Not Warranted. ........ 20
I. Ryze's Motion Should Be Denied Because It Is an Attempt to Convert Disputed Discovery Issues into a Merits Victory. ........ 21
V. CONCLUSION ........ 21

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. JY Harvesting, Inc.*,
2017 WL 3437654, at *3 (S.D. Cal. Aug. 10, 2017)) ... *10*

*Acosta v. Wellfleet Commc'ns, LLC*,
2018 WL 664779 (D. Nev. Feb. 1, 2018) ... *10*

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ... 8

*Duarte Nursery, Inc. v. United States Army Corps of Eng'rs*,
2015 WL 7188227 (E.D. Cal. Nov. 16, 2015) ... 1

*Doctors Medical Ctr. of Modesto, Inc. v. Principal Life Ins. Co.*,
2011 WL 831421 (E.D. Cal. Mar. 3, 2011) ... 1

*Ewing v. Freedom Forever, LLC*,
2024 WL 4668144 (S.D. Cal. Nov. 4, 2024) ... 6

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ... 8

*Fjelstad v. Am. Honda Motor Co.*,
762 F.2d 1334 (9th Cir. 1985) ... 6, 7

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ... 6

*JS Prods., Inc. v. Kabo Tool Co.*,
2014 WL 1764536, at *7 (D. Nev. May 2, 2014) ... 7

*Malone v. U.S. Postal Serv.*,
833 F.2d 128 (9th Cir. 1987) ... 7, 18

*Mitchell v. Nye Cnty.*,
2023 WL 224219 (D. Nev. Feb. 27, 2023) (Gordon, J) ... 6

*Rogers v. Giurbino*,
288 F.R.D. 469 (S.D. Cal. 2012) ... 10

*Urban v. Beard*,
2009 WL435328 (D. Nev. Feb. 20, 2009) ... 6

*U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Constr. Co., Inc.*,
857 F.2d 600 (9th Cir. 1988) ... 6, 7

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
158 F.3d 1051 (9th Cir. 1998)........................................................................................... 7

**RULES**

Fed. R. Civ. P. 34 ........................................................................................................... 10

Fed. R. Civ. P. 37 ............................................................................................... 6, 13, 19

Fed. R. Civ. P. 37(b)(2)(A) ................................................................................................ 6

Fed. R. Civ. P. 37(b)(2)(A)(iii) ........................................................................................... 6

# I. INTRODUCTION

Sensing that it is about to lose each of its claims on summary judgment, Ryze has launched a flurry of briefing on claimed discovery issues that it seeks to convert into a merits victory. But no amount of overblown rhetoric supports terminating sanctions in this case. This is particularly true where, as here, Ryze seeks the ultimate penalty based on a disputed discovery record ***and*** without proof of willful, bad faith misconduct that would preclude resolution of this case on the merits. *Duarte Nursery, Inc. v. United States Army Corps of Eng'rs*, No. 2:13-CV-02095-KJM-AC, 2015 WL 7188227, at *3 (E.D. Cal. Nov. 16, 2015) ("[t]he Ninth Circuit has repeatedly held...that the public policy favoring disposition of cases on their merits strongly counsels against dismissal of a case or sanctions that are ultimately case-terminating") (quoting *Doctors Medical Ctr. of Modesto, Inc. v. Principal Life Ins. Co.*, No. 10–00452, 2011 WL 831421, at *3 (E.D. Cal. Mar. 3, 2011)). Because there are ***no*** "extreme circumstances" to support Ryze's attempt to deprive Mirae Asset of due process, its motion should be denied.

***First***, Mirae Asset ***did not*** conceal evidence or defy the Court's orders. It produced responsive documents, logged privileged materials, addressed Ryze's complaints, supplemented its productions after further inquiry, and complied with the Court's rulings. When Magistrate Judge Koppe ordered production of one disputed privilege-log entry, Mirae Asset complied. That discrete ruling does not support Ryze's attempt to obtain dismissal of Mirae Asset's complaint and affirmative defenses, and an entry of default.

***Second***, there is ***no*** evidence that Mirae Asset intentionally withheld documents as part of an alleged nefarious scheme to avoid a merits determination here. Ryze assumes that additional documents must exist because Ryze expects Korean police, prosecutor, and regulator communications to have generated a broader written record. But Mirae Asset explained that many of its communications with Korean authorities occurred by phone, in person, or by hand delivery, that certain transmission records do not exist, and that documents held by Korean authorities are not automatically within Mirae Asset's possession, custody, or control. Mirae Asset nevertheless made additional inquiries, sought further materials, produced what it obtained,

and supplemented its production. That is not concealment. It is good-faith compliance in a cross-border discovery process.

***Third***, Ryze's metadata theory fares no better. Ryze argues that certain file-system dates show that documents were copied or exported in 2023 and later produced in 2025. Even if accepted, that shows collection activity. It ***does not*** show that responsive, nonprivileged documents had been reviewed, cleared for production, and intentionally withheld. Collection is the beginning of discovery review, not the end of it. Ryze's own theory depends on turning preservation into misconduct and then using that inference to ask for default liability.

***Fourth***, the document disputes here ***do not*** establish that Kyunghyun Lee had authority to bind Mirae Asset, that required approvals occurred, that Mirae Asset ratified Lee's conduct, or that Ryze can prove causation and damages. Those are merits issues. They should be decided through dispositive motion practice or trial, not through a sanctions motion designed to deem Ryze's disputed inferences as true.

