DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

JOHN M. EDGAR
*(Admitted Pro Hac Vice)*
JOHN F. EDGAR
*(Admitted Pro Hac Vice)*
MICHAEL R. OWENS
*(Admitted Pro Hac Vice)*
ALEXANDER C. MELIN
*(Admitted Pro Hac Vice)*
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Suite 440
Kansas City, Missouri 64108
Telephone: 816.531.0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

JAMES C. SHAH
(*Admitted Pro Hac Vice*)
BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
**MILLER SHAH LLP**
jcshah@millershah.com
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

Attorneys for Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Mirae Asset Securities Co., Ltd., a Republic of Korea company,

Plaintiff,

v.

Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,

Defendants.

---

Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,

CASE NO. 2:23-cv-01492-APG-NJK

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S ANSWER TO COUNTERCLAIMS AND FOR ENTRY OF DEFAULT ON LIABILITY**

**HEARING REQUESTED**

Judge: Andrew P. Gordon

Date Action Filed: September 22, 2023

Counterclaimants,

v.

Mirae Asset Securities Co., Ltd., a Republic of Korea company,

Counterdefendant.

Mirae's conduct has undermined the adversarial process and the integrity of these proceedings, and it has wasted considerable effort and expense—Ryze's and the Court's. Striking the Answer and entering default on liability is the only remedy that can restore the integrity of the proceeding Mirae's conduct has damaged. Despite already having been subject to a lesser sanction, Mirae ***still*** has not produced all the documents it has twice been ordered to produce. Mirae's Response confirms its misconduct:

- ***Mirae does not dispute that its production of the materials it furnished to the Korean police remains incomplete.*** It says police-held materials are "outside Mirae Asset's possession, custody, or control" and that it "nevertheless requested materials and produced what it obtained." ECF No. 582 at 20. But Mirae originally assembled or possessed the evidentiary compilation supporting its criminal complaint, and it obtained the final complaint and other records from the police when it asked. Ex. P, ECF No. 550-16 at 4 (App'x 158); Y. Kim Decl. ¶¶ 3, 5; ECF No. 549 ¶¶ 20-35. Mirae does not say what it requested, whether it sought the complete responsive set, what the police declined to provide, or how materials it once possessed disappeared from its files.

- ***Mirae admits the sequence: it collected the documents in August, September, and November 2023 but did not produce them until August through October 2025.*** Prince Decl. ¶ 2; ECF No. 550-1 ¶¶ 3, 12, 16. It now says the documents still had to be "cleared for production" and invokes "translation issues" and "production formatting" among the reasons for the delay. ECF No. 582 at 6, 19; Prince Decl. ¶¶ 2-3. Those routine tasks do not explain two years. Mirae never raised an obstacle or sought relief; it pressed for accelerated adjudication on the issues the documents addressed. ECF No. 178 at 7, 9; ECF No. 112 at 48-49. Manipulating the record in this fashion while asking the Court to decide it supplies the requisite willfulness.

- ***Mirae concedes it is withholding written statements its employees gave during the 2023 investigation.*** Prince Decl. ¶ 10. It calls the issue "at most, a privilege dispute" and says it "withheld privileged internal investigation materials where appropriate"—but its police submission included "the confirmation statement prepared by Lee Kyung-hyun." ECF No. 582 at 15; Ex. P, ECF No. 550-16 at 4 (App'x 158). The log identifies employee statements only as an "[a]ttachment to privileged communication"; it neither



BAILEY❖KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
702.562.8820

purports to assert a privilege claim nor establishes that any privilege survived disclosure.

Mirae's remaining explanations are conclusory, insufficient, and implausible. For certain documents, Mirae says only that it "has not been able to locate" the document "after reasonable inquiry." Prince Decl. ¶ 8. It identifies no custodian, repository, search term, date range, or collection method. The same omission recurs across its declarations: a "reasonable search," a "reasonable inquiry," and no facts from which the Court could evaluate either. Prince Decl. ¶¶ 6-8, 11. Mirae also asks the Court to accept that its communications with financial regulators generated no documentation because such inquiries were customarily oral or in person. ECF No. 549 ¶ 24; ECF No. 549-5 at 3; Y. Kim Decl. ¶ 3—a remarkable account from a regulated financial institution describing its dealings with its regulators. Mirae still does not explain what happened to documents it created, possessed, or furnished to third parties and now says do not exist or cannot be located.

