DANIEL PRINCE (admitted *pro hac vice*)
danielprince@paulhastings.com
D. SCOTT CARLTON (admitted *pro hac vice*)
scottcarlton@paulhastings.com
BRIAN S. KAEWERT (admitted *pro hac vice*)
briankaewert@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

TAMARA BEATTY PETERSON (NSB No. 5218)
tpeterson@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone: (702) 786-1001
Facsimile: (702) 786-1002

Attorneys for Plaintiff and Counter-Defendant
MIRAE ASSET SECURITIES CO., LTD.

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| MIRAE ASSET SECURITIES CO., LTD., a Republic of Korea company,<br><br>Plaintiff,<br><br>vs.<br><br>RYZE RENEWABLES HOLDINGS, LLC, a Nevada limited liability company, and RYZE RENEWABLES NEVADA, LLC, a Nevada limited liability company,<br><br>Defendants. | CASE NO. 2:23-cv-01492-APG-NJK<br><br>**PLAINTIFF AND COUNTER-DEFENDANT MIRAE ASSET SECURITIES CO., LTD.'S PARTIALLY UNREDACTED MOTION FOR SUMMARY JUDGMENT** |
| RYZE RENEWABLES HOLDINGS, LLC, a Nevada limited liability company, and RYZE RENEWABLES NEVADA, LLC, a Nevada limited liability company,<br><br>Counter-Claimants,<br><br>vs.<br><br>MIRAE ASSET SECURITIES CO., LTD., a Republic of Korea company,<br><br>Counter-Defendant. | Judge: Hon. Andrew P. Gordon<br>Action Filed: September 22, 2023<br>Complaint Served: October 3, 2023 |

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1
I. CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS ........................ 3
  A. Ryze Claims That It Entered into An Agreement with Mirae Asset. .......... 3
  B. Ryze's Agents Launch Litigation Against It in Nevada State Court. ......... 7
  C. Ryze and LV Renewables A, LLC Agree to the SLA. ............................. 9
  D. Ryze Files Suit Against Snell. ................................................ 10
  E. Ryze's Subsidiaries File for Bankruptcy. ..................................... 11
  F. Ryze Files Arbitration Against Mirae Asset in Las Vegas. ..................... 12
II. LEGAL STANDARD ................................................................ 12
III. ARGUMENT ..................................................................... 13
  A. Mirae Asset Was Under No Obligation to Fund the CLA. ........................ 13
  B. Mirae Asset Was Under No Obligation to Fund the SLA. ........................ 17
  C. Ryze Cannot Establish Injury or Damages. ..................................... 22
  D. Ryze Cannot Prove Its Abuse of Process Claim. ................................ 27
IV. CONCLUSION .................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Nations Steel Corp. v. KSK Constr. Group, LLC*,
240 A.D.3d. 835 (N.Y. App. Div. 2025) ....................25

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................13

*Ashley Creek Properties, L.L.C. v. Larson*,
403 F. App'x 273 (9th Cir. 2010).................... 23, 24, 25

*Becker v. Caesars Ent.*,
No. 2:19-cv-01043-RFB-DJA, 2021 WL 4096971 (D. Nev. Sept. 8, 2021) ....................18

*Blair Foods, Inc v. Ranchers Cotton Oil*,
610 F.2d 665 (9th Cir. 1980) ....................16

*Bower v. Harrah's Laughlin, Inc.*,
125 Nev. 470, 215 P.3d 709 (2009)....................29

*Brown v. Kinross Gold U.S.A., Inc.*,
531 F. Supp. 2d 1234 (D. Nev. 2008)....................26

*Bull v. McCuskey*,
96 Nev. 706 (1980) ....................28

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d
1360, 1364 (9th Cir. 1998) ....................4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................13

*Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*,
213 P.3d 496 (Nev. 2009)....................27

*Clark v. Metro Life Ins. Co.*,
461 F. App'x 538 (9th Cir. 2011)....................25

*Clarke v. Service Employees Int'l Union*,
137 Nev. 460 (2021)....................20

*Colton v New York Hosp.*,
53 A.D.2d 588, 385 N.Y.S.2d 65 (1st Dept. 1976)....................17

## TABLE OF AUTHORITIES
(continued)

**Page**

*County of Clark v. Bonanza No. 1*,
96 Nev. 643 (1980) .......... 18

*Courtney v. Canyon Tel. & Appliance Rental, Inc.*,
899 F.2d 845 (9th Cir. 1990) .......... 16

*David Fanarof, Inc. v. Dember Const. Corp.*,
600 N.Y.S.2d 226 (1993) .......... 16

*Dickerson v. Downey Brand LLP*,
408 P.3d 543, 2017 WL 6316552 (Nev. 2017) (unpublished table decision) .......... 27, 28

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) .......... 24, 25

*Ecklund v. Nevada Wholesale Lumber Co.*,
562 P.2d 479 (Nev. 1977) .......... 21

*Edwards v. Ghandour*,
159 P.3d 1086 (Nev. 2007), *abrogated on other grounds by Five Star Capital Corp.* 194 P.3d 709 (Nev. 2008) .......... 30

*Ely-Cruikshank Co. v. Bank of Montreal*,
81 N.Y.2d 399 (1993) .......... 15

*Ene v. Graham*,
546 P.3d 1232 (Nev. 2024) .......... 19, 21

*ERC 16W Ltd. P'ship v. Xanadu Mezz Holdings LLC*
133 A.D.3d 444, 444 (N.Y. App. Div. 2015) .......... 26

*EVIP Canada, Inc. v. Schnader Harrison Segal & Lewis LLP*,
No. 18-cv-11456 (LJL), 2021 WL 964943 (S.D.N.Y. Mar. 15, 2021) .......... 22, 25

*Far Out Prods., Inc. v. Oskar*,
247 F.3d 986 (9th Cir. 2001) .......... 29

*Five Star Cap. Corp. v. Ruby*,
194 P.3d 709 (Nev. 2008) .......... 29, 30

*Greenberg Traurig LLP v. Frias Holding Co.*,
331 P.3d 901 (Nev. 2014) .......... 27

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Infinity Glob. Consulting Grp., Inc. v. Tilray, Inc.*,
No. CV 20-05263-PA-(AFMX), 2021 WL 880391 (C.D. Cal. Jan. 7, 2021) .... 23, 24, 25

*Issac v. Issac*,
537 P.3d 881, 2023 WL 7102990 (unpublished table decision) (Nev. 2023) .... 29

*J & L Am. Enters., Ltd. V. DSA Direct, LLC*,
No. 10 Misc. 3d 1076 (A), 2006 WL 216680 (N.Y. Sup. Ct. Jan. 27, 2006) .... 15

*Jacobs v. Adelson*,
325 P.3d 1282 (Nev. 2014) .... 27

*Jacobs v. Andelson*,
325 P.3d 408 (Nev. 2014) .... 27

*Kirsch v. Traber*,
414 P.3d 818 (Nev. 2018) .... 30

*Knickmeyer v. Nev. ex rel. Eighth Jud. Dist. Ct.*,
716 F. App'x 597 (9th Cir. 2017) .... 13

*LaForge v. State, Univ. & Cmty. Coll. Sys.*,
997 P.2d 130 (Nev. 2000) .... 29

*Land Baron Invs. v. Bonnie Springs Family Ltd. P'ship*,
356 P.3d 511 (Nev. 2015) .... 27

*Lipton v. Green*,
No. 51 Misc.3d 1210(A), 2016 WL 1452143 (N.Y. Sup. Ct. Apr. 6, 2016) .... 15

*Lucky Lucy D LLC v. LGS Casino LLC*,
534 P.3d 689 (Nev. 2023) .... 25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .... 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 .... 13, 14

*McMahan & Co. v Bass*,
250 A.D.2d 460, 673 N.Y.S.2d 19 (1st Dept. 1998) .... 17

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*,
No. H-10-1708, 2011 WL 3568074 (S.D. Tex. Aug 15, 2011)....................................25

*Mom's Bagels of New York, Inc. v. Sig Greenebaum, Inc.*,
164 A.D.2d 820 (N.Y. App. Div. 1990) ....................................................................26

*N. Arlington Med. Bldg., Inc. v. Sanchez Const. Co.*,
86 Nev. 515 (1970) ....................................................................................................19

*N. Arlington Med. Bldg., Inc. v. Sanchez Constr. Co.*,
471 P.2d 240 (Nev. 1970)...........................................................................................21

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
86 N.Y.2d 685 (1995)..................................................................................................15

*In re Perez*,
30 F.3d 1209 (9th Cir. 1994) .......................................................................................23

*Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.*,
933 F. Supp. 2d 1279 (D. Nev. 2013)..........................................................................26

*Petracca v. Petracca*,
302 A.D.2d 576 (2d Dept 2003)...................................................................................15

*Quest Software Inc. v. HealthEquity, Inc.*,
No. 8:23-cv-01909-JVS (KES), 2024 WL 3512088 (C.D. Cal. June 6,
2024) ....................................................................................................................23, 25

*R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*,
959 F.3d 509 (2d Cir. 2020) .........................................................................................26

*Ryze Renewables Holdings, LLC, et al. v. Mirae Asset Securities Co., Ltd.*,
JAMS Ref No. 5260000299..........................................................................................12

*Ryze Renewables Holdings, LLC, et al. v. Snell & Wilmer LLP, et al.*,
Case No. A-23-863908-B .............................................................................................10

*Ryze Renewables Holdings, LLC v. Snell & Wilmer LLP*,
No. A-23-863908-B .......................................................................................................3

