# EXHIBIT 54

*Snell & Wilmer Engagement Letter to Mirae Asset Regarding Ryze Litigation (June 18 & 22, 2021)*

EXHIBIT 4
WIT: Graham
DATE: 9/30/25
Cathy Miccolis CR50068

Snell & Wilmer
L.L.P.
LAW OFFICES

600 Anton Blvd, Suite 1400
Costa Mesa, CA 92626-7689
714.427.7000
714.427.7799 (Fax)
www.swlaw.com

ALBUQUERQUE
BOISE
DENVER
LAS VEGAS
LOS ANGELES
LOS CABOS
ORANGE COUNTY
PHOENIX
RENO
SALT LAKE CITY
TUCSON
WASHINGTON DC

Steven T. Graham
(714) 427-7002
sgraham@swlaw.com

June 18, 2021

VIA EMAIL: kyunghyun.lee@miraeasset.com

Mirae Asset Securities Co., Ltd.
c/o Kyunghyun Lee, Head of Structured Finance Team

Re: Agreement for Legal Services

Dear Mr. Lee:

We are pleased that Mirae Asset Securities Co., Ltd. (the "Client") has asked Snell & Wilmer to serve as counsel in connection with the matter described below. This letter will confirm the terms of our engagement and describe the basis on which our firm will provide legal services. If the following provisions are agreeable, please sign a copy of this letter where indicated below and return it to us. If you have questions about anything in this letter, please do not hesitate to call. Once again, we are pleased to have the opportunity to serve you.

1. *Client; Scope of Engagement.* Our client in this matter will be only Mirae Asset Securities Co., Ltd. In that regard, unless we expressly agree otherwise, our client in this matter will not include any of the Client's parents, subsidiaries, affiliates or constituents. The scope of our engagement will be to investigate, evaluate and potentially pursue litigation to enforce the Client's rights with respect to an investment agreement involving Ryze Renewables and related parties. For all other matters, the Client is represented, if at all, by separate counsel. Our acceptance of this engagement does not involve an undertaking to represent the Client's interests in any matter other than as described in this paragraph. That means that, unless specifically included within the scope of the engagement, this engagement does not include advice on other areas including, but not limited to, business, investment, insurance, bankruptcy, tax or accounting advice. While the firm will be pleased to discuss expanding the scope of the engagement to include other areas, any expansion of the scope of engagement must be confirmed in a separate written communication.

Snell & Wilmer
L.L.P.



2. *Fees, Expenses and Staffing.* I want to encourage you to bring to my attention any questions or concerns relating to either our services or our fees. To assist the Client in understanding our billing practices, I enclose a copy of our current Policy on Professional Fees. While hourly rates for attorneys and paraprofessional staff are adjusted from time to time, my hourly rate is $850. In addition to myself, Mike Baker, Jeff Singletary, and our Nevada construction litigation colleagues to be identified at a later date, will most likely work with me in representing the Client's interests in the most cost effective and efficient manner. The current hourly rate for Mike is $750 and the current hourly rate for Jeff is $680. Billings for professional services, however, will be based on all of the considerations discussed in the enclosed Policy on Professional Fees and not simply hours expended and hourly rates.. We will send statements for professional fees and expenses to your attention on a monthly basis. Payment is due upon receipt.

Our firm normally requests a retainer before we begin working for new clients to secure the payment of our fees, costs and expenses that are either billed and unpaid or incurred but as yet unbilled. The amount of any requested retainer is not intended to be an estimate of the total fees or expenses that may be incurred in this matter. In supplying such a retainer, the Client is granting Snell & Wilmer an interest in that fund as security for payment. We request an initial retainer of $50,000, which is to be applied to the final billing. Any excess will be returned to the payor at the time of the final billing. In the event any interim statement for services remains unpaid for a period in excess of sixty (60) days, the firm may apply the retainer to the unpaid balance, but will then require restoration of the original retainer.

3. *Cooperation and Communication; Termination; Withdrawal.* We will provide legal counsel to the Client in accordance with this letter and in reliance upon information and guidance provided by you, will keep you or other Client representatives reasonably informed of progress and developments, and will respond to your inquiries. To enable us to represent the Client effectively, the Client agrees to cooperate fully with us in connection with this matter, and to fully and accurately disclose all facts and documents that may be relevant to the matter or that we may otherwise request. The Client also will make necessary representatives reasonably available to attend meetings, discovery proceedings and conferences, hearings, and other proceedings as may be necessary.

