# EXHIBIT A

# APPELLANTS' REPLY BRIEF

CASE NO. 90969

**IN THE SUPREME COURT OF NEVADA**

Electronically Filed
Aug 07 2026 05:56 PM
Elizabeth A. Brown
Clerk of Supreme Court

RYZE RENEWABLES HOLDINGS, LLC, a Delaware limited liability company, registered in Nevada; and RYZE RENEWABLES NEVADA, LLC, a Delaware limited liability company, registered in Nevada

*Appellants,*

vs.

SNELL & WILMER, LLP, a foreign limited liability partnership, registered in Nevada; VICTOR J. ROEHM III; STEVEN T. GRAHAM; and CHARLES E. GIANELLONI,

*Respondents.*

District Court Case No. A-23-863908-B

# APPELLANTS' REPLY BRIEF

**BAILEY❖KENNEDY**
DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
JOE A. MORGAN
Nevada Bar No. 16937
8984 Spanish Ridge Avenue
Las Vegas, NV 89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com
JMorgan@BaileyKennedy.com

**EDGAR LAW FIRM LLC**
JOHN M. EDGAR*
JOHN F. EDGAR*
MICHAEL R. OWENS*
ALEXANDER C. MELIN*
2600 Grand Boulevard, Ste 440
Kansas City, MO 64108
Telephone: (816) 531-0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com
**Admitted Pro Hac Vice*

*Attorneys for Appellants*

# TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 3

I. The Litigation Privilege Does Not Bar Ryze's Claims .......... 3

A. Snell Cannot Claim the Litigation Privilege for Actions Taken Outside Any Legitimate Client Representation .......... 3

1. The litigation privilege requires an attorney-client relationship. .......... 3

2. Ryze sufficiently alleged Snell lacked a legitimate attorney-client relationship with Mirae. .......... 6

3. The litigation privilege cannot protect attorneys acting outside their authority as counsel. .......... 10

B. Even if Snell Had a Client, the Privilege Does Not Immunize an Attorney's Malfeasant Course of Conduct .......... 11

C. The Privilege Does Not Extend to Abuse of Process or Wrongful Use of Civil Proceedings .......... 15

II. Snell's Alternative Rule 12(b)(5) Grounds Do Not Support the Judgment. .......... 19

A. Ryze Stated a Textbook Abuse-of-Process Claim. .......... 19

B. *LaMantia* Did Not Abolish Liability for the Malicious Initiation of Civil Litigation. .......... 23

C. Ryze Properly Pled Its Negligent and Fraudulent Misrepresentation Claims. .......... 27

D. The District Court Erred in Dismissing the Claim for Aiding and Abetting a Breach of Fiduciary Duty. .......... 29

E. The Conspiracy Claim Does Not Require an Independent Tort, and the Intra-Corporate Doctrine Does Not Apply. .......... 30

F. Ryze Did Not Waive Its Challenge to the Remaining Claims. .......... 32

III. Dismissal With Prejudice Was, at a Minimum, an Abuse of Discretion. .......... 32

CONCLUSION .......... 33

# TABLE OF AUTHORITIES

## Cases

*Abbott v. United Venture Cap., Inc.*,
718 F. Supp. 828 (D. Nev. 1989) .................................................... 21, 26

*Arnold v. Kip*,
123 Nev. 410, 168 P.3d 1050 (2007) ................................................... 31

*Atherton Res., LLC v. Anson Res., Ltd*,
No. 3:17-cv-00340-MMD-VPC, 2018 WL 4279214 (D. Nev. May 7, 2018) .................................................... 8

*Blanchard v. Blanchard*,
108 Nev. 908, 839 P.2d 1320 (1992) ................................................... 28

*Breliant v. Preferred Equities Corp.*,
112 Nev. 663, 918 P.2d 314 (1996) ..................................................... 8

*Bull v. McCuskey*,
96 Nev. 706, 615 P.2d 957 (1980) ........................................... 15, 16, 18

*Buzz Stew, LLC v. City of North Las Vegas*,
124 Nev. 224, 181 P.3d 670 (2008) ..................................................... 3

*Cadle Co. v. Woods & Erickson, LLP*: ................................................... 30

*Checkley v. Boyd*,
14 P.3d 81 (Or. Ct. App. 2000) ...................................................... 24, 25

*Circus Circus Hotels, Inc. v. Witherspoon*,
99 Nev. 56, 657 P.2d 101 (1983) ....................................................... 17

*Collins v. Union Fed. Sav. & Loan Ass'n*,
99 Nev. 284, 662 P.2d 610 (1983) ..................................................... 32

*Colton v. Murphy*,
71 Nev. 71, 279 P.2d 1036 (1955) ........................................... 10, 22, 28

*DeBrincat v. Fischer*,
217 So. 3d 68 (Fla. 2017) .................................................................. 19

*Delgado v. Am. Fam. Ins. Grp.*,
125 Nev. 564, 217 P.3d 563 (2009) ........................................................ 9

*Dezzani v. Kern & Assocs., Ltd.*,
134 Nev. 61, 412 P.3d 56 (2018) .......................................................... 27

*Dickerson v. Downey Brand LLP*,
No. 67768, 2017 WL 6316552 (Nev. Dec. 8, 2017) ...................... passim

*Edwards v. Emperor's Garden Rest.*,
122 Nev. 317, 130 P.3d 1280 (2006) ..................................................... 33

*Fink v. Oshins*,
118 Nev. 428, 49 P.3d 640 (2002) ........................................................ 17

*Fiondella, Inc. v. Reiner, Reiner & Bendett*,
No. HHDCV085025357S, 2009 WL 5342490 (Conn. Super. Ct. Dec. 4, 2009) ............................................................................................. 19

*Gibbons v. Martin*,
91 Nev. 269, 534 P.2d 915 (1975) ........................................................ 29

*Givago Growth, LLC v. iTech AG, LLC*,
863 S.E.2d 684 (Va. 2021) ..................................................................... 18

*Greenberg Traurig v. Frias Holding Co.*,
130 Nev. 627, 331 P.3d 901 (2014) .................................................... 4, 5

*In re Black*,
487 B.R. 202 (B.A.P. 9th Cir. 2013) ...................................................... 21

*Jacobs v. Adelson*,
130 Nev. 408, 325 P.3d 1282 (2014) ......................................... 2, 3, 5, 13

*James v. Leport*,
4 P. 1184 (Nev. 1884) .............................................................................. 9

*Land Baron Inv. v. Bonnie Springs Fam. LP*,
131 Nev. 686, 356 P.3d 511 (2015) ................................................. 19, 20

*Marcoz v. Summa Corp.*,
106 Nev. 737, 801 P.2d 1346 (1990) .................................................... 6

*Marcuse v. Del Webb Cmtys., Inc.*,
123 Nev. 278, 163 P.3d 462 (2007) ...................................................... 9

