# EXHIBIT S115

*Excerpts of the Deposition of Jeffrey M. Singletary (July 18, 2025)*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MIRAE ASSET SECURITIES CO., LTD., a Republic of Korea company,<br><br>Plaintiff,<br><br>RYZE RENEWABLES HOLDINGS, LLC, a Nevada limited liability company, and RYZE RENEWABLES NEVADA, LLC, a Nevada limited liability company,<br><br>Defendants.<br><br>RYZE RENEWABLES HOLDINGS, LLC, a Delaware limited liability company, registered in Nevada, and RYZE RENEWABLES NEVADA, LLC, a Delaware limited liability company,<br><br>Counter-Claimants,<br><br>vs.<br><br>MIRAE ASSET SECURITIES CO., LTD., a Republic of Korea company,<br><br>Counter-Defendant. | Case No.: C:23-cv-01492-APG-NJK |

VIDEOTAPED DEPOSITION OF JEFFREY M. SINGLETARY

July 18, 2025
Phoenix, Arizona

Reported by: Cathy A. Miccolis, RPR/CRR
Certified Reporter, No. 50068
Job No. 10167875

EXAMINATION

BY MR. OWENS:

**Q. Good afternoon, Mr. Singletary. We got introduced this morning. I'm Michael Owens, and I represent Ryze Renewables Holdings and Ryze Renewables Nevada. I'm going to have a few questions for you as well.**

**To start, you testified earlier to your relative familiarity with the claims in this litigation; is that right?**

MS. ABDO: Form.

THE WITNESS: Yes.

BY MR. OWENS:

**Q. And am I correct in recalling that your testimony was you were aware that Mirae had denied that it ever hired Snell & Wilmer for your representation?**

MS. ABDO: Form.

THE WITNESS: I'm generally aware of that now, yes.

BY MR. OWENS:

**Q. Do you agree with that position?**

MS. ABDO: Form and foundation.

THE WITNESS: No.

BY MR. OWENS:

**Q. So you regard your -- you believe that you**

**represented Mirae when you undertook the representation to bring the lawsuit in Clark County against Ryze; right?**

A. Yes.

**Q. And to assist with negotiating a second loan deal following the lawsuit?**

MS. ABDO: Form, foundation.

THE WITNESS: So I didn't assist in negotiating anything, but Snell & Wilmer did, yes.

BY MR. OWENS:

**Q. I'm going to show you -- I'll ask the court reporter to mark as Exhibit 33; is that right?**

THE REPORTER: Yes.

(Exhibit 33 marked.)

BY MR. OWENS:

**Q. Maybe we can get an assembly line to pass these down and around.**

**Take a look at Exhibit 33 and let me know if you recognize the document.**

A. I -- I recognize the document absent the Bates number.

**Q. And is the document a revised version of the engagement letter that we looked at earlier as exhibit -- give me a second.**

A. It was Exhibit 3.

**Q. -- Exhibit 3?**

A. Yeah. So Exhibit 33 looks to be the final engagement letter that was -- that I'm aware of.

**Q. And can you turn to the last page of the document and tell me if it's executed?**

MR. CARLTON: Objection.

THE WITNESS: I'm sorry.

MR. CARLTON: Form.

THE WITNESS: So the last page is just the continuation of our professional policies and fees, or actually it's a statement of policy regarding tax advice. But this document appears to be executed by Steve Graham, by Mr. Lee, and there are initials on what appears to be each -- each page of the exhibit.

BY MR. OWENS:

**Q. Did you draft this revised version of the engagement letter?**

MS. ABDO: Form.

THE WITNESS: I was -- I participated in the -- in this document. I was not the sole drafter of it. But I participated in it.

BY MR. OWENS:

**Q. Is there anything about this engagement letter that looks irregular to you?**

MS. ABDO: Form.

THE WITNESS: I don't -- I don't think so, but

I don't know what you mean by irregular. But this doesn't look irregular to me.

BY MR. OWENS:

**Q. I'm just asking, we were talking about how in this case there's Mirae's position that you weren't really their attorney, and so I want to hear whether there's any indication of reasons to doubt that in this instance based on the engagement letter. Do you see any?**

A. I don't. Looks like it's signed by the client.

**Q. And the client being Mirae Asset Securities Company, Limited?**

A. Correct.

**Q. Did you participate in a kickoff meeting regarding the Mirae representation on or about the end of June? Do you recall?**

MS. ABDO: Form.

THE WITNESS: So I participated in meetings in June. I don't know -- I don't know what a kickoff meeting is or if there was a specific one. But I participated in meetings relating to Mirae in June of 2021.

BY MR. OWENS:

**Q. And do you recall who else was present in those meetings, whether physically or virtually or telephonically?**

MS. ABDO: Form.

MS. ABDO: Form.

THE WITNESS: I can't say with certainty what this is. We're relying on the client to tell us what they are.

BY MR. OWENS:

**Q. But it gave you -- nevertheless, provided you and your colleagues comfort that an enforceable contract existed --**

MS. ABDO: Form.

BY MR. OWENS:

**Q. -- between Ryze and Mirae?**

A. Yes.

**Q. Last exhibit was 35. I'll ask Cathy to mark this next document as Exhibit 36. Take a look at it once she does so.**

(Exhibit 36 marked.)

**Q. Once you've had a chance to review, Mr. Singletary, please let me know what Exhibit 36 appears to be to you.**

A. I have no idea what the first page is. The balance of it, of Exhibit 36, appears to be transmittal letters from Steve Graham to Lee enclosing bills.

**Q. Bills for legal services; is that right?**

A. That's what it looks like.

**Q. Sent from Snell & Wilmer to Mirae?**

A. Sent from -- yeah, it looks like Steve Graham to Lee at Mirae. I don't see the emails, but I just see the letter.

**Q. Have you had occasion to view bills or invoices that Snell & Wilmer provides to clients for legal services rendered?**

A. Yes.

**Q. Does this appear to be bills for legal services rendered of the type that Snell & Wilmer sends to clients?**

A. This is the format, yes.

**Q. And for those unfamiliar with the process of legal billing, what goes into creating a bill like this?**

MS. ABDO: Form.

THE WITNESS: I can tell you what I know.

BY MR. OWENS:

**Q. Please.**

A. We have a billing software called -- oh, geez -- Intapp that allows you to populate certain -- it's electronic -- allows you to populate like the client name, the client matter, to click a clock for when you're working on something, to enter in a description. Some clients make you enter in task codes. And then I press "stop" when I'm done working on something. And then it releases into the system. That system -- and I don't know how the system works. Then at the end of the month it

BY MR. OWENS:
**Q. -- in your experience?**
A. Yes.
**Q. Do you think it was reasonable for Ryze to believe that your firm was counsel for Mirae?**
MR. CARLTON: Object to form, foundation.
THE WITNESS: Absolutely.
BY MR. OWENS:
**Q. Have you ever encountered a situation where a law firm identifies themselves for a counsel -- as counsel for a party and you call up the principal to confirm?**
MR. CARLTON: Object to form.
THE WITNESS: Not in my experience, no.
BY MR. OWENS:
**Q. When you enter an appearance as counsel of record for a client, do you expect that opposing counsel and opposing parties will deal with you as if you're opposing counsel -- as if you're counsel for the party that you purport to appear on behalf of?**
MR. CARLTON: Object to form.
THE WITNESS: Yes.
BY MR. OWENS:
**Q. And is that customary in your experience?**
MR. CARLTON: Object to form.
THE WITNESS: It is.