# EXHIBIT S131

*Excerpts of the Deposition of Max Holmes (Oct. 9, 2025)*

Videotaped Deposition of

**Max Holmes**

October 09, 2025

Mirae Asset Securities Co., LTD.

vs.

Ryze Renewables Holdings, LLC

aptus. COURT REPORTING

www.aptusCR.com | 866.999.8310

**Q. Okay. Any other red flags?**

A. I think those are the principal ones, subsequent.

**Q. And just so I understand, in connection with the mediation session which you said was a red flag, what about the mediation session specifically would constitute a red flag, in your opinion?**

A. Again, I'm not the trier of fact, and I don't know every detail about what happened there.

But there are certainly accounts in the record that it was threatening, including putting Ryze -- causing Ryze to file bankruptcy, that I would view as a red flag in this type of circumstance.

**Q. I'm trying to understand. How did the mediation session, as you understand it, cause Ryze to file for bankruptcy?**

A. No, the threat of -- as I understand it, during the mediation session, Mirae -- or the representatives of Mirae expressed to Ryze that, if they didn't go forward with Ryze, that would ultimately result in Ryze filing for bankruptcy because they were tied up in

litigation.

And then the whole thing seemed bizarre to me. I've never seen a lender try and sue for a specific performance.

**Q. Fair to say --**

A. The red flags were quite evident, shall we say.

**Q. At this point in time, the conduct of the individuals representing -- purportedly representing Mirae at that mediation was highly unprofessional?**

A. I think that's -- based on the record I've seen -- I wasn't there -- I think that's a good characterization.

**Q. And that -- if I understand you correctly, the high degree of unprofessionalism exhibited by lawyers and Mr. Han purporting to represent Mirae would constitute a red flag to Ryze?**

A. Absolutely.

ATTY WEITZMAN: Can we mark this as Holmes Exhibit 3.

\- - -

(Whereupon, Exhibit 3 was marked for identification.)

**Exhibit 1. Let me ask you, if you need to refresh your recollection with something in your report that you just say so. If you're not able to answer the question without reference to your report, let me know.**

**So are you able to tell me from your own memory whether you recall who Ryze received the letter of notice from?**

A. I was just looking to see what the precise dates were.

**Q. Okay. So I'm not asking for the dates. I'm asking who they received it from.**

A. My memory -- and I could be wrong -- is that the letter of notice, which is clearly an important document in this case in my opinion, went through a circuitous chain of emails, including through the hands of some lawyers to get to Ryze.

I remember there being more than one email transmitting the document. I don't remember precisely who was on every email, and I don't know if I have all the emails. But you're free to refresh my recollection.

**Q. Do you know who ultimately transmitted the letter of notice to Ryze?**

A. As I sit here without being refreshed, I don't remember.

**Q. Is there anything in your report that would refresh your recollection on that?**

A. I'm not sure.

**Q. Fair to say that Ryze didn't seek the letter of notice or confirmation of Mr. Lee's authority in connection with the signing of the CLA?**

**Do you recall that? Yes or no.**

A. Not to my knowledge.

**Q. And the first time that Ryze sought confirmation of Mr. Lee's authority was about 12 months later, after the CLA was first negotiated, right?**

A. I don't know whether the period immediately before the letter of notice was the first time or not. I know that was the first specific successful time.

**Q. Okay. Are you aware that the chop -- the Mirae chop that was used to confirm Lee's authorization was provided by Snell to Ryze? Does that sound familiar?**

A. When you say the chop itself was provided, I just testified a couple of minutes

ago that it went through -- that the PDF document went through a chain of lawyers. Snell could easily have been one of those lawyers. Again, you can refresh my recollection. That's different from them creating the chop, I think.

**Q. I wasn't suggesting that. I'm so sorry.**

**I was just saying that it was -- not that it was created but it was provided to Ryze by Snell, by the Snell lawyers.**

A. I would describe it as -- my memory is that Snell was in the chain of custody of the PDF containing the letter of notice itself and the certificate of authenticity attached thereto.

**Q. Are you aware, sir, that, when Ryze received the letter of notice, they had serious doubts about the voracity and the authenticity of the document?**

A. I don't know that one way or the another. You can show me the document.

\- - -

(Whereupon, Exhibit 14 was marked for identification.)