# EXHIBIT S132

*Excerpts of the Deposition of Albert Kovacs*
*(Oct. 6, 2025)*



NAEGELI
DEPOSITION & TRIAL
(800) 528 - 3335
NAEGELIUSA.COM

Nationwide
COURT REPORTING
LEGAL VIDEOGRAPHY
REMOTE DEPOSITIONS
TRIAL PRESENTATION
LEGAL TRANSCRIPTION
COPYING AND SCANNING
LANGUAGE INTERPRETERS

Powerful
LITIGATION SUPPORT

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MIRAE ASSET SECURITIES CO., LTD.,
A Republic of Korea company,

Plaintiff,

v. CASE NO. 2:23-cv-01492-APG-NJK

RYZE RENEWABLES HOLDINGS, LLC, RYZE RENEWABLES NEVADA, LLC, a Nevada limited liability company,

Defendants.

---

RYZE RENEWABLES HOLDINGS, LLC, RYZE RENEWABLES NEVADA, LLC, a Nevada limited liability company,

Counterclaimants,

v.

MIRAE ASSET SECURITIES CO., LTD.,
A Republic of Korea company,

Counterdefendant.

---

REMOTE VIDEOTAPED DEPOSITION OF
ALBERT Z. KOVACS
TAKEN ON
MONDAY, OCTOBER 6, 2025
9:04 A.M.
LAS VEGAS, NEVADA

NAEGELI
DEPOSITION & TRIAL
(800) 528-3335
NAEGELIUSA.COM

circumstances of the -- of the -- the contact I had with Mr. Prince and his colleagues, the referral from a former colleague of mine, the circumstances of that didn't give me any reason to inquire further into that -- into that -- that level of -- of detail.

BY MR. MELIN:

**Q. You've -- you know, not to belabor the point, but you've never received a document from Mirae Asset authorizing you to serve as an expert witness on their behalf, true?**

MR. PRINCE: Objection to form. Scope.

THE DEPONENT: That's correct.

BY MR. MELIN:

**Q. Have you ever spoken to anyone that you understand to be an employee of Mirae Asset Securities Company Limited?**

A. No.

MR. PRINCE: Same objections.

BY MR. MELIN:

**Q. I'm sorry. What was that?**

A. No.

**Q. In -- in preparing your report for this case, did you request that certain documents be provided to you?**

to be as to the -- the hierarchy within the -- within the bank. But that's not -- his conclusion in that regard and the contents of his report do not form the -- the basis for my report or its conclusions.

BY MR. MELIN:

**Q. Okay. And have you ever spoken with Professor Chung?**

A. I believe there was one conference call that we did with -- with Counsel. I believe it was right before the -- the submission of the reports, so my -- my report had been finalized. And I think it was just a -- I -- I viewed it as kind of a -- a gut check to see if he had any questions of me and vice versa.

And -- and that was really the -- the extent of it. I honestly have not even done a close-read of his report.

**Q. Okay. There was also an expert -- I understand you're not a -- not a expert in economics, but did you ever read the other expert report here of Dr. Lesser?**

A. No.

**Q. Okay. Do you believe that Professor Chung's report may have been useful for you to**

**review in preparing your own report?**

MR. PRINCE: Objection. Form.

THE DEPONENT: I don't think so, given the limited nature of what I was being asked to opine as to.

BY MR. MELIN:

**Q. Okay. I think I've kind of beaten around the bush a little bit, but was there one specific thing that you were being asked to opine on?**

MR. PRINCE: Objection. Form.

THE DEPONENT: Well, again, it's -- it's what I stated previously, is to opine as to the -- the customary dynamic and conduct between borrower and lender side parties in a -- in a financing transactions -- financing transaction.

BY MR. MELIN:

**Q. So I believe you testified earlier that you've done a handful, I think may have been the word you used -- a handful or a few cross-border transactions, including one that may have been in, like, Hong Kong, for example. I just wanted to ask, in any of these prior cross-border transactions, did you ever have a language -- I might say impediment or a language barrier where one of the counterparties didn't speak English?**

A. Yes.

**Q. I kind of asked you at the -- the inception of this -- I understand that your -- your opinion was essentially supposed to just discuss apparent authority. Does this document change at all how you think about the authority that Mr. Lee had to act on behalf of Mirae Asset --**

MR. PRINCE: Objection. Misstates.

BY MR. MELIN:

**Q. -- if any?**

MR. PRINCE: Objection. Misstates. Foundation. Improper hypothetical. Calls for a conclusion.

THE DEPONENT: Just to clarify, again, the scope of my report is not whether or not somebody had apparent authority. That's the -- the crux of the case, and that's a legal conclusion. I -- I leave those to the -- the judge and the -- and the finder of fact. But this does speak to the actual substance of my report, which is what I would have expected a reasonable commercial borrower to do in the totality of the circumstances that -- that started in early 2020 and all the -- went all the way through the end of 2021.

This document doesn't change my opinion at

**any opinions which you believe you -- you would want to offer at the time of trial as reflected in your report, your rebuttal report, or just any opinions that you would want to offer at the time of trial generally that we haven't talked about so far today?**

A. No, none that I can think of.

**Q. Okay. Do you know anything about the terminations of -- or terminations or the end of employment of Kyunggap Kim, Sooji Hong, Huijin Yang, Hyun-Joo Park, essentially any of the actors who were involved in this -- in this case?**

MR. PRINCE: Objection. Vague and ambiguous.

Assumes facts. Lacks foundation.

THE DEPONENT: I don't -- I don't have knowledge of circumstances regarding any of those folks' employment status.

BY MR. MELIN:

**Q. And just -- I think I've beaten around the bush several times about this. You don't have any personal knowledge as to whether or not Mr. Lee had actual authority to act on behalf of Mirae; is that --**

MR. PRINCE: Objection.

BY MR. MELIN:

**Q. Is that fair?**

MR. PRINCE: Sorry. Objection. Scope and form.

THE DEPONENT: Direct personal knowledge, no. I was -- I was not involved in the case, and I'm not a fact witness.

BY MR. MELIN:

**Q. In early November of 2023, there was a number of articles that were released in the -- the Korean-language press alleging that Mirae Asset had -- had fired an ex-asset manager for allegedly forging loan documents. Are you generally familiar with any of these news reports?**

A. No.

MR. PRINCE: Objection. Form.

THE DEPONENT: I have no familiarity with those reports.

BY MR. MELIN:

**Q. We talked a lot about the various documents that have been signed by Park, Cho, Hyun Man Choi, Lee.**
**As we sit here today, do you have any reason to believe that any of these documents are forgeries?**

MR. PRINCE: Objection. Form and foundation.