DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

JOHN M. EDGAR
*(Admitted Pro Hac Vice)*
JOHN F. EDGAR
*(Admitted Pro Hac Vice)*
MICHAEL R. OWENS
*(Admitted Pro Hac Vice)*
ALEXANDER C. MELIN
*(Admitted Pro Hac Vice)*
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Suite 440
Kansas City, Missouri 64108
Telephone: 816.531.0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

JAMES C. SHAH
(*Admitted Pro Hac Vice*)
BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
**MILLER SHAH LLP**
jcshah@millershah.com
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

*Attorneys for Defendants/Counter-Claimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Mirae Asset Securities Co., Ltd., a Republic of Korea company,

Plaintiff,

v.

Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,

Defendants.

---

Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,

CASE NO. 2:23-cv-01492-APG-NJK

**RESPONSE TO MIRAE'S MOTION TO EXCLUDE TESTIMONY THAT KYUNG-HYUN LEE CLAIMED INVESTMENT COMMITTEE APPROVAL (ECF NO. 642)**

Judge: Andrew P. Gordon

Date Action Filed: September 22, 2023

Counterclaimants,

v.

Mirae Asset Securities Co., Ltd., a Republic of Korea company,

Counterdefendant.

BAILEY❖KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
702.562.8820

Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC (collectively, "Ryze") respectfully submit this Response to Plaintiff/Counter-Defendant Mirae Asset Securities Co., Ltd.'s ("Mirae") Motion to Exclude Testimony That Kyung-Hyun Lee Claimed Investment Committee Approval (ECF No. 642).

## INTRODUCTION

Incredibly, Mirae moves to exclude testimony that Kyung-Hyun Lee, its team leader on an unfunded $210 million loan to Ryze, told Ryze during a March 1, 2021 call that the Investment Committee had approved the loan. Although much of what Mr. Lee said on that call was translated by an interpreter, Sunghee Han, when Ryze asked whether approval had been obtained, Mr. Lee answered in English: "Yes, we did." ECF No. 341-7 at 5 (115:12-22); ECF No. 341-5 at 23 (173:1-11). Mirae mischaracterizes that testimony as a last-minute effort to "manufacture a disputed issue of fact for summary judgment." ECF No. 642 at 7. But Mirae took both depositions, its counsel asked the questions that elicited that testimony, and Ryze contemporaneously documented Mr. Lee's statement in an email to him the evening of the call. ECF No. 312 at 5 n.1; ECF No. 341-5 at 23 (173:1-5); ECF No. 341-7 at 5 (115:8-12). At 11:02 p.m., Ryze's Matthew Pearson wrote that Ryze would accept Mr. Lee's "verbal confirmation, as documented by this email." Ex. 1, Pearson Email to Lee (Mar. 1, 2021), at Appx 002. Ten days later—when the loan agreement required Mirae to fund following committee approval—Ryze again identified Mr. Lee in writing as the source, repeated that account in its 2023 arbitration demand and counterclaims, and verified it in 2024 interrogatory responses. ECF No. 367-4 at 5; ECF No. 3 at 13 ¶¶ 46-47; ECF No. 31 at 15 ¶¶ 43-44; ECF No. 75-7 at 50, 62. The account preceded the depositions by years, and Mirae's motion to keep that testimony from the jury fails for three reasons.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

*First*, Mr. Lee's statement is admissible for its truth as a party-opponent admission under Federal Rule of Evidence 801(d)(2)(D). Mirae disputes only whether Mr. Lee's statement about committee approval concerned a matter within the scope of his employment, ECF No. 642 at 11 & n.3, and both the parties' course of dealing and Mirae's filings show that it did. After the Convertible Loan Agreement ("CLA") was signed, Mirae sent Mr. Lee to the United States as the "Korean delegation" for the on-site due diligence its Offering Memorandum required, ECF No. 374-1 (sealed) at 12, 14; Ex. 2, Amended and Restated Offering Memorandum (July 29, 2020), at Appx 006; of the three to four dozen Mirae employees on the emails in Mirae's production with "Ryze" (or its Korean equivalent) in the subject line or an attachment name (a readily ascertainable set that no doubt understates the full extent of Mirae's communications about the Ryze deal), only Mr. Lee wrote to Ryze or its counsel, Declaration of Michael R. Owens ("Owens Decl.") ¶¶ 16-18 & n.1; and when Ryze pressed Mirae's Korean counsel to confirm the committee's approval, counsel deferred to Mirae and Mr. Lee answered, ECF No. 367-4 at 2-4; *see* ECF No. 367-2 ¶¶ 4-6. Mirae's First Amended Complaint, its former division head's declarations, and five of its interrogatory responses explain that Mr. Lee's duties included bringing deals to more senior professionals "to obtain the requisite approvals." ECF No. 21 ¶ 27; ECF No. 4-1 ¶ 7; ECF No. 334 ¶ 5; ECF No. 94-3 at 17-18, 28, 39, 42-43, 46. Far from identifying any other person, title, or department charged with telling Ryze where approval stood, Mirae and its Assessment Team declarant claim they gave their negative evaluation to Mr. Lee and "presumed" he would act accordingly. ECF No. 21 ¶¶ 32-33; ECF No. 4-1 ¶ 12; ECF No. 4-2 ¶¶ 9-10; ECF No. 94-3 at 25-29. Mr. Lee did not need a seat on the Investment Committee to report to the borrower on an approval he was assigned to obtain, and Mirae's denial that the committee approved the loan goes to whether his statement was true, not whether it is admissible.