Terminating sanctions are not appropriate because Ryze wishes that more evidence existed. Ryze had the opportunity to conduct extensive discovery. Mirae Asset has produced nearly 137 gigabytes of data in this case, totaling nearly 300,000 pages of documents. Prince Declaration ("Prince Decl.) ¶ 3. It likewise has responded to written discovery and more than twenty depositions have been taken here. Nor should Ryze obtain a litigation advantage from its own failure to depose a Mirae Asset corporate designee and its continued efforts to avoid the depositions of Messrs. Park and Yang (even after the Court has found such testimony to be relevant, ECF Nos. 508 and 539).

Put simply, this case should be decided on the merits. Ryze still must prove authority, ratification, causation, and damages. It cannot avoid that burden by recasting disputed merits issues as discovery misconduct while dispositive issues are pending. If Ryze believes the produced documents support its claims, it can make that argument in the ordinary course. What it cannot do is ask the Court to strike Mirae Asset's pleading, dismiss Mirae Asset's claims, and award Ryze liability by default based on speculation about documents that Mirae Asset supposedly withheld. Ryze's motion should be denied.

## II. BACKGROUND

### A. Ryze Commenced Arbitration Before Mirae Asset Had Notice of Ryze's Allegations.

Ryze alleges that it communicated in 2020 and 2021 with Mirae Asset's former employee Kyunghyun Lee about potential financing for a renewable diesel facility in Las Vegas. ECF No. 21 ¶ 3; ECF No. 31 ¶¶ 20-23. According to Mirae Asset, Lee did not have authority to bind Mirae Asset to the more than $200 million Convertible Loan Agreement that Ryze relies on, did not obtain approval from the required Mirae Asset decisionmakers, and did not secure the corporate approvals necessary to commit Mirae Asset to the transaction. ECF No. 21 ¶¶ 4, 7, 9, 39-40. Mirae Asset likewise disputes that Lee had authority to bind the company to the later agreement on which Ryze relies. ECF No. 55 at 10.

Ryze commenced the JAMS arbitration on July 21, 2023. ECF Nos. 4 at 8, 4-4 at 9-29, 22-1. That arbitration was the first time Mirae Asset learned of Ryze's allegations that Lee had purported to bind Mirae Asset to the agreements. ECF No. 55 at 20-21. Mirae Asset then conducted an internal investigation through its internal legal and compliance personnel, in conjunction with outside U.S. counsel. ECF No. 306 ¶ 2. Two months later, Mirae Asset filed this declaratory-relief action to determine whether Lee had actual or apparent authority to bind the company. *See* ECF No. 2. The Court granted Mirae Asset's motion for preliminary injunction, stayed the arbitration, and found that Mirae Asset was likely to show that Lee lacked authority to enter into the agreements on Mirae Asset's behalf. ECF No. 35.

### B. Discovery Proceeded in Phases, and Ryze Repeatedly Sought to Delay or Stay It.

This case did not proceed immediately into full merits discovery. In January 2024, discovery opened on the limited arbitrability issues, including what occurred in 2021 and what the parties knew at that time. *See* ECF No. 43. Ryze did not serve its first discovery requests until June 2024. Mirae Asset responded in July 2024 and began producing documents, including materials from Mr. Lee's personnel file showing his role, hire date, and separation date. ECF No. 306 ¶¶ 3-4.

Ryze's current motion largely ignores that procedural history. Ryze sought or supported delays and stays several times, including pursuing an appeal that this Court later found frivolous. *See* ECF Nos. 47, 53, 106, 142, 210, 227. After Ryze waived arbitration in November 2024, ECF Nos. 160, 161, the Court lifted the stay of Ryze's counterclaims and entered a new scheduling order in April 2025. ECF No. 222. Only then did the case proceed into full merits discovery.

**C. <u>The Court Ordered Targeted Supplemental Production, and Mirae Asset Produced and Supplemented its Production.</u>**

In September 2025, Ryze moved to compel additional responses to several requests. ECF No. 267. As relevant here, Ryze sought documents concerning Mirae Asset's internal investigation of Lee, communications concerning whether Lee exceeded his authority, and communications with Korean regulators and law enforcement concerning Lee's alleged misconduct. ECF No. 269-10.

On January 30, 2026, the Court granted Ryze's motion in part. The Court ordered Mirae Asset to produce responsive, nonprivileged documents and to log responsive documents withheld as privileged for RFPs 25, 26, and 44. ECF No. 403 at 6. The Court also ordered production of responsive communications with Korean regulators and law enforcement under RFPs 37 through 40, after concluding that Mirae Asset had not sufficiently shown that Korean confidentiality law barred production. *Id.* at 7-8.

Mirae Asset served its court-ordered production and privilege log on February 19, 2026. ECF Nos. 427 ¶ 2. The privilege log contained 1,427 entries, and Mirae Asset also produced 124 documents. *Id.* Ryze nevertheless sent a deficiency letter on February 27, 2026, and, after Mirae Asset advised that it was reviewing Ryze's correspondence and preparing a written response, Ryze moved for sanctions without a meet and confer. *See* ECF Nos. 410, 427 ¶ 6, 431-4.

Ryze's sanctions motion challenged, *inter alia*, one privilege-log entry, Entry 1425. ECF No. 410 at 8. Mirae Asset explained that the document presented Korean-law privacy and investigative-confidentiality concerns under Korea's Personal Information Protection Act. ECF No. 426 at 18. The Magistrate Judge disagreed, ordered production of that document, and

awarded sanctions limited to that issue. ECF No. 496. Mirae Asset complied with the order, produced the document, and resolved the fee issue with Ryze.