Mirae's explanations leave this showing unrebutted. The Court should strike the Answer and enter default on liability. If any material question remains open, the alternative is to convene an evidentiary hearing with Mirae's witnesses about its search and collection efforts, and not to simply absolve Mirae conclusory affidavits and facially implausible denials.

## I. MIRAE DOES NOT DISPUTE OR EXPLAIN THE TWO-YEAR DELAY

Mirae does not dispute that the documents at issue were collected in August, September, and November 2023. Prince Decl. ¶ 2. Nor does it dispute that they were produced only in August through October 2025, during the closing weeks of fact discovery. The two-year interval is now at issue. Mirae says the documents had not been "reviewed" or "cleared for production" and invokes "responsiveness, privilege, confidentiality, Korean privacy issues, Korean law-enforcement restrictions, translation issues, or production formatting." ECF No. 582 at 6, 18-19. Those labels describe ordinary review tasks. They do not explain why the documents remained unproduced for two years or why thousands of pages Mirae furnished to the Korean police remain missing.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

### A. Mirae Never Raised a Two-Year Review Problem While Seeking Accelerated Adjudication

More telling, Mirae never told Ryze or the Court that translation, formatting, privilege review, Korean privacy law, or another production task would delay these documents for two years. It did not seek additional time to complete that review or ask the Court to adjust the schedule on that basis. Instead, while the documents remained unproduced, Mirae requested shortened discovery and pressed for adjudication of Mr. Lee's authority and the other issues the documents addressed. ECF No. 112 at 48-49 (proposing a 45-day discovery extension while pressing for a prompt summary trial on authority); ECF No. 178 at 7, 9 (proposing trial of all claims at the February 2025 setting, with any additional discovery "narrow (e.g., 30-60 days)"); *id.* at 5-6 (recording Ryze's contemporaneous count that Mirae had produced "literally zero documents" relating to three of the four stayed counterclaims); ECF No. 196 at 8 (proposing a March 14, 2025 cutoff and calling Ryze's 180-day request "unnecessarily bloated"). Mirae asked the Court to decide the authority issue while the collected documents remained unproduced.

At the August 2024 hearing, Mirae discounted the possibility that Ryze would find evidence authorizing the July 23 lawsuit. Mirae told the Court: "I'm not sure what Ryze thinks exists, an email from Seoul saying, 'Please file a lawsuit in Nevada.' We don't have that email. I haven't seen it." ECF No. 112 at 45-46. Mirae later produced Mr. Lee's instruction to "please proceed" in Production 09. Ex. R, ECF No. 550-18 (App'x 188-190); ECF No. 549 ¶ 4. Mirae now offers the review explanation only after Ryze identified the 2023 collection dates. ECF No. 582 at 6, 18-19; Prince Decl. ¶ 3. Its silence during discovery and its demand for accelerated adjudication support a finding that Mirae chose the delay.

### B. Mirae's Conduct During the Delay Supports an Inference of Willfulness

Mirae invokes phased discovery, stays, appeals, and the cross-border character of the case. ECF No. 582 at 7-8, 18-19. None explains its conduct. The initial phase concerned "what occurred in 2021 and what the parties knew at that time": Lee's authority, who authorized the July 23 lawsuit, and what Mirae knew—the very subjects these already-collected documents address. *Id.*

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

at 7. The tasks Mirae now invokes—clearance, translation, formatting, and privilege review—are ordinary incidents of discovery. If Mirae believed they made timely production impossible, it could have told Ryze, sought an extension, or asked the Court to adjust the schedule. It did none of those things. Productions 09 through 12 arrived on August 14, September 24, October 4, and October 13, 2025—the last on the final day of fact discovery. ECF No. 550-1 ¶¶ 3, 12, 16. Mirae behaved as if no obstacle existed, pressed abbreviated discovery and prompt adjudication, then invoked routine tasks only after Ryze exposed the delay. That sequence supports a finding of willfulness.

### C. Possession at the End Does Not Restore the Discovery Process Ryze Lost

Mirae reduces two years of nonproduction to Ryze's statement that it "would have litigated differently." ECF No. 582 at 22. Its answer—"Ryze has the documents," *id.* at 22, 24—confuses possession with the discovery process. Ryze can cite a late-produced document in a brief. It cannot repeat expired discovery: targeted requests, third-party subpoenas, witness selection, and depositions. More than twenty depositions occurred before Mirae produced the investigation and regulatory records. ECF No. 549 ¶ 36. Ryze also had a motion to compel pending, and the Court had warned that "the new deadlines are firm and there will be no more extensions." ECF No. 222 at 3. Mirae produced central records on the final day of that firm period. Ryze relied on the schedule the Court set; Mirae controlled when it produced the documents.