*In re Ryze Renewables II, LLC*,
No. 1:23bk10289 (Bankr. Del. Mar. 9, 2023)............................................... 11, 12, 24

*In re Ryze Renewables Las Vegas*,
No. 1:23bk10290 (Bankr. Del. Mar. 9, 2023)...............................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Stewart v. U.S. Bancorp*,
297 F.3d 953 (9th Cir. 2002) ....................30

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................23

*Truck Ins. Exch. v. Swanson*,
124 Nev. 629 (2008).................... 19, 20, 21

*Wells Enters. v. Wells Bloomfield, Ltd. Liab. Co.*,
989 F. Supp. 2d 1055 (D. Nev. 2013)....................25

**Other Authorities**

Fed. R. Civ. P. 56....................1, 13

Fed. R. Evid. 801 ....................4, 16

Fed. R. Evid. 802 ....................16

Local Rule 56-1 ....................1

Mirae Asset Securities Co., Ltd. ("Mirae Asset"), by and through its counsel, moves for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56-1 as to counterclaims asserted by Defendants Ryze Renewables Holdings, LLC, and Ryze Renewables Nevada, LLC (individually, "Ryze Holdings" and "Ryze Nevada," and collectively, "Ryze") for: (1) breach of the Convertible Loan Agreement; (2) breach of the Second Loan Agreement; and (3) abuse of process. *See* ECF No. 31.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

Despite its misconduct—which has resulted in a federal investigation into Ryze's false statements to the U.S. Department of Agriculture to obtain $198 million in government funding, *see* App. at 1207, Ex. DP 27 at 131:12-25—Ryze demands more than $4 billion in damages based on Mirae Asset's failure to fund two supposed "loan agreements." This includes a $210 million Convertible Loan Agreement ("CLA") and a $21 million Second Loan Agreement ("SLA") relating to the construction of a renewable diesel facility in Nevada. That project failed, not due to any action or inaction of Mirae Asset, but because of Ryze's mismanagement, misuse of funds, and incompetence. For purposes of this motion, however, there is no genuine dispute of material fact on the elements and defenses of each of Ryze's claims. Summary judgment, therefore, is appropriate.

***First***, Ryze's central claim—that Mirae Asset breached the CLA fails as a matter of law. The CLA expressly required "Final Mirae [Investment] Committee Approval" as a condition precedent to funding. App. at 171, § 4.01 Ex. DP1. ***No such approval occurred. Ever.*** Thus, although Mirae Asset contends that its rogue former employee, Kyung-hyun Lee ("Lee"), lacked actual or apparent authority to execute the CLA, determination of that issue is ***not*** necessary for summary judgment. The undisputed facts

[1] Ryze dropped its first counterclaim for an order compelling arbitration of the underlying dispute. ECF Nos. 160-62. This Court granted Mirae Asset's motion for judgment on the pleadings as to Ryze's counterclaim for wrongful use of civil process. ECF No. 251.

show that the proposed $220 million loan transaction was rejected by the company and never progressed to Mirae Asset's internal Investment Committee (the body responsible for approving loan financings), and thus ***no admissible evidence*** shows that an express precondition in the CLA occurred. Absent such Investment Committee approval, "th[e] [CLA] [was] automatically terminated … with immediate effect." *Id.* Put simply, because "Final Mirae [Investment] Committee Approval" never occurred, the CLA terminated by its own terms, and no funding obligation arose. Moreover, ***the CLA includes both a covenant not to sue and a comprehensive disclaimer of liability***, which independently bar Ryze's claims here. *Id.*

***Second***, Ryze's claim under the SLA fares no better. Mirae Asset is ***not*** a lending party under the SLA. The SLA expressly identifies LV Renewables A, LLC ("LV Renewables A") as the sole lender. And discovery confirms that LV Renewables A is distinct from and unaffiliated with Mirae Asset. Ryze can offer no facts to satisfy Nevada's demanding alter ego standard to end-run the established principle of corporate separateness or to impute LV Renewables A's obligations to Mirae Asset. On the face of the document, ***there is no contractual duty for Mirae Asset to fund the SLA and thus no breach.***

***Third***, the breach of contract claims also are defective because Ryze lacks standing to pursue the damages it seeks. The "enterprise loss" Ryze claims it suffered is measured entirely by the alleged diminution in the value of the refinery. But it is undisputed that ***Ryze does not own the refinery, and it is barred from recovering enterprise damages on this basis***. The refinery is owned by Ryze Renewables Las Vegas, LLC ("Ryze Las Vegas"), a separate, non-party subsidiary. Ryze structured the various corporate entities to segregate assets and liabilities. Having invoked that separateness for financing and regulatory purposes, Ryze now seeks to disregard it to recover damages. But it is well established that a parent company cannot recover for injury to a subsidiary's property. Additionally, as set forth above, the CLA contains an absolute bar against recovery of actual or consequential damages—the only alleged damages Ryze seeks here.

***Last***, Ryze's remaining tort claim for abuse of process (for which Ryze seeks an astonishing more than $1 billion in damages) is barred both by Nevada's absolute litigation privilege *and* issue preclusion. The claim is premised on the filing of a Nevada state-court complaint and statements made in connection with that litigation—conduct squarely protected by Nevada's litigation privilege. Indeed, in *Ryze Renewables Holdings, LLC v. Snell & Wilmer LLP*, No. A-23-863908-B, the Nevada District Court dismissed near-identical claims with prejudice, holding that "[f]iling a complaint alone does not constitute abuse of process." App. at 878, Ex. DP18. Ryze cannot relitigate that issue here. Even as Ryze attempts to appeal from the Nevada court's ruling, issue preclusion bars Ryze's tort claim here.

There are no genuine disputes of fact here. Summary judgment should be granted in Mirae Asset's favor on each of Ryze's remaining counterclaims.

## I. CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Ryze Claims That It Entered into An Agreement with Mirae Asset.

In 2020-2021, Ryze began speaking with a (now-former) Mirae Asset employee, Lee, about potentially funding a project to convert an existing biodiesel refinery that was owned by Ryze Las Vegas (Ryze's remote subsidiary) into a renewable diesel facility in Las Vegas, Nevada. *See* ECF No. 31, Countercls. ¶¶ 3, 23.

On April 29, 2020, Mirae Asset and Ryze entered a non-binding Offering Memorandum regarding the potential financing of the transaction. ECF No. 4-4 at 5. The Offering Memorandum outlined Mirae Asset's initial expression of interest, the framework for negotiations, and some of the key terms and conditions of a potential deal. *Id.* When Ryze and Mirae Asset entered various iterations of the non-binding Offering Memorandum, the documents were ***not*** signed by Lee, but by people such as his boss, the Head of the Multi Structured Finance Department, Hyun-Joo Park. *See* ECF No. 4-4 at 7.

Lee did not speak English.[2] Instead, as Ryze admits in its pleadings (and depositions)[3], communications between Ryze and Lee were translated by Sung Hee Han ("Han"), who along with Jeff Hall at Paragon, served as Ryze's agent and representative throughout the negotiations of the CLA and up until at least May 2021. ECF No. 31 Countercls. ¶ 23 (Lee's "communication with Ryze and other participants was translated by an individual named Sunghee Han"); App. at 534, Ex. DP-11 ("Admitted that Director Lee's communications with Ryze and other participants often were translated by Mr. Han."); ECF No. 57-2 at 5 ("***All*** of Ryze's communications with Lee were interpreted, translated, and otherwise mediated through Han, supposedly because Lee spoke little to no English") (emphasis added); App. at 1218-1219, Ex. DP27 at 173:1-174:3 (agreeing he did not understand Lee speaking in Korean and translations were provided by Han); App. at 1231, Ex. DP28 at 113:7-23 (noting that Han was Ryze's agent through at least May 2021); App. at 1163, Ex. DP25 at 136:2-8, (Han's role "was the translator").

Ryze never spoke to anyone at Mirae Asset more senior than Lee, a mid-level employee. *See* ECF No. 57-2 at 3-4. Indeed, during the entire negotiation process, Ryze ***did not*** (i) speak with anyone in Mirae Asset's in-house legal department, an internal team or committee responsible for loan financings (*e.g.,* the Assessment Team, Investment Committee, etc.), or any employee superior to Lee, (ii) obtain any legal opinion letters

[2] ECF No. 31, Countercls. ¶ 23 ("Mr. Lee does not speak English."); App. at 534, Ex. DP11 ("Ryze was informed that Director Lee did not speak English, and that, based on Ryze's interactions with Director Lee, his ability to speak in English appeared limited."); App. at 1125, Ex. DP23 at 155:20-156:07 (stating that Lee "did not ever speak English to me" and she is unaware of anyone at Ryze speaking to Lee in English); App. at 1160, Ex. DP25 at 43:21-44:24 (stating that Lee "only spoke Korean so I couldn't understand anything he was saying"); App. at 119, Ex. DP28 at 119:6-21 ("I think that Mr. Lee's conversational capabilities in English were limited based, on our experience").

[3] Ryze's statements in other proceedings are admissible as an opposing party admission. *See, e.g.*, *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking notice of pleadings filed in state court). The Court should take judicial notice of the pleadings filed in the Snell Litigation, Ryze's bankruptcy proceedings that are attached to the Prince Decl., and Ryze's state court pleadings, previously filed with this Court referenced throughout by ECF number.

from Mirae Asset regarding Lee's (or Han's) alleged authority to negotiate on Mirae Asset's behalf, or (iii) obtain written confirmation that Mirae Asset or its Investment Committee had approved the transactions. App. at 732, Ex. DP14; App. at 518-521, 542-543, Ex. DP11; App. at 20, Ex A ¶ 17.