Because it is important that we be able to contact you at all times to consult about the Client's representation, you agree to inform us, in writing, of any changes in the name, address, telephone number, contact person, e-mail address, state of incorporation, or other relevant changes regarding the Client or the Client's business. Whenever we need instructions or authorization to proceed with legal work on the Client's behalf, we will contact the Client at the latest business address we have received from the Client.

Snell & Wilmer
L.L.P.



Either at the beginning or during the course of our representation, we may express opinions or beliefs concerning various courses of action and the results that might be anticipated. Any such statement made by any partner or employee of our firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed by the Client as a promise or guarantee.

The Client may terminate our representation at any time by notifying us. Subject to any applicable rules of professional conduct, we may withdraw from representation if the Client fails to fulfill obligations under this agreement, including obligations to timely pay our fees and expenses, or for any other reason permitted or required under those rules. In the event that we terminate the engagement, we will take such steps as are reasonably practicable to protect the Client's interests in the above matter, and the Client agrees to take all steps necessary to free us of any obligation to perform further, including the execution of any documents necessary to perfect our withdrawal. If permission for withdrawal is required by a court or arbitration panel, we will promptly request such permission, and the Client agrees not to oppose our request. Termination of our representation will not affect the Client's responsibility for payment of outstanding statements and accrued fees and expenses incurred before termination or in connection with an orderly transition of the matter.

Unless previously terminated, our representation will terminate upon our sending the Client our final statement for services in this matter. Upon the completion of our work on the last active matter we have for the Client, the Client will be considered a former client for all matters. Following termination of each matter, any otherwise nonpublic information the Client has supplied to us and that is retained by us will be kept confidential in accordance with the applicable rules of professional conduct and we will close the file for that matter. During the course of our representation and as part of the file closing process, we will endeavor to keep relevant information in the file. Consistent with the firm's records retention and disposal policy, however, we may, in our discretion, discard various documents including but not limited to drafts, notes, research, memoranda, correspondence, and other documents. We will be pleased to furnish the Client with a copy of the policy upon request, and to answer any questions about it. The contents of the closed file will be retained by the firm and stored for a reasonable period of time in accordance with the policy. Upon request, the Client may obtain at no cost, a copy of any such materials that have not been previously furnished. In addition, please let us know if the Client would like us to return any original papers or other property which is, or has been, furnished to us. In the absence of contrary instructions, we will dispose of such items in accordance with the policy. The period for which particular client files will be retained may vary depending on the nature of the matter and the engagement. Following the prescribed retention period, those files may be destroyed or otherwise disposed of without further notice or attorney review.

4. *Conflicts of Interest.* In undertaking this representation, our objective is to represent the Client to the best of our ability without forfeiting the representation of other existing or potential clients. One purpose of this letter, therefore, is to avoid our disqualification from representing such existing or potential clients on matters unrelated to those for which the Client has engaged us. Given the limited nature of our representation, there are certain conditions to our engagement which we would like to explain to the Client and to which we would like to secure the Client's approval and consent.

Snell & Wilmer is a large law firm that has represented, and continues to represent, many different corporate and individual clients with various business interests in numerous industries. It is possible that, during the time we are representing the Client's interests in the matter for which we have been engaged, we may be asked to represent interests, belonging to one of the firm's present or future clients, that are adverse to the Client's. If such a conflict were to arise between the Client's interests and those of another present or future client of the firm, the firm reserves the right to represent the interests of the other client with respect to that particular matter.

Therefore, as a specific condition to our undertaking the Client's representation, the Client understands and agrees that this firm may continue to represent, or may undertake in the future to represent, existing or new clients in any matter that is not substantially related to the matter we are handling on the Client's behalf, even if the interests of such other clients in those other matters are directly adverse to the Client's, and even if those other matters ripen into or involve litigation between such other clients and the Client.

We agree, however, that the Client's prospective agreement and consent to such conflicting representation shall not apply in any instance where, as a result of our representation of the Client, we have obtained sensitive, proprietary or other confidential information of a nonpublic nature that, if known to such other client, could be used to the material disadvantage of the Client's interests in the matter involved. Nor shall it apply to permit us to represent any client against the Client in any litigation or similar proceeding in which we represent the Client.

We understand that the Client is familiar with the potential consequences of such a prospective conflict of interest waiver by virtue of the Client's business sophistication and experience in one or more other matters. Nevertheless, the Client may want to consider consulting separate counsel regarding whether to grant such a waiver on the terms set forth herein. We encourage the Client to do so before agreeing to these terms of representation.