*Mason v. Mason*,
497 P.3d 431 (Wash. Ct. App. 2021) .................................................. 19

*Mirae Asset Sec. Co. v. Ryze Renewables Holdings, LLC*,
No. 2:23-cv-01492-APG-NJK, 2025 WL 1757435 (D. Nev. June 25, 2025) .................................................................................................. 21

*Mohamad v. Rajoub*,
2018 WL 1737219 (S.D.N.Y. Mar. 12, 2018) ....................................... 27

*Ohio Security Ins. Co. v. Dist. Ct.*,
No. 90777, 2026 WL 1042263 (Nev. Apr. 16, 2026) .................. 8, 16, 17

*Posadas v. City of Reno*,
109 Nev. 448, 851 P.2d 438 (1993) ............................................... 16, 18

*Powell v. Liberty Mut. Fire Ins. Co.*,
127 Nev. 156, 252 P.3d 668 (2011) ..................................................... 32

*Reynolds v. Tufenkjian*,
No. 78187, 2020 WL 6882914 (Nev. Nov. 23, 2020) ............................ 28

*Sabella v. Est. of Milides*,
992 A.2d 180 (Pa. Super. Ct. 2010) ..................................................... 24

*Simms v. Seaman*,
69 A.3d 880 (Conn. 2013) .................................................................... 19

*Simpson v. Mars Inc.*,
113 Nev. 188, 929 P.2d 966 (1997) ....................................................... 7

*TMX, Inc. v. Volk*,
Nos. 74813 & 75692, 2019 WL 4619524 (Nev. Sept. 20, 2019) ..... 16, 18

*Todd v. State*,
113 Nev. 18, 931 P.2d 721 (1997) ....................................................... 23

*Trans W. Leasing Corp. v. Corrao Const. Co.*,
98 Nev. 445, 652 P.2d 1181 (1982) ............ 7, 10

*Tri-State Energy Sols., LLP v. KVAR Energy Sav. Inc.*,
884 F. Supp. 2d 168 (D. Del. 2012) ............ 22

*Wang v. CIM Grp., L.P.*,
No. 85025, 2024 WL 3841728 (Nev. Aug. 14, 2024) ............ 9

## Statutes

Cal. Evid. Code § 1115(a) ............ 23

NRS 199.320 ............ 31

NRS 199.380 ............ 31

NRS 48.109 ............ 23

## Rules

NRAP 28(e) ............ 8

NRCP 41(a)(1)(i) ............ 26

NRCP 8(d)–(e) ............ 7

## Other Authorities

Restatement (Second) of Torts § 674 ............ 26

Restatement (Second) of Torts § 676 ............ 25

Restatement (Third) of the Law Governing Lawyers § 57(2) ............ 13

## INTRODUCTION

A law firm invented a client. On Ryze's allegations—which this Court must accept as true—Snell & Wilmer filed a lawsuit in Mirae's name that Mirae never authorized, never wanted, and later disavowed, then wielded that phantom suit to extort a collateral commercial deal triggering millions in fees for Snell and others. The litigation privilege protects zealous advocacy for real clients. It does not immunize a firm that manufactures a fictional one.

Snell's Answering Brief never confronts that reality, so it changes the subject. Instead of accepting Ryze's allegations as true—as a motion to dismiss requires—Snell disputes them, asks this Court to resolve contested facts about its fictional representation of Mirae, and leans on documents outside the Complaint. Instead of engaging the principles from *Greenberg Traurig* and *Dickerson*, Snell recasts their holdings as dicta and ignores the client-advocacy purpose that gives the privilege its substance. Worse, Snell advances a "but for" rule when applying the privilege to abuse-of-process claims that eliminates the tort entirely: abusing any litigation-related "process"—subpoena, attachment, writs, etc.—could never fall outside the privilege's scope. RAB 16, 18, 30.

The standard of review exposes Snell's flawed approach. This Court reviews the dismissal de novo, accepts all well-pleaded allegation as true, and draws every reasonable inference in Ryze's favor. *Jacobs v. Adelson*, 130 Nev. 408, 412, 325 P.3d 1282, 1285 (2014). Measured against that standard, Ryze's allegations control: they describe a firm acting without a client, outside any lawful authority, through a malfeasant course of conduct the privilege has never shielded.

This reply proceeds in three parts. Part I shows that the litigation privilege does not bar Ryze's claims because Snell acted without a client, exceeded any lawful authority, and engaged in a course of conduct—not mere advocacy—that abuse-of-process law polices. Part II shows that Snell's alternative Rule 12(b)(5) grounds cannot salvage the judgment because Ryze adequately pleaded each claim and Snell's contrary arguments misread both the record and the law. Part III shows that dismissing the complaint with prejudice was, at a minimum, an abuse of discretion because the alleged pleading deficiencies are easily curable. This Court should reverse and remand.[1]

---

[1] Ryze did not appeal the district court's "first-to-file" dismissal of Mirae because its claims are currently proceeding in the federal action

## ARGUMENT

This Court reviews the district court's Rule 12(b)(5) dismissal order de novo, accepts every factual allegation as true, and draws every reasonable inference in Ryze's favor. *Jacobs*, 130 Nev. at 412, 325 P.3d at 1285; *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008). The district court ignored that standard, and so does Snell. To reach its desired result, Snell recharacterizes Nevada law, contests the factual allegations, and sidesteps arguments that it cannot answer.[2]

### I. The Litigation Privilege Does Not Bar Ryze's Claims.

#### A. Snell Cannot Claim the Litigation Privilege for Actions Taken Outside Any Legitimate Client Representation.

##### 1. *The litigation privilege requires an attorney-client relationship.*

In the Opening Brief, Ryze relied, in part, on *Greenberg Traurig* to demonstrate that the litigation privilege's "protection is contingent on the attorney's representation of his or her client" because it is "designed

and the delay from this dismissal and the federal action's comparative progress render remand impracticable. 3 AA 509; 8 AA 1675–77.

[2] Snell highlights a since-corrected citation issue below from Ryze's trial counsel (not appellate counsel) that never influenced the outcome and addressed by the district court. *See* RAB 9 n.4. Snell's potshot does not matter.

to ensure that attorneys have the utmost freedom to engage in zealous advocacy . . . for, their clients." RAB 21–25 (quoting *Greenberg Traurig v. Frias Holding Co.*, 130 Nev. 627, 631, 331 P.3d 901, 904 (2014)). In response, Snell discards *Greenberg Traurig* as dicta confined to legal malpractice cases. RAB 19–20.