*Second*, neither Mr. Lee's limited English nor Mr. Han's role as an interpreter bars the witnesses from testifying to what they heard. The two witnesses who heard Mr. Lee answer "Yes, we did," including Ryze's Rule 30(b)(6) designee testifying on topics Mirae noticed, explained that he understood more English than he spoke and could answer a yes-or-no question in English,

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

and two other witnesses whom Mirae's counsel examined described his limited understanding of English and reluctance to speak it. Having built that record across discovery, Mirae cannot keep it from the jury simply because the answers cut against its position, especially when Mirae employed Mr. Lee for fifteen years, had named no current employee individually in its disclosures when general fact discovery closed, and its motion cites no testimony from a current or former Mirae employee that he could not answer that question in English. ECF No. 222 at 3; ECF No. 373-4 at 4-5, 13-14; ECF No. 334 ¶ 3; ECF No. 335 ¶ 3; ECF No. 373-9 at 46; ECF No. 642 at 6-7 & n.1, 9, 14. Nor can Mirae bar that testimony by invoking paragraph 23 of Ryze's counterclaim, which alleged that Mr. Lee "does not speak English": Ryze's simultaneous answer admitted only that Mr. Han "often" translated for Mr. Lee, and its later Rule 36 explanation confirmed that Mr. Lee's English was limited, not nonexistent. And because the witnesses heard Mr. Lee confirm approval in English, their testimony does not depend on any translation by Mr. Han.

*Third*, Rule 403 supplies no basis for exclusion. Mirae objects that jurors will use Mr. Lee's statement as substantive evidence that the Investment Committee approved the loan, ECF No. 642 at 13, but Rule 801(d)(2)(D) admits the statement for that purpose. Even apart from its truth, Mr. Lee's representation of approval is an operative contractual event under Ryze's claim, which the Court has described as one in which "Mirae's obligation was triggered when it represented that it had obtained committee approval." ECF No. 251 at 8.

The Court should deny the motion, hold the testimony admissible against Mirae under Rule 801(d)(2)(D), and hold that paragraph 23 does not bar it.

## BACKGROUND

Mr. Lee, whom Mirae now calls "a mid-level Mirae Asset employee" (ECF No. 642 at 6), had worked at Mirae since 2008 and led the $210 million convertible-loan transaction for Mirae in its dealings with Ryze from the spring of 2020 through the fall of 2021. ECF No. 373-9 at 46; ECF No. 21 ¶¶ 3-4; ECF No. 4-1 ¶ 12; ECF No. 22-2 at 10. Under the January 2021 CLA, which Mr. Lee signed and which named his email as the Lenders' notice address, Mirae agreed to fund

"no later than ten (10) days . . . following the date of the Final Mirae Committee Approval." ECF No. 22-2 at 44 (§ 4.02), 69 (§ 10.01(b)), 75.

Following execution of the CLA and Ryze's completion of the required pre-funding conditions precedent, the parties held a call on March 1, 2021, during which the committee-approval condition was discussed in Korean before Ryze asked, "Did we get approval?" and Mr. Lee answered in English, "Yes, we did." ECF No. 75-7 at 5; ECF No. 341-5 at 22-23 (172:20-173:11); ECF No. 341-7 at 5 (115:12-22). Mirae's counsel elicited both witnesses' accounts of that exchange—which Mirae calls a departure from Mr. Lee's "routine practice of speaking Korean"—in October 2025 depositions. ECF No. 642 at 7; ECF No. 312 at 5 n.1.

Mirae also tells the Court that before those depositions "no Ryze witness had been able to confirm whether Mr. Lee ever stated that Investment Committee approval had been granted." ECF No. 642 at 7. In fact, Mr. Pearson's 11:02 p.m. email to Mr. Lee the night of the call accepted his verbal confirmation, Ex. 1 at Appx 002; on March 11, the tenth day, Ryze's Chris Dancy wrote to Mr. Lee and Mirae's Korean counsel at Lee & Ko that "[i]t has been 10 days since you informed us on March 1st, 2021 that the Final Mirae Investment Committee Approval had been received," ECF No. 367-4 at 5; and the next day Ryze's general counsel, Lisa Fuller, wrote to Lee & Ko that on the March 1 call "Ryze was very clearly told that the Final Mirae Committee Approval had been given," ECF No. 367-4 at 4; ECF No. 4-5 at 34-35. Ryze then pleaded that same account in its 2023 arbitration demand and counterclaims, ECF No. 3 at 13 ¶¶ 46-47; ECF No. 31 at 15 ¶¶ 43-44, and reiterated in 2024 discovery responses and testimony that "Director Lee advised Ryze that Mirae had approved funding for the CLA" and that approval "was instead conveyed by telephone call and confirmed by Ryze in a follow-up email that was not repudiated by Mirae." ECF No. 75-7 at 50, 62; ECF No. 338-2 at 12, 41 (quoted in part at ECF No. 642 at 6, 12); *see also* ECF No. 341-1 at 19 (211:10-19) (Ms. Fuller testifying in December 2024 that Mr. Lee conveyed orally that "investment approval had been obtained," cited at ECF No. 642 at 7 n.2).

Nor did Mr. Han's March 12, 2021 email to Ryze "affirm[ ] in writing to Ryze that no final Investment Committee approval had occurred," as Mirae claims. ECF No. 642 at 7. Rather, that

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

email states that the March 1 call "conversed about the committee approval not being a hindrance at the time, and had already been commenced," and while it mentions "certain issues to be resolved internally for the committee approval, apart from the [conditions precedent]," it never denies that Mr. Lee confirmed approval on March 1. ECF No. 367-4 at 4-5 (also filed at ECF No. 336-9 at 2-3).

## ARGUMENT

Mr. Lee's statement about committee approval is admissible under Rule 801(d)(2)(D) because obtaining and reporting on that approval related to a matter within the scope of his employment: Mirae's descriptions of his duties, its outside counsel's treatment of him as deal lead, the testimony of both party and non-party witnesses, and nearly a year of dealing in full view of his colleagues all show that he spoke for Mirae on the transaction. Mirae's remaining challenges to the witnesses' accounts and to whether the committee approved the loan are for the jury, because evidence may be excluded before trial only if it is inadmissible on all potential grounds, and a motion in limine "should not be used to resolve factual disputes or to weigh evidence." *Golia-Huffman v. Smith's Food & Drug Ctrs., Inc.*, No. 2:21-cv-01260-APG-EJY, 2024 WL 3571094, at *1 (D. Nev. July 29, 2024) (quoting *United States v. Whittemore*, 944 F. Supp. 2d 1003, 1006 (D. Nev. 2013)).