### D. Ryze's Current Motion Is Based Largely on Documents that Mirae Asset Produced.

Ryze now asks for terminating sanctions based on documents that, in substantial part, Mirae Asset produced. Ryze's own filing identifies the materials attached to its motion as documents produced by Mirae Asset, including internal confirmation statements, audit committee materials, Korean police materials, criminal complaints, police statements, and an internal audit report. ECF No. 553 at 2. Ryze's motion therefore does not rest on a record of destroyed evidence or nonproduction. It rests on Ryze's argument that certain documents should have been produced earlier and that other documents must exist because Ryze assumes Korean law-enforcement communications should have generated the same type of paper trail Ryze would expect in U.S. litigation.

That assumption is wrong. After Ryze sent another deficiency letter on May 26, 2026, Mirae Asset responded on May 29, 2026. ECF Nos. 549-2, 549-3. Mirae Asset explained that many communications with Korean government authorities occurred by telephone or in person, that certain documents were delivered by hand, and that there therefore were limited written communications to produce. ECF No. 549-3 at 4. Mirae Asset also explained that it was continuing to make diligent inquiries into the specific categories Ryze identified, despite time-zone and language barriers. *Id.*

Mirae Asset then supplemented again. On May 31, 2026, Mirae Asset served Production 15. ECF No. 549-4. On June 5, 2026, Mirae Asset explained that it had supplemented the May 31 production with documents sent to the Financial Supervisory Service, that its search had not been limited by the fact that many police communications occurred by phone or in person, and that responsive communications located through that search had been produced. ECF No. 549-5 at 2. Mirae Asset further explained that, where it identified possible FTP submissions or other transmission media, it attempted to track down the documents included in those submissions and produced them. *Id.* Mirae Asset also agreed to conduct another inquiry into the specific issue

Ryze raised concerning the November 8 supplemental complaint. *Id.* Mirae Asset then served additional productions on June 10, 2026. ECF No. 549-7.

This record is not one of contumacious defiance. It is a record of a cross-border discovery process involving Korean law-enforcement materials, Korean privacy issues, privilege review, language barriers, supplemental productions, and continuing efforts to investigate Ryze's specific complaints. Ryze may disagree with Mirae Asset's explanations and may argue about the timing of production. But that disagreement does not transform the record into willful misconduct warranting dismissal, default, and liability without trial.

## III. LEGAL STANDARD

Ryze seeks the harshest sanctions available: striking Mirae Asset's answer, dismissing Mirae Asset's complaint, and entering default on liability. Rule 37(b)(2)(A) permits sanctions when a party "fails to obey an order to provide or permit discovery," including orders striking pleadings, dismissing claims, or rendering default judgment. Fed. R. Civ. P. 37(b)(2)(A)(iii), (v), (vi). But those remedies are "very severe." *Mitchell v. Nye Cnty.*, No. 220CV00086APGVCF, 2023 WL 224219, at *1 (D. Nev. Feb. 27, 2023) (Gordon, J). They are reserved for "extreme circumstances" and may be imposed only where the violation is due to "willfulness, bad faith, or fault." *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988); *see also Urban v. Beard*, No. 3:06CV546BES-VPC, 2009 WL435328, at *3 (D. Nev. Feb. 20, 2009).

That limitation is not a formality. Default and dismissal raise due-process concerns because they adjudicate claims and defenses without a trial. *See Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1340 (9th Cir. 1985) (considering whether a Rule 37 dismissal raised due process concerns). A sanction that interferes with a claim or defense must be tied to conduct that threatens the rightful decision of the case. *Ewing v. Freedom Forever, LLC*, No. 23-CV-1240 JLS (AHG), 2024 WL 4668144, at *5 (S.D. Cal. Nov. 4, 2024). Discovery sanctions may not be used simply to punish a discovery dispute or to give the moving party a merits victory it has not earned. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707

(1982) (sanction must be "just" and specifically related to the claim affected by the discovery order).

The Ninth Circuit applies a five-factor test before imposing case-dispositive sanctions: "(1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the party seeking sanctions, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions." *U.S. for Use & Ben*, 857 F.2d at 603 (quoting *Malone v. U.S. Postal Serv*., 833 F.2d 128, 130 (9th Cir. 1987)). The third and fifth factors are the most important. *JS Prods., Inc. v. Kabo Tool Co.,* No. 2:11-CV-01856-RCJ, 2014 WL 1764536, at *7 (D. Nev. May 2, 2014) (citing *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)). The Ninth Circuit has explained that terminating sanctions are justified only where a pattern of discovery abuse makes it impossible to try the case "with any reasonable assurance that the truth would be available." *JS Prods*., 2014 WL 1764536, at *8 (quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057-58 (9th Cir. 1998)).

Prejudice requires more than delay, expense, or frustration. The moving party must show that the alleged misconduct impaired its ability to go to trial or threatened to interfere with the rightful decision of the case. *See U.S. for Use & Ben*, 857 F.2d at 604; *JS Prods.,* 2014 WL 1764536, at *7. Where the moving party has the documents, can use them on the merits, and can obtain targeted relief for any genuine remaining discovery issue, the prejudice required for terminating sanctions is absent. *See Fjelstad,* 762 F.2d at 1342-43.

The Court must also consider less drastic sanctions before imposing dismissal or default. That inquiry includes whether the Court considered lesser alternatives, whether it tried them, and whether it warned the party that case-dispositive sanctions could follow. *See U.S. for Use & Ben*, 857 F.2d at 604-5. Lesser remedies are especially important where the alleged harm can be addressed through targeted production, a declaration, a limited deposition, fee shifting, or a narrowed evidentiary remedy. Terminating sanctions are improper where a lesser remedy would address the alleged discovery violation without depriving a party of adjudication on the merits.