## II. MIRAE STILL DOES NOT ACCOUNT FOR THE DOCUMENTS THE MAGISTRATE JUDGE TWICE ORDERED PRODUCED

Mirae asks the Court to find that producing court-ordered documents four times after the deadline is "evidence of compliance, not defiance"—on a docket carrying two findings that it violated those orders. ECF No. 582 at 21; ECF No. 496 at 9; ECF No. 521 at 6.

### A. Mirae's Response Does Not Answer the Court's Two Findings of Violation

The January 30 order compelled production of internal-investigation documents and a privilege log (RFPs 25, 26, and 44) and of communications with Korean regulators, police, and prosecutors (RFPs 37 through 40), by February 19, 2026. ECF No. 403 at 6-8, 11. Mirae served

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Production 13 and a 1,427-entry log on the deadline while withholding Entry 1425—the Notice of Investigation Results—on the Korean-law theory the Court had rejected. ECF No. 582 at 8; ECF No. 496 at 8-9.

Mirae calls the May violation "discrete," but does not mention the June violation. ECF No. 496 at 9; ECF No. 582 at 5; ECF No. 521 at 6. It reduces the May ruling to "one disputed privilege-log entry," ECF No. 582 at 5, but the Court awarded expenses under Rule 37 and warned that it was "not suggesting that Plaintiff has lived up to its discovery obligations." ECF No. 496 at 10; *id.* at 7 n.3. The June ruling found a second violation and ordered compliant responses by a new deadline. ECF No. 521 at 6. Neither ruling found Mirae's broader search adequate or addressed Productions 15 through 18.

The post-ruling sequence is undisputed. Mirae produced the Notice of Investigation Results on May 18. Ryze mapped the resulting gaps in a May 26 letter and pressed them at a May 28 conference; Mirae dismissed the gaps as "assumptions" resting on a "false premise"—then produced more of the identified material on May 31, in early June, and on June 10. ECF No. 549 ¶¶ 20-35. The November 8 complaint reaching the Ryze matter, the police statements, and the filing receipts all arrived more than three months after the ordered deadline, *id.*, and Mirae's June 5 letter promised "another inquiry." *Id.* ¶ 33. The Financial Supervisory Service (FSS) materials produced in that sequence name interim reports and an uploaded ZIP file that Mirae has not produced. *Id.* ¶ 34.

### B. Mirae Supplies No Facts from Which the Court Could Find Its Search for the Ordered Documents Reasonable

Mirae responds to the questions raised about its search with the vaguest of conclusions—a "reasonable search," a "reasonable inquiry." Prince Decl. ¶¶ 6-8, 11; ECF No. 582 at 15-17. It supplies none of the facts that would let the Court evaluate them: no queried persons, no custodian, no repository, no search term, no date range, no collection method, no account of who searched or when. The IMM Consulting email is a concrete example. Mirae says it "has not been able to locate" the document "after reasonable inquiry." Prince Decl. ¶ 8. It does not identify who searched, where

the search occurred, which custodians were covered, or what terms and dates defined the inquiry. Mirae's later supplementation supplies none of those facts. Rule 26(e)(1) requires timely correction when a party learns its response is materially incomplete; it presupposes the reasonable inquiry Rule 26(g)(1) required Mirae to certify, and it does not retroactively supply one. The Response concedes the sequence: Mirae "supplemented again after Ryze alleged additional issues in May 2026." ECF No. 582 at 21. Neither declaration says what was newly searched for each late production or why each record was not found by February 19.

Mirae offers the same conclusory account of its communications with regulators: inquiries were customarily handled orally or in person, so few documents exist. ECF No. 549 ¶ 24; Y. Kim Decl. ¶ 3. Its declarant rests that custom on generalized "experience with Korean investigations," not on knowledge of how the specific inquiries here were conducted or documented, and identifies neither the participants nor the particular inquiries at issue. Mirae's FSS portal printout lists a financial-accident report, three interim reports, and an uploaded attachment, but Mirae has produced none of the listed materials. ECF No. 549 ¶ 34. The declarations provide no firsthand basis for the asserted custom, and the production identifies contrary filings. Mirae therefore does not explain the missing regulatory records.