At the time of the CLA negotiations, Lee was a Team Leader.[4] App. at 17, Ex. A ¶ 5. Lee reported to a Division Leader and Managing Director, who in turn reported through layers of senior management—including an Executive Managing Director, Executive Vice President, President, Vice Chair, and ultimately the Chair. *Id.* As outlined in Mirae Asset's "Internal Rule on Job Responsibilities of Position Holders," the authority to execute contracts (or amendments) related to corporate credit projects, including credit and investment approvals, [redacted]. App. at 33, Ex. 1. As a ***Team Leader/Director*** ([redacted]), Lee [redacted]. *See id.* at 33-34; Declaration of Eun-mi Park (E. Park. Decl.), ¶ 9.

By March 2021, from Mirae Asset's perspective, the deal had fallen apart. App. at 19 ¶ 12, Ex. A; App. at 6 ¶ 9, Ex. A . Mirae Asset's "Assessment Team" reviewed the deal, including whether Ryze's principals had relevant experience, the fundraising structure of the transactions, how funds would be deployed, the structure of collateral, financial modeling (*e.g.,* projected revenue and profits, repayment terms, etc.), and other variables. *See* App. at 39-119, Ex. 2; E. Park Decl. ¶ 6. The Assessment Team issued a negative rating of the deal; it was rejected and did not progress to other internal levels of review or approval, including by the Investment Committee. App. at 6 ¶ 9, Ex. A; E. Park Decl. ¶ 6-7. But, unbeknownst to Mirae Asset and without the permission or knowledge of his superiors, Lee allegedly signed the CLA in late January 2021, ostensibly on behalf of Mirae Asset. *See* E. Park Decl. ¶ 9; ECF No. 31, ¶ 4. Lee did not have actual authority

[4] Lee is also sometimes referred to as the Head of Team, which is interchangeable. In July 2021, Lee became a director equivalent after the CLA was signed. App. at 122, Ex. 3.

to bind Mirae Asset to this loan. App. at 18 ¶ 7, Ex. A (Lee did not have authority to execute the CLA or any loan agreement with Ryze); App. at 6, ¶¶ 10-11 (Lee was not authorized to execute any loan agreement with Ryze); E. Park Decl. ¶ 9 ("Mr. Lee did not have authority to execute a loan financing agreement or loan transaction with Ryze…").

While Mirae Asset was unaware that Lee purportedly executed the CLA, the CLA itself conditioned any funding obligation on "Final Mirae [Investment] Committee Approval." App. at 171, § 4.01 Ex. DP1; App. at 542-543, Ex. D11 ("Mirae's conditional funding obligation under the CLA … [was] contingent on final authorization and approval by Mirae [Asset's] Investment Committee. . . . ***[N]o party contends that Director Lee's signature alone was sufficient to unilaterally and unconditionally commit Mirae [Asset] to a $210 million funding obligation[.]"***) (emphasis added). More specifically, under Section 4.01:

> [I]f Mirae does not, ***for any reason***, obtain the final approval from its internal committee . . . by the fourteenth (14th) Business Day" of satisfaction of all other conditions precedent, "then this Agreement shall be automatically terminated on the earlier of such failure to obtain the Final Mirae [Investment] Committee Approval, or the expiration of the fourteen (14) Business Day period without the occurrence of the Final Mirae Committee Approval, in either case with immediate effect."

(emphasis added). The CLA also states that Ryze agrees to waive any liability for any damages that arise from Mirae Asset's failure to obtain Final Mirae Investment Committee Approval. App. at 171, § 4.01 Ex. DP1 ("[E]ach party hereby waives, releases and discharges the other party and agrees not to sue in connection with, any liabilities and claims however arising (including, without limitation, those arising from any special, indirect, incidental, consequential, punitive, or any potentially acknowledgeable legal damages suffered or incurred in connection with, arising out of, or in any way related to, terminations and matters in connection with the Final Mirae Committee Approval …[)]").

Ryze claims that it satisfied all conditions precedent on February 10, 2021. *See* ECF No. 31, Countercls. ¶ 39. As a result, Mirae Asset would have been required to obtain

Final Mirae Investment Committee Approval within 14 days, by March 3, 2021, to arrange for loan funding. App. at 171, § 4.02 Ex. DP1

There are several requirements to obtain loan financing approval at Mirae Asset. This includes, for instance, (1) an initial feasibility check to open negotiations; (2) review by the Assessment Team to identify potential risks (including collateral, repayment terms, deployment of funds, projected profits, etc.); (3) review by the Legal Department, the Investment Committee, and various department heads; and (4) authorization by the General Affairs Department. *See* E. Park Decl. ¶ 4; App. at 19 ¶ 10, Ex. A; App. at 4 ¶ 4, Ex. A.

Indisputably, the Ryze transaction was never approved by the Assessment Team. *See* E. Park Decl. ¶ 7; App. at 19 ¶ 11, Ex. A; App. at 5 ¶ 8, Ex. A. The Assessment Team rejected the deal based on a negative rating, with an Issue Report identifying numerous deficiencies in the proposed deal. *See* App. at 39-119, Ex. 2. The Issue Report, which was prepared by Eun-mi Park (whose declaration is filed concurrently herewith), noted [redacted]. *Id.* at 64. The report further observed [redacted]. *Id.* at 65. It also identified [redacted]. *Id.* at 49, 66-67, 70-71. Because of these (and other) deficiencies, the Assessment Team did not advance the transaction to any higher-level internal committees, including the Investment Committee, for further review or approval. *See* App. at 11 ¶ 12, Ex. A; E. Park Decl. ¶¶ 6–7. Since the Investment Committee did not approve the deal, the loan was not funded.

### B. Ryze's Agents Launch Litigation Against It in Nevada State Court.

On July 23, 2021, Snell & Wilmer LLP ("Snell"), purportedly on behalf of Mirae Asset, filed a lawsuit against Ryze and several other defendants in Nevada state court (the "Nevada State Litigation" or "July 23 Lawsuit"), alleging that Ryze breached the CLA and

the covenant of good faith and fair dealing. ECF No. 57-1. The Snell attorneys who filed the litigation testified that the asserted claims were meritorious. *See* App. at 1177-1183, Ex. DP26 at 84:13-90:24 (describing, for instance, that "the construction project itself had not been managed properly," and that Ryze's claims to the USDA to secure the $198 million loan included false statements about its technology that "raised a red flag…about [the] False Claims Act"); App. at 1189-1192, Ex. DP26 at 208:13-211:18 (testifying that the claims were brought to obtain due diligence information).

While the Nevada State Litigation identifies Mirae Asset as the plaintiff, as Ryze has admitted, its former agents—Jeff Hall and Han—hired Snell to file suit. Ryze's corporate designee, Matthew Pearson, admitted that Han and Hall were Ryze's agents, from 2020 through at least May 2021. App. at 1214-1215, Ex. DP 27 at 154:7-155:22. Ryze has admitted in various filings that Han had hired Snell. ECF No. 57-1 ¶ 44 ("Hall and Han had sought out [Snell] (a close friend of Hall) to concoct a plan to force Ryze to negotiate with Mirae [Asset]."); App. at 862 ¶ 6, Ex. DP17 ("Hall and Han had been consulting with Snell for purposes of facilitating a lawsuit against Ryze"); App. at 790 ¶ 179, Ex. DP 15 ("Jeff Hall … and Sung Hee Han engaged in the wrongful use of civil proceedings by orchestrating the filing of the July 23 Lawsuit against Ryze"); *see also* App. at 1137, Ex. DP23 at 269:12-14 (Hall "hired Snell & Wilmer and started the whole lawsuit"). Mirae Asset was unaware of the lawsuit, or even that it was nominally filed on the company's behalf. In fact, Mirae Asset never paid Snell a retainer. App. at 384, Ex. DP27 ([redacted]).

As part of the Nevada State Litigation, Ryze participated in settlement conferences on August 12 and 13, 2021 that were spearheaded by Han (Ryze's former agent), Matthew Pearson (Ryze's Managing Principal), and Michael Brown (Ryze's Technical Advisor). App. at 1186, Ex. DP26 at 124: 17-22 ("The lead negotiator, so to speak, I saw as being Han on behalf of Mirae [Asset], and then on behalf of Ryze … at different times it appeared to be Matt Pearson, and other at other times it appeared to me to be Michael Brown"). No

employee of Mirae Asset attended this mediation. ECF No. 57-2, at 4 ("It was Han, not any actual employee of Mirae [Asset] that Defendants … hosted at Snell's Orange County, California offices and presented as the face of Mirae [Asset] during a mediation with Ryze just weeks after the July 23, 2021, lawsuit was filed."). Snell dismissed the Nevada State Litigation against Ryze without prejudice on August 17, 2021, *see* App. at 240, Ex. DP3 (Notice of Voluntary Dismissal Without Prejudice), and then attempted to dismiss the lawsuit (again) with prejudice on December 20, 2021. *See* App. at 244 Ex. DP4 (Notice of Voluntary Dismissal with Prejudice).