5. *Insurance.* To the extent this engagement relates to the defense of the Client's rights in connection with an actual or potential claim against the Client, be advised that the Client's liability insurance carrier(s) may be obligated to indemnify the Client, as well as to pay

some or all of the legal fees associated with the Client's defense. Insurance policies typically contain a requirement that the insurance carrier be notified, within a specified time frame, that a claim that might be covered by the policy has been asserted. We urge the Client to contact the insurer or broker at the earliest opportunity to determine the nature and extent of the applicable coverage, if any. It is agreed and understood that, absent a future agreement between us or a specific written directive from the Client that the Client wishes us to undertake that task, the scope of our engagement does **not** include an investigation as to whether there is insurance coverage for any of the claims involved in this litigation **or** the task of notifying any insurance carrier for the Client that potentially covered claims have been asserted. In any event, it is the Client's responsibility to pay the firm for services rendered and to obtain any reimbursement that may be available from the carrier(s).

6. *Alternative Dispute Resolution* ("ADR"). In recent years, the law, lawyers, and clients have turned increasingly to alternative methods of resolving disputes, before filing suit, or without ever filing suit. These alternatives include, among other things, private mediation, arbitration, and shorter versions of court proceedings, like mini-trials. The alternative methods of dispute resolution can in some cases save client's money, time, and publicity, though they have their disadvantages as well, including, for most non-judicial methods of resolution, the loss of rights of appeal. Given the popularity and importance of ADR, we want the Client to know that we are available to discuss ADR options.

7. *Tax Advice Policy.* Whether or not the Client has requested the firm to provide federal tax advice in connection with this engagement, there is at least a possibility that federal tax issues requiring such advice may arise in the future. For this reason, I am also enclosing with this letter a copy of the firm's "Statement of Policy Regarding Federal Tax Advice." I encourage the Client to review it and call me with any questions.

Please review this letter carefully. If the terms and conditions of our representation and the billing arrangements are acceptable, please sign a copy of this letter where indicated and return it to me so that we may begin work. Please call if you have any questions.

Snell & Wilmer
L.L.P.



We very much appreciate this opportunity to work with the Client.

Very truly yours,

Snell & Wilmer

Steven T. Graham

As an authorized individual and on behalf of the Client, I have reviewed this letter and Snell & Wilmer's Policy on Professional Fees, and agree to the terms and conditions of representation and the billing arrangements.

June 22, 2021

Mirae Asset Securities Co., Ltd.
Kyunghyun Lee, Head of Structured Finance Team

Enclosures

Snell & Wilmer
L.L.P.
LAW OFFICES

600 Anton Blvd, Suite 1400
Costa Mesa, CA 92626-7689
714.427.7000
714.427.7799 (Fax)
www.swlaw.com

ALBUQUERQUE
BOISE
DENVER
LAS VEGAS
LOS ANGELES
LOS CABOS
ORANGE COUNTY
PHOENIX
RENO
SALT LAKE CITY
TUCSON
WASHINGTON DC

# POLICY ON PROFESSIONAL FEES

**To our clients:**

The attorney-client relationship works best when there is a mutual understanding about fees and payment terms. Accordingly, our Policy on Professional Fees is intended to explain briefly our current billing policies and procedures. These policies and procedures are subject to change. We encourage you to discuss with us at any time any questions you might have concerning these policies and procedures.

**How Fees Are Determined**. To help us determine the value of our services, we ask each of our attorneys, paralegals, legal assistants and certain clerical personnel providing specialized support to maintain time records for each client and matter. These individuals are assigned hourly rates, which are reflected on the billing statement sent to clients. These hourly rates are adjusted from time to time (generally once a year) and can change during the course of our engagement. Our rates are a benchmark, and not the sole determinant of the value of our services for billing purposes. The billing attorney assigned to your account reviews the time records before a billing statement is rendered. Pursuant to the applicable Rules of Professional Conduct, a reasonable fee takes into consideration, among other factors, the time and labor required, the novelty of the issues involved and the skill required to perform the legal services properly, the amount involved and the results obtained, any time limitations imposed by the client or by the circumstances, the nature and length of the professional relationship with the client, the experience, reputation and ability of the attorneys performing the services, and the degree of risk assumed by the attorney. In accounting for the hours attributable to an assignment, the billing attorney may take into consideration efficiencies and value resulting from the firm's technology and other resources that provide benefit to the client that is greater than would be reflected in the hourly rate of the individual lawyer involved.