Snell deflects the argument rather than grapples with it. Ryze preemptively addressed the dicta argument in its Opening Brief, but Snell ignores it. *Contrast* AOB 23, *with* RAB 19–25. Although *Greenberg Traurig* did not answer the precise question presented here, it teaches courts how to apply the privilege to novel situations in the attorney-client context. 130 Nev. at 631, 331 P.3d at 903 (analyzing "a matter of first impression in Nevada"). It recognizes that "[i]n the attorney-client context, the litigation privilege applies to attorneys primarily for the client's benefit" so attorneys can "pursue[] the *client's interests*." *Id.* at 631–32, 331 P.3d at 904 (emphasis added). Because the privilege exists to benefit the client, "protection" is "contingent" on an "attorney's representation of his or her client." *Id.* The Court adopted the malpractice exception to that "matter of first impression" because it

"harmonizes with the privilege's underlying purpose": client advocacy. *Id.*[3]

That is why *Greenberg Traurig* matters here. Snell seeks the litigation privilege's protection in a novel situation that "runs afoul of the privilege's underlying policy." *Id.* This Court refuses to "extend the grant of the absolute privilege to novel situations" untethered from its policy because when the privilege's purpose is not served, "the need for absolute privilege evaporates." *Jacobs*, 130 Nev. at 415, 325 P.3d at 1286. This Court has never applied the litigation privilege to protect an attorney pretending to advocate for a client he does not represent, nor should it. A privilege protecting client advocacy cannot apply where no client exists because there is no client advocacy to protect. *See* AOB 20–21 (explaining that, every time this Court has evaluated a new application of the privilege, it has focused on whether doing so serves the privilege's purpose).

---

[3] Snell's account of *Greenberg Traurig* describes the holding but evades the rationale Ryze invoked. Client representation is both the reason for and the condition of the attorney's protection. *Id.* at 631–32, 331 P.3d at 903–04.

Snell's attempt to cast aside *Greenberg Traurig* because its "concerns are not implicated here" crumbles because this case presents the same concern: attorneys seeking the litigation privilege's protection for a fact pattern that eviscerates—not serves—its client advocacy policy. Snell's cabining *Greenberg Traurig* to legal malpractice claims also fails because this Court applied *Greenberg Traurig* to "attorney malfeasance" *outside* the legal malpractice context. *See Dickerson v. Downey Brand LLP*, No. 67768, 2017 WL 6316552, at *3 (Nev. Dec. 8, 2017). Snell seeks to "hide behind the privilege" even though the rationale for that privilege does not apply here. This Court should not let Snell do so.

### 2. ***Ryze sufficiently alleged Snell lacked a legitimate attorney-client relationship with Mirae.***

After sidestepping Ryze's client requirement argument, Snell asks this Court to resolve disputed facts about the existence of an attorney-client relationship. RAB 20–23.

Snell divorces its analysis from Nevada pleading law. "In reviewing a motion to dismiss," this Court is "bound to accept all the factual allegations in the complaint as true." *Marcoz v. Summa Corp.*, 106 Nev. 737, 739, 801 P.2d 1346, 1347 (1990). Ryze identified

allegations which, both on their face and with "every fair inference" drawn in its favor, establish the absence of an attorney-client relationship between Mirae and Snell. *Compare Simpson v. Mars Inc.*, 113 Nev. 188, 190, 929 P.2d 966, 967 (1997), *with* AOB 24, *and* 3 AA 541–42, 547, 560, 563, 572–75 (alleging Snell filed suit "without the knowledge, consent, or permission of Mirae" to "enrich[] themselves with millions of dollars in fee compensation"). Snell neither acknowledges these representations nor disputes the law requiring them to be accepted as true.[4]

Snell instead dives into a pool of fact-based excuses. First, it argues that Ryze *also* alleged at times that Snell acted for Mirae, and those "allegations are binding judicial admissions." RAB 22. But Nevada's Rules of Civil Procedure permit pleading "alternatively or hypothetically . . . regardless of consistency," and "[i]nconsistent factual allegations in alternative claims cannot be used as admissions." NRCP 8(d)–(e); *Trans W. Leasing Corp. v. Corrao Const. Co.*, 98 Nev. 445, 448,

[4] Those allegations do not stand alone. Mirae itself claims "it was not a client of Snell and Wilmer." 2 AA 250–51, 477; AOB 12. A federal magistrate judge found "no evidence about the existence of an attorney-client privilege." 2 AA 367; AOB 13.

652 P.2d 1181, 1183 (1982); *see also Atherton Res., LLC v. Anson Res., Ltd*, No. 3:17-cv-00340-MMD-VPC, 2018 WL 4279214, at *3 (D. Nev. May 7, 2018). Ryze could assert alternative theories containing inconsistent factual allegations without having them weaponized to foreclose its claims on a motion to dismiss.

Second, Snell relies on uncited documents extraneous to the Complaint that it claims "confirm" an "undisputed" attorney-client relationship.[5] *Contrast* RAB 22–23, *with* NRAP 28(e) (requiring Snell to cite the appendix for these documents, which Snell did not). Those are the very documents Ryze alleges Snell lacked authority to negotiate and file on Mirae's behalf. 3 AA 562–68, 572–75. Mirae itself disputes Snell's authority. 2 AA 250–51, 477. Snell cannot ask this Court to resolve disputed case-concluding factual questions on a motion to dismiss.[6] *Breliant v. Preferred Equities Corp.*, 112 Nev. 663, 668, 918

[5] Snell's "undisputed" characterization misrepresents the record. RAB 21. Ryze and Mirae have been disputing this issue for years in federal court. Snell's uttering "undisputed" doesn't make it so.

[6] For this reason, the litigation privilege, as an affirmative defense, could not be applied on a motion to dismiss. AOB 19. Although Snell points out that this Court applied the litigation privilege on a motion to dismiss in *Ohio Security Ins. Co. v. Dist. Ct.*, No. 90777, 2026 WL 1042263, at *2–3 (Nev. Apr. 16, 2026), it did so "because no factual

P.2d 314, 317 (1996) ("[T]he dispositive resolution of questions of fact is not a part of a motion to dismiss on the pleadings."), *abrogated on other grounds by Delgado v. Am. Fam. Ins. Grp.*, 125 Nev. 564, 217 P.3d 563 (2009).

Third, Snell relies on *James v. Leport*, 4 P. 1184 (Nev. 1884) to argue that Ryze could not simultaneously seek enforceability of the contracts based on Director Lee's signature while disclaiming his authority to sign Snell's engagement letter. RAB 23. Snell cannot rely on unasserted, non-record allegations—i.e., Lee signing the Snell engagement letter—to prevail on a motion to dismiss. *Wang v. CIM Grp., L.P.*, No. 85025, 2024 WL 3841728, at *2 (Nev. Aug. 14, 2024) (reversing for considering extraneous documents on a motion to dismiss). *James* applied judicial estoppel to prevent a party from reversing its litigation position after successfully obtaining a ruling based on it. *Id.* at 1184; *Marcuse v. Del Webb Cmtys., Inc.*, 123 Nev. 278, 287, 163 P.3d 462, 469 (2007) (explaining judicial estoppel). It does not

---

disputes exist," *contrast id.* at *2, *with* RAB 13. Here, both the client relationship and Snell's authority to sue in Mirae's name are disputed.

preclude inconsistent factual allegations in a pleading. *Trans W. Leasing*, 98 Nev. at 448, 652 P.2d at 1183.