### I. RULE 801(D)(2)(D) ADMITS MR. LEE'S STATEMENT THAT THE COMMITTEE APPROVED THE LOAN BECAUSE OBTAINING AND REPORTING ON THAT APPROVAL RELATED TO HIS JOB DUTIES FOR MIRAE.

Mirae presents the right question under Rule 801(d)(2)(D) and then answers a different question entirely. It frames the question as whether "determining, obtaining, monitoring, or communicating Investment Committee approval was a matter within Lee's employment responsibilities." ECF No. 642 at 11. Yet to support its assertion that "none of those functions fell within his responsibilities," Mirae offers evidence addressing only who held authority to approve investments or sign loan agreements. *Id.* at 11-12 (citing ECF No. 333 ¶ 9; ECF No. 336-5 (actual

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

exhibit filed under seal at ECF No. 344)); *see* ECF No. 333 ¶¶ 5, 9. That conflates final decision-making authority with scope of employment: under Rule 801(d)(2)(D), Mr. Lee did not need a seat on the committee to speak to the borrower about the transaction he managed for Mirae for over a year, a matter squarely within the scope of his employment.

### A. Direct and Circumstantial Evidence Establishes that Obtaining and Reporting on Committee Approval Related to Mr. Lee's Job Duties

Rule 801(d)(2)(D) provides that a statement is not hearsay if it is offered against an opposing party and was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D).[1] Such statements "need only *concern* matters within the scope of the agency; they need not be *made* within the scope of the agency." *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 999 (9th Cir. 2019) (quoting *In re Sunset Bay Assocs.*, 944 F.2d 1503, 1519 (9th Cir. 1991)); *accord Hoptowit v. Ray*, 682 F.2d 1237, 1262 (9th Cir. 1982) ("[I]t need only be shown that the statement be related to a matter within the scope of the agency."), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). A matter therefore "may fall within the scope of a declarant's employment even though the declarant did not have final decision-making authority on that matter," so long as the declarant "was involved in a process leading up to a challenged decision." *Weil*, 922 F.3d at 999 (reversing an in limine order that excluded a former vice president's statement about a promotion she did not decide, because she "was significantly involved in the process leading to the decision," *id.* at 998, 1001).

Under that same principle, an employee or agent who acts as the company's liaison to outside parties speaks within the scope of the relationship when reporting on internal decisions he lacked authority to make himself. In *Petroleum Products*, the Ninth Circuit held that a Gulf Oil marketing director's "statements that Gulf would support retail price restorations" were admissible

[1] The rule's other elements are undisputed: Ryze offers the statement against Mirae, and Mr. Lee made it on March 1, 2021, during his employment with Mirae, which ran "from September 2008 until September 2023." ECF No. 373-9 at 46; *see* ECF No. 642 at 11 n.3.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

against Gulf even though he lacked "authority, on his own, to raise Gulf's prices whenever he wanted to do so," because he acted as "a liaison between top Gulf management and the field with respect to 'price changes approved by top management [or] initiated in the field,'" and his statements showed "an ability to communicate information on behalf of Gulf." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 458 (9th Cir. 1990). Likewise, in *HS Properties, LLC v. Steadfast Insurance Co.*, No. 2:23-cv-09585-JAK (AYPx), 2026 WL 1046459, at *9 (C.D. Cal. Feb. 9, 2026), the court admitted an independent adjuster's letters and emails because the insurers had delegated to him the responsibility to "communicate[ ] directly with the insured" and to "provide[ ] updates to the insurers," making his statements "sufficiently related to matters within the scope of his agency, even if he was not specifically authorized to opine on coverage or Plaintiffs' compliance with the Policy." *See id.* (declarant "need not have been authorized to make the specific statements at issue" (quoting *AT&T Corp. v. Dataway Inc.*, 577 F. Supp. 2d 1099, 1105 (N.D. Cal. 2008))); *accord Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 619-20 (4th Cir. 1991) (cited at ECF No. 642 at 12 n.4) (contrasting an employee whose statements came in because she had "the responsibility and authority to relay messages" with a declarant whose "authority did not extend to relaying messages to contractors").

Here, the parties' course of dealing shows that shepherding the Ryze loan toward committee approval and acting as Mirae's liaison to Ryze was Mr. Lee's job. In April 2020, Mr. Lee signed the parties' Non-Disclosure Agreement, and his division head, former Mirae employee Hyun-Joo Park, signed the initial Offering Memorandum, an instrument Mirae's preliminary-injunction brief held out as executed with "authorization by the Legal Department." Ex. 3, Non-Disclosure Non-Competition Agreement (Apr. 29, 2020), at Appx 011-012; ECF No. 4 at 23; *see* ECF No. 4-4 at 7. For the next ten months, Mr. Lee led the transaction with Ryze through every milestone, and no one at Mirae objected. Through Mirae's electronic approval system, Hyun-Joo Park approved Mr. Lee's submission of the Amended Offering Memorandum, and Mr. Lee's submissions for the Engagement Agreement and a letter of intent cleared Mirae's legal,