Nor does Ryze lower that burden by invoking the Court's inherent power. A court may use its inherent authority to sanction litigation misconduct, but that power must be exercised with

restraint and requires a finding of bad faith or conduct tantamount to bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991); *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Inherent authority does not permit default based on speculation, disputed factual inferences, or disagreement about the timing and scope of production. The same basic constraints apply: the sanction must be proportionate, tied to the misconduct found, and necessary because lesser remedies would not suffice.

Ryze therefore bears a heavy burden. It must show a violation of a discovery order or bad-faith abuse of the judicial process, willfulness or fault, actual prejudice to its ability to present its case, and the inadequacy of lesser sanctions. It cannot satisfy that standard by arguing that documents should have been produced earlier, that Mirae Asset's explanations are implausible, or that Ryze would have litigated differently had it received certain materials sooner. Those arguments may, at most, support targeted relief in an appropriate case. They do not support striking Mirae Asset's pleading, dismissing its claims, and entering liability by default.

## IV. ARGUMENT

Ryze's motion depends on a premise the record does not support. Ryze claims that Mirae Asset concealed evidence and defied the Court's discovery orders. The record shows otherwise. Mirae Asset produced responsive documents, logged privileged materials, addressed Ryze's complaints, supplemented its productions after further inquiry, and complied with the Court's orders. Ryze may disagree with Mirae Asset's discovery positions, and it may argue that certain documents should have been produced earlier. But those disputes do not establish concealment, bad faith, or willful disobedience.

The distinction matters. Ryze seeks case-dispositive sanctions, including striking Mirae Asset's answer, dismissing Mirae Asset's complaint, and entering default on liability. That relief requires proof of serious misconduct that impaired the ability to decide the case fairly. Ryze does not make that showing. Its motion relies on inference rather than proof. Collection dates become concealment. Supplemental productions become admissions of wrongdoing. The absence of written transmission records for Korean authority communications becomes evidence that documents must still be hidden. Those inferences are unsupported.

The record instead reflects a complex cross-border discovery process involving Korean-language materials, privilege review, privacy issues, law-enforcement communications, and questions of possession, custody, and control. Mirae Asset did not refuse to participate in that process. It participated, produced, explained, supplemented, and complied. Ryze's motion should be denied because its misconduct theory is wrong, and because the extraordinary sanctions it seeks are neither warranted nor necessary.

**A. <u>Mirae Asset Complied with the Court's Orders and Its Discovery Obligations.</u>**

Mirae Asset complied with the discovery orders at issue. The January 30 Order required Mirae Asset to produce responsive, nonprivileged documents and to log documents withheld as privileged for RFPs 25, 26, and 44. ECF No. 403 at 6. It also required Mirae Asset to produce responsive communications with Korean regulators and law enforcement under RFPs 37 through 40. *Id.* at 7-8. Mirae Asset served the required production and privilege log by the deadline.

Ryze later challenged privilege-log entry No. 1425. ECF No. 410 at 8. Mirae Asset explained that the document presented Korean-law privacy and investigative-confidentiality issues under Korea's Personal Information Protection Act. ECF No. 426 at 18. Magistrate Judge Koppe ordered production of that document and imposed a monetary sanction limited to that single document. ECF No. 496. Mirae Asset complied with that order, produced the document, and resolved the fee issue. ECF Nos. 503, 506, 549-1.

That record does not support Ryze's accusation of continuing defiance. The Court did not find that Mirae Asset destroyed evidence, fabricated documents, made false statements, or rendered trial impossible. It found that one disputed document should be produced despite Mirae Asset's Korean-law based objection. Mirae Asset produced it following that ruling. Ryze now tries to convert that discrete ruling into a broad finding of litigation-ending misconduct. The record does not support that leap.

Nor does the later meet-and-confer history show misconduct. After Ryze sent its May 26 letter, Mirae Asset responded in writing, rejected Ryze's claim that Mirae Asset had violated the Court's orders, explained the basis for its productions, identified categories where no responsive documents existed, and agreed to supplement where further inquiry or materials warranted

supplementation. ECF No. 549-3. Mirae Asset then made additional productions. ECF Nos. 549-4, 549-6, 549-7. That is not concealment. It is a record of investigation, explanation, and supplementation.

Ryze's position also ignores the limits of Rule 34. Mirae Asset was required to produce responsive, nonprivileged documents within its possession, custody, or control. It was not required to produce documents that do not exist. *Acosta v. Wellfleet Commc'ns, LLC*, No. 216CV02353GMNGWF, 2018 WL 664779 at *7 (D. Nev. Feb. 1, 2018) ("A party cannot be compelled to produce documents that it insists do not exist.") (citing *Acosta v. JY Harvesting, Inc.*, 2017 WL 3437654, at *3 (S.D. Cal. Aug. 10, 2017)); *see also Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (Rule 34 does not require a party to create a document where none exists). It was not required to create transmission records where communications occurred by phone, in person, or by hand delivery. And it was not required to produce documents held by Korean police or prosecutors unless those documents were within Mirae Asset's possession, custody, or control. Ryze may believe more documents should exist. That belief is not evidence of a discovery violation.

**B. Ryze's Specific Withholding Accusations Are Wrong.**

Ryze's motion is not strengthened by the number of supposed missing-document categories it lists. The opposite is true. Once addressed category by category, the list confirms that Ryze's accusations rest on assumptions about what documents should exist, not proof that Mirae Asset is withholding documents. Ryze's theory also depends on ignoring what Mirae Asset has already produced, what it obtained from Korean authorities and then produced, what it does not possess, and what does not exist because communications occurred by phone, in person, or by hand delivery.