Regardless, late production does not excuse the violation. The Ninth Circuit has affirmed striking an answer despite incremental later productions where the district court found that the producing party "intentionally delayed production of documents" and "misrepresented its current and past production." *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169-71 (9th Cir. 2012). Each production followed Ryze's identification of what was missing—Production 14 after the sanction, Productions 15 through 18 after the May 26 gap letter. A search that expands only after Ryze proves the gaps cannot establish a reasonable inquiry. Nine months after fact discovery closed, Mirae still has not established that its search is complete.

BAILEY❖KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
702.562.8820

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

### C. Mirae Does Not Explain What Happened to Materials It Furnished to the Korean Police

Mirae created, assembled, possessed, or furnished the missing documents and communications before they entered the Korean police file. Yet Mirae has not accounted for those materials in its files. Its declarant says some documents were hand-delivered, that no transmission record exists, and that Mirae did not retain the final nonprivileged complaint it filed. Y. Kim Decl. ¶¶ 3, 5. Hand delivery may explain the absence of an email. It does not explain why Mirae no longer has the documents it delivered after it was aware of a live claim for damages from Ryze and its duty of evidence preservation had arisen.

The Lee statement provides a concrete example. Mirae's defense reaches only internal materials: it says it "withheld privileged internal investigation materials," and that "[i]nternal employee statements collected as part of a counsel-directed investigation are protected." ECF No. 582 at 15. Its November 2023 submission to the Seoul police nevertheless included "the confirmation statement prepared by Lee Kyung-hyun." Ex. P, ECF No. 550-16 at 4 (App'x 158). Mr. Prince's declaration identifies numerous employee witness statements that Mirae withheld as privileged. Prince Decl. ¶ 10. Each relevant log entry repeats the same description: "Attachment to privileged communication made for purposes of facilitating legal advice from in-house legal regarding internal investigation and in anticipation of litigation." *See*, *e.g.*, ECF No. 412-1, Entry Nos. 841-46, 894, 969, 1256-57, 1271-75. But attaching a document to a privileged communication does not establish privilege over the attachment. *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1088 (N.D. Cal. 2015) (quoting *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 511 (D.N.H. 1996) ("[a]ttachments ... cannot become privileged by merely attaching them to a communication with the attorney")).

Neither Mr. Prince's declaration nor the log identifies which entry, if any, corresponds to the statement Mirae furnished to police. Mirae also does not explain where that statement is or substantiate a privilege that survived its disclosure to police. Its Response instead calls the missing statements "at most, a privilege dispute." ECF No. 582 at 15. The January 30 order required

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

production of all responsive nonprivileged documents and a log identifying "all persons or entities known to have been furnished the document." ECF No. 403 at 6. The order left Mirae three options: identify the statement, establish protection despite disclosure, or produce it. Mirae did none. Either Mirae still has the materials and has not produced them, or it no longer has materials it once created, assembled, possessed, or furnished to the police. For example, Mirae claims it did not retain the filed version but later obtained a replacement copy from the police. Y. Kim Decl. ¶ 5. It does not explain what happened to the version it possessed before or when it filed the complaint.

Mirae's later retrieval from the police raises a separate question. Mirae obtained and produced the final complaint, hundreds of numbered pages from the police file,[1] and additional records after Ryze identified gaps. Y. Kim Decl. ¶ 5; ECF No. 549 ¶¶ 20-35. But Mirae does not explain what it requested, whether it sought the complete responsive set, who selected the requested materials, what the police declined to provide, or why Mirae did not seek or obtain the missing submissions through the same process. Ryze need not establish that Mirae controls every page held by a foreign government. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107-08 (9th Cir. 1999). The Court should expect Mirae to explain how materials it created or furnished to the police disappeared from its files, what it later requested, and why it did not seek or obtain the complete responsive set. Mirae provided no such explanation. Its silence leaves the ordered production unaccounted for.

## III. THE RECORD SUPPORTS SANCTIONS; MIRAE'S DECLARATIONS DO NOT DEFEAT THAT SHOWING

Ryze has shown a two-year delay, two findings that Mirae violated court orders, later productions that followed a sanction or gaps Ryze identified, and concrete prejudice from receiving central documents after discovery closed. *See* supra Sections I-II. Mirae responds with declarations that omit the facts needed to evaluate its searches. The Court should strike the Answer

[1] The police file's hand-stamped numbering runs to at least 3,644 pages; Mirae has produced roughly 501 of the numbered pages, and unexplained gaps interrupt the numbering even among the pages produced.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

and enter default on liability on this record. If the Court wants more evidence, it should test those declarations before ruling—not accept them as a basis to deny relief.