### C. Ryze and LV Renewables A, LLC Agree to the SLA.

Several months later, on November 29, 2021, Ryze signed the SLA, which purportedly required an entity named LV Renewables A, ***not*** Mirae Asset, to lend Ryze (the borrower) $21 million. ECF No. 31, Countercls. ¶ 79. The SLA states that LV Renewables A is 100% owned by LV Renewables B, Inc. ("LV Renewables B"). App. 378, Ex. DP6. LV Renewables B "is wholly-owned by Paragon BRG Korea Co., Ltd., an entity under the laws of the Republic of Korea ("PBRGK"), which is wholly owned by Lee Hack-Pyo, a Korean National." *Id.*

Mirae Asset does not have any ownership interest in LV Renewables A or LV Renewables B. E. Park Decl. ¶ 16. Ryze has judicially admitted that neither entity was affiliated with Mirae Asset. App. at 403 ¶ 92, Ex. DP8 (Ryze learned that the "lender would be a newly formed entity owned by unknown individuals living in Korea who are *not* affiliated with Mirae [Asset]") (emphasis added); *see* App. at 1227-1229, Ex. DP 28 at 71:20-73:5 (Ryze's corporate designee had zero facts establishing alter ego liability, including shared management, bank accounts, etc.).

Given Han and Hall's direction of the Nevada State Litigation, as well as the introduction of LV Renewables A, Ryze admitted that it had "serious questions" about whether Mirae Asset was involved in the negotiation of the SLA. App. at 534-535, Ex. DP11 (quoting Snell Compl. at ¶ 86); App. at 402 ¶ 86, Ex. DP8 ("Serious questions arose during Ryze's negotiations … about the true identity of Snell's client and whether Mirae

[Asset]—or a front runner claiming to be affiliated with Mirae [Asset]—was actually involved in the deal"). Ryze asked Snell if it could speak to Mirae Asset's in-house counsel, Korean regulators, or any English-speaking Mirae Asset employee. App. at 403 ¶ 88, Ex. DP8. Snell declined those requests. *Id*; *see also id.* ¶¶ 88, 91 (Ryze "pleaded" with Snell "[t]o speak with (i) Mirae's in house counsel, (ii) the alleged Korean regulators, or (iii) *any* English-Mirae employee," but Snell ignored those requests, as well as Ryze's request for information on who was behind the loan) (emphasis in original). Nevertheless, Lee purportedly signed the SLA (again, without authorization) but only in connection with specific indemnification provisions that does not appear within the four corners of the SLA. App. at 307, Ex. DP6 (*i.e.*, the signature page appears to acknowledge and agree to an "indemnity set forth in Section 13.2" of the SLA, but the SLA contains no such provision and Ryze does not seek indemnity here). Thus even on Ryze's theory that Lee could bind Mirae Asset, his alleged signature on the SLA did not purport to bind Mirae Asset to any funding obligations.

**D. Ryze Files Suit Against Snell.**

On January 12, 2023, Ryze filed suit against Snell and three of its partners (the "Snell Litigation"), in relation to their conduct in the Nevada State Litigation.[5] Ryze filed its second amended complaint in that action in January 2025, and alleged several claims against Snell, including an abuse of process claim arising from Snell's filing of the Nevada State Litigation and conduct by Snell and Han in the July 2021 mediation. App. at 830-832 (¶¶ 115-23), Ex. DP16.

On April 29, 2025, the state court dismissed Ryze's second amended complaint with prejudice. *See* Ex. DP18. As to Ryze's abuse of process claim, the court held that the litigation privilege defeated Ryze's claim. App. at 878-79, Ex. DP. 18. The state court dismissed Ryze's claim because "[f]iling a complaint alone does not constitute abuse of process," "[n]or can statements made during mediation form the basis of the claim." *Id.*

[5] That matter was styled as *Ryze Renewables Holdings, LLC, et al. v. Snell & Wilmer LLP, et al.*, Case No. A-23-863908-B, Clark County, Nevada.

The court ruled that mediation statements are confidential, inadmissible, and protected by the litigation privilege. *Id.* The court further held that filing a lawsuit with alleged bad intent did not suffice to establish improper use of judicial process: "Mirae [Asset] filed suit, then both sides entered a three-day mediation and executed the Binding Term Sheet. Ryze chose not to litigate the July 23 Lawsuit. Nothing about these events shows a willful misuse of legal process for an improper process." *Id.* at 879.

On July 16, 2025, Ryze appealed the state court's dismissal of its second amended complaint. In the case appeal statement, Ryze admitted that the alleged conduct giving rise to its abuse of process claim was undertaken by Snell, not Mirae Asset. App. at 903 ¶ 10, Ex. DP 19 (the July 23 Lawsuit was filed "without Mirae [Asset]'s authorization and for improper purposes").

**E. Ryze's Subsidiaries File for Bankruptcy.**

On March 9, 2023, the primary lender for the project, Georgia's Own Credit Union ("GOCU"), placed Ryze Renewables II, LLC and Ryze Las Vegas into bankruptcy. *In re Ryze Renewables II, LLC*, No. 1:23bk10289 (Bankr. Del. Mar. 9, 2023); *In re Ryze Renewables Las Vegas*, No. 1:23bk10290 (Bankr. Del. Mar. 9, 2023). Ryze Renewables II, LLC and Ryze Las Vegas were in default under their loan agreement with GOCU, which financed Ryze Las Vegas' ownership of the refinery, and GOCU "was hesitant to provide additional financing." App. at 426 ¶ 29, Ex. DP9. "Accordingly, the Boards concluded that commencing the Chapter 11 Cases would be in the best interests of [Ryze Renewables II, LLC and Ryze Las Vegas] and their various stakeholders." *Id.* On June 13, 2023, Ryze Renewables II, LLC, and Ryze Las Vegas held a court-approved auction where they sold substantially all of their real property and non-real property assets related to the refinery, for approximately $37 million. *See* App. at 504, Ex. DP10.

Ryze Renewables II, LLC and Ryze Las Vegas made clear that they were separate entities from Ryze Holdings and Ryze Nevada. At the outset of the bankruptcy proceeding, Ryze's Chief Restructuring Officer, Klaus Gerber, provided the court with a corporate organizational chart. App. at 434, Ex. DP9. This chart identified Ryze Renewables II,

LLC and Ryze Las Vegas as debtor-subsidiaries one or more levels removed from the parent companies, Ryze Holdings and Ryze Nevada (which are identified as non-debtors, and which are parties here). *Id.* The decision to make entities like Ryze Renewables II and Ryze Las Vegas distinct from Ryze Holdings and Ryze Nevada was intentional on Ryze's part to ensure that "project companies," like Ryze Las Vegas, had holding companies or "bankruptcy remote entities" above them to keep their assets and liabilities separate. *See* App. at 1147, Ex. DP24 at 25:21-26:13.

Given this corporate structure, the provisions regarding the plan's implementation explained that all monetary payments required by the plan were to be obtained from Ryze Renewables II, LLC and Ryze Las Vegas—***not*** Ryze Holdings or Ryze Nevada (the named counterclaimants in this case). App. at 445 (Section 1.3), App. at 478 (Section 9.2), Ex. DP10. Without any further revision to the plan, the bankruptcy cases were closed on July 2, 2024. *In re Ryze Renewables II, LLC*, No. 1:23bk10289, (Bankr. Del. July 2, 2024).

### F. Ryze Files Arbitration Against Mirae Asset in Las Vegas.

On July 21, 2023, Ryze commenced an arbitration with JAMS, captioned as *Ryze Renewables Holdings, LLC, et al. v. Mirae Asset Securities Co., Ltd.,* JAMS Ref No. 5260000299 ("JAMS Arbitration"). ECF No. 4-4 at 9-29. Mirae Asset filed this action in September 2023, requesting a judicial declaration that it had not entered into any agreements with Ryze. ECF No. 2. The Court granted Mirae Asset's motion for preliminary injunction, staying the arbitration and finding that Mirae Asset was likely to show that Lee never had authority to enter into any agreement with Ryze. ECF No. 35.

Ryze subsequently filed its answer and counterclaims, asserting claims for breach of the CLA and SLA, abuse of process, wrongful use of civil process, and to compel arbitration. ECF No. 31. Ryze ultimately abandoned its effort to compel arbitration. ECF Nos. 160-62. Mirae Asset moved for judgment on the pleadings on Ryze's remaining counterclaims. ECF No. 230. This Court dismissed Ryze's counterclaim for wrongful use of civil process. ECF No. 251.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings and admissible evidence show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)) ("FRCP 56"). A court can consider admissible evidence in ruling on a motion for summary judgment. Fed. R. Civ. P. 56 (c); *Knickmeyer v. Nev. ex rel. Eighth Jud. Dist. Ct.*, 716 F. App'x 597, 599 (9th Cir. 2017) (holding that district court properly disregarded hearsay statements in support of plaintiff's hostile work environment claim).

If the moving party satisfies Fed. R. Civ. P. 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see Celotex*, 477 U.S. at 323. A mere "scintilla" of evidence will not suffice to meet that burden. *Anderson*, 477 U.S. at 252. Nor is it enough for the non-moving party to show that there is some "metaphysical doubt as to the material facts[,]" provided that any inferences from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586(1986). The non-moving party must come forward with sufficient evidence for its claims to create a genuine issue for trial. *Celotex*, 477 U.S. at 324. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## III. ARGUMENT

### A. Mirae Asset Was Under No Obligation to Fund the CLA.

Ryze alleges that Mirae Asset breached the CLA by failing to provide $210 million in loan financing. Putting aside the validity of the agreement (and questions of actual or apparent authority), Mirae Asset was under no obligation to fund the CLA. Mirae Asset's Investment Committee ***never approved*** the deal, which is required under Section 4.01:

> [I]f Mirae does not, for any reason, obtain the final approval from its internal committee (such final approval, hereinafter referred to as the "**Final Mirae Committee Approval**") by the fourteenth (14th) Business Day set forth in Section 4.02, then this Agreement shall be automatically terminated on the earlier of such failure to obtain the Final Mirae Committee Approval, or the expiration of the fourteen (14) Business Day period without the occurrence of the Final Mirae Committee Approval, in either case with immediate effect.