**Billing for Disbursements and Expenses**. Snell & Wilmer L.L.P. obtains reimbursement for disbursements made on behalf of clients, such as filing fees, transcript and deposition fees, reasonable travel expenses and expert witness fees. We also charge for certain expenses incurred on behalf of clients, such as copies, scans, facsimiles, postage, messengers, long-distance telephone calls and computerized research. The charge for copies is $.20 per page, scans is $.10 per page, outgoing facsimiles is $1.50 per page and computerized research is $5.00 per minute.

Snell & Wilmer is a member of LEX MUNDI, The Leading Association of Independent Law Firms.

There is no charge for incoming facsimiles, normal deliveries to local courts, secretarial overtime or similar activity. We may forward to you large disbursement billings for direct payment to the vendor.

We make every effort to include disbursements and expenses in the statement for the month in which they are incurred. Some disbursements and expenses are not available to us until the following months, in which case a subsequent statement will be rendered to you for these additional charges.

**Retainer Policy**. It is also our policy to obtain a retainer from new clients, and from existing clients under certain circumstances to secure the payment of our fees and costs and expenses. The amount and terms of a retainer arrangement are generally determined after consultation with the billing attorney. It may be appropriate to require an additional retainer after the commencement of the engagement, or to require an increase in a retainer, depending on the scope of the work or payment history. For example, before a lengthy trial, we may require the posting of a retainer sufficient to cover expected fees. We may also request a retainer for the purpose of paying substantial costs we incur on your behalf. Retainer and other funds held in trust will be kept in a separate account maintained at a bank with offices in the state of California.

**Fee Estimates**. Any estimates of anticipated fees that we provide are, due to the uncertainties involved, necessarily only an approximation of potential fees. Under no circumstances are such estimates a maximum fee quotation. Our actual fees will be determined in accordance with the policies described herein.

In some cases, we may provide specific fee arrangements on a project basis. A specific fee arrangement will always be confirmed in writing; otherwise, our normal billing policies will apply.

**Billing Statements**. In the absence of other arrangements, our billing statements ordinarily will be rendered to you on a monthly basis. Any matter that is not billed monthly and which extends beyond three months ordinarily will be billed quarterly, unless otherwise agreed between us.

Our billing statements are due and payable upon receipt. We ask and expect payment of our statements on a current basis, as delayed payment adds to our overall costs of providing services. Interest at the rate of 10% per annum will be assessed on all amounts over 30 days past due.

**Dispute Resolution**. Although we look forward to a mutually rewarding relationship, in the unlikely event of a dispute, including a dispute regarding the amount or payment of fees, the following dispute resolution terms will apply.

Sections 6200 through 6206 of the California Business & Professions Code, and the Rules of Procedure for Fee Arbitrations and the Enforcement of Awards by the State Bar of California, provide a system for mediating or arbitrating fee disputes between an attorney and client. Mediation is voluntary for the attorney and the client under these statutes and rules. Under section 6200(c) of the Business & Professions Code, however, the attorney and the client may agree in advance to nonbinding arbitration of disputes concerning fees and costs. *Your signature on the retainer letter will act as your consent to nonbinding arbitration under these statutes and rules for all disputes concerning fees and costs.* Following nonbinding arbitration, both of us retain the right, in the manner prescribed by law, to seek a trial or to have judgment entered. In appropriate cases, we will mediate fee and cost disputes as a first resort before arbitration if you consent.

As to any claim or dispute arising out of or connected with our services, other than a fee dispute covered by the preceding paragraph, we mutually agree to attempt in good faith to settle the dispute by nonbinding mediation in Orange County, California before commencing any legal action or other dispute resolution procedure. Unless we otherwise agree, the mediation will be conducted pursuant to the then current American Arbitration Association ("AAA") Commercial Arbitration Rules and Mediation Procedures. Either of us may commence mediation by letter requesting mediation delivered to the other party and to the AAA . In the event we fail to agree upon a neutral mediator within ten (10) working days after the mediation request is delivered, either of us can apply to AAA to appoint a neutral mediator who has experience in the subject matter of the claim or dispute.

**Lex Mundi**. Snell & Wilmer is a member of Lex Mundi, a global association of independent law firms that can be called upon to provide clients worldwide access to legal services. Although a member of Lex Mundi, Snell & Wilmer is completely independent and does not have common operations, share fees, or collaborate on a pre-arranged basis with other member firms. If collaboration with other independent members of Lex Mundi is appropriate to serve client needs, Snell & Wilmer will discuss the specific engagement with the client to assure understanding and agreement of the roles and duties assumed by each involved law firm.