### 3. *The litigation privilege cannot protect attorneys acting outside their authority as counsel.*

Ryze also argued that the litigation privilege does not protect attorneys who, when representing legitimate clients, act outside their authority. AOB 22, 25. Snell ignores this alternative argument. *Colton v. Murphy*, 71 Nev. 71, 72, 279 P.2d 1036, 1036 (1955) (recognizing concession through omission). Nor could it obtain dismissal by denying it: whether Snell acted within the scope of its lawful authority from representing a legitimate client is disputed on the pleadings.

Rather than address these points, Snell sweeps them aside in a two-sentence footnote arguing that merely seeking attorneys' fees does not demonstrate "improper motive" or "purpose." RAB 21 n.8. Again, that misses the point. None of the cases Snell cites reaches Ryze's argument—that the litigation privilege does not protect attorneys acting outside their authority. Those cases address the viability of certain claims and what constitutes "improper motive" for substantive liability on those claims. Snell thus conflates the threshold privilege exception with downstream tort law. Snell cannot explain why the

privilege would protect unauthorized acts, and this Court should reverse on that basis.

### B. Even if Snell Had a Client, the Privilege Does Not Immunize an Attorney's Malfeasant Course of Conduct.

Ryze also argued that the litigation privilege did not protect Snell for engaging in a "course of conduct" and "extortionate scheme" involving more than just the mere filing of a complaint. AOB 25–29. Snell again cares more about mischaracterizing arguments than addressing them.

First, Snell mischaracterizes Ryze as applying *Dickerson* to preclude the privilege's application to *any* litigation conduct. *See* RAB 24 ("manufacturing an artificial distinction between litigation-related communications versus litigation-related conduct"). Ryze never made a general communication versus conduct distinction; it argued the privilege does not protect *specific* conduct: "attorney malfeasance." AOB 25–26. That aligns with *Dickerson* and *Greenberg Traurig*.

Second, Snell blasts Ryze for cherry-picking quotes from *Dickerson* to convey a false impression about *Dickerson*'s scope, arguing *Dickerson* only said the privilege "typically" does not apply to attorney malfeasance and merely noted what "some jurisdictions" do. RAB 24–

25. This semantic quibbling goes nowhere.[7] *Dickerson* explained that "the litigation privilege does not, and should not, apply here" for two reasons. *Dickerson*, 2017 WL 6316552, at *3. Even though "Nevada caselaw [was] silent on the matter," the privilege could not "provide attorneys with the ability to act malfeasant," relying on Greenberg Traurig*'s client-advocacy purpose. Id.* "Additionally, the gravamen" was the attorney's "actions" not "attorney-client communications . . . in which [the attorney] provided legal advice." *Id.* at *4. Snell's relegating *Dickerson*'s rules to dicta ignores that the "attorney malfeasance" and "course of conduct" rules were its holding, not mere dicta; rules it applied, not just discussed.

Third, Snell tries factually distinguishing *Dickerson*. RAB 25. Yes, there are factual differences between this case and *Dickerson*. So what? That's true in almost every case. But Snell does not explain why those factual differences matter given the legal principles *Dickerson* announced. *Dickerson* did not limit the "attorney malfeasance" or "course of conduct" rules to a specific factual situation turning on *who*

[7]Although *Dickerson* explained how "some jurisdictions" have "drawn a distinction," it then actually drew that distinction itself. *Dickerson*, 2017 WL 6316552, at *4.

the attorney was acting malfeasant towards: its own expert versus a litigation opponent. *Dickerson*, 2017 WL 6316552, at *3 (characterizing the malfeasant conduct as "conspiring with a client to defraud a *third person*" (emphasis added)). And Snell has not otherwise explained how its conduct falls outside *Dickerson* and the two rules it announced.

Lastly, Snell tries minimizing Judge Gordon's denial of the litigation privilege for Mirae under the identical fact pattern by claiming the law "often recognizes" different outcomes between clients and attorneys.[8] RAB 26. Snell cites the Restatement, but those provisions address application of substantive torts, not the threshold litigation privilege. Even then, the Restatement only immunizes an attorney when "representing a client" if he "acts primarily to help the client obtain a proper adjudication of the client's claim" and not "for an improper purpose." Restatement (Third) of the Law Governing Lawyers § 57(2) & cmt. d (2000). Nevada law similarly provides that an attorney

[8] Snell suggests Judge Gordon misunderstood the facts. *See* RAB 26 n.10. It forgets that Ryze alleged that Snell threatened *future baseless* litigation; the litigation privilege does not protect that kind of conduct. *See Jacobs*, 130 Nev. at 413, 325 P.3d at 1285 (requiring anticipated litigation to be "contemplated in good faith" and "under serious consideration" to receive the privilege's protection).

can't "hide behind the privilege with impunity" based on his "own course of conduct in conspiring with a client to defraud a third person." *Dickerson*, 2017 WL 6316552, at *3. That's exactly what Ryze alleged. Snell went beyond the scope of legitimately advising a client and instead itself orchestrated an extortionate scheme.[9]

* * *

*Dickerson* applies here. On Ryze's allegations, Snell invented a client, filed a frivolous lawsuit it never intended to litigate, used that lawsuit to "negotiate" a collateral commercial agreement untethered from the lawsuit "for" that fictional client—all to reap millions services it never provided to its nonexistent client. 3 AA 548, 557–58; 4 AA 732–33; AOB 4–8, 27. Filing a complaint may be a communicative act; orchestrating a multi-step extortion scheme to destroy a company and harvest fees on the back of a fabricated client is a malfeasant conduct. Ryze's allegations do not rest on Snell's legitimate client advice; they rest on Snell's malfeasant conduct—*Dickerson*'s distinction.

[9] Ironically, Snell claims Judge Gordon was focusing on "Mirae's alleged improper purpose, not Snell's client-focused conduct." RAB 26. There was no client conduct because there was no client.

### C. The Privilege Does Not Extend to Abuse of Process or Wrongful Use of Civil Proceedings.

Ryze argued that this Court has never applied the privilege to abuse-of-process claims and that it should not start here. AOB 30–36. Snell barely engages the argument.

First, Snell does not dispute that no citable Nevada decision has ever applied the litigation privilege to bar a properly pleaded abuse-of-process claim. *See* RAB 27–28. It cites two District of Nevada cases that have done so, but no Nevada state court cases. And those cases relied on a 2012 unpublished case from this Court that Snell acknowledges cannot be cited. *Compare* RAB 15 n.6, *with* RAB 28. That alone warrants caution in adopting a version of the privilege that eviscerates an entire tort.