investment-review, risk, and anti-money-laundering approvers before reaching Hyun-Joo Park's approval queue. ECF No. 374-1 (sealed) at 8, 59-60; *see id.* at 2-3. That CEO-sealed Amended Offering Memorandum conditioned funding on "(iv) Mirae Investment Committee Approval" and "(v) Scheduling and completion (at earliest date available) of in-person Investor site visits by Mirae (Korean delegation)," and when it came time to satisfy the site-visit condition, Mr. Lee was the "Korean delegation": Hyun-Joo Park and sector head Sungbum Kang approved his U.S. business trips as Mirae's sole traveler to meet Ryze and conduct on-site due diligence. Ex. 2 at Appx 006, 008; ECF No. 374-1 (sealed) at 12, 14, 55; ECF No. 373-9 at 38-39; Ex. 4, Pearson Dep., Vol. I, at Appx 021-022 (209:21-210:13). Mr. Lee, likewise, signed the October 2020 engagement letter retaining Kutak Rock LLP as Mirae's U.S. counsel, signed the January 2021 CLA and November 2021 Second Loan Agreement, and had his email named in the CLA as the Lenders' notice address "at kyunghyun.lee@miraeasset.com." ECF No. 21 ¶¶ 3-4; Kutak Rock Engagement Letter (Oct. 1, 2020), ECF No. 81-3 at 54, 56; ECF No. 629-6 at 4, 6 (17:13-24, 20:24-25); ECF No. 22-2 at 69 (§ 10.01(b)), 75.

Mr. Lee performed that deal-lead role in full view of three to four dozen Mirae colleagues and Mirae's outside counsel. He was on virtually every email Mirae exchanged with Ryze, its counsel, or its consultants, often with other Mirae personnel copied, and every one Mirae sent came from him. Owens Decl. ¶¶ 16-18 & n.1. Mirae assigned its outside counsel, Lee & Ko and Kutak Rock, "to work on the transaction under Lee's direction," and through May 2021 those firms appear on hundreds of Ryze emails, nearly all with Mr. Lee. ECF No. 367-2 ¶ 5; Owens Decl. ¶ 18. Kutak Rock's emails went to "pretty much the entire Mirae team," including "Mirae's third-party advisors," and no one at Mirae or its law firms ever questioned his role to Ryze. ECF No. 367-2 ¶ 6; ECF No. 372-9 at 11, 14-15 (21:14-18, 92:24-25, 93:16-21). And for a June 2021 principals-only call with Ryze, Mr. Lee assigned two Mirae staff members to "join the call for translation." Ex. 5, Lee-Hall Emails (June 6-7, 2021), at Appx 026.

Communicating with Ryze about the Investment Committee was part of that role. Before March 2021, Mr. Lee repeatedly updated Ryze in writing on the status of "my investment



BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

committee," with three Mirae team members copied, Ex. 6, Lee Due-Diligence Email (Sept. 15, 2020), at Appx 028, and "Our investment committee," Ex. 7, Pearson-Lee Transaction Emails (Jan. 4, 2021), at Appx 030-031. Whenever Ms. Fuller asked Lee & Ko or Kutak Rock whether she could speak with someone more senior at Mirae, both law firms directed her back to Mr. Lee. ECF No. 367-2 ¶¶ 4-6; Ex. 8, Fuller Dep., at Appx 035-037 (222:20-224:4). Thus, when Ryze and its counsel pressed Lee & Ko in March 2021 to confirm the March 1 committee approval, Lee & Ko wrote that it could not confirm the status of Mirae's internal approval process "without having any instruction from Mirae" and copied Mr. Lee; three days later, Mr. Lee answered counsel for both sides on Mirae's behalf, "We are in receipt of your letter and offer the following clarification," and described where the committee process stood. ECF No. 367-4 at 2-4.

BAILEY❖KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
702.562.8820

When general fact discovery closed, Mirae's disclosures named no current employee individually as a witness to dispute that course of dealing, and its filings confirm that obtaining and reporting on committee approval fell within Mr. Lee's job duties. ECF No. 373-4 at 4-5, 13-14; ECF No. 334 ¶ 3; ECF No. 335 ¶ 3. Even the sparse declarations of two former employees Mirae disclosed, Hyun-Joo Park and former Assessment Team leader Huijun Yang, tie Mr. Lee's job duties to the subject of his March 1 statement. In its First Amended Complaint, Mirae pleaded that Mr. Lee's duties included the exact function its motion now denies:

> Lee's duties included researching potential investment opportunities, having preliminary discussions to explore the terms or structure of those opportunities and how they might generate revenue for the firm, and, significantly, bringing those deals to more senior professionals for review and to obtain the requisite approvals in accordance with Mirae Asset's internal policies and procedures.

ECF No. 21 ¶ 27. Hyun-Joo Park set forth that same description of Mr. Lee's duties in his 2023 declaration, reaffirmed in his November 2025 declaration that his statements "remain true today," and Mirae repeated that description nearly word for word in five interrogatory responses. ECF No. 4-1 ¶ 7; ECF No. 334 ¶ 5; ECF No. 94-3 at 17-18, 28, 39, 42-43, 46. Mirae's in-house counsel gave the Seoul Jungnang Police a broader description in November 2023, stating that Mr. Lee "oversaw team members on various investment matters, sourced investment-contract deals, and

actually carried out investments as a team leader." ECF No. 581-1 (sealed) at 5; *see* ECF No. 587 at 3. Both former-employee declarants likewise describe Mr. Lee as the link between Mirae's internal reviewers and the deal: Mr. Lee supplied the materials the Assessment Team evaluated, received its evaluation, reported the status of that review to Hyun-Joo Park, and was the only person at Mirae whom Hyun-Joo Park knew of "ever communicating with Ryze." ECF No. 4-2 ¶¶ 6, 9-10; ECF No. 4-1 ¶ 12; *see* ECF No. 331 at 11; ECF No. 335 ¶¶ 4-5.