Ryze's May 26 letter accused Mirae Asset of withholding broad categories of communications with Korean police, prosecutors, and regulators. ECF No. 549-2. Mirae Asset responded that the premise was wrong. ECF No. 549-3. Mirae Asset explained that many communications with Korean government authorities occurred by telephone or in person, that certain documents were delivered by hand, that there were therefore limited communications to

produce, and that Mirae Asset cannot produce documents that do not exist or documents outside its possession, custody, or control. ECF No. 549-3 at 4; *see also* Declaration of Youngjun Kim ("Kim Decl.") ¶ 3. Mirae Asset also explained that it was making diligent inquiries into the specific categories Ryze identified and would produce materials it was able to obtain, even though it disputed that those materials were within its control. *Id.* Ryze's motion largely ignores those explanations.

1. **The Underlying Deal and Investigation Documents.** Ryze argues that Mirae Asset is withholding underlying deal and investigation documents referenced in the police materials, including offering memoranda, the SLA, and other records. ECF No. 551 at 15-16. That argument is wrong. Mirae Asset has produced responsive documents in its possession, custody, or control after a reasonable search. In addition, many of the documents Ryze identifies, including deal documents such as the Offering Memoranda and Addendum and the SLA, have already been produced to Ryze through other productions. *See* Prince Decl. ¶ 9. Ryze's disagreement about where those documents appeared in the production record does not establish that Mirae Asset withheld them, much less that Mirae Asset acted willfully or in bad faith.

2. **The Employee Witness Statements.** Ryze next argues that Mirae Asset is improperly withholding employee witness statements from its internal investigation. ECF No. 551 at 15. But that is not a missing-document issue. It is, at most, a privilege dispute. Mirae Asset has withheld privileged internal investigation materials where appropriate and logged privileged documents as ordered. Prince Decl. ¶ 10. Internal employee statements collected as part of a counsel-directed investigation are protected by attorney-client privilege and work-product protection. *See Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989); *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996). Ryze's disagreement with Mirae Asset's privilege position does not establish contumacious discovery misconduct. It certainly does not support dismissal, striking an Answer, or entry of default.

3. **The Counterparty-Counsel Email on Lee's Authority.** Ryze claims Mirae Asset must be withholding an email from IMM Consulting's counsel because a Korean investigator allegedly read from such an email during an interview. ECF No. 551 at 15. Mirae Asset has not located that email in its possession, custody, or control despite a reasonable search. Prince Decl. ¶ 8. Ryze's inference that Mirae Asset must have the email because a Korean investigator had access to it is not evidence that Mirae Asset currently possesses or controls it. Nor is speculation about a single unlocated email a basis for case-dispositive sanctions.

4. **The Regulator and Prosecutor Communications.** Ryze also argues that Mirae Asset is withholding regulator and prosecutor communications, including materials associated with an FSS portal printout and a separate criminal proceeding. ECF No. 551 at 16. Mirae Asset has produced responsive communications with Korean regulators and law enforcement in its possession, custody, or control after a reasonable search. *See* ECF No. 549-5 at 2; *see also* Prince Decl. ¶¶ 6-7. Mirae Asset also explained that many communications with Korean authorities occurred telephonically, in person, or through hand delivery, which limited the universe of written communications to produce. *See* ECF No. 549-3 at 4; *see also* Kim Decl. ¶¶ 3, 5-6. Ryze's skepticism of that explanation is not evidence. Mirae Asset is a Korean company that reported suspected employee misconduct to Korean law-enforcement and regulatory authorities. The procedures governing those communications are dictated by Korean law and Korean governmental practice, not Ryze's expectations and speculation about how the communications should have occurred.

5. **The Numbered Investigation File.** Ryze argues that Mirae Asset must be withholding documents because the Notice of Investigation Results refers to a police record page numbered 3,644, while Mirae Asset produced fewer pages from the police file. ECF No. 551 at 14-15. That argument assumes that Mirae Asset possesses or controls every page in the Korean police file. It does not. Mirae Asset produced the investigative file materials in its possession, custody, or control that could be located

after a reasonable search. Prince Decl. ¶ 10; *see also* Kim Decl. ¶ 5. The fact that a Korean police file may contain pages Mirae Asset does not possess is not evidence of willful withholding, much less bad faith sufficient to strike Mirae Asset's Answer or enter default.

6. **Earlier-Numbered Sessions and Complaint Versions.** Finally, Ryze argues that a Gwangjin statement labeled the third session and a police complaint identified as the fourth version prove that Mirae Asset is withholding earlier sessions or complaint drafts. ECF No. 551 at 15-16. But the existence of earlier-numbered police materials does not establish that Mirae Asset possesses them, controls them, or withheld them. Mirae Asset did not create the police's numbering conventions. As for Mirae Asset's earlier drafts of the police complaint, Mirae Asset withheld those as privileged, which is reflected on the privilege log it produced. Prince Decl. ¶ 5. Mirae Asset produced the police records it received and has produced responsive materials within its possession, custody, or control. Prince Decl. ¶ 11. Rule 37 does not permit terminating sanctions based on speculation that third-party Korean police records may exist elsewhere.

Ryze's six theories do not establish willfulness, bad faith, or prejudice. They depend on speculation that Mirae Asset must possess additional records because third-party Korean authorities may have them, because police records use numbering conventions suggesting earlier materials, or because Ryze believes written communications should exist. Those inferences do not satisfy Rule 37. Mirae Asset has produced responsive, non-privileged documents after a reasonable search, supplemented its production, and addressed Ryze's specific concerns. That record does not support the extraordinary sanction Ryze seeks.