**A. The Existing Record Supports Findings of Willfulness**

Mirae says the record contains no "destroyed evidence," no "false statements," and no "willful concealment." ECF No. 582 at 9, 13, 25. The record establishes willfulness at every step: Mirae collected the documents in 2023 and withheld them until 2025; offered only routine discovery tasks as an explanation; never raised any supposed obstacle while discovery was underway; pressed for accelerated adjudication on issues the documents addressed; and produced additional records only after Ryze identified specific gaps. *See supra* Section I. During the same interval, Mirae sought rulings based on representations the withheld documents contradicted—including its positions on Lee's authority and who authorized the July 23 lawsuit. ECF No. 55 at 21; ECF No. 112 at 46; Exs. N, ECF No. 550-14 (App'x 124-127), and R, ECF No. 550-18 (App'x 188-190). Section II adds two adjudicated violations of the same order, objections reasserted after the Magistrate Judge overruled them, and documents Mirae created that it now says it cannot locate. This evidence supports a finding that Mirae chose the delay while pressing the Court to adjudicate on an incomplete record.

That inference fits the governing cases. The Ninth Circuit affirms terminating sanctions where the district court finds intentional delay and misrepresentations about production, *Hester*, 687 F.3d at 1169-71, and where "a pattern of deception and discovery abuse" has made it impossible to conduct a trial "with any reasonable assurance that the truth would be available." *Valley Eng'rs Inc. v. Elec. Eng'ing Co.*, 158 F.3d 1051, 1057 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs*, 69 F.3d 337, 352 (9th Cir. 1995)). By contrast, *Fjelstad* v. *Am. Honda Motor Co.*, 762 F.2d 1334 (9th Cir. 1985)—which Mirae cites for due-process limits, ECF No. 582 at 10-11—involved "exceedingly slow" discovery where "no willful deception was found," "the untimeliness did not prejudice the other side," and nothing in "the pattern of production" suggested that "the recalcitrant party's defenses were meritless." *Valley Eng'rs*, 158 F.3d at 1056.

None of those mitigating facts exists here. "There is no point to a lawsuit, if it merely applies law to lies." *Id.* at 1058.

**B. The Closed Discovery Period and Failed Lesser Measures Satisfy the Two Key Factors**

Ryze cannot repeat the more than twenty depositions taken before Mirae produced the Korean investigation and regulatory records. ECF No. 549 ¶ 36. The Court has also tried lesser measures: it set a firm deadline, twice ordered compliance, and imposed expenses, yet Mirae continued producing responsive records into June. ECF No. 222 at 3; ECF No. 496 at 9-10; ECF No. 521 at 6-8; ECF No. 549 ¶ 35. Another deadline or fee award cannot restore the discovery period or establish that Mirae's search is complete. Prejudice and the availability of lesser sanctions are the key factors. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990); *Malone*, 833 F.2d at 130-32.

**IV. IF THE COURT PREFERS ADDITIONAL EVIDENCE, A FOCUSED HEARING CAN TEST MIRAE'S REPRESENTATIONS**

The present record warrants striking the Answer and entering default on liability. A hearing becomes necessary only if the Court wants additional evidence before imposing that relief. In that event, Mirae should not obtain denial of the Motion through declarations too vague to test.

**A. Mirae's Vague Account Warrants Focused Examination if the Court Wants More Evidence**

Mirae calls a hearing "inappropriate and unnecessary." ECF No. 582 at 23. It also treats Ryze's alternative request as evidence that lesser relief would suffice. The request makes no such concession. A hearing would determine any additional facts the Court wants before selecting a sanction and leave every remedy in the Motion available, including default, issue sanctions, or narrower relief tied to the misconduct proved. *See Malone*, 833 F.2d at 130 (citing *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986)) ("the availability of less drastic sanctions").