App. at 171, § 4.01 Ex. DP1 (emphasis in original). Mirae Asset's funding obligation would have been triggered, under Section 4.02, within 10 days of the Final Mirae Investment Committee Approval; but again, that never occurred. *Id.* § 4.02. Further, ***the CLA includes an express covenant not to sue and an absolute bar on all damages***. *Id.* at § 4.01.

Ryze claims it satisfied its conditions precedent by February 10, 2021. ECF No. 31 ¶ 39. Thus, under Section 4.02 of the CLA, Mirae Asset had until March 3, 2021, to secure Final Mirae Investment Committee Approval or the agreement would terminate automatically. App. at 171, § 4.02 Ex. DP1. The facts are undisputed: ***there was no Final Mirae Investment Committee Approval.*** E. Park Decl. ¶ 9; App. at 6 ¶ 9, Ex. A ("I informed Lee throughout the process that the Assessment Team had a negative opinion of the transaction, and that by March 2021 … the Assessment Team would not recommend proceeding with the transaction."). Indeed, the Investment Committee never considered the transaction because the Assessment Team rejected the deal at its early stages. E. Park Decl. ¶¶ 7-9; App. at 6 ¶ 9, Ex. A. No documentary evidence exists contradicting this fact. Indeed, Ryze "admits that it did not receive written confirmation" that Final Mirae [Investment] Committee Approval occurred, despite specifically requesting the same. App. at 521, Ex. DP 11; App. at 1129-1130, Ex. DP23 at 201:19-202:11. Therefore, the funding obligation was never triggered.

Under New York law, which governs the CLA,[6] a condition precedent "must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v.*

---

[6] *See* App. at 171, § 10.09, Ex. DP1 ("This agreement shall be governed by the Laws of the State of New York.")

*Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995) (citation omitted). Section 4.01 of the CLA unambiguously established a condition precedent when it "employed the unmistakable language of condition ('if')." *Id.* at 691; *see* App. at 171, § 4.01 Ex. DP1. When, like here, there is an express condition in an agreement, it "must be literally performed." 86 N.Y.2d at 690. Since the Final Mirae (Investment) Committee Approval did not occur, there was ***no duty*** by Mirae Asset to provide funding.[7]

Despite its admissions that Lee did not speak English, and that Han (unofficially) translated Lee's statement during meeting and phone calls, Ryze is likely to attempt to manufacture a factual dispute based on claims that Lee verbally informed Ryze during a phone call that Final Mirae Investment Committee Approval had been obtained. This is a red herring.

***First***, despite what Lee allegedly stated, that does not alter the undisputed fact that Mirae Asset's Investment Committee ***never approved*** any loan financing agreement with Ryze. There is no evidence to the contrary. The proposed Ryze deal received a negative rating, and was rejected, by the Assessment Team; it was never promoted to the Investment Committee for approval and no such approval issued. Mirae Asset's representatives have confirmed this multiple times. App. at 6 ¶ 9, Ex. A; App. at 19, ¶¶ 10-11, Ex. A; E. Park Decl. ¶¶ 7-9. "When commercial parties expressly agree that a specified occurrence shall be a condition precedent to the creation or enforceability of a right or obligation, and there

---

[7] Additionally, since Mirae Asset did not receive "Final Mirae Committee [Investment] Approval," the CLA "automatically terminated" prior to any funding obligation. App. at 171, § 4.01 Ex. DP1. Under New York law, a defendant cannot be held liable for a breach of contract that was terminated before the alleged breach occurred. *Lipton v. Green*, No. 51 Misc.3d 1210(A), 2016 WL 1452143, at *4 (N.Y. Sup. Ct. Apr. 6, 2016) ("Even assuming that a contract was formed between the parties, it was terminated before any alleged breach took place."); *J & L Am. Enters., Ltd. V. DSA Direct, LLC*, No. 10 Misc. 3d 1076 (A), 2006 WL 216680, at *6 (N.Y. Sup. Ct. Jan. 27, 2006); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) ("[Plaintiff] did not, and could not, allege that the [defendant] breached the contract by selling the building after it had properly terminated the contract."). And in resolving the terms of a contract, a court "may not write into a contract conditions the parties did not include by adding or excising terms under the guise of construction, nor may it construe the language in such a way as would distort the contract's apparent meaning." *Petracca v. Petracca*, 302 A.D.2d 576, 577 (2d Dept 2003).

is no ambiguity arising out of other language in their contract, the only question for the court is whether the condition precedent has been complied with." *David Fanarof, Inc. v. Dember Const. Corp.*, 600 N.Y.S.2d 226, 227–28 (1993) (holding that since the condition precedent to plaintiff's right to receive payment under the subcontracts did not take place, plaintiff was not entitled to summary judgment). Therefore, the inquiry ends here, as the condition precedent was not fulfilled.

***Second***, the statements upon which Ryze hopes to rely are hearsay, which cannot defeat summary judgment.[8] *See Blair Foods, Inc v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980) ("[H]earsay evidence is inadmissible and may not be considered by this court on review of a summary judgment."); *Courtney v. Canyon Tel. & Appliance Rental, Inc.*, 899 F.2d 845, 851 (9th Cir. 1990) (holding that summary judgment was proper where plaintiff's only evidence in opposition was hearsay statements). Ryze cannot prove that the Final Mirae (Investment) Committee Approval occurred based upon Han's purported out-of-court statement that Lee purportedly stated during a call that the approval had been granted.

***Third***, the written record contradicts Ryze's claims. Ryze's representative, Han, affirmed in writing to Ryze that no Final Mirae (Investment) Committee Approval had occurred. In an e-mail dated March 12, 2021 (ten days after approval would have been

---

[8] Hearsay is any statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is inadmissible unless it falls within a hearsay exception. *See* Fed. R. Evid. 802. Here, Han's alleged verbal statement that Final Mirae (Investment) Committee Approval occurred constitutes hearsay as Ryze offers its own agent's (Han) statement as proof that the approval occurred.

This is particularly true where, as here, Ryze has admitted that Lee did not speak English and that Han translated for Lee. ECF No. 31, Countercls. ¶ 23 ("Mr. Lee does not speak English. His communications with Ryze and other participants was translated by an individual named Sunghee Han."); App. at 534, Ex. DP11 ("Ryze was informed that Director Lee did not speak English, and that, based on Ryze's interactions with Director Lee, his ability to speak in English appeared limited." and admitted that "Director Lee's communications with Ryze and other participants often were translated by Mr. Han."); ECF No. 57-2 at 5 ("All of Ryze's communications with Lee were interpreted, translated, and otherwise mediated through Han, supposedly because Lee spoke little to no English"

required), Han explained to other Ryze representatives that Lee had told Han that the approval process had commenced, but that there were "a few ticking the boxes exercise [*sic*] and retorting of the administrative questions left," and "certain issues to be resolved internally for the committee *approval*." App. at 236, Ex. DP2 (emphasis added). Ryze's "evidence" of the claimed Final Mirae (Investment) Committee is double (and possible triple) hearsay—its own witness testifying about what they claim Ryze's agent Han, said that Lee had said on a call. In any event, the hearsay testimony is contradicted by Han's own correspondence. There is no ***genuine*** dispute of material fact here, and summary judgment favors Mirae Asset.[9]

Mirae Asset did not breach the CLA when it did not fund the deal. Notwithstanding, Ryze is precluded from bringing any claims against, or recovering damages from, Mirae Asset pursuant to the express covenant not to sue and bar on damages. App. at 171, Ex. DP1 § 4.01.[10]

**B. Mirae Asset Was Under No Obligation to Fund the SLA.**

---

[9] At the close of discovery and to attempt to create an issue of fact—though ***not*** "genuine"—Matthew Pearson (Ryze's Managing Principal) and Michael Brown (Ryze's technical advisor) claimed in self-serving testimony that Lee broke from his routine practice of speaking Korean to announce, in English, that Mirae Asset's Investment Committee had approved the deal. App. at 1218-1219, Ex. DP 27 at 173:01-174:04; App. at 1242, Ex. DP 29 at 115:8-22. This statement is flatly contradicted by Ryze's judicial admissions that Lee did not speak English, *see* ECF No. 31 ¶ 23; App. at 534, Ex. DP11, and the testimony of other Ryze witnesses that Han translated for Lee during the call regarding investment committee approval. *See* App. at 1151-52, Ex. DP24 at 145:9-23 (Han translated for Lee during the call regarding Final Mirae (Investment) Committee Approval); App. at 1133-34, Ex. DP 23 at 212:10-16 (Lee's statements on the call were translated); *see e.g.* App. at 1160, Ex. DP25 at 43:21-44:24 (Lee "only spoke Korean so I couldn't understand anything he was saying"). In any event, whether the statement was made by Lee or Han is of no consequence because the undisputed fact is that the Final Mirae (Investment) Committee Approval did not occur. App. at 6, Ex. A ¶¶ 9-10; App. at 19-20, Ex. A ¶ 12; Decl. of E. Park, ¶ 7.

[10] A covenant not to sue "is an agreement by one having a present right of action against another not to sue to enforce such right." *Colton v New York Hosp.*, 53 A.D.2d 588, 588-89, 385 N.Y.S.2d 65 (1st Dept. 1976). Covenants not to sue are generally enforceable. *See McMahan & Co. v Bass*, 250 A.D.2d 460, 461, 673 N.Y.S.2d 19 (1st Dept. 1998).