**Errors and Omissions Coverage**. Some states require that a law firm disclose the existence of errors and omissions insurance coverage applicable to the services to be rendered. Snell & Wilmer hereby confirms the existence of such insurance coverage.

Finally, in closing, let us assure you that our goal has always been and will continue to be to provide legal services to you on the most cost-effective basis possible. If at any time you wish to discuss either our billing policies or procedures generally or a specific billing statement, we encourage you to contact us.

Snell & Wilmer
L.L.P.
LAW OFFICES

600 Anton Blvd, Suite 1400
Costa Mesa, CA 92626-7689
714.427.7000
714.427.7799 (Fax)
www.swlaw.com

ALBUQUERQUE
BOISE
DENVER
LAS VEGAS
LOS ANGELES
LOS CABOS
ORANGE COUNTY
PHOENIX
RENO
SALT LAKE CITY
TUCSON
WASHINGTON DC

## STATEMENT OF POLICY REGARDING FEDERAL TAX ADVICE

Federal legislation and implementing regulations have established substantial penalties for taxpayers who fail to report on a special form tax return items arising from so-called "reportable transactions." "Reportable transactions" are transactions, events, plans, or other arrangements identified by Congress or the Treasury Department as including elements associated with potentially abusive tax shelters. However, it is well accepted that many legitimate transactions may also include such elements and, therefore, may also be classified as "reportable transactions."

The "reportable transaction" rules also impose duties upon law firms that provide tax advice or services relating to such "reportable transactions." Consequently, it is possible that Snell & Wilmer may become subject to these rules in connection with advice or services provided to you regarding a legitimate transaction or arrangement. If so, Snell & Wilmer will be obliged to notify the Internal Revenue Service that it has provided services in connection with what may be a "reportable transaction." Snell & Wilmer will also be required to maintain a file containing information and documents relating to the transaction or arrangement in question for production to the Internal Revenue Service upon written request. The existence of the attorney-client privilege is no excuse for non-compliance with these rules, although specific items of otherwise disclosable information may be privileged. Prior to taking any steps that may be required under the "reportable transaction" rules, Snell & Wilmer will consult with you concerning the possibility that a given transaction or arrangement may be a "reportable transaction" and, as appropriate, coordinate its disclosure and record-maintenance efforts with any taxpayer reporting obligations to which you may be subject. We will also discuss with you, as appropriate, the possible invocation of the attorney-client privilege. Because these consultations and related reporting and record-maintenance activities can sometimes involve a substantial effort by our attorneys and paralegals and because, by law, they are a necessary consequence of assisting you in connection with a transaction or arrangement that includes one or more elements making it a "reportable transaction," absent special arrangements to the contrary, Snell & Wilmer will treat them as an additional component of its engagement by you, for which you agree to compensate Snell & Wilmer in accordance with the attached Policy unrelated to any special fee arrangements that may otherwise apply.

Independent from the "reportable transaction" rules, the Department of the Treasury has issued regulations that govern practitioners, including Snell & Wilmer attorneys, who provide advice or services to clients in matters that may have federal tax consequences. Congressional legislation

enacted in 2004 has confirmed the authority of the Treasury to implement these regulations. One consequence of these regulations is that a practitioner may not provide written advice, including electronic mail messages, upon which a taxpayer may rely for tax penalty protection purposes, unless the practitioner has engaged in a careful review of all potentially relevant facts and has evaluated all of the reasonably applicable tax issues, including judicial doctrines. In addition, under these regulations, certain categories of written advice (so-called "Covered Opinions"), including many opinions intended for penalty protection, must satisfy certain additional requirements. Among other things, Covered Opinions must describe in detail each of the facts and any reasonable assumptions being relied upon, must address every reasonably applicable federal tax issue, including judicial doctrines, and must include, depending upon the circumstances, a variety of mandatory disclosures.

Because of the time, effort, and expense involved in preparing written advice that will satisfy the requirements applicable to Covered Opinions, Snell & Wilmer has adopted a policy now becoming common among many accounting and law firms: In situations in which the Covered Opinion rules come into play only if the written advice is intended to provide tax penalty protection, Snell & Wilmer will not undertake the special efforts required to comply with the Covered Opinion rules unless you have expressly requested written advice for the specific purpose of tax penalty protection. This disclaimer is not intended to limit Snell & Wilmer's obligation to you to provide competent tax advice. Its only purpose is to avoid the necessity of complying with the Covered Opinion rules unless you have specifically requested a Covered Opinion for tax penalty protection purposes.

4815-4440-2671