Second, Snell confines *Bull* to an evidentiary ruling, RAB 28, but that ruling supplies the answer. *Bull* held counsel's trial comments privileged and insufficient to support liability, then affirmed the abuse-of-process verdict because liability rested on counsel's use of the complaint and summons. *Bull v. McCuskey*, 96 Nev. 706, 709–12, 615 P.2d 957, 960–62 (1980), *abrogated on other grounds by Ace Truck &*

*Equip. Rentals, Inc. v. Kahn*, 103 Nev. 503, 746 P.2d 132 (1987). The statements were privileged; the misuse remained actionable.

Third, Snell's "but for" theory—that Ryze's claims are barred because the alleged harms would not exist "but for" the July 23 Lawsuit—would eliminate all abuse-of-process claims. Its claim chart treats each claim as privileged solely because Ryze "voluntarily linked" it to the July 23 Lawsuit and because it would not exist "but for" that filing. RAB 16, 18. Were this "but-for theory" the test, this Court could not have sustained the results in *Bull*, *Posadas*, and *TMX* because the harm there was also "voluntarily linked" to legal filings. *Bull*, 96 Nev. at 709, 615 P.2d at 960; *TMX, Inc. v. Volk*, Nos. 74813 & 75692, 2019 WL 4619524, at 2 (Nev. Sept. 20, 2019); *Posadas v. City of Reno*, 109 Nev. 448, 457–58, 851 P.2d 438, 444–45 (1993). The consistent recognition of the tort is itself evidence that the privilege does not reach as far as Snell claims.

Snell's prayer—*Ohio Security*—does not save them but undermines its "but for" theory. 2026 WL 1042263, at *2. That unpublished panel order applied the privilege to non-abuse-of-process claims where the alleged harm "derive[d] directly" from legitimate

settlement proposals and court filings. *Id.* That is not the case here.[10] The alleged harm derives from using the pending action to coerce collateral benefits, not from what the Complaint communicated.[11] Snell's theory fails even within its arbitrarily narrow universe of "post-filing tools" sufficient to constitute "process." The attachment, interrogatories, deposition notice, and subpoena duces tecum that Snell identifies, RAB 30, could not exist "but for" a complaint and are necessarily "voluntarily linked" to it. That inevitable dependence does not make the Complaint's communicative content the basis of liability for abuse-of-process claims. Accepting Snell's view of the privilege immunizes the conduct the tort exists to police: weaponizing legitimate tools for illegitimate purposes.

---

[10] A petition for en banc consideration has been filed in *Ohio Security* which may upend Snell's reliance on it. Additionally, *Ohio Security* involved a general communication versus conduct distinction that Ryze has not advanced here, so Snell has misappropriated the "derive[d] directly" language to eliminate *Dickerson*.

[11] Quoting *Fink* and *Circus Circus*, Snell invokes "malice and ill will" as though the phrase defines the privilege's reach. RAB 9, 14. Those cases concern defamation: once a statement is privileged, falsity or spite does not defeat the privilege. *See Fink v. Oshins*, 118 Nev. 428, 433, 49 P.3d 640, 644 (2002); *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983). That vocabulary does not determine whether the privilege reaches a tort based on using proceedings for a collateral purpose.

Lastly, Snell discards the "twelve other jurisdictions" Ryze cited to support an abuse-of-process exception because it claims "Nevada has made a policy choice to grant broad immunity" for this conduct. RAB 28–29. Where is this "policy" found? Snell cites no case for support, and that "policy choice" appears nowhere in this Court's cases. The authorities Snell invokes are federal decisions relying on the back of an uncitable, unpublished order that, by rule, cannot dictate Nevada's "policy" choices. *See* RAB 28–29. To the contrary, this Court has repeatedly entertained abuse-of-process claims arising from litigation conduct that this "policy choice" would preclude. *See Bull*, 96 Nev. at 709, 615 P.2d at 960; *TMX*, 2019 WL 4619524, at *2; *Posadas*, 109 Nev. at 457-58, 851 P.2d at 444–45; *cf. Dickerson*, 2017 WL 6316552, at *3.[12] The privilege and tort coexist and address different policies: the former promotes client advocacy, the other prevents abuse of the judicial system. Neither policy was served here.[13]

---

[12] *Dickerson* did not involve an abuse-of-process claim, but the privilege did not apply to an attorney's litigation-related conduct.

[13] Snell also ignores entirely Ryze's argument that the litigation privilege's policy supports an abuse-of-process exception. *See* AOB 34–36. State appellate courts confronting the apparent tension between the litigation privilege and litigation torts have repeatedly rejected the complete immunity Snell proposes. *Givago Growth, LLC v. iTech AG,*

## II. Snell's Alternative Rule 12(b)(5) Grounds Do Not Support the Judgment.

### D. Ryze Stated a Textbook Abuse-of-Process Claim.

Ryze argued that the district court misapplied both elements of the abuse-of-process claim to foreclose a paradigmatic abuse of process. AOB 38-45. Snell fails to address the arguments squarely.

First, Snell continues conflating the threshold "process" question with the "willful act" element. *See* RAB 30–31, 34. It claims Ryze "cannot identify any misused legal process." RAB 31. But "a complaint is a legal process sufficient to satisfy the process requirement for an abuse-of-process claim." *Fiondella, Inc. v. Reiner, Reiner & Bendett*, No. HHDCV085025357S, 2009 WL 5342490, at *4 (Conn. Super. Ct. Dec. 4, 2009). *Land Baron* holds that filing alone is not an abuse of process; it does not a say a complaint cannot be the process later abused. *Land Baron Inv. v. Bonnie Springs Fam. LP*, 131 Nev. 686, 698, 356 P.3d 511, 520 (2015); *see also* AOB 38–39. Ryze did not need to identify

---

*LLC*, 863 S.E.2d 684, 688 (Va. 2021); *Simms v. Seaman*, 69 A.3d 880, 890–93 (Conn. 2013); *Mason v. Mason*, 497 P.3d 431, 449–50 (Wash. Ct. App. 2021); *DeBrincat v. Fischer*, 217 So. 3d 68, 70–71 (Fla. 2017) (applying the privilege "would eviscerate" the tort); *see* 6 AA 1274.

subsequent process used, just post-filing acts abusing that process. It did just that.