Mirae's account leaves no one else at the company to have told Ryze where approval stood: under Mirae's version of events, the Assessment Team's negative evaluation went to Mr. Lee, who the declarant believed would not disregard the decision and who Mirae "presumed . . . would act and was acting consistent with this instruction." ECF No. 4-2 ¶¶ 9-10; ECF No. 21 ¶¶ 32-33; ECF No. 4 at 14. Yet when asked in Interrogatory No. 10 what steps it took to notify third parties of any limits on Mr. Lee's actual authority to enter contracts, Mirae identified no outward act, ECF No. 94-3 at 25-29, and its Rule 26(a)(1) disclosures list Mr. Lee alone for "Lee's discussions with Ryze regarding the CLA, and the lack of approval for the syndicated loan transaction," ECF No. 201-23 at 4; ECF No. 373-4 at 4—naming no other person, title, or department charged with communicating approval determinations to Ryze.

Mirae's internal chart does not contradict those admitted job duties. Although the motion labels the chart "job descriptions" and concludes from it that Mr. Lee "had no involvement in Investment Committee approval," Mirae's declarant, Assessment Team leader Eun-mi Park, states that the chart documents "levels of authority," and as to Mr. Lee's position she addresses only his "authority to execute a loan financing agreement or loan transaction with Ryze." ECF No. 642 at 12 (emphasis omitted); ECF No. 333 ¶¶ 5, 9. Mirae's interrogatory responses keep that signing authority apart from his duties, which "instead" included obtaining "the requisite approvals." ECF No. 94-3 at 17-18. And although Mirae claims the chart limits Team Leaders to "predominantly day-to-day ministerial tasks" (ECF No. 642 at 6), the chart's 2021 page assigns Mr. Lee's Team Leader position "Sales Coordination & Sales: Securing domestic and foreign investors,



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

consultation and coordination with related departments, and sales tasks." ECF No. 344 (sealed) at 3.

Nor do the employment decisions Mirae cites establish that approval of this loan fell outside Mr. Lee's work. Each excluded a statement by an employee whom the record did not connect to the hiring or discharge decision the statement described. *E.g., Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986) (no evidence the declarants "were involved in Kennecott's discharge of Breneman"); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927-28 (6th Cir. 1999) (agreeing that a supervisor's statements fell outside his employment because he "was not involved in the actions that plaintiff claims led to her constructive discharge"). Both the parties' course of dealing and Mirae's filings supply that connection for Mr. Lee. And in *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1003-04 (9th Cir. 2002), which Mirae cites for the proponent's burden (ECF No. 642 at 11), the Ninth Circuit declined to reach a party-admission theory raised first on appeal because the proponent had offered only the declarant's title without "any description of [his] job responsibilities." Ryze offers what the proponent in *Pfingston* lacked: the parties' course of dealing and Mirae's description of Mr. Lee's duties.

**B. Mirae Cannot Exclude Mr. Lee's Statement Under Rule 801(d)(2)(D) by Disputing Whether the Committee Approved the Loan**

Mirae alternatively argues that Mr. Lee's statement must be excluded because the committee never approved the loan, so that there was "no Investment Committee decision in which Mr. Lee could have participated," and he "necessarily lacked personal knowledge." ECF No. 642 at 12. That argument puts the ultimate merits question before admissibility: it would require Ryze to prove that the committee approved the loan before Ryze could offer Mr. Lee's party admission as evidence that the committee did. Mirae's denial disputes the statement's truth; it does not change the subject of Mr. Lee's statement or its relationship to the work he performed for Mirae. And unlike the hearsay exceptions addressed in *United States v. Kootswatewa*, 893 F.3d 1127, 1132 (9th Cir. 2018) (cited at ECF No. 642 at 9), party-opponent admissions need no "guarantee of

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

trustworthiness" and are free of "the rule requiring firsthand knowledge." Fed. R. Evid. 801(d)(2) advisory committee's note to 1972 proposed rules.[2] Because a statement need only concern a matter within the declarant's employment, Mr. Lee's role in obtaining and reporting on committee approval made that subject part of his work whether or not the committee granted approval. *See Weil*, 922 F.3d at 999 (citing *Sunset Bay*, 944 F.2d at 1519). The Court decides only that job-scope foundation under Rule 104(a); the jury decides whether Mr. Lee's statement was true.

Even if the merits of that factual dispute had any bearing on admissibility, Mirae's assertion that "the undisputed record establishes" the deal never reached the committee (ECF No. 642 at 12) invites the Court to resolve a contested trial issue on a motion in limine. Mirae rests that assertion on Eun-mi Park's declaration and the Assessment Team's Issue Report, a document she helped prepare and has since conceded "does not explicitly note that the potential Ryze deal was rejected." ECF No. 642 at 6, 12 (citing ECF No. 333 ¶¶ 6-7; ECF No. 336-6 (actual exhibit filed under seal at ECF No. 345)); ECF No. 382 ¶ 5. Mr. Lee's May 25, 2021 withdrawal email points the other way: he wrote to Ryze that "we have restructured our deal with our investment committee and our co-investors, thus previous 210MM CLA won't be viable for us," and referred to "our experience with our last investment committee." Ex. 9, Lee Email to Ryze (May 25, 2021), at Appx 041-042. Whether the committee approved the loan is "a factual issue best left to the trier of fact and not suitable to resolution via a motion in limine." *Golia-Huffman*, 2024 WL 3571094, at *8 (denying a motion in limine despite contrary medical records).

---

[2] Courts in this Circuit apply that principle to employee admissions, which "are generally not subject to the personal-knowledge requirement." *HS Props.*, 2026 WL 1046459, at *7 n.6 ("The rule is that personal knowledge of the person making an admission is immaterial." (quoting *State Farm Mut. Auto. Ins. Co. v. Porter*, 186 F.2d 834, 842 (9th Cir. 1950))). Even if personal knowledge were required, that requirement would be satisfied here: Mr. Lee was the team leader responsible for bringing the loan to Mirae's reviewers "to obtain the requisite approvals," and Mirae's contrary inference rests on its disputed premise that the committee never approved the loan. ECF No. 21 ¶ 27.