Ryze's filing strategy confirms why the Court should be cautious. Ryze is not using these documents simply to request targeted discovery. It is asking the Court to strike Mirae Asset's pleading, dismiss Mirae Asset's claims, enter default, and deem core liability issues established while dispositive issues are pending. That is not a discovery remedy. It is an effort to turn disputed inferences about production mechanics into a merits victory. The Court should reject

that effort and decide the case on the record, not on Ryze's speculation about documents Mirae Asset supposedly must have withheld.

**C. <u>Ryze's Metadata Theory Shows Collection Activity, Not Concealment.</u>**

Ryze's metadata theory proceeds in several steps. Ryze relies on its consultant's review of the load files for Productions 09 through 12. The consultant says many parent emails with sent dates from 2020 and 2021 contain a file-system field labeled META_DATE_CREATED that clusters around a few dates in August, September, and November 2023, most prominently September 7, 2023. ECF No. 550-1 ¶¶ 4-7. He then opines that those clusters are consistent with one or more batch export or copy events, such as an export of mailbox data from an email server. *Id.* ¶¶ 7-10. From there, Ryze argues that approximately 8,331 document-family records were collected by or for Mirae Asset in September 2023, before Mirae Asset filed this action, but were not produced until Productions 09 through 12 in August through October 2025. *Id.* ¶¶ 10-17. Ryze then takes the final and critical step. It asserts that this metadata sequence proves Mirae Asset intentionally withheld its convertible-loan file until the close of fact discovery. ECF No. 548 at 7-9.

That final step is where Ryze's theory fails. The metadata does not prove concealment. It shows, at most, a copy or export event. Ryze's own consultant acknowledges that the file-system "date created" field is not the date of the email communication. It records when a copy of the file was created on the system where it resides. ECF No. 550-1 ¶¶ 4-5. He also acknowledges that copying or exporting a file can change the "date created" value, and that producing parties commonly do not include that file-system field for email data at all. *Id.* ¶ 5. Thus, the field on which Ryze relies is not substantive evidence of what the document says, when it was sent, who reviewed it, whether it was responsive, whether it was privileged, or whether it was ready for production.

Ryze's consultant also confirms the point that defeats Ryze's inference. In a standard electronic discovery workflow, collection comes before processing, review, and production. ECF No. 550-1 ¶ 11. That means the most Ryze can say is that some data may have been collected or exported. It cannot say that the documents had been reviewed for responsiveness, privilege,

confidentiality, Korean privacy issues, Korean law-enforcement restrictions, translation issues, or production formatting. Collection is not production. Collection is not a representation that every document in the collected set is responsive, nonprivileged, and immediately producible. And collection certainly is not evidence that Mirae Asset acted in bad faith.

The context matters. Ryze commenced arbitration in July 2023. Mirae Asset then had every reason to preserve and collect potentially relevant materials while it investigated allegations it had just learned. *See* Prince Decl. ¶ 2. Treating that preservation activity as misconduct would invert the discovery rules. Parties are supposed to collect and preserve potentially relevant materials when litigation is anticipated. Ryze cannot transform that ordinary and appropriate step into evidence of concealment simply because later review and production occurred over time.

Ryze's own consultant's testimony is also more limited than Ryze's rhetoric. The consultant identifies missing information that he says would allow the provenance of the metadata values to be determined more precisely, including load-file specifications, field mappings, date-modified values, collection methodology, and chain-of-custody documentation. ECF No. 550-1 ¶¶ 14, 17. That concession matters. Ryze asks the Court to impose default based on an inference that its own consultant says could be tested only with additional information. An inference about a copy event is not proof of intentional suppression.

Ryze also overstates what the documents show. Ryze claims the metadata concerns documents bearing on Lee's authority, Mirae Asset's knowledge, and the CLA. ECF No. 548 at 8-9. But that is a merits characterization, not a metadata conclusion. A file-system date cannot establish Lee's authority, Mirae Asset's ratification, causation, or damages. At most, Ryze believes the documents support its merits theory. That is precisely why the issue belongs in summary judgment briefing or at trial, not in a sanctions motion seeking default liability.

Ryze's timing argument is therefore a merits tactic dressed as a discovery issue. Ryze wants the Court to infer from a September 2023 copy date that Mirae Asset intentionally hid documents, then infer from that supposed hiding that the documents must be adverse, then infer from that supposed adversity that Ryze should win liability by sanction. That is too many inferences and not enough proof. The pending dispositive posture underscores the problem.

Ryze should not be permitted to sidestep merits adjudication by using metadata about collection activity as a substitute for proving the elements of its claims.

The Court should reject that theory. Mirae Asset's collection and preservation of data after Ryze commenced arbitration is not misconduct. The later production of reviewed documents was not proof of concealment. And Ryze's disagreement with the timing of production does not establish bad faith, prejudice, or any basis for sanctions.

**D. Mirae Asset's Explanation for Korean Authority Communications Is Reasonable and Unrebutted.**

Ryze's allegations about Korean authority communications rest on speculation. Ryze assumes that every communication with Korean police, prosecutors, or regulators must have generated a written record, transmission receipt, acknowledgment, email chain, or complete agency file in Mirae Asset's possession. Mirae Asset explained why that assumption is wrong.