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Discovery into discovery is understandably disfavored because routine disputes should not generate satellite litigation. But withheld court-ordered documents, post-sanction productions, and a vague account of the search undermine the discovery process far more seriously. Mirae could have forestalled further inquiry by explaining who searched what, what it requested from the police, and what happened to materials it once possessed. Instead, its declarations repeat "reasonable search" and "reasonable inquiry" without custodians, repositories, search terms, date ranges, or collection methods. Prince Decl. ¶¶ 3, 6-8, 11. They offer conclusions and evade the questions the production raises. If the Court desires more evidence, this record warrants focused examination. Indeed, this Court has resolved a motion to strike an answer for discovery misconduct on exactly that course. *See Zeiter v. Walmart Inc.*, 2024 WL 1907385, at *1-3 (D. Nev. Apr. 29, 2024) (noting that the plaintiffs' motion to strike was set for an evidentiary hearing and holding that Walmart could not invoke the attorney-client privilege "both as a sword and shield" to avoid examination concerning its discovery conduct); *Zeiter v. Walmart Inc.*, 2024 WL 3028259, at *2, *14 (D. Nev. June 17, 2024) (after a two-day hearing, granting the motion in part and precluding Walmart from disputing specified elements of liability). If the Court wants additional evidence here, that sequence—a focused hearing followed by a remedy tied to the misconduct proved—protects due process without taking any relief off the table.

Still, authority from this district permits focused examination on this showing. Discovery into another party's discovery process is "disfavored and will be closely scrutinized," but there is "no outright prohibition," and its appropriateness "turns on the particular circumstances of each case." *Cardinali v. Plusfour, Inc.*, No. 2:16-cv-02046-JAD-NJK, 2019 WL 3456630, at *3 (D. Nev. June 20, 2019); *see Jasso v. Wells Fargo Bank, N.A.*, No. 2:20-cv-00858-CDS-BNW, 2022 WL 4227332, at *2-5 (D. Nev. Sept. 13, 2022) (permitting targeted Rule 30(b)(6) examination of a party's retention and discovery process on "an adequate factual basis (not simply speculation)" where the party's representations conflicted with an undisclosed legal hold). The factual basis here is concrete and largely conceded: admitted 2023 collection dates, a two-year gap, two findings of violation, post-sanction productions, an official notice date Mirae's declarant swears he "do[es]

not know" how to explain, Y. Kim Decl. ¶ 4, more than two thousand pages missing from the Bates-numbered appendix Mirae submitted to the police, and produced records that name earlier documents Mirae has not produced. Those facts meet *Jasso*'s standard for an "adequate factual basis." *Jasso*, 2022 WL 4227332, at *3.

**B. Any Additional Inquiry Should Be Narrow and Directed to the Missing Facts**

If the Court orders additional factfinding, Mirae should first serve a Rule 26(g)-certified supplemental response, supported by a declaration from a witness with firsthand knowledge, that (1) accounts custodian by custodian for Productions 09 through 12; (2) identifies the custodians, repositories, search terms, and date ranges behind each claimed "reasonable search," and explains why each late-produced record was not produced by February 19; and (3) states, for the materials Mirae furnished to the police, when they left Mirae's files, who selected the records Mirae later requested, whether Mirae sought the complete responsive set, and what the police declined to provide. Those disclosures seek no legal advice and fall within *Citric Acid*'s limits. At any hearing, Mirae should present a witness knowledgeable about the 2023 collection, review, and Productions 09 through 12, along with a firsthand participant in Mirae's submissions to the Korean authorities and its requests for records from them—on this record, Hong-Cheol Kim. If Mirae relies on facts found only in a counsel declaration, Ryze should be permitted narrow examination on those subjects, as *Zeiter* allowed.

* * *

**CONCLUSION**

The Court should strike Mirae's Answer to the Counterclaims and enter default on liability. Alternatively, if the Court prefers additional evidence before imposing that relief, it should (a) convene an evidentiary hearing; (b) require Mirae to bring witnesses with knowledge the 2023 collection and review, its submissions to the Korean authorities, and its requests for records from them—including Hong-Cheol Kim; and (c) order Mirae to disclose its collection and search paramters and communcations regarding its records requests fourteen days before such hearing.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Dated: July 15, 2026.

Respectfully submitted,

DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

Attorneys for Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC

*/s/ Michael R. Owens*
John M. Edgar, (PHV)
John F. Edgar, (PHV)
Michael R. Owens (PHV)
Alexander C. Melin (PHV)
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Ste. 440
Kansas City, Missouri 64108
Telephone: (816) 531-0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

JAMES C. SHAH
*(Admitted Pro Hac Vice)*
BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
**MILLER SHAH LLP**
jcshah@millershah.com
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103