There is also no genuine issue of material fact concerning whether Mirae Asset is bound to fund Ryze under the SLA. The SLA does ***not*** require funding by Mirae Asset, and Ryze knew the same. Nor does the record establish facts supporting a finding of alter ego liability here.

1. <u>Mirae Asset is not a lending party under the SLA.</u>

Ryze's claim for breach of the SLA fails because, as Ryze concedes, *see* ECF No. 233 at 16, Mirae Asset was not a lending party under the SLA. Under Nevada law, which governs the SLA,[11] a breach of contract claim requires a legal obligation between the parties. Where no such obligation exists, the claim fails as a matter of law. *See, e.g., Becker v. Caesars Ent.*, No. 2:19-cv-01043-RFB-DJA, 2021 WL 4096971, at *3 (D. Nev. Sept. 8, 2021) (citation omitted) ("[U]nder Nevada law, a claim of breach of contract requires, *inter alia*, the existence of a valid contract to which the defendant is a party."). The SLA identifies LV Renewables A—not Mirae Asset—as the lender. It begins: "LOAN AGREEMENT dated as of November 29, 2021 . . . Between RYZE RENEWABLES NEVADA, LLC . . . ('Borrower'), and LV RENEWABLES A, LLC . . . ('Lender')." App. at 250, 256, Ex. DP6 (SLA, cover page and Page 1 (Recitals)). Section 2.1 further provides that the "Lender agrees to make a loan to Borrower…in the maximum principal amount of up to $21,000,000." *Id.* at 264.

Mirae Asset is not defined as the lender in the SLA. *Id* at 256. Nor does the SLA include a single provision in which Mirae Asset is saddles with a funding obligation. *See* Ex. DP6.

Ryze's attempt to impute funding obligations to Mirae Asset ignores black letter contract law. ***Mirae Asset cannot breach an obligation to which it has not agreed.*** *See, e.g., County of Clark v. Bonanza No. 1*, 96 Nev. 643, 648-49 (1980) ("As a general rule, none is liable upon a contract except those who are parties to it."). Lacking any

[11] Section 13.04 of the SLA states that "[a]ll issues and questions concerning the application, construction, validity, interpretation and enforcement of this agreement and the exhibits and schedules to this Agreement shall be governed by, and construed in accordance with, the laws of the State of Nevada." App. at 343, Ex. DP6.

requirement to fund Ryze, Ryze cannot rewrite the SLA to force Mirae Asset to fund it (or to seek damages from the failure to fund under the SLA). Mirae Asset is entitled to summary judgment.

2. LV Renewables A is not an alter ego of Mirae Asset.

Ryze may contend that Mirae Asset is bound under a veil-piercing/alter ego theory, *see* ECF No 233 at 16, because Lee apparently listed Mirae Asset's corporate name and address on LV Renewables A's incorporation papers. "It should be noted, however, that the corporate cloak is not lightly thrown aside and that the alter ego doctrine is an exception to the general rule recognizing corporate independence." *Truck Ins. Exch. v. Swanson*, 124 Nev. 629, 635 (2008). Mirae Asset does not fit within that narrow exception.

To pierce the corporate veil, Ryze must show that: (1) LV Renewables A is influenced and governed by Mirae Asset; (2) there is a unity of interest and ownership such that Mirae Asset and LV Renewables A are inseparable; and (3) adherence to the notion of separate entities would sanction fraud or promote injustice. *Ene v. Graham*, 546 P.3d 1232, 1237 (Nev. 2024). "Each of these requirements must be present before the alter ego doctrine can be applied." *N. Arlington Med. Bldg., Inc. v. Sanchez Const. Co.*, 86 Nev. 515, 520–21 (1970). Here, none of these elements are met.

The SLA claims (albeit incorrectly) that Mirae Asset is a manager of LV Renewables A. But this is insufficient to establish that LV Renewables A is Mirae Asset's alter ego. *See Truck Ins. Exch.*, 124 Nev. at 636. In *Trucks Ins. Exch.*, the respondent argued that the alter ego theory should apply to bind a Nevada firm to an agreement with a California firm because the Nevada and California firms were one and the same. *Id.* at 634. The Supreme Court of Nevada found this argument unpersuasive. It held that the Nevada firm was not influenced and governed by the California firm even though the same person owned 100% interest in the Nevada firm and 50% interest in the California firm. *Id.* at 636. The court further held that the two firms did not share a unity of interest because the Nevada firm "maintained an identity independent from that of the California firm." *Id.* The court noted that the two firms maintained their own federal tax identification number,

operated under their own bylaws, possessed independent business licenses, tax licenses, part-time staff, phone lines, insurance coverages, and office subleases. *Id.* Lastly, the court reasoned that adherence to the firms as separate entities would not sanction fraud or promote injustice in part because respondent was a sophisticated business entity that could have safeguarded its contractual rights by reducing them to writing. *Id.*

Here, the facts do not support an alter ego finding. ***First***, there is no evidence that LV Renewables A is influenced and governed by Mirae Asset. There is no common ownership interest between LV Renewables A and Mirae Asset. LV Renewables A is not a subsidiary or affiliate of Mirae Asset. E. Park Decl. ¶ 13; App. at 21, Ex. A ¶ 18. The SLA explicitly states that (1) LV Renewables A is 100% owned by LV Renewables B, Inc., (2) LV Renewables B, Inc. is wholly-owned by Paragon BRG Korea Co., Ltd. ("Paragon BRG"), (3) and Paragon BRG is wholly owned by Lee Hack-Pyo, a Korean National. App. at 378, Ex. DP6, Schedule 4b.[12] None of these entities or persons have any affiliation with Mirae Asset. E. Park Decl. ¶¶17-19; *see also* ECF No. 57-1 ¶ 92 (Ryze judicially admitted that the "lender would be a newly formed entity owned by unknown individuals living in Korea who are not affiliated with Mirae [Asset]") (emphasis added). Indeed, Ryze conducted its own background check into LV Renewables A and Ryze's corporate designee testified that the officers for LV Renewables A "did not work for Mirae Asset." App. at 1229, Ex. DP 28 at 73:1-5; *see also* App. at 867-68, Ex. DP17 ¶ 39 (Ryze's Rule 30(b)(6) witness declaring that LV Renewables A was "not owned by Mirae [Asset]").

***Second***, the record confirms that there is no unity of interest or ownership between LV Renewables A and Mirae Asset. "Generally, the commingling of funds, shared operations, shared headquarters, shared bank accounts, or failure to observe corporate formalities show unity of interest or ownership." *Clarke v. Service Employees Int'l Union*, 137 Nev. 460, 466 (2021) (granting summary judgment where the plaintiff failed to show

[12] Given that the SLA makes clear that Mirae Asset does not own LV Renewables, Ryze was very much aware that LV Renewables was not owned or controlled by Mirae Asset.

a genuine dispute of material fact existed regarding his alter ego theory of liability). Mirae Asset and LV Renewables A do not commingle funds. *See* E. Park. Decl. ¶ 15. They do not share any operations, headquarters, or bank accounts. *Id.* ¶ 16. Nor do they share any tax identification numbers, bylaws, business licenses, tax licenses, employees, phone lines, insurance coverages, addresses, or phone numbers. *Id.* There is no evidence that there was any failure to observe corporate formalities.

***Lastly***, no fraud or injustice would occur if LV Renewables A and Mirae Asset are treated as separate entities. Like the respondent in *Trucks Ins. Exch.*, Ryze is a sophisticated business entity, with a complex corporate structure covering nearly a dozen Ryze entities and multiple bank accounts. *See Truck Ins. Exch.*, 124 Nev. at 636. While Mirae Asset disputes whether Lee had authority to (purportedly) execute the SLA, resolving that issue is not necessary for summary judgment. As drafted, the SLA did ***not*** identify Mirae Asset as a funder and Mirae Asset has no funding obligations within the four corners of the agreement. To the extent Ryze believed that funding by Mirae Asset was required, then Ryze should have "safeguarded its contract rights by reducing them to writing." *Id.* Indeed, Ryze's principals have admitted that they knew LV Renewables A was a new and separate entity from Mirae Asset, but they proceeded at their own risk. App. at 867-68, Ex. DP17, ¶¶ 39-40, App. at 403-04, Ex. DP8; *see also* App. at 248, Ex. DP5 (text message exchange between Daniel Brown (Ryze's Vice President) and Michael Brown (Ryze's technical advisor) stating that "Lender wont [*sic*] actually be an affiliate of Mirae [Asset]").

The Nevada Supreme Court has declined to apply the alter ego doctrine absent an extraordinary showing. *See, e.g., Ene v. Graham*, 546 P.3d 1232, 1237-38 (Nev. 2024) (reversing the district court's application of alter ego to the plaintiff even where the corporation was a one person LLC where the plaintiff was the only member); *Ecklund v. Nevada Wholesale Lumber Co.*, 562 P.2d 479, 481 (Nev. 1977) (rejecting that individual was an alter ego for the corporation even where the individual served as president and

director of the corporation and appeared to have been the sole person acting on its behalf). No such evidence exists here.

Where there is not a sufficient nexus between LV Renewables A and Mirae Asset, there can be no application of the alter ego doctrine.