Second, Snell tries factually distinguishing *Bull*, *Posadas*, and *TMX* without an end goal. RAB 31–33. None of the factual differences prove Snell's understanding of the rule or disprove Ryze's. Snell never shows that *Bull*, *Posadas*, or *TMX* identified some separate "process" that could be abused other than the complaint and summons. *See id.* It's hard to reconcile these three cases if the rule applies as Snell claims because they do not involve any post-filing "process" abused, just the complaint.[14]

Knowing it cannot use these cases to disprove the rule, Snell tries claiming it didn't do the same improper things that those cases prohibited. RAB 31-32. Not true. Snell filed this lawsuit solely to coerce and extort Ryze into an illegitimate commercial arrangement. Nevada law doesn't permit attorneys to use frivolous suits as bargaining chips

---

[14] Snell's estoppel argument—that the lawsuit dismissals were "required" by the Binding Term Sheet—misapprehends the claim and is outside the pleadings. RAB 30–31. The willful act is not the later dismissal; it is Snell's post-filing coercion that forced the Binding Term Sheet in the first place. Snell cannot manufacture estoppel from a contract its own alleged extortion produced.

for collateral gain. *Compare* AOB 39–40, *with Abbott v. United Venture Cap., Inc.*, 718 F. Supp. 828, 835 (D. Nev. 1989) (recognizing coercing a collateral commercial gain supports an abuse-of-process claim), *and In re Black*, 487 B.R. 202, 212–13 (B.A.P. 9th Cir. 2013) (finding abuse of process when the "complaint" was filed "for an end other than" the purpose for which it was brought: "an attempt to strong-arm [Plaintiff] into renegotiating the purchase price for the property"). Under identical facts, Judge Gordon found a plausibly pled abuse-of-process claim, and Snell ignored this point when discussing abuse of process. *Compare Mirae Asset Sec. Co. v. Ryze Renewables Holdings, LLC*, No. 2:23-cv-01492-APG-NJK, 2025 WL 1757435, at *7 (D. Nev. June 25, 2025), *and* AOB 43 (relying on this holding), *with* RAB 29–35 (failing to acknowledge the holding).

Third, Snell tries carving out its "threatening statements" at the parties' "voluntary mediation" because mediations are not "process" that can be abused. RAB 34. It conflates the "process" component with the "willful act" element when it suits it but separates them when it doesn't. The complaint is the "process" abused; the "mediation" statements are part of the abuse. *Mirae Asset*, 2025 WL 1757435, at *7

(finding the "willful act" element satisfied when Ryze alleged a "sham settlement conference and holding the threat of lawsuits over Ryze to coerce it into an unfavorable new loan transaction"); *see also Tri-State Energy Sols., LLP v. KVAR Energy Sav. Inc.*, 884 F. Supp. 2d 168, 183–84 (D. Del. 2012) (denying summary judgment because the evidence raised a genuine dispute regarding whether "the mediation" was a "willful act" for abuse-of-process claim).

Fourth, Snell claims this Court cannot rely on the mediation statements for policy and privilege reasons. *See* RAB 34–35. It entirely ignores Ryze's preemptive argument explaining why those privileges and policy reasons don't apply. *Contrast* AOB 44–45 (devoting an entire section to this), *with* RAB 34–35 (failing to reference or address these arguments). Snell thus concedes Ryze's claim has merit. *Colton*, 71 Nev. at 72, 279 P.2d at 1036. Snell cannot continue claiming it's entitled to some mediation privilege when Ryze directly alleged that no mediation occurred.[15]

[15] The SAC expressly alleges that "no third-party mediator was present." 3 AA 556 ¶ 87. Snell's answer admits the parties called the meeting a mediation "but that a third-party mediator did not mediate the dispute." 1 AA 113. California defines mediation as a process in

### E. *LaMantia* Should Be Clarified Rather than Extended to Abolish Liability for Wrongful Initiation of Civil Litigation.

Ryze argued that this Court did not intend to eliminate civil liability—regardless of the name—for baselessly filing a civil lawsuit. AOB 45-52. Snell disagrees.

First, Snell relies on *LaMantia* to show that this Court *abolished* a tort and entirely eliminated liability for wrongfully filing a civil complaint, but it mostly ignores Ryze's explanation for why *LaMantia* is not as broad as Snell contends. *Contrast* AOB 46–48 (contextualizing *LaMantia*'s holding), *with* RAB 35-39 (failing to grapple with *LaMantia*'s language). It instead zooms in on other Nevada cases that have applied *LaMantia* to bar *malicious prosecution* claims. *See* RAB 36. Those federal district court decisions rest on the absence of a Nevada case recognizing the tort[16] and did not address Ryze's argument here that civil liability exists under a different name.

---

which "a neutral person or persons facilitate communication between the disputants." Cal. Evid. Code § 1115(a); *see also* NRS 48.109.

[16] "Absence of evidence is not evidence of absence." *Cf. Todd v. State*, 113 Nev. 18, 27, 931 P.2d 721, 726 (1997) (Springer, J., dissenting).

Second, Snell quibbles with Ryze's argument that Snell's view isolates Nevada as the only state without a civil remedy for the facts presented here given the district court's holding on other claims. RAB 36–37. For example, it claims that "five states, including Nevada" have not taken a position; Snell must have missed Ryze's footnote 10 refuting that claim. AOB 50 & 50 n.10 (collecting authorities illustrating that Nevada would be the lone state to not adopt civil wrongful initiation under some label). It also claims that 16 states have limited the tort to hyper-specific scenarios; if that's true (and it's not),[17] it concedes the tort exists. The district court dismissed the claim because it held the tort did not exist at all; it did not address whether Nevada would adopt a minority rule that seemingly continues falling out of vogue across the country. Put differently, the question presented here is whether the tort exists at all, not what version of the tort exists. Snell's answering brief only further exposes Nevada as an outcast with a remedial gap this Court can fill.[18]

---

[17] *See, e.g.*, *Sabella v. Est. of Milides*, 992 A.2d 180, 188 (Pa. Super. Ct. 2010); *Checkley v. Boyd*, 14 P.3d 81, 90–92 (Or. Ct. App. 2000).

[18] Should this Court address that question (and it can for guidance), it should adopt the majority rule.

Lastly, Snell claims that Ryze cannot prevail even if this Court adopts the claim, because Ryze did not plead facts to support it. RAB 38. For example, it claims Ryze did not satisfy the "improper purpose" element because Ryze only alleged that Snell sought fees. *Id.* That characterization is wrong: paragraph 158(c) alleges "fees tied to Ryze's acceptance of the SLA," and the Binding Term Sheet allocates $6.5 million of the proposed loan proceeds to fees payable to Han, Mirae, and Defendants. 3 AA 557, 570–71; 4 AA 852–62. The pleaded inference is a success fee payable from the collateral loan's proceeds—not hourly compensation or a contingency on a litigation recovery. Snell cannot take the contrary inference on a motion to dismiss.