## II. NEITHER MR. LEE'S LIMITED ENGLISH NOR MR. HAN'S ROLE AS AN INTERPRETER BARS TESTIMONY THAT MR. LEE CONFIRMED APPROVAL IN ENGLISH.

Mirae's objections that the witnesses' testimony is "self-serving" and that Mr. Lee "could not be deposed" go to weight, not admissibility. ECF No. 642 at 7-9. The declarant in *Weil*, L.H., was never deposed either, and the Ninth Circuit held that such objections are "more appropriately addressed in cross-examination" and "go directly to the weight of L.H.'s statement." 922 F.3d at 1001. Mirae's contention that a speaker of limited English would not have answered "Yes, we did" presents the same kind of credibility question for the jury. Nor do Mirae's two proposed legal bars, based on paragraph 23 of Ryze's counterclaim and on Mr. Han's interpreting during the call, warrant exclusion: paragraph 23 made no binding admission that Mr. Lee could speak no English, and Mr. Han's translation of other parts of the call does not turn Mr. Lee's English answer into double hearsay.

### A. The Witnesses' Testimony That Mr. Lee Answered "Yes, we did" Is Consistent With His Limited English and Raises a Credibility Question for the Jury

Mirae portrays the testimony as a claim that Mr. Lee "suddenly spoke clear English." ECF No. 642 at 9. In reality, Mirae made Mr. Lee's English and the March 1 call a central focus of discovery—noticing a Rule 30(b)(6) deposition of Ryze on Ryze's communications with Mirae's employees and officers and its contention that Mirae's Investment Committee approved the CLA, and examining witness after witness on the subject. Owens Decl. ¶ 12. As Ryze's Rule 30(b)(6) designee Mr. Pearson explained, although Mr. Lee's "conversational capabilities in English were limited" and Mr. Han translated "[m]any times," Mr. Lee spoke English "[a]t times" both in person and on phone calls, where "he was able to understand the question and responded in a yes or no fashion at times." ECF No. 341-6 at 13 (119:7-10); ECF No. 341-5 at 15 (149:14-18); Ex. 4 at Appx 015-018 (7:3-10:7) (Mirae's counsel agreeing that answers applied to both Ryze entities unless a question specified otherwise); Ex. 4 at Appx 019-020 (40:19-41:4). At the February 2021 site visit, for example, Mr. Lee "preferred not to speak in English," yet "[h]e said yes. He said no." Ex. 4 at Appx 022 (210:14-20). And when Mr. Pearson described Mr. Lee as "[s]peaking in clear



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

English" on March 1, he was referring to Mr. Lee's three-word answer ("Yes, we did") when asked, "Have we cleared investment committee approval?" ECF No. 341-5 at 23 (173:1-11). Michael Brown, who was also on the March 1 call, described the same pattern: although "most of what [Mr. Lee] was speaking was through the translator," Mr. Lee "was able to understand our primary question" and "could respond in rudimentary English" when he answered, "Yes, we did." ECF No. 341-7 at 5 (115:12-22). In person, Mr. Lee likewise spoke "[a] couple words" of English at Topgolf, where he "seemed to understand English way better than he could speak it," and "did attempt to speak some English" over sushi at Mr. Brown's house. Ex. 10, Michael Brown Dep., at Appx 045-047 (104:2-25, 105:7-11, 105:25-106:3).

Other witnesses whom Mirae's counsel examined across discovery described that same level of proficiency: Mr. Lee "had some cursory knowledge of English and could understand us somewhat when we would speak," even if "he didn't like speaking English on the phone," Ex. 11, Daniel Brown Dep., at Appx 051 (78:17-22); and as Mr. Lee explained to Snell & Wilmer partner Steven Graham through an interpreter, "I have a basic understanding of the language, but I'm not confident enough to respond myself. So on important matters like dealing with the lawyers, I always want to have a translator there to assist me," Ex. 12, Graham Dep., at Appx 056 (41:1-24). Those consistent accounts, all elicited by Mirae in discovery, describe what Mirae calls "a speaker with limited English," ECF No. 642 at 14, and Mirae cannot use a motion in limine to keep the jury from weighing the discovery record Mirae itself developed.

Although Mirae employed Mr. Lee for fifteen years, its disclosures at the close of general fact discovery named no current employee individually, and its motion cites no testimony from any current or former Mirae employee to support its leap from limited English to an inability to answer that question. *See* ECF No. 642 at 6-7 & n.1, 9, 14; ECF No. 373-4 at 4-5, 13-14; ECF No. 334 ¶ 3; ECF No. 335 ¶ 3; ECF No. 373-9 at 46. Its Rule 26 disclosures raise the subject "that Lee 'did not speak English'" only in the entry listing four Ryze witnesses. ECF No. 201-23 at 5-6; ECF No. 373-4 at 5-6. And the two witnesses whose general dealings with Mr. Lee Mirae invokes do not contradict the March 1 accounts: Ms. Fuller did not recall whether she was on the March 1 call

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

and noted that although Mr. Lee did not converse with her in English, when Ryze told a joke "he would laugh like he understood it," leaving her unsure whether "he really didn't speak English or he just didn't like to speak English because maybe his English wasn't very good," ECF No. 341-1 at 11-12, 20 (155:10-156:7, 212:8-9); and Jeffrey Hall's statement that he had "zero non-translated direct communications" with Mr. Lee by phone or in person (while exchanging emails in English) speaks only to his own interactions, ECF No. 341-3 at 7 (44:17-24). Neither witness addresses whether Mr. Lee answered the approval question in English on March 1, and any conflict between their general accounts and the specific testimony of Mr. Pearson and Michael Brown is a credibility question for the jury. *See Golia-Huffman*, 2024 WL 3571094, at *1.