Mirae Asset explained that many communications with Korean police occurred by phone or in person, that some documents were delivered by hand or courier, and that Korean police did not provide receipts for every hand-delivered document. ECF No. 549-3 at 4; Kim Decl. ¶ 5. Mirae Asset further explained that, where electronic communications existed, they were produced. ECF No. 549-3 at 5. Mirae Asset also explained that documents in the possession of the Korean police are outside Mirae Asset's possession, custody, or control, but that Mirae Asset nevertheless requested materials and produced what it obtained. *Id.* at 6.

Those explanations are not evasions. They are direct answers to Ryze's accusations. For example, Ryze asserted that Mirae Asset must have records concerning an in-person appearance by Mr. Hong-Cheol Kim at a Seoul police station on November 24, 2023. Mirae Asset explained that the appearance was coordinated by telephone and that the documents Ryze assumed must exist do not exist. ECF No. 549-3 at 6; Kim Decl. ¶ 6. Ryze asserted that metadata must have been stripped from a police investigation document. Mirae Asset explained that the document was received from the Korean police in hard-copy form, was scanned, and therefore lacked native metadata. ECF No. 549-3*; see also* Prince Decl. ¶ 4. Ryze asserted that prosecutor communications must exist. Mirae Asset explained that, aside from the initial complaint

submission, it had no follow-up communications with any Korean prosecutor's office responsive to RFP No. 40. ECF No. 549-3 at 6; *see also* Kim Decl. ¶ 7.

Ryze does not rebut those explanations with evidence. It relies on assumptions. But a motion for terminating sanctions cannot rest on the proposition that more documents must exist because Ryze would expect a different record. The moving party bears the burden to prove misconduct. Ryze has not done so.

Mirae Asset also did more than stand on its objections. It made further inquiries. It obtained further materials outside its control and produced them. ECF No. 549-4. It produced additional documents. It agreed to conduct additional follow-up on specific issues Ryze raised. ECF No. 549-5 at 2. That record is inconsistent with Ryze's claim that Mirae Asset was hiding documents. It shows that Mirae Asset was trying to address Ryze's complaints in a difficult cross-border production.

### E. <u>Supplemental Production Shows Good-Faith Compliance, Not Bad Faith.</u>

Ryze repeatedly treats supplemental production as evidence of wrongdoing. That is not how discovery works. The rules require supplementation when additional responsive information is located. A party does not act in bad faith by continuing to investigate, locating additional materials, and producing them.

Here, the supplemental productions are consistent with diligence. Mirae Asset produced materials during discovery, produced and logged materials in response to the January 30 Order, produced the document ordered by Magistrate Judge Koppe after the Court rejected Mirae Asset's Korean-law objection, and then supplemented again after Ryze alleged additional issues in May 2026. ECF Nos. 549-1, 549-4, 549-5, 549-6, 549-7. Ryze's own declaration identifies Productions 13 through 18 and confirms that Mirae Asset made multiple productions in response to the Court's order and subsequent inquiries. ECF No. 549 ¶ 35.

Ryze's theory would punish Mirae Asset for doing what the discovery rules encourage. If every supplemental production were treated as an admission that earlier productions were dishonest, parties would have an incentive not to continue investigating and supplementing. That is not the law. Continued inquiry and supplementation are evidence of compliance, not defiance.

The timing also must be viewed in context. This case involved Korean-language documents, Korean law-enforcement materials, Korean privacy concerns, privilege review, translation issues, confidentiality designations, and questions concerning whether materials held by Korean authorities were within Mirae Asset's possession, custody, or control. These are not excuses. They are real features of the discovery process in this case. Ryze's motion largely ignores them because they do not fit its narrative.

Nor can Ryze show that Mirae Asset used production timing to distort the merits. Ryze has the documents. It has used them in its motion. It can use them in merits briefing and at trial. The fact that Ryze wants to use those documents to contest Mirae Asset's summary judgment arguments proves that the documents are part of the merits record, not that the Court should bypass the merits entirely.

**F. <u>This Case Should Be Decided on the Merits.</u>**

The record confirms that this case should be decided on the merits. Ryze has the documents it says matter. Many of those documents were produced by Mirae Asset and are the very documents Ryze attached to its motion. ECF No. 553 at 2. Ryze has conducted extensive fact discovery, including participating in more than twenty depositions. ECF No. 549 ¶ 36.

Ryze's prejudice theory is instead that it would have litigated differently if it had received certain documents earlier. That is not the standard. Prejudice for terminating sanctions requires impairment of Ryze's ability to go to trial or a threat to the rightful decision of the case. *See Malone*, 833 F.2d at 131. Ryze cannot make that showing where it has the documents, can use them, and can argue whatever merits inferences it believes they support.

Ryze's conduct confirms this point. Ryze claims the documents are central, but it does not seek case-dispositive merits relief based on them. Instead, it seeks to have liability imposed as a sanction. That choice is telling. A party that has merits evidence uses it to prove its case. Ryze is trying to use sanctions to avoid the ordinary burden of proving authority, ratification, causation, and damages.

The pending dispositive posture underscores why Ryze's motion should be denied. The Court already has a path to decide the legal and factual issues that matter. Ryze should not be

permitted to sidestep that process by recasting disputed merits issues as discovery misconduct. If Ryze believes the produced documents defeat Mirae Asset's position, Ryze can make that argument in merits briefing. If the documents do not do that, Ryze cannot obtain the same result by asking the Court to impose default liability.

Ryze's own alternative request also undermines its prejudice argument. Ryze asks, at a minimum, for an accounting, a hearing, and additional discovery into collection issues. ECF No. 548 at 22-24. While Mirae Asset contends this, too, would be inappropriate and unnecessary, for purposes of argument, it undermines Ryze's request for relief here by showing other relief would suffice.