### C. Ryze Cannot Establish Injury or Damages.

Ryze asserts that it was injured because the failure of the CLA and SLA resulted in over $2 billion of total loss of the refinery's value. App. at 1111, Ex. DP22. The refinery, however, does not belong to Ryze; it belongs to Ryze Las Vegas, and Ryze cannot recover for Ryze Las Vegas' damages. *See* App. at 1200-1201, Ex. DP 27 at 16:11-17:07 (stating that the assets of Ryze Las Vegas included the "leftover remnant of a biodiesel refinery").[13]

Article III of the Constitution treats parent companies and their subsidiaries as separate entities. Therefore, parent companies, like Ryze, do not acquire standing to seek damages on behalf of their subsidiaries by virtue of their ownership interests. Rather, Ryze must establish an injury to itself to recover damages. Ryze, however, lacks a legal interest in Ryze Las Vegas' assets, including the refinery. Without standing to seek damages for harm to the refinery, Ryze cannot establish an essential element of its breach of contract counterclaims. *See EVIP Canada, Inc. v. Schnader Harrison Segal & Lewis LLP*, No. 18-cv-11456 (LJL), 2021 WL 964943, at * 18 (S.D.N.Y. Mar. 15, 2021) (citing to principle that a defendant cannot "prove damages on its counterclaims of breach of contract and breach of fiduciary duty because it did not actually incur the costs in connection with the disputed purchase. Instead, the entities it owned did so"). Additionally, Ryze cannot seek damages under the CLA because, pursuant to Section 4.01, Ryze is barred from recovering consequential damages. *See* App. at 171, Ex. DP1 § 4.01.

[13] Ryze intentionally established Ryze Las Vegas as a separate corporate entity several degrees removed from itself. *See* App. at 1147-48, Ex. DP24 at 25:21-26:13.

1. Ryze lacks standing to seek damages.

Article III of the Constitution requires a party to prove that it suffered an injury in fact that was caused by the opposing party's conduct and is redressable by a favorable decision from the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Injury in fact "requires that the party seeking review be himself among the injured." *Id.* at 563; *accord In re Perez*, 30 F.3d 1209, 1217 (9th Cir. 1994) ("To have standing, a party must show more than just wrongdoing by someone else; he must show that the alleged wrongdoing adversely affected *him*.") (emphasis original). Moreover, standing must be established as to each claim and each form of relief sought. *Lujan*, 504 U.S. at 561; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021).

Courts have routinely rejected attempts to establish standing that blur the distinctions between corporate entities. *See Ashley Creek Properties, L.L.C.*, 403 F. App'x at 274; *Infinity Glob. Consulting Grp., Inc. v. Tilray, Inc.*, No. CV 20-05263-PA-(AFMX), 2021 WL 880391, at *7 (C.D. Cal. Jan. 7, 2021); *Quest Software Inc. v. HealthEquity, Inc.*, No. 8:23-cv-01909-JVS (KES), 2024 WL 3512088, at *3 (C.D. Cal. June 6, 2024). In *Ashley Creek Properties, L.L.C.*, the Ninth Circuit affirmed the district court's dismissal of a claim for lack of standing where the plaintiff alleged that mining efforts might negatively impact the amount of royalty and the value of the reversionary interests in phosphate leases that belonged to the plaintiff's parent company. 403 F. App'x at 274. The court reasoned that it was "fatal" to the plaintiff's standing that the mining rights allegedly infringed upon belonged to its parent company rather than the plaintiff itself. *See id.* Similarly, in *Infinity Global Consulting Group, Inc.*, the court held that the plaintiffs lacked standing to bring a conversion claim based on harm to assets owned by the plaintiffs' subsidiary because they "have no claim to ownership or possession of [the subsidiary's] assets." 2021 WL 880391, at *7.[14]

[14] The corporate form does not take a backseat when determining whether a corporate litigant has established injury in fact as required by Article III. *See Ashley Creek Properties, L.L.C. v. Larson*, 403 F. App'x 273, 274 (9th Cir. 2010). Rather, the "basic tenet of American corporate law . . . that the corporation and its shareholders are distinct

Here, Ryze seeks damages for conduct that it claims caused "its partially converted refinery [to be] sold to an unaffiliated third party through a bankruptcy proceeding initiated by two of Ryze's subsidiaries." ECF No. 31 ¶ 9; *see* App. at 1097, Ex. DP21 (noting that "[p]rincipal among these damages is the loss of the entire enterprise value of the project"). The refinery, however, does not belong to Ryze. Instead, it was wholly-owned by its remote subsidiary, Ryze Las Vegas (and subsequently sold during the bankruptcy proceedings for roughly $36 million). *See* App. at 1200, Ex. DP 27 at 16:12-23 (identifying the refinery as Ryze Las Vegas' asset); *see also* App. at 458, 464, Ex. DP 10 (Joint Plan explaining that Ryze Las Vegas entered the purchase agreement for the refinery and obtained title and that Edgewood purchased debtors' assets for roughly $36 million). Indeed, Ryze designed its corporate structure to include numerous subsidiaries for the purpose of separating ownership of assets and limiting liability. *See* App. at 1147-48, Ex. DP24 at 25:21-26:13 (each project company had a holding company, or "bankruptcy remote entit[y]" above it "[s]o that the project companies have . . . their assets . . . separate and removed from the holding company"); App. at 1120, Ex. DP23 at 30:7-22 (Ryze Nevada was created to serve as an entity between Ryze Holdings and Ryze Las Vegas).

Like the plaintiff in *Infinity Global Consulting Group, Inc*, Ryze seeks damages for injuries that belong to its subsidiary. *See In re Ryze Renewables II, LLC*, No. 1:23bk10289, App. at 458-59, Ex. DP10 (Bankr. Del. Nov. 28, 2023) (listing Ryze Las Vegas as downstream subsidiary of Ryze Holdings and Ryze Nevada). Because Ryze Holdings and Ryze Nevada are distinct entities from Ryze Las Vegas, they do not own the refinery, notwithstanding that Ryze Las Vegas is Ryze Nevada's subsidiary. *See Infinity Global*

---

entities" is central to the injury-in-fact analysis because corporate parents do not, by virtue of owning shares in a subsidiary, have legal title to the assets of the subsidiary. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). Thus, parent companies and their subsidiaries lack standing to pursue claims on behalf one another. *See Ashley Creek Properties, L.L.C.*, 403 F. App'x at 274; *Infinity Global Consulting Grp., Inc.*, 2021 WL 880391, at *7 ("[S]hareholders normally cannot recover in their individual capacities for the wrongful depletion of corporate assets.") (citation modified).

*Consulting Grp.*, Inc., 2021 WL 880391, at *7; *Dole Food Co. v. Patrickson*, 538 U.S. at 475. Absent a legally cognizable interest in the refinery, Ryze Holdings and Ryze Nevada cannot establish Article III standing to seek damages for injury to the refinery. *See Ashley Creek Properties, L.L.C.*, 403 F. App'x at 274; *see also Quest Software Inc*, 2024 WL 3512088, at *3 ("[C]orporate separateness generally insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary. . . . Therefore, it follows that parents and subsidiaries are not able to assert the interests of each other in litigation solely by virtue of ownership.") (citation modified).

Yet, Ryze attempts to do just that. When asked to describe the bases for the damages sought, Ryze Holdings pointed to the "Diminution in Project Value" resulting from the alleged CLA breach and asserted that the failure to fund the SLA formed part of "a single-line item loss, quantified by the decline in project value." *See* App. at 1097, Ex. DP21.

Lacking the ability to seek damages, Ryze cannot establish an essential element of its breach of contract counterclaims.[15] *See All Nations Steel Corp. v. KSK Constr. Group, LLC*, 240 A.D.3d. 835, 837 (N.Y. App. Div. 2025) (listing damages as an essential element of breach of contract under New York Law); *Lucky Lucy D LLC v. LGS Casino LLC*, 534 P.3d 689, 691 (Nev. 2023) (holding the same for Nevada law). When, as here, a party asserting breach of contract fails to establish that it suffered any damages, the Ninth Circuit has affirmed summary judgment.[16] *See, e.g.*, *Clark v. Metro Life Ins. Co.*, 461 F. App'x

---

[15] "State and district courts…have discussed this concept both in terms of damages and standing." *EVIP Canada, Inc. v. Schander Harrison Segal & Lewis LLP*, 2021 WL 964943, at *17; *see also Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*, No. H-10-1708, 2011 WL 3568074, at *4-6 (S.D. Tex. Aug 15, 2011).

[16] To the extent that Ryze purports to have suffered other categories of damages, those fail too because Ryze has provided no evidence to support those damages. *See Wells Enters. v. Wells Bloomfield, Ltd. Liab. Co.*, 989 F. Supp. 2d 1055, 1060 (D. Nev. 2013) ("Under Nevada law, a plaintiff must prove the amount as well as the fact of damages by substantial evidence."). And in any event, the Court can find partial summary judgment on just the damages Ryze purports to have incurred related to the refinery alone. *See Peri & Sons Farms, Inc. v. Jain Irrigation, Inc.*, 933 F. Supp. 2d 1279, 1294 (D. Nev. 2013) (finding partial summary judgment on punitive damages in breach of contract claim).

538, 539 (9th Cir. 2011) (citing *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008)).

In sum, Ryze lacks standing to seek damages for injury to an asset owned by a subsidiary several degrees removed from itself.[17] Therefore, the Court should grant summary judgment on Ryze's breach of contract claims because Ryze cannot establish an essential element of those claims.