Even were the characterization correct, the Restatement upon which Snell relies shows that the "purpose" element is satisfied if "the person bringing the civil proceedings is aware that his claim is not meritorious" *or* "for the purpose of forcing a settlement that has no relation to the merits of the claim." Restatement (Second) of Torts § 676 cmt. c (Am. L. Inst. 1977). Ryze alleged that here: Snell filed a baseless lawsuit it knew lacked merit and never intended to litigate for that reason, coerced a "mediation" where it refused to discuss the lawsuit or

its merits, then used non-lawsuit pressure points the lawsuit exacerbated (e.g., funding availability) to coax an oppressive collateral commercial arrangement. 3 AA 548-52, 557-58, 560-61, 564, 568, 571, 573, 578; AOB 1, 4, 24, 43. Using a suit to "intimidate, outspend, and outsue" is the paradigm of improper purpose. *Abbott*, 718 F. Supp. at 835.

Snell also claims that Ryze could not satisfy the "termination of proceedings" element because "dismissal results from a negotiated resolution." RAB 38. Yet the Restatement identifies "withdrawal of the proceedings by the person bringing" the suit as one means of favorable termination. Restatement (Second) of Torts § 674 cmt. j (Am. L. Inst. 1977). The pleaded sequence was unilateral, not negotiated. The Term Sheet required Mirae to dismiss without prejudice and postponed any mutual release until later conditions occurred while preserving the parties' litigation rights in the meantime. 4 AA 861–62. When the loan failed, Mirae dismissed with prejudice "*without any agreements, release, or other concessions by Ryze*." 3 AA 559 (emphasis added). Mirae's NRCP 41(a)(1)(i) notice was unilateral, dismissed its complaint with prejudice before Ryze answered, and did not release or preclude Ryze's

claims. 5 AA 868. Mirae's dismissal did not *stem from* a negotiated "resolution" but its own failure to fund and its own recognition of the baselessness of the suit. Under the analogous federal rule, a unilateral dismissal with prejudice is a merits disposition whether or not the defendant joins it. *See Mohamad v. Rajoub*, 2018 WL 1737219, at *7–8 (S.D.N.Y. Mar. 12, 2018) (recognizing a dismissal with prejudice is a "final adjudication on the merits favorable to defendant" even if unilaterally noticed). At minimum, these facts permit an inference of abandonment; they cannot establish Snell's contrary inference of settlement on a motion to dismiss.

### F. Ryze Properly Pled Its Negligent and Fraudulent Misrepresentation Claims.

Snell offers various reasons why the district court correctly dismissed Ryze's negligent misrepresentation and fraud claims on a motion to dismiss. RAB 40-45. None have merit.

First, Snell invokes *Dezzani*'s rule that "[a]n attorney providing legal services to a client *generally* owes no duty to adverse or third parties." *Dezzani v. Kern & Assocs., Ltd.*, 134 Nev. 61, 67–68, 412 P.3d 56, 61–62 (2018) (emphasis added); RAB 40–41. That rule assumes the predicate the SAC disputes: that Snell had a client for which it was

providing legal services. Ryze addressed this argument in its Opening Brief: *Dezzani* recognizes that an attorney acting outside legitimate representation can owe duties to third parties. Snell says nothing in response and therefore concedes the point. *Contrast* RAB 40–41, *with* AOB 57; *see also Colton*, 71 Nev. at 72, 279 P.2d at 1036. Whether Snell acted within a legitimate representation is a disputed question of fact the district court could not resolve on a Rule 12(b)(5) motion to dismiss.

Second, Snell claims that Ryze could not prove "justifiable reliance" because of the SLA's § 10.15 anti-reliance clause. RAB 42–43. That clause disclaims reliance on *Mirae's* statements (i.e., the "Lender or any parent, subsidiary or affiliate of Lender"), not Snell's representations regarding client authority. Nor does Snell refute Ryze's arguments regarding the district court's improper invocation and application of the "danger signal" doctrine, thereby conceding the point. *Compare* AOB 55–56, *with Colton*, 71 Nev. at 72, 279 P.2d at 1036. Justifiable reliance is a question of fact, and these anti-reliance clauses cannot bar a claim on a motion to dismiss when Ryze alleged facts that put it outside the clause. *Blanchard v. Blanchard*, 108 Nev. 908, 911–

13, 839 P.2d 1320, 1322–23 (1992); *Reynolds v. Tufenkjian*, No. 78187, 2020 WL 6882914, at *2 (Nev. Nov. 23, 2020).

Third, Snell claims Ryze did not plead with enough particularity, but the Second Amended Complaint identified the speakers (Graham and Roehm), the timing, and the substance of the misrepresentations. 3 AA 541–42, 547–52, 556–58, 566–67; AOB 58. Snell does not identify what is missing from those allegations. At worst, a Rule 9(b) shortfall warrants leave to amend, not dismissal with prejudice.

Fourth, Snell argues that Ryze could not "challenge" a fraudulent agreement it sought to enforce. RAB 45–46. This argument was not argued below or decided by the district court, so this Court should not consider it. *Gibbons v. Martin*, 91 Nev. 269, 270, 534 P.2d 915, 915 (1975).

### G. The District Court Erred in Dismissing the Claim for Aiding and Abetting a Breach of Fiduciary Duty.

Snell contends Ryze failed to plead a fiduciary relationship, alleging only an arm's-length or adversarial relationship with Hall and Han. RAB 47. Ryze expressly alleged that Hall, Paragon, and Han were its "agents," entrusted with confidential information and authorized to act on its behalf—allegations of an agency relationship that, accepted as

true, support a fiduciary duty. AOB 59–60. Whether an agency or fiduciary relationship exists is a fact-bound question unresolvable on the pleadings; the district court's "arm's-length" characterization resolved a disputed fact against Ryze. The court, moreover, never separately addressed Paragon as an independent fiduciary. AOB 59.

### H. The Conspiracy Claim Does Not Require an Independent Tort, and the Intra-Corporate Doctrine Does Not Apply.

Snell insists that the district court did not impose an independent-tort requirement. RAB 48-50. But the court dismissed the conspiracy claim because "no actionable underlying tort has been sufficiently pleaded." 6 AA 1207–08; AOB 60–61. This Court squarely rejected that requirement in *Cadle Co. v. Woods & Erickson, LLP*: civil-conspiracy "liability may attach where two or more persons undertake some concerted action with the intent to commit an unlawful objective, *not necessarily a tort*." 131 Nev. 114, 117–18, 345 P.3d 1049, 1052 (2015) (emphasis added). Snell argues the district court merely applied Nevada law and found there was "no remaining unlawful objective" after dismissing the other claims. RAB 48. That's requiring independent tort viability. Even if Snell's "unlawful objective" here—fabricating a client to pursue a fictitious lawsuit to coerce a collateral commercial

arrangement for unreasonable fees—does not satisfy the elements of the pleaded torts, that does not make it any less an "unlawful objective." *See* NRS 199.380 (making it a crime to "institute or prosecute any action . . . in the name of another, without the consent of the other person"); NRS 199.320 (criminalizing bringing or instigating a false suit "with intent thereby to distress or harass a defendant"). Snell's harmlessness argument, RAB 50 n.17, depends on the predicate-tort dismissals; if those are reversed, that derivative ground disappears.