**B. Paragraph 23 of Ryze's Counterclaim Does Not Bar Testimony That Mr. Lee Answered a Yes-or-No Question in English**

Mirae separately argues that paragraph 23 of Ryze's counterclaim made it a "conclusively established fact that Mr. Lee does not speak English," barring Ryze from introducing "evidence at trial to the contrary." ECF No. 642 at 10-11. That argument misreads "does not speak English" as an admission that Mr. Lee could not answer a yes-or-no question, and ignores both Ryze's simultaneous answer and its later Rule 36 explanation.

Read with the answer Ryze filed alongside it, paragraph 23 makes no such admission. A judicial admission is a "deliberate, clear, and unequivocal" statement, and a court in this District found an alleged admission "not deliberate" where the party's counterclaim, "filed simultaneously" with its answer, took the contrary position. *LiveLife, LLC v. Bay Point Cap. Partners, LP*, No. 2:21-cv-02106-ART, 2023 WL 3205215, at *14 (D. Nev. May 1, 2023) (quoting *Scarff v. Intuit, Inc.*, 318 F. App'x 483, 487 (9th Cir. 2008)), *aff'd on other grounds sub nom. In re Afflalo*, No. 23-15815, 2024 WL 1574360 (9th Cir. Apr. 11, 2024). In its simultaneous answer, Ryze denied that it had "conceded" elsewhere that Mr. Lee does not speak English, ECF No. 31 at 5 ¶ 25; *see* ECF No. 21 ¶ 25, and when Mirae alleged that Ryze had acknowledged that Mr. Lee did not speak English and communicated through Mr. Han, Ryze admitted only "that Han often

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

translated for Lee," ECF No. 31 at 5 ¶ 35; *see* ECF No. 21 ¶ 35. A pleader who meant that Mr. Lee could say nothing in English would not have limited Mr. Han's role to "often."

Read alone, "does not speak English" is broad, but pleadings "must be construed so as to do justice." Fed. R. Civ. P. 8(e). In ordinary usage, a person who "does not speak English" lacks conversational fluency in the language, and paragraph 23's next sentence states only that Mr. Lee's "communication with Ryze and other participants was translated" by Mr. Han—describing how the parties usually communicated, without the "all" that Mirae's motion adds. ECF No. 31 at 13 ¶ 23; *see* ECF No. 642 at 6, 10. A man of limited English who often needed an interpreter could still understand a direct question about the approval he had been working to obtain and answer it, "Yes, we did."

Even if paragraph 23 originally carried the absolute meaning Mirae assigns it, Mirae's insistence that Ryze "has never amended or withdrawn it" skips Ryze's 2024 explanation, which the motion quotes in a footnote. ECF No. 642 at 7 n.1, 10. An admission "effectively retracted by a subsequent explanatory statement no longer has any conclusive effect." *Terryberry v. Liberty Mut. Fire Ins. Co.*, 688 F. App'x 489, 490-91 (9th Cir. 2017) (citing *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th Cir. 1995)). Asked in 2024 to admit paragraph 23's allegation, Ryze separated what it had been told from what it had observed: it admitted only that it "was informed that Director Lee did not speak English, and that, based on Ryze's interactions with Director Lee, his ability to speak in English appeared limited," while denying that his communications "always were translated by Mr. Han." ECF No. 338-2 at 25. Rule 36(b) binds Ryze to that admission and to what it necessarily implies, and both describe limited English. *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1111-12 (9th Cir. 2006). Ryze's Rule 30(b)(6) designee gave the same explanation when examined on a similar allegation in the Snell & Wilmer complaint, describing it as "a generalization of the fact that he didn't speak very much English." ECF No. 341-5 at 23-24 (173:12-174:3).

Mirae's argument from *Patriot Rail* rests on a contradiction and detrimental reliance wholly absent here. There, a witness's trial testimony "directly contradicted" an unambiguous

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

pleaded fact and the witness's prior deposition, after the opposing party had built its trial strategy on that admission. *Patriot Rail Corp. v. Sierra R.R. Co.*, No. 2:09-cv-0009-TLN-AC, ECF No. 601 at 7-9 (E.D. Cal. Aug. 4, 2015); *see* ECF No. 642 at 10. Mirae never forwent discovery in reliance on paragraph 23: after the counterclaims were filed in December 2023, Mirae served requests for admission and interrogatories on Mr. Lee's English and the March 1 call, received Ryze's 2024 responses explaining that Mr. Lee's English "appeared limited" and that his communications were not always translated by Mr. Han, and then examined third-party and Ryze witnesses, including Ryze's Rule 30(b)(6) designee, on the exact question, eliciting the testimony it now seeks to exclude as some last-minute surprise. *See* ECF No. 338-2 at 12, 25, 41; ECF No. 75-7 at 50, 62; ECF No. 341-1 at 11-12 (155:10-156:7); ECF No. 341-3 at 7 (44:20-24); ECF No. 341-5 at 22-24 (172:20-174:3); ECF No. 341-7 at 5 (115:12-22).[3]

### C. Mr. Han's Participation on the Call Does Not Turn Mr. Lee's English Answer Into Double Hearsay

Mirae rests its double-hearsay objection on a translation the witnesses say did not occur: the objection arises only "if, as Ryze has long maintained, Han translated Mr. Lee's statement." ECF No. 642 at 9. Because Mr. Pearson and Michael Brown testified that they heard Mr. Lee confirm approval in English, their testimony does not depend on any translation of that answer. ECF No. 341-5 at 23 (173:1-11); ECF No. 341-7 at 5 (115:12-22). In *United States v. Lucas-Hernandez*, 102 F.4th 1039, 1041-42 (9th Cir. 2024), by contrast, the testifying witness was the translator: a Border Patrol agent who was not fluent in Spanish questioned the defendant in Spanish and then "described, in English," the answers at trial. *See* ECF No. 642 at 14. The Ninth Circuit applied *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991), to "the statements of a party

[3] Nor do Ryze's filings in its state-court case against the law firm Snell & Wilmer establish the absolute inability Mirae asserts. The sentence Mirae quotes from Ryze's brief in that case continues past Mirae's stopping point at "Han": "supposedly because Lee spoke little to no English." ECF No. 57-2 at 5; *see* ECF No. 642 at 7. Statements "made in a separate case from the present action" are not conclusive judicial admissions here. *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1213 (9th Cir. 2016).