### G. Ryze's Requested Sanctions Are Untethered to Any Proven Violation.

Ryze's requested sanctions are not merely too harsh. They are untethered to any proven violation. Ryze asks the Court to strike Mirae Asset's answer, dismiss Mirae Asset's complaint, and enter default on liability. In the alternative, Ryze asks the Court to deem established core merits issues, including Lee's authority, Mirae Asset's authorization and ratification, the purpose of the July 23 lawsuit, and causation. ECF No. 548 at 22.

That request is merits adjudication by sanction. It would resolve the disputed issues at the center of the case without requiring Ryze to prove them. Rule 37 does not permit that result unless the sanction is just, proportionate, tied to the violation, and necessary to cure prejudice caused by the violation. Ryze has not proved the predicate misconduct. It has not proved incurable prejudice. It has not shown that lesser measures would be inadequate. And it has not shown that the discovery issues it identifies justify deeming liability elements established.

The mismatch is especially clear as to Ryze's requested issue sanctions. Ryze wants the Court to establish Lee's authority and Mirae Asset's ratification as sanctions. But the documents Ryze cites do not establish those facts. At most, they are evidence Ryze wants to use in support of its theory. Mirae Asset disputes Ryze's interpretation and continues to dispute that Lee had authority or that Mirae Asset ratified his conduct. Those are merits disputes. They should not be resolved by sanction.

The same is true for causation. Ryze cannot use a discovery motion to obtain a ruling that Mirae Asset caused Ryze's alleged losses. That issue depends on proof of reliance, alternative financing, market conditions, senior debt, project economics, and damages. None of those issues is established by Ryze's complaints about production timing. Sanctions cannot substitute for proof.

Ryze's alternative request for an adverse inference is also improper. An adverse inference requires a predicate showing that evidence was withheld, destroyed, or unavailable because of misconduct. Ryze has not made that showing. Mirae Asset produced documents, supplemented its production, and explained why certain assumed records do not exist or are not within its control. An adverse inference based on speculation would be unfair and unsupported.

**H. <u>The Five-Factor Test Confirms That Sanctions Are Not Warranted.</u>**

The Ninth Circuit's five-factor test confirms that Ryze's motion should be denied.

The first two factors do not support sanctions. The public interest in expeditious resolution and the Court's docket-management interests are not served by granting default on a disputed discovery record. That would invite satellite litigation and appellate issues over an extreme sanction. The better course is to resolve the pending merits issues through the existing case schedule and, if necessary, address any specific discovery issue through targeted relief.

The third factor weighs strongly against Ryze because there is no incurable prejudice. Ryze has the documents. Ryze can use them. Ryze has conducted extensive discovery. Ryze does not identify a witness who is unavailable or a claim that cannot be tried (assuming summary judgment is denied). Its claim that it would have litigated differently is not enough.

The fourth factor also weighs against Ryze. Public policy favors decisions on the merits. That policy has particular force here because Ryze asks the Court to deem established the central merits issues in the case. Lee's authority, Mirae Asset's knowledge, alleged ratification, causation, and damages are disputed. Those issues should be decided on evidence, not default.

The fifth factor is decisive. Less drastic alternatives exist. The Court already imposed a monetary sanction for a discrete issue, and Mirae Asset complied. If the Court were to conclude

that further relief were warranted (it is not), it could fashion a lesser remedy without depriving Mirae Asset of adjudication on the merits.

Ryze therefore fails the governing test. The record does not show willful concealment. It does not show bad faith. It does not show incurable prejudice. It does not show that lesser remedies would be futile. And it does not justify the extraordinary relief Ryze seeks.

**I. Ryze's Motion Should Be Denied Because It Is an Attempt to Convert Disputed Discovery Issues into a Merits Victory.**

At bottom, Ryze's motion is a merits filing in sanctions clothing. Ryze argues that certain documents support its view that Lee had authority, that Mirae Asset knew more than it says, and that Mirae Asset should be liable on Ryze's counterclaims. Mirae Asset disputes those points. But that dispute belongs in merits proceedings.

Ryze cannot avoid summary judgment standards by relabeling merits arguments as discovery misconduct. It cannot avoid proving its counterclaims by asking the Court to infer liability from production timing. And it cannot obtain default simply because it believes the documents are helpful to its narrative. If Ryze's interpretation of the record is correct, it can argue that interpretation in response to Mirae Asset's dispositive motion. If Ryze's interpretation is wrong, sanctions cannot make it right.

The Court should reject that effort. Mirae Asset complied with its discovery obligations, supplemented in good faith, and produced the documents Ryze now uses to argue the merits. Ryze's motion does not establish misconduct. It does not establish prejudice. It does not establish that any sanction is warranted, much less dismissal, default, issue preclusion, or an adverse inference. The motion should be denied.

## V. CONCLUSION

For the foregoing reasons, Mirae Asset respectfully requests that the Court deny Ryze's Motion in its entirety.

DATED: July 8, 2026

Respectfully submitted,

By: */s/ Daniel Prince*
DANIEL PRINCE

DANIEL PRINCE (admitted *pro hac vice*)
danielprince@paulhastings.com
D. SCOTT CARLTON (admitted *pro hac vice*)
scottcarlton@paulhastings.com
BRIAN KAEWERT (admitted *pro hac vice*)
briankaewert@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

TAMARA BEATTY PETERSON (NSB No. 5218)
tpeterson@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone: (702) 786-1001
Facsimile: (702) 786-1002

*Attorneys for Plaintiff & Counter-Defendant*
MIRAE ASSET SECURITIES CO., LTD