2. <u>The CLA bars recovery for consequential damages.</u>

Ryze also cannot recover under the CLA for damages for the purported diminution in value of the refinery because the CLA bars recovery for consequential damages.[18] *See* App. at 171, Ex. DP1 § 4.01 ("[E]ach party hereby waives . . . consequential damages . . . incurred in connection with, arising out of, or in any way related to, terminations and matters in connection with the Final Mirae (Investment) Committee Approval . . . ."). New York courts "have long held that parties to a commercial contract, absent any question of unconscionability, may agree to limit . . . liability for damages." *Mom's Bagels of New York, Inc. v. Sig Greenebaum, Inc.*, 164 A.D.2d 820, 822 (N.Y. App. Div. 1990). No evidence suggests that the CLA's limitation on damages is unconscionable. Ryze was represented by counsel throughout the CLA negotiations, and by Ryze's own admissions, the CLA involved a lengthy due diligence process. Therefore, Ryze may not seek consequential damages from the refinery related to a purported breach of the CLA.

---

[17] Indeed, permitting Ryze to do so would allow Ryze to effectively seek double recovery and avoid properly paying its subsidiaries' creditors. During the subsidiaries' bankruptcy, the Ryze facilities were sold for roughly $36 million to repay creditors, including Georgia's Own Credit Union, for the hundreds of millions that Ryze borrowed (and misspent). *See e.g.* App at 464, 504-09, Ex. DP10. Allowing the Ryze parent entities (and Matthew Pearson) to seek an exponentially higher valuation of the same facility that was sold to repay creditors allows the Ryze parents to underpay creditors to pay themselves, the opposite of what bankruptcy intends.

[18] Damages from the diminished market value of real property constitute consequential damages. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 515 (2d Cir. 2020); *ERC 16W Ltd. P'ship v. Xanadu Mezz Holdings LLC,* 133 A.D.3d 444, 444 (N.Y. App. Div. 2015) (damages in the form of development project losses allegedly caused by breach of a loan agreement constitute consequential damages).

**D. Ryze Cannot Prove Its Abuse of Process Claim.**

Ryze's abuse of process claim is premised on: (1) Snell's filing of a complaint in the Nevada State Litigation; and (2) statements made by Han and Snell to resolve the claims. Ryze's claim fails for two independent reasons. First, Ryze's claim is precluded by the litigation privilege. Second, this claim is barred by the doctrine of issue preclusion.

1. <u>The litigation privilege precludes Ryze's abuse of process claim</u>.

Nevada "recognize[s] the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged." *Greenberg Traurig LLP v. Frias Holding Co.*, 331 P.3d 901, 903 (Nev. 2014). "[T]he privilege applies to communications made by either an attorney or a nonattorney that are related to ongoing litigation or future litigation contemplated in good faith." *Jacobs v. Adelson*, 325 P.3d 1282, 1285 (Nev. 2014).

According to the Nevada Supreme Court, the privilege should be interpreted broadly and courts must resolve all doubts in favor of applying the privilege. *See Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 502 (Nev. 2009). The privilege applies "even when the motives…are malicious and they are made with knowledge of the communications' falsity." *Jacobs*, 325 P.3d at 1285. Nevada law is clear: "filing a complaint does not constitute abuse of process." *Land Baron Invs. v. Bonnie Springs Family Ltd. P'ship*, 356 P.3d 511, 520 (Nev. 2015). Ryze's allegations related to statements made during the negotiation fare no better because the litigation privilege applies to statements that are "in some way pertinent to the subject of the controversy," *Greenberg Traurig*, 331 P.3d at 903.

To be sure, there are limited circumstances where the litigation privilege does not apply. *See Dickerson v. Downey Brand LLP*, 408 P.3d 543, 2017 WL 6316552 (Nev. 2017) (unpublished table decision); *Bull v. McCuskey*, 96 Nev. 706 (1980). Those circumstances are not present here. For example, in *Dickerson*, an attorney was sued under the theory that he colluded with his client to renege on an agreement to pay an expert they had retained for a lawsuit in federal court. The attorney attempted to invoke the litigation

privilege, arguing that he was entitled to "immunity" under it because the plaintiff's claims were based on "communications with his clients . . . made in anticipation of litigation," but the Nevada Supreme Court disagreed. 2017 WL 6316552, at *3. The court concluded that the litigation privilege did not apply because the attorney intentionally misrepresented the wording of the settlement agreement and assured the expert that he would be paid. The court held that "the gravamen behind [the plaintiff's] complaint was [the attorney's] actions, not the communication with [his clients]," and "[t]hus, the communications at issue were not implicated by the claims made by [the plaintiff]." *Id.* at *4.

Here, unlike in *Dickerson*, Ryze seeks to hold Mirae Asset liable for actions that are quintessential litigation conduct: filing a complaint and negotiations related to the resolution of the same. Ryze contends that Snell and its own agents used the Nevada State Litigation to pressure Ryze into an agreement. Additionally, in *Bull*, the Nevada Supreme Court upheld an abuse of process claim where an attorney filed a medical malpractice lawsuit to coerce a nuisance settlement where he knew "there was no basis for the claim of malpractice." 615 P.2d at 959. Here, however, Snell believed the asserted claims had merit and representatives from Ryze attended a mediation/settlement conference with Snell to resolve the claims. *See* App. at 1177-83, 1189-92, Ex. DP 26 at 84:13-90:24; 208:13-211:18. That conduct falls squarely within the scope of the privilege. Thus, the narrow exceptions in *Dickerson* and *Bull* are not applicable. As the state court in Nevada held, the litigation privilege precludes Ryze's abuse of process claim. *See* App. at 878-79, Ex. DP18.

2. <u>Issue preclusion applies to Ryze's abuse of process claim.</u>

Ryze also is precluded from bringing an abuse of process claim based on the doctrine of issue preclusion. In the Snell Litigation, Ryze sued Snell, *inter alia*, for abuse of process for its actions in connection with its purported representation of Mirae Asset in the Nevada State Litigation. Ryze alleged that Snell "abused legal process for wrongful purposes when [it] filed and commenced the July 23 Lawsuit against Ryze in the District Court of Clark County, Nevada." App. at 830-31, Ex. DP 16 ¶¶116-123. Just like here,

Ryze argued that its abuse of process claim should survive because the Snell Litigation was pretextual and filed for ulterior purposes. *Id.* ¶ 120. There, the state court dismissed Ryze's claim with prejudice. It found that "Ryze fails to state a claim for abuse of process" because "[f]iling a complaint alone does not constitute abuse of process" and "statements made at the mediation cannot form the basis for Ryze's because such statements are confidential settlement discussions." App. at 878-79, Ex. DP18. The state court's holding bars Ryze's abuse of process claim here.

Issue preclusion prevents relitigating an issue already litigated and determined in a previous proceeding. *See Issac v. Issac,* 537 P.3d 881, 2023 WL 7102990, at *1 (unpublished table decision) (Nev. 2023). A federal court applying issue preclusion "must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001). Under Nevada law, issue preclusion applies when four elements are met: (1) the issues in both cases are identical; (2) the first ruling was "on the merits and ... final"; (3) the party against whom preclusion is sought was a party to or in privity with a party to the previous case; and (4) "the issue was actually and necessarily litigated" in the previous case. *Five Star Cap. Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008). The party seeking to apply issue preclusion bears the burden of proving that it applies. *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 215 P.3d 709, 718 (2009). Issue preclusion applies equally to issues of fact or law. *See LaForge v. State, Univ. & Cmty. Coll. Sys.*, 997 P.2d 130, 133 (Nev. 2000).

***First***, the issues are identical. Both Ryze's abuse of process claim in the Snell Litigation and its claim here are premised on the same alleged conduct: the filing of the Nevada State Litigation and negotiations to resolve the same. Since the cause of action is the same and relies on the same facts, the issue is the same. *LaForge v. State ex rel. Univ. & Cmty. Coll. Sys.*, 997 P.2d 130, 134 (Nev. 2000); *Five Star Capital Corp.*, 194 P.3d at 713.

***Second***, the state court's order dismissing Ryze's claims with prejudice for failure to state a claim was on the merits and final. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) ("The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'") (citations omitted). Ryze's appeal of the district court's final order (*see* Ex. DP19) does not impact the preclusive effect of the case. *See Edwards v. Ghandour*, 159 P.3d 1086, 1093 (Nev. 2007), *abrogated on other grounds by Five Star Capital Corp.* 194 P.3d 709, 712 (Nev. 2008) ("[W]e conclude that the better reasoned approach, adopted by a majority of courts, is to give a judgment preclusive effect even when it is on appeal or the appeal period is running.").

***Third*****,** Ryze was the plaintiff in the Snell Litigation. *See* Ex. DP16.

***Fourth***, the abuse of process issue was actually and necessarily litigated. The parties briefed the issue and argued it at length during a hearing on the motion to dismiss. *See* App. at 878, Ex. DP18. Thus, the parties were fully heard. *Kirsch v. Traber*, 414 P.3d 818, 822 (Nev. 2018). Therefore, Ryze is precluded from relitigating this issue.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Mirae Asset's Motion for Summary Judgment with respect to each of Ryze's remaining counterclaims.

DATED: November 12, 2025

Respectfully submitted,

By: */ s/ Daniel Prince*
Daniel Prince

PETER C. MEIER (NSB No. 9123)
petermeier@paulhastings.com
DANIEL PRINCE (admitted *pro hac vice)*
danielprince@paulhastings.com
D. SCOTT CARLTON (admitted *pro hac vice)*
scottcarlton@paulhastings.com
BRIAN KAEWERT (admitted *pro hac vice)*
briankaewert@paulhastings.com
JOSEPH MONTOYA (admitted *pro hac vice*)
josephmontoya@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

TAMARA B. PETERSON (NSB No. 5218)
tpeterson@petersonbaker.com PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone: (702) 786-1001
Facsimile: (702) 786-1002

Attorneys for Plaintiff
MIRAE ASSET SECURITIES CO., LTD.