The intra-corporate doctrine does not save the dismissal either. Ryze pleaded a conspiracy between Snell and external actors—Hall, Paragon, Han, and Mirae. 3 AA 585–87; AOB 62–63. The doctrine applies only to conspiracies among a single entity and its agents. It does not apply to conspiracies with outsiders. Snell's waiver argument, RAB 49–50, also fails. The SAC identifies outside conspirators, and Ryze relied on that allegation in opposing Snell's anti-SLAPP motion. 3 AA 585 ¶ 239; 5 AA 1106–07. Ryze also raised the point on reconsideration, and the district court entertained and denied that motion. 6 AA 1230–31; 8 AA 1682–87. This Court may consider an argument raised on reconsideration when the motion and order are in the appellate record

and the district court entertained the motion on its merits. *Arnold v. Kip*, 123 Nev. 410, 416–17, 168 P.3d 1050, 1054 (2007). The intra-corporate doctrine bars only conspiracies among a corporation and its own agents acting in their official capacities, and whether they acted for individual advantage is itself a fact question. *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 303, 662 P.2d 610, 622 (1983).

### I. Ryze Did Not Waive Its Challenge to the Remaining Claims.

Snell argues Ryze waived any challenge to Claims 7, 8, and 10 through 14 by not addressing them individually. RAB 50. Not so. Ryze abandoned claims 7 and 8; it did not abandon claims 10–14. Because the district court dismissed Claims 10–14 solely for lack of a "viable underlying tort," reversal of any predicate tort resurrects those claims. *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 167, 252 P.3d 668, 675 (2011) (allowing courts to consider issues in the interest of justice).

### III. Dismissal With Prejudice Was, at a Minimum, an Abuse of Discretion.

Ryze argued that the district court should have given it leave to amend its Second Amended Complaint rather than dismiss it with prejudice. AOB 63–65. First, the parties fundamentally disagree

regarding the scope of the litigation privilege, but Snell does not dispute that leave should be given to amend should this Court reverse on the litigation privilege. Second, Snell offers this Court no authority that shows a district court can deny leave to amend a complaint solely because of how long the case has been pending—especially when Snell was the cause for the delay. *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (recognizing a court "need not consider" contentions without supporting legal authority). Third, Snell invokes EDCR 2.30 because Ryze never attached an amended complaint, but the district court never relied on that ground. The principal defects at issue are legal. If this Court rejects the privilege and claim-specific rulings, those grounds cannot sustain dismissal with prejudice.

## CONCLUSION

The litigation privilege shields attorneys advocating for a client; it does not protect attorneys who invent a fictional client, file a baseless suit in the name of that fictional client, weaponize that baseless suit to extort a collateral deal, and then walk away immune from the wreckage they caused. On Ryze's allegations—which must be taken as true—that

is what happened, and Nevada cannot immunizes such malfeasance. This Court should reverse and remand in full or, at minimum, it should reverse the with-prejudice dismissal and allow amendment.

DATED this 7th day of August, 2026.

Respectfully submitted,

*/s/ Dennis L. Kennedy*

**BAILEY❖KENNEDY**
DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
JOE A. MORGAN
Nevada Bar No. 16937
8984 Spanish Ridge Avenue
Las Vegas, NV 89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com
JMorgan@BaileyKennedy.com

**EDGAR LAW FIRM LLC**
JOHN M. EDGAR*
JOHN F. EDGAR*
MICHAEL R. OWENS*
ALEXANDER C. MELIN*
2600 Grand Blvd., Ste. 440
Kansas City, Missouri 64108
Telephone: 816.531.0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

**Admitted Pro Hac Vice*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that Appellant's Reply Brief complies with the formatting requirements of NRAP 32(a)(4), the typeface requirements of NRAP 32(a)(5), and the type-style requirements of NRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

I further certify that Appellant's Reply Brief complies with the type-volume limitations of NRAP 32(a)(7) because, excluding the parts of the brief exempted by NRAP 32(f), it is proportionately spaced, has a typeface of 14 points or more, and contains 6762 words.

Finally, I hereby certify that I have read Appellant's Reply Brief, and, to the best of my knowledge, information, and belief, it is not frivolous or interposed for any improper purpose. I further certify that this brief complies with all applicable Nevada Rules of Appellate Procedure, in particular NRAP 28(e)(1), which requires every assertion in the brief regarding matters in the record to be supported by a reference to the page and volume number, if any, of the transcript or appendix where the matter relied on is to be found. I understand that I may be subject to sanctions in the event that the accompanying brief is

not in conformity with the requirements of the Nevada Rules of Appellate Procedure.

Dated this 7th day of August, 2026.

*/s/ Dennis L. Kennedy*
Dennis L. Kennedy
BAILEY❖KENNEDY

*Attorneys for Appellants*

## CERTIFICATE OF SERVICE

I certify that I am an employee of Bailey❖Kennedy and that on this 7th day of August, 2026 service of the foregoing was made by electronic service through the Nevada Supreme Court's electronic filing system, and/or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known addresses:

| | |
|---|---|
| AMY ABDO<br>**TAFT STETTINIUS & HOLLISTER LLP**<br>3960 Howard Hughes Parkway<br>Suite 500<br>Las Vegas, Nevada 89169 | Email: Amy.Abdo@taftlaw.com<br><br>*Attorneys for Respondents Snell & Wilmer LLP, Victor J. Roehm III, Steven T. Graham and Charles E. Gianelloni* |
| JESSICA L. POST<br>**FENNEMORE CRAIG, P.C.**<br>2394 East Camelback Road<br>Suite 600<br>Phoenix, Arizona 850165 | Email: jpost@fennemorelaw.com<br><br>*Attorneys for Respondents Snell & Wilmer LLP, Victor J. Roehm III, Steven T. Graham and Charles E. Gianelloni* |
| J. COLBY WILLIAMS<br>SAMUEL R. MIRKOVICH<br>**CAMPBELL & WILLIAMS**<br>710 South Seventh Street<br>Suite A<br>Las Vegas, Nevada 89101 | Email: jcw@cwlawlv.com<br>srm@cwlawlv.com<br><br>*Attorneys for Respondents Snell & Wilmer LLP, Victor J. Roehm III, Steven T. Graham and Charles E. Gianelloni* |

PETER C. MEIER
DANIEL PRINCE
D. SCOTT CARLTON
**PAUL HASTINGS LLP**
515 South Flower Street
25th Floor
Los Angeles, California 90071

Email:
petermeier@paulhastings.com
danielprince@paulhastings.com
scottcarlton@paulhastings.com

*Attorneys for Defendants/Third-Party Defendants Mirae Asset Securities Co., Ltd.*

*/s/ Samantha T. Kishi*
Employee of BAILEY KENNEDY