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

opponent that are translated by the testifying witness" and held any error harmless. *Lucas-Hernandez*, 102 F.4th at 1044.

Even if Mr. Han had translated Mr. Lee's statement that the committee approved the loan, his connection to Ryze would not create an independent hearsay barrier. Under *Nazemian*, which party supplied the interpreter is only one of four factors bearing on "whether the translated statements fairly should be considered the statements of the speaker." 948 F.2d at 527. Mr. Han's financial incentive pointed toward an accurate translation: he "was going to get paid a commission if, and only if, it funded," and a false report of approval would have surfaced when funding came due ten days later. ECF No. 341-7 at 6 (116:24-25); *see United States v. Garcia*, 16 F.3d 341, 343 (9th Cir. 1994) (intermediary paid on completion "would not have misrepresented the buyer's or sellers' conditions for the exchange because any falsehood would be readily apparent"). His interpreting on the "scheduled phone calls that we had with Mr. Lee on a fairly routine basis" likewise supports his competence. ECF No. 341-5 at 15, 24 (149:14-18, 174:8-12); *see Nazemian*, 948 F.2d at 528 (interpreter "continued in that role over a prolonged period and multiple meetings").

On the final *Nazemian* factor (whether subsequent actions were consistent with the statement), Mirae points only to the absence of written confirmation from Mirae. 948 F.2d at 527; ECF No. 642 at 10. But Ryze's email the night of the call accepted Mr. Lee's "verbal confirmation" and stated that the CLA "does not, in fact, require written confirmation of such approval." Ex. 1 at Appx 002. Ryze's notice ten days later that it had completed the conditions and was "ready for Funding" followed that same understanding. ECF No. 367-4 at 5.

## III. RULE 403 DOES NOT JUSTIFY EXCLUDING A PARTY ADMISSION THAT IS BOTH ADMISSIBLE FOR ITS TRUTH AND CENTRAL TO RYZE'S CONTRACT CLAIM.

Recasting the hearsay objection as jury confusion provides no ground for exclusion under Rule 403. Mirae asserts that jurors will use Mr. Lee's statement "for the very purpose for which the hearsay rules prohibit its admission: as substantive evidence that Mirae Asset's Investment

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Committee actually approved the transaction." ECF No. 642 at 13. Because Rule 801(d)(2)(D) permits that substantive use, jurors need not "compartmentalize the statement," *id.*, and no limiting instruction is required. Nor does Mirae's renewed reliance on Mr. Lee's limited English diminish the statement's probative value under Rule 403, *see id.* at 14: that argument again asks the Court to disbelieve Ryze's witnesses, whereas a court weighing probative value under Rule 403 assesses the evidence "if the evidence is believed." *United States v. Evans*, 728 F.3d 953, 963 (9th Cir. 2013) (emphasis omitted) (quoting *Bowden v. McKenna*, 600 F.2d 282, 284-85 (1st Cir. 1979)). In *United States v. Orellana-Blanco*, 294 F.3d 1143, 1148-49 (9th Cir. 2002) (cited at ECF No. 642 at 14), by contrast, the court held that a written interview form prepared by a government officer could not come in as the defendant's admission because "a considerable language barrier" and an absent interpreter left no proof that the form was "a verbatim record of what Orellana-Blanco said"; here, no third party wrote down or translated Mr. Lee's words—the witnesses heard him say "Yes, we did." Rule 403 also weighs the "need for the evidence," Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules, and that need is acute here because Mirae represents that Mr. Lee "will not be available to testify as a witness at trial." ECF No. 642 at 8.

Mirae also reduces the statement's significance apart from its truth to its "effect on the listener" and Ryze's "state of mind," omitting the contractual significance of the representation. ECF No. 642 at 13. At the pleadings stage, the Court described Ryze's claim as one in which "Mirae's obligation was triggered when it represented that it had obtained committee approval." ECF No. 251 at 8. On that theory, whether Mr. Lee made the representation matters even if the committee did not approve the loan. *See* Fed. R. Evid. 801(c) advisory committee's note to 1972 proposed rules ("verbal acts" include a statement that "affects the legal rights of the parties"). The decisions Mirae cites involving statements whose nonhearsay purpose had little or no bearing on any issue at trial do not answer a claim in which making the representation is an event with legal consequences. *See United States v. Sanchez-Lopez*, 879 F.2d 541, 553-54 (9th Cir. 1989) (statement had "negligible probative value for the proof of any fact at issue at trial, unless it was

offered for the truth of the matter asserted"); *United States v. Dean*, 980 F.2d 1286, 1288 (9th Cir. 1992).

* * *

## CONCLUSION

Ryze respectfully requests that the Court deny Mirae's motion and deem admissible against Mirae under Federal Rule of Evidence 801(d)(2)(D) the testimony that Mr. Lee told Ryze that Mirae's Investment Committee had approved the transaction.

Dated: October 21, 2026.

DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

*Attorneys for Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*

Respectfully submitted,

*/s/ Michael R. Owens*
John M. Edgar (PHV)
John F. Edgar (PHV)
Michael R. Owens (PHV)
Alexander C. Melin (PHV)
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Ste. 440
Kansas City, Missouri 64108
Telephone: (816) 531-0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

JAMES C. SHAH
*(Admitted Pro Hac Vice)*
BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
**MILLER SHAH LLP**
jcshah@millershah.com
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

*Counsel for Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820