DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

JOHN M. EDGAR
*(Admitted Pro Hac Vice)*
JOHN F. EDGAR
*(Admitted Pro Hac Vice)*
MICHAEL R. OWENS
*(Admitted Pro Hac Vice)*
ALEXANDER C. MELIN
*(Admitted Pro Hac Vice)*
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Suite 440
Kansas City, Missouri 64108
Telephone: 816.531.0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

JAMES C. SHAH
*(Admitted Pro Hac Vice)*
BRUCE D. PARKE
*(Admitted Pro Hac Vice)*
ANNA K. D'AGOSTINO
*(Admitted Pro Hac Vice)*
CHRISTOPHER A. MILLER
*(Admitted Pro Hac Vice)*
**MILLER SHAH LLP**
jcshah@millershah.com
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

*Attorneys for Defendants/Counter-Claimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Mirae Asset Securities Co., Ltd., a Republic of Korea company,<br><br>Plaintiff,<br><br>v.<br><br>Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company,<br><br>Defendants.<br>______<br>Ryze Renewables Holdings, LLC, a Nevada limited liability company, and Ryze Renewables Nevada, LLC, a Nevada limited liability company, | CASE NO. 2:23-cv-01492-APG-NJK<br><br>**RYZE'S RESPONSE TO MIRAE ASSET'S MOTION IN LIMINE TO EXCLUDE NEGLIGENCE EVIDENCE (ECF NO. 648)**<br><br>Judge: Andrew P. Gordon<br><br>Date Action Filed: September 22, 2023 |

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Counterclaimants,

v.

Mirae Asset Securities Co., Ltd., a Republic of Korea company,

Counterdefendant.

Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC (collectively, "Ryze") respectfully submit this Response to Plaintiff/Counter-Defendant Mirae Asset Securities Co., Ltd.'s ("Mirae") Motion in Limine to Exclude Evidence, Argument, Testimony, and Inferences Concerning Negligence or Negligent Supervision (ECF No. 648).

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

**INTRODUCTION**

Mirae spends the first ten pages of its motion on a point Ryze does not dispute—Ryze has not pleaded a claim titled "negligence," and none is pending—and on a motion to amend that Ryze has not filed. ECF No. 648 at 7-16. From the absence of that claim, Mirae asks the Court to exclude facts: "any evidence, argument, testimony, or inference of negligence or negligent supervision at trial," including "[a]ny evidence or arguments directed at Mirae Asset's internal processes or supervisory practices." *Id.* at 8, 21, 24. Mirae claims it is not bound by the parties' $210 million Convertible Loan Agreement ("CLA") or Second Loan Agreement ("SLA"); Ryze counterclaims for breach of both and abuse of process. Whether the conduct of Kyung-Hyun Lee, a "Director Equivalent" and "Team Leader," and of others who acted for Mirae in the transaction is imputable to Mirae under the governing agency and vicarious liability standards turns on what Mirae knew about them and what it let them do. Mirae recasts that evidence as "negligence." Ryze offers it to prove agency and foreseeability on the pleaded claims and to rebut Mirae's defenses.

Mirae's central defense is that its internal controls kept Mr. Lee from binding it, and that after allegedly telling him by March 2021 to stop working on the Ryze loan, it "presumed" he had complied. ECF No. 21 ¶¶ 26, 29-34, 46; ECF No. 648 at 9, 17-19. By then, Mr. Lee had led nearly a year of negotiations and signed the CLA, and he kept going for eight more months, through the

lawsuit filed in Mirae's name and the SLA. ECF No. 367-1 ¶¶ 11-27, 47, 56-60. Whatever Mr. Lee's actual authority, his visible work over those eight months makes how Mirae supervised him, and why it failed or chose not to intervene, central to whether his conduct binds the company that employed him.

*First*, the evidence is relevant, and evidence that proves a pleaded claim or rebuts a defense is admissible even if it would also support a claim titled "negligence" that no one pleaded. Nevada law binds a principal that carelessly created its agent's apparent authority or failed to use due care after having reason to know of a counterparty's belief that such authority exists, and it holds an employer liable when minimal supervision made an employee's tort foreseeable. And Mirae's defenses put its oversight at issue. *Second*, whether Ryze could add a claim titled "negligence" is not before the Court and does not limit the evidence Ryze may offer on the claims already pleaded. Ryze has filed no motion to amend, discovery remains open for Mirae's examination of Mr. Lee's supervisor, and Mirae is still withholding records that bear on its supervision of Mr. Lee. *Third*, Mirae can claim neither surprise nor unfair prejudice from Ryze's central proof of agency and foreseeability. Ryze pleaded these theories in 2023 and detailed them in verified interrogatory responses in 2024, Mirae is the party in possession of witnesses and evidence about its supervision of Mr. Lee, and the Court's instructions and verdict form will enable the Court to control what the jury decides without resorting to a sweeping and prejudicial bar on evidence central to Ryze's case.

The Court should deny the motion.

## I. BACKGROUND

Mirae placed its internal controls and its supervision of Mr. Lee at issue when it filed this lawsuit, submitting a declaration in which former executive Hyun-Joo Park stated that he "supervised Lee from about 2019 through November 2021." ECF No. 4-1 at 2 ¶ 5; *see id.* at 2-5 ¶¶ 5, 7-8, 11-12, 16. In its First Amended Complaint, Mirae then alleged that its internal approval hierarchy, legal-review protocols, audit trail, and corporate-seal procedures prevented Mr. Lee from binding the company, and that after its Assessment Team instructed Mr. Lee internally to

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

stop working on the Ryze loan, Mirae "presumed that Lee would act and was acting consistent with this instruction." ECF No. 21 ¶¶ 26, 29-34, 46.

By March 2021, when Mirae alleges it told Mr. Lee to stop, Mr. Lee had led nearly a year of negotiations alongside Mirae's executives and transactional counsel and had signed the CLA. ECF No. 21 ¶¶ 32-33; ECF No. 367-1 ¶¶ 11-27. He kept going for eight more months, through the July 2021 lawsuit filed in Mirae's name, the August 2021 settlement negotiations, an October 2021 letter bearing the CEO's stamp and certifying his authority, and the November 2021 SLA. ECF No. 367-1 ¶¶ 47, 56-60; ECF No. 201-11 at 2.

In December 2023, Ryze contested Mirae's allegations, pleading in its Third and Eighth Affirmative Defenses that estoppel and agency principles bar Mirae from avoiding its contracts. ECF No. 31 at 7. Its counterclaims likewise alleged that Mirae is bound by and vicariously liable for the "actions and omissions" of Mr. Lee, Mirae's outside counsel, and others. *Id.* at 13 ¶¶ 23-24, 25 ¶¶ 121-22, 29 ¶ 146. Those counterclaims survived Mirae's motion for judgment on the pleadings in June 2025. ECF No. 251 at 7-14. Ryze detailed its agency theories in verified interrogatory responses served in April and July 2024 and supplemented them in August 2025. ECF No. 75-7; ECF No. 338-4; ECF No. 340-2.

Mirae identified Mr. Park and another former employee, Huijun Yang, as witnesses on its internal approval processes, Mr. Lee's duties and authority, its internal discussions of the deal, and its communications with Mr. Lee. ECF No. 373-4 at 4-5. Discovery remains open through December 31, 2026, for Mirae's examinations by letters rogatory of Mr. Park, the former employee Mirae identifies as Mr. Lee's supervisor, and of Mr. Yang. ECF No. 633 at 10; ECF No. 646 at 2. Both sides' questions to Mr. Park address his supervision of Mr. Lee. ECF No. 613-1 at 27, 30, 41. Meanwhile, Mirae has not produced the police and regulator records bearing on its supervision of Mr. Lee and its internal controls, which pertain to an audit finding regarding supervisory failures. ECF No. 549 at 8-9 ¶ 34; *see* ECF No. 549-2 at 9; *see generally* ECF No. 601-2 (explaining that there are visible gaps in Mirae's production of its police and regulator

communications even though Mirae was ordered to produce them and has already been sanctioned once for improper withholding).

## II. LEGAL STANDARD

Evidence may be excluded before trial only if it is inadmissible on all potential grounds, and a motion in limine "should not be used to resolve factual disputes or to weigh evidence." *Golia-Huffman v. Smith's Food & Drug Ctrs., Inc.*, No. 2:21-cv-01260-APG-EJY, 2024 WL 3571094, at *1 (D. Nev. July 29, 2024) (quoting *United States v. Whittemore*, 944 F. Supp. 2d 1003, 1006 (D. Nev. 2013)). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Thus, evidence that tends to make a fact of consequence to a pleaded claim or defense more or less probable is presumptively admissible. *See* Fed. R. Evid. 402.

## ARGUMENT

As detailed below, the Court should deny this motion. Under Nevada law, evidence of Mirae's carelessness and failure to intervene is admissible to show that Mirae is bound by Mr. Lee's acts through apparent authority, that it is vicariously liable for his foreseeable torts, and that its internal-controls defense fails. Mirae's motion also seeks an unnecessary and impermissible advisory ruling on a motion to amend that is not before the Court. Nor can Mirae's claims of unfair surprise or prejudice under Rule 403 justify a sweeping ban on highly probative evidence central to agency theories Ryze has consistently disclosed since 2023, and for which any hypothetical risk can be amply addressed by standard instructions—ones jurors are correctly presumed to be capable of following.

## I. NEVADA LAW MAKES MIRAE'S CARELESSNESS AND FAILURE TO INTERVENE RELEVANT TO APPARENT AUTHORITY, VICARIOUS LIABILITY, AND MIRAE'S DEFENSES.

When it reaches relevance, Mirae lists the elements of negligence and negligent supervision, torts Ryze has not asserted, and maintains that "[n]either set of elements overlaps with the remaining claims." ECF No. 648 at 17. Mirae contends that "[n]o live claim requires proof that



BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

Mirae Asset owed or breached a duty of care," that apparent authority turns on its manifestations, "not lax oversight or a failure to supervise," and that Ryze's agency theories do not put its "internal oversight or supervisory practices at issue." *Id.* at 8, 17, 19. Each of those contentions misreads Nevada law, under which a principal's carelessness and failure to intervene are culpable conduct justifying a finding of apparent authority, and an employer's oversight bears on whether an employee's intentional tort was foreseeable. The lack of close supervision is itself evidence of Mr. Lee's high-level authority and autonomy to act on Mirae's behalf.

**A. Mirae Is Bound If It Carelessly Created Apparent Authority or Failed to Use Due Care After Having Reason to Know of Ryze's Belief That Such Authority Existed.**

Nevada's apparent-authority standard includes carelessness and due care. In *Goldstein v. Hanna*, the Nevada Supreme Court explained that a principal is bound to a counterparty that changed position in reasonable reliance on a representative's authority if the principal "intentionally or carelessly caused such belief," or if, "knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts." 97 Nev. 559, 562, 635 P.2d 290, 292 (1981) (adopting Restatement (Second) of Agency § 8B). "Where there is a duty to speak, silence can raise an estoppel quite as effectively as can words." *Id.* Contrary to Mirae's claim that *Goldstein*'s rule "does not impose a standard of care," ECF No. 648 at 18, the court imposed precisely that under such circumstances:

> Under such circumstances, the principal is ***obligated to exercise due care***, and to conduct himself as a reasonably prudent business person with normal regard for the interests of others.

*Goldstein*, 97 Nev. at 562, 635 P.2d at 292 (emphasis added); *see Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 n.3 (9th Cir. 2001) (quoting *Goldstein*'s due-care standard).[1]

---

[1] Section 8B(1) carries forward in Restatement (Third) of Agency § 2.05, which "corresponds in operative respects to Restatement Second, Agency § 8B(1)." Restatement (Third) of Agency § 2.05 reporter's note a (2006).

Both grounds also reach further than the "narrow rule" Mirae describes. ECF No. 648 at 18. Mirae dismisses "carelessly" as a "narrow term of art" and contends that *Goldstein* binds a silent principal "only if it knows of the third party's mistaken belief." *Id.* Neither "narrow" nor "term of art" appears in the opinion. The first ground requires no knowledge of the belief at all. And even where liability rests on a duty to speak, that duty arises when another "is or may come under a misapprehension regarding the authority of the principal's agent," so it does not wait for an actual mistake. 97 Nev. at 562, 635 P.2d at 292. The court in *Goldstein* added that an inference of assent from silence "may be made although the purported principal had no knowledge that the other party would rely upon the supposed authority of the agent." *Id.* (quoting Restatement (Second) of Agency § 94 cmt. a).

Mirae falls back on the claim that *Goldstein*'s rule has "no application here, where Ryze's theory is apparent authority." ECF No. 648 at 18. Mirae also concedes that "carelessly" is a term "anchored in equitable estoppel" and that apparent authority "estops a principal." *Id.* The duty of due care applies to apparent authority because "[a]pparent authority (when in excess of actual authority) proceeds on the theory of equitable estoppel." *Goldstein*, 97 Nev. at 563, 635 P.2d at 293 (quoting *Ellis v. Nelson*, 68 Nev. 410, 418, 233 P.2d 1072, 1076 (1951)). Under *Simmons*, apparent authority is what a principal "holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence." *Simmons Self-Storage Partners, LLC v. Rib Roof, Inc.*, 130 Nev. 540, 550, 331 P.3d 850, 857 (2014) (quoting *Dixon v. Thatcher*, 103 Nev. 414, 417, 742 P.2d 1029, 1031 (1987) (quoting *Myers v. Jones*, 99 Nev. 91, 93, 657 P.2d 1163, 1164 (1983))). The definition is disjunctive. A principal answers for authority it "holds his agent out as possessing" and also for authority it "permits him to exercise." *Id.* Nevada uses the term apparent authority, and the label does not change the rule. As the Ninth Circuit has explained, "[m]any courts use the terms ostensible agency, apparent agency, apparent authority, and agency by estoppel interchangeably. As a practical matter, there is no distinction among them." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 479 n.7 (9th Cir. 2000) (quoting *Armato v. Baden*, 71 Cal. App.



BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

4th 885, 84 Cal. Rptr. 2d 294, 301 n.4 (1999)). In *Lux Art Van Service, Inc. v. Pollard*, the same court explained that apparent authority "arises not by authorization in the consensual sense, but from the principal's negligent omission or his acquiescence in the agent's activities," and "[t]he law gives to the latter the effect of representation to the party dealing with the 'agent.'" 344 F.2d 883, 888 (9th Cir. 1965) (citing 1 Mechem, Agency §§ 720-726 (1914)); *see Ellis*, 68 Nev. at 418-19, 233 P.2d at 1076 (relying on §§ 725-726 of that treatise).

In *Goldstein*, the owner's silence "imbued [the representative] with apparent authority," and Mirae kept the same silence. Mirae let Mr. Lee lead the negotiations for nineteen months and, after allegedly telling him to stop, never warned Ryze. 97 Nev. at 562-63, 635 P.2d at 292-93; ECF No. 21 ¶ 32; ECF No. 338-4 at 19 (No. 6); ECF No. 367-1 ¶¶ 11-27, 47, 56-60. Despite thousands of emails about the Ryze deal, no one at Mirae stopped Mr. Lee from exercising the authority Mirae permitted him to exercise or tried to correct any supposed misapprehension about that authority. ECF No. 650 ¶¶ 17-18; ECF No. 367-2 ¶¶ 6, 9. That is why no one who watched Mr. Lee manage the negotiations, at Ryze or at Mirae's law firms, concluded anything other than that he was authorized to lead the deal. ECF No. 367-2 ¶¶ 4-6, 9. Mirae contends that apparent authority requires "affirmative, overt manifestations made by the principal directly to the third party," but the buyers in *Goldstein* "dealt exclusively with" the owner's agent and "had no direct dealings with" the owner. ECF No. 648 at 18; 97 Nev. at 560, 635 P.2d at 291. In *Kristensen*, which Mirae cites, this Court recognized that silence can be "a manifestation of agency authority" when circumstances "give special meaning to" it, as when the third party has observed a pattern of dealings between agent and principal. *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-cv-00528-APG-PAL, 2015 WL 4477425, at *6 n.50 (D. Nev. July 20, 2015) (citing Restatement (Third) of Agency § 1.03 cmt. b), *aff'd*, 879 F.3d 1010 (9th Cir. 2018).[2] A third party also "need

[2] Mirae's citation to this Court's decision in *Kristensen*, 2015 WL 4477425, at *4 (cited at ECF No. 648 at 17), does not make the principal's knowledge irrelevant. *Kristensen* addressed vicarious liability under the federal Telephone Consumer Protection Act where the plaintiff offered no evidence of manifestations or acquiescence. In affirming, the Ninth Circuit explained that a principal assumes the risk of a ratification when it had "knowledge of facts that would have led a

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

not establish a communication made directly to the third party by the principal." Restatement (Third) of Agency § 1.03 cmt. b. Nor does the instruction to stop that Mirae alleges it gave Mr. Lee change the analysis when a principal's "direction" to its agent "is not known outside" the company. Restatement (Third) of Agency § 1.03 illus. 1; *see* ECF No. 21 ¶¶ 32-33.

Mirae also quotes *Simmons* for the rule that apparent authority estops a principal "only based on 'what the principal himself has said or done.'" ECF No. 648 at 18. The sentence Mirae quotes continues, "or at least said or done through some other and authorized agent," and the Nevada Supreme Court went on to require "evidence of the principal's knowledge and acquiescence in them" when a third party relies on the agent's acts. 130 Nev. at 550, 331 P.3d at 857 (quoting *Ellis*, 68 Nev. at 419, 233 P.2d at 1076). The claimants in *Simmons* failed because they "offered no persuasive evidence or argument that [the principal] knew of or acquiesced to the acts." 130 Nev. at 550, 331 P.3d at 857. Mirae would keep that same evidence from the jury here. Federal courts applying general apparent-authority principles have likewise treated negligent oversight as culpable conduct traceable to the principal justifying a finding of apparent authority. *See, e.g., Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 38-40 (1st Cir. 2011) (affirming contract summary judgment where the principal designated the transaction contact and acquiesced through its "failure to examine the payroll reports"); *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940-42 (9th Cir. 2017) (holding that delegated direct contact coupled with the principal's "failure to engage" supported apparent authority).[3]

---

reasonable person to investigate further." 879 F.3d at 1014-15 (quoting Restatement (Third) of Agency § 4.06 cmt. d).

[3] *Accord, e.g., Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 221-22 (3d Cir. 2010) (holding that a principal's "***negligent omissions***," including failing to "exercise any other oversight over" his employee, created apparent authority where the third party "reasonably believed that a prudent business person would oversee his employees"); *Cincinnati Ins. Co. v. Dynamic Dev. Grp., LLC*, 336 F. Supp. 2d 552, 563, 565 (M.D.N.C. 2004) (describing "the interrelated issues of ***apparent authority*** and ***negligence***" and the question whether failing to report a terminated agent "constituted ***negligence*** in allowing [him] to hold himself out with ***apparent authority***"), *aff'd*, 154 F. App'x 378, 385 (4th Cir. 2005) (rejecting contention that the developer pursued a negligence claim "separate and apart from its ***negligence*** claim based upon the doctrine of

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

### B. Mirae Is Liable for Abuse of Process If Its Representatives Acted With Apparent Authority or If Minimal Supervision Made Mr. Lee's Conduct Foreseeable.

On the abuse-of-process counterclaim, Mirae confuses the elements of the representative's tort with the rules for attributing that tort to the principal. Mirae argues that evidence of its oversight is irrelevant because abuse of process requires "Mirae Asset's own willful misuse of process," and because Ryze told the Nevada Supreme Court that its state-court complaint alleged the July 2021 lawsuit was filed "without Mirae [Asset]'s authorization." ECF No. 648 at 19-20 (citing ECF No. 331 at 18). Nevada common law attributes a representative's tortious misconduct to a principal that clothed him with apparent authority, without proof that the principal independently committed a tort. *See Nev. Nat'l Bank v. Gold Star Meat Co.*, 89 Nev. 427, 429-31, 514 P.2d 651, 653-54 (1973). Nor does a lack of authorization end the inquiry, because apparent authority binds a principal to an agent's acts "in excess of actual authority." *Goldstein*, 97 Nev. at 563, 635 P.2d at 293 (quoting *Ellis*, 68 Nev. at 418, 233 P.2d at 1076). In *Gold Star Meat*, the Nevada Supreme Court held a bank liable for misrepresentations its officer made "within the scope of ostensible authority that is generally associated with the position of bank officer," explaining that a principal answers for its agent "even though the principal is completely innocent and has received no benefit from the transaction." 89 Nev. at 430-31, 514 P.2d at 653-54 (quotation omitted). Under the Restatement, a principal is likewise "subject to vicarious liability for a tort committed by an agent in dealing or communicating with a third party on or purportedly on behalf of the principal when actions taken by the agent with apparent authority constitute the tort," and

---

***apparent authority***"); *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 100-01 (D. Me. 2001) (sustaining claim on allegations that Harvard held out its employees "as cloaked with ***apparent authority***" and "failed to properly supervise, oversee or control" them, as apparent agency exists where "the principal knowingly or ***negligently*** holds someone out as possessing authority" (quoting *Williams v. Inverness Corp.*, 664 A.2d 1244, 1246 (Me. 1995))); *Browne v. Maxfield*, 663 F. Supp. 1193, 1199 (E.D. Pa. 1987) (explaining that "***[a]pparent authority*** and agency by estoppel are closely related," and that the latter binds a principal who, "by his ***culpable negligence*** in failing to supervise the affairs of his agent, allows him to exercise powers not granted to him" (quoting *Reifsnyder v. Dougherty*, 152 A. 98, 100 (Pa. 1930))). (all emphasis added.)

those torts include "tortious institution of legal proceedings." Restatement (Third) of Agency § 7.08 & cmt. a. Whether Mirae clothed Mr. Lee and its outside counsel with apparent authority in the loan transaction, the July 2021 lawsuit, and the August 2021 settlement negotiations turns on whom Mirae put forward, what it knew, and what it let them do.

Mirae's liability for Mr. Lee's conduct also turns on foreseeability under NRS 41.745.[4] Mirae contends that the statute does not "apply here" because Ryze pleaded vicarious liability "only through 'actual (express and implied) and/or apparent agency,'" a theory that "rises or falls on authority, not supervision." ECF No. 648 at 19, 20 n.5. Mirae drops the words that come before its quotation. Ryze pleaded that Mirae "is vicariously liable for the conduct of its agents, employees, and attorneys" acting "in the course and scope of their actual (express and implied) and/or apparent agency." ECF No. 31 at 25 ¶ 121; *see id.* at 25 ¶ 122, 29 ¶ 146. In that footnote, Mirae agrees that whether an employee acted within the scope of employment "is a question of vicarious liability." ECF No. 648 at 20 n.5. Under NRS 41.745(1), an employer avoids liability for an employee's intentional tort only if the conduct was "a truly independent venture," "[w]as not committed in the course of the very task assigned," and "[w]as not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment." NRS 41.745(1)(a)-(c). The statute defines conduct as foreseeable "if a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and the probability of injury." *Id.* The statutory shield Mirae describes, ECF No. 648 at 18-19, protects an employer only when the employee's conduct was unforeseeable.

In *Anderson v. Mandalay Corp.*, the plaintiff had "abandoned all claims except the vicarious liability claim," and the Nevada Supreme Court still reversed summary judgment for the employer because a reasonable jury could find the tort foreseeable from the employer's prior notice

[4] NRS 41.745 applies to Mr. Lee as Mirae's employee; Mirae's liability for its outside counsel rests on actual and apparent agency. Ryze pleaded that Mirae's agents, employees, and attorneys acted within their actual or apparent agency in filing the lawsuit and making the August 2021 settlement demands. ECF No. 31 at 13 ¶¶ 23-24, 25-27 ¶¶ 121-27.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

and its decision to give the employee keyed access "with minimal supervision." 131 Nev. 825, 827, 830-33, 358 P.3d 242, 244, 246-48 (2015) (en banc). The court held that this "reasonable foreseeability standard sets forth a factual inquiry," and that "Nevada will hold an employer vicariously liable for an employee's intentional tort—even though it was outside the scope of employment—if that intentional tort was 'reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment.'" *Id.* That holding forecloses Mirae's contention that the statute "insulates employers unless an employee's intentional tort is an objective outgrowth of the job." ECF No. 648 at 18. Mirae cites *Wood v. Safeway, Inc.*, but the employer there prevailed as a matter of law because the janitor had no criminal history, the employer required proof of identification and checked employment references, and its district manager had received no complaints of sexual harassment about any employee in ten years. 121 Nev. 724, 738-40, 121 P.3d 1026, 1035-37 (2005); *see* ECF No. 648 at 18. Whether Mr. Lee's conduct in the July 2021 lawsuit and the August 2021 settlement negotiations was foreseeable to an employer of "ordinary intelligence and prudence" likewise depends on his assigned responsibilities and Mirae's oversight of him.

**C. Mirae Puts Its Oversight at Issue by Relying on Its Internal Controls and on "Presumed" Compliance.**

The exclusion Mirae seeks would let it present its "hierarchical and multi-layered" structure as the reason Mr. Lee could not bind it while keeping from the jury the evidence that, for some nineteen months, that structure never stopped a "mid-level employee" from leading a $210 million transaction spanning two hemispheres. ECF No. 21 ¶¶ 25-26; ECF No. 367-1 ¶¶ 11-27, 47, 56-60. That asymmetry would keep the jury from considering the full equities, including the parties' respective culpability for any supposedly mistaken belief in Mr. Lee's authority. *See supra* Argument § I.A.

Mirae has alleged that its internal controls prevented Mr. Lee from binding it. ECF No. 21 ¶¶ 26, 29-34, 46. Yet Mirae placed Mr. Lee at the front of the Ryze transaction, alongside its executives, other employees, consultants, and transactional counsel, in full view of three to four

dozen Mirae colleagues. ECF No. 367-1 ¶¶ 11, 16-19; ECF No. 650 ¶¶ 16-18 & n.1. Among other things, Mirae executed an offering memorandum over the signature of its Co-CEO. ECF No. 367-1 ¶ 18. Its transactional counsel negotiated the transaction terms, prepared the CLA with Mr. Lee's signature block, and raised no objection when he signed it and sent it to them. *Id.* ¶¶ 18-19, 23; ECF No. 654 at 8-10.

Mr. Lee's work continued for eight more months after the supposed instruction to stop. ECF No. 21 ¶¶ 32-33; ECF No. 367-1 ¶¶ 47, 56-60. He took part virtually in a settlement meeting with Mirae's outside counsel. ECF No. 367-1 ¶ 47. And after Ryze's counsel requested a certificate of authority, Ryze received from another Mirae employee a letter bearing the CEO's stamp and certifying that Mr. Lee, "as a Director of [Mirae], is authorized to negotiate and execute the commencement of transaction of Project Ryze on behalf of [Mirae]." ECF No. 201-11 at 2; ECF No. 367-1 ¶ 56.

If the CEO's stamp on that certificate was authorized, Mirae cannot claim it "presumed" Mr. Lee had stopped in March. ECF No. 21 ¶ 33. If Mirae contends that the stamp was also unauthorized, then Mr. Lee obtained the CEO's stamp seven months after Mirae alleges it told him to stop, and that puts Mirae's controls and its failure to intervene before the jury. In *Minskoff v. American Express Travel Related Services Co.*, the Second Circuit held that a principal's negligent failure to examine ongoing account statements created apparent authority for subsequent transactions once the principal was on notice of the agent's activity. 98 F.3d 703, 708-10 (2d Cir. 1996). Mirae has alleged that Mr. Lee was advised "throughout the process" of the Assessment Team's negative views and was told by March 2021 that Mirae "could not proceed with a deal with Ryze." ECF No. 21 ¶ 32.

Ryze offers the testimony of Mirae's disclosed witnesses, Messrs. Park and Yang, and Mirae's disciplinary records to rebut Mirae's defense that its internal controls and carefully enforced hierarchical structure insulate it from any responsibility for Mr. Lee's conduct and to impeach its claim that it presumed Mr. Lee had complied. ECF No. 21 ¶¶ 30-31, 33; ECF No. 373-

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

4 at 4-5. Mirae nonetheless asks the Court to exclude "[a]ny evidence or arguments directed at Mirae Asset's internal processes or supervisory practices." ECF No. 648 at 21.

## II. WHETHER RYZE COULD OR SHOULD BE PERMITTED TO AMEND ITS PLEADINGS TO ASSERT A NEGLIGENCE OR NEGLIGENT SUPERVISION CLAIM IS NOT PRESENTLY BEFORE THE COURT AND, IN ANY EVENT, IS IRRELEVANT TO WHETHER SUCH EVIDENCE MAY BE OFFERED AS RELEVANT TO PRESENTLY PLEADED CLAIMS AND DEFENSES.

Across eighteen pages, Mirae repeats a single syllogism at least thirteen times: Ryze knew the facts about Mr. Lee's supervision, could have pleaded a claim titled "negligence," chose not to, and cannot add one now. ECF No. 648 at 7-16, 19-20, 22-24. Mirae uses that premise to argue that Ryze cannot "submit that tort to the jury." *Id.* at 8; *see id.* at 11-14. To bridge the gap between an unasserted claim and a ban on evidence, Mirae resorts to mind-reading. Without citing any statement by Ryze that it intends to submit a claim titled "negligence," Mirae tells the Court that Ryze is "repackaging an unpled tort under another name." *Id.* at 8. Mirae infers that supposed eleventh-hour maneuver from filings dating back to January and February 2024, in which Ryze argues that Mr. Lee's conduct binds Mirae as its agent. *Id.* at 9, 16, 22 (citing ECF No. 47 (Ryze's Jan. 24, 2024 motion to compel arbitration); ECF No. 59 (Ryze's Feb. 14, 2024 reply in support of that motion); ECF Nos. 601-2, 613). No party has moved to add a claim titled "negligence," and whether Ryze could or should be permitted to add one does not affect the admissibility of evidence offered on the claims already pleaded.

Yet under the guise of a motion in limine, Mirae seeks an advisory opinion on a motion for leave to amend that Ryze has not filed. ECF No. 648 at 13 & n.2. Because Rule 16(b)'s good-cause standard "primarily considers the movant's diligence," the Court should decide that question if and when Ryze files such a motion. *Id.* at 13 n.2 (quoting *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 638 (D. Nev. 2021)). As the Ninth Circuit has held, a motion in limine "is not the proper vehicle for seeking a dispositive ruling on a claim." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015). Mirae portrays this as "the eve of trial," but no trial date is set and no pretrial order exists. ECF No. 648 at 8. Two ongoing

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

discovery matters—the open examinations described above and Mirae's withholding of its police and regulator communications—make any attempt to foreclose amendment premature. ECF No. 633 at 10; ECF No. 646 at 2.

First, discovery is closed "save for two examinations," and one of those examinations is of Mr. Park, Mr. Lee's supervisor through November 2021. Both sides have submitted questions that pertain to his supervision of Mr. Lee. ECF No. 648 at 12; ECF No. 4-1 at 2 ¶ 5; ECF No. 613-1 at 27, 30, 41. Because his answers bear on any negligent-supervision claim, Ryze should be allowed to account for that evidence if he testifies that he negligently supervised Mr. Lee and, if appropriate, to show that the circumstances justify a post-deadline amendment to the pleadings. Ryze reserves its right to seek that relief, and any such motion should be judged under the governing standards as applied to the circumstances when it is filed. Mirae's request to bar Ryze now, before any motion is filed, from using what this discovery yields seeks a premature, advisory ruling that the Court should not entertain.

Second, Mirae is still withholding documents in defiance of an order it has already been sanctioned for violating. ECF No. 601-2 at 2, 20; ECF No. 403 at 7-8, 11; ECF No. 496 at 9-10; ECF No. 509 at 2. If the Court's ruling on Ryze's pending motion to strike yields additional documentary evidence relevant to a negligent-supervision claim, including the regulator communications described above, Ryze should be allowed to account for it too. Mirae cannot keep these records from Ryze through the close of discovery and then invoke the close of discovery to bar their use.

## III. NEITHER UNFAIR SURPRISE NOR RULE 403 SUPPORTS A BLANKET PRETRIAL BAR ON RYZE'S CENTRAL PROOF OF AGENCY AND FORESEEABILITY.

Finally, Mirae falls back on claims of "unfair surprise" and Rule 403 prejudice to seek a sweeping pretrial ban on all evidence of how it supervised Mr. Lee. ECF No. 648 at 12, 14, 21-24. Neither ground supports a blanket bar. Ryze disclosed its agency theories in 2023 and 2024, Mirae is the party in possession of witnesses and evidence about its supervision of Mr. Lee, and Mirae's

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

supposed concerns under Rule 403, should they arise, are adequately addressed by jury instructions and the verdict form.

**A. Mirae Cannot Claim Unfair Surprise Over Agency Theories That Have Been Consistently Disclosed Since the Outset of This Case.**

The facts Mirae now treats as an "unfair surprise" prove the agency theories Ryze pleaded and disclosed years ago, regardless of the label Mirae attaches to those facts. *See* ECF No. 648 at 12. Under *Coleman v. Quaker Oats Co.*, a party gives fair notice by pleading its theory or making known during discovery its intention to pursue that theory. 232 F.3d 1271, 1294 (9th Cir. 2000). Ryze did both as to its agency and vicarious-liability theories. The Ninth Circuit found prejudice in *Coleman* only because the plaintiffs raised a new theory after discovery closed that "require[d] that the defendant develop entirely different defenses." *Id.* at 1292. A separate legal label is unnecessary where the factual allegations give the required notice. *See Johnson v. City of Shelby*, 574 U.S. 10, 11-12 (2014) (reversing summary judgment based on failure to invoke § 1983 where the factual allegations stated the constitutional claim); *Porio v. Barbari*, No. 25-1294, 2026 WL 1298114, at *1-2 (9th Cir. May 12, 2026) (reversing summary judgment under *Coleman* where the complaint, discovery requests, and interrogatory answers specifying deficient training and notice apprised the defendant of the theory). Mirae acknowledges that "Ryze pleaded vicarious liability." ECF No. 648 at 19. Here, Mirae has met Ryze's agency theories with the same lack-of-authority defense since January 2024. ECF No. 38 at 27; ECF No. 256 at 27-28.

In April 2024, more than eighteen months before general fact discovery closed, Ryze served verified interrogatory responses describing how Mirae held Mr. Lee out to Ryze, as "the face of Mirae" with counterparties and as its "sole representative" at the project site visit, and identifying the Mirae employees who knew what he was doing on the company's behalf and never disavowed it. ECF No. 75-7 at 9, 24 (Nos. 4, 8). Six weeks later, Mirae's counsel wrote a letter critiquing those amended responses, including the response on communications with Mr. Lee's superiors. ECF No. 87-11 at 2, 4.

BAILEY ❖ KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

In July 2024, Ryze told Mirae in a verified interrogatory response that it relies on Mirae's permitting Mr. Lee to manifest authority on its behalf, coupled with Mirae's long-term failure to intervene or correct him, to establish apparent authority. ECF No. 338-4 at 19 (No. 6) ("This long-term consistency in Director Lee's actions, without any intervention or correction from Mirae, justified Ryze's reasonable conclusion that Director Lee possessed the necessary authority to negotiate on Mirae's behalf"). In those same responses, Ryze identified the specific communications with senior Mirae personnel, stamped documents, the October 2021 authority letter, and referrals back to Mr. Lee. *Id.* at 67-69. In supplemental responses, Ryze further detailed how Mirae, "acting in concert with its legal counsel," used the July 2021 lawsuit to thwart Ryze's replacement financing. ECF No. 340-2 at 4 (No. 23).

Mirae cites the same four Ryze filings both as proof that Ryze has known these facts about Mr. Lee's supervision for years and as proof of a plot to surprise Mirae at trial—a trial that has yet to be scheduled, while discovery is still ongoing. Mirae asserts that Ryze "has criticized Mirae Asset's supervision of its former employee, Kyung Hyun Lee, since 2024, and has known the facts underlying that criticism for years," yet it cites those same filings, starting with Ryze's January and February 2024 arbitration briefs, to claim that Ryze "has already telegraphed" a trial ambush. ECF No. 648 at 7, 22; *see id.* at 9, 13 n.2, 16 (citing ECF Nos. 47, 59, 601-2, 613). Ryze gave Mirae notice (or, as Mirae puts it, "telegraphed" its position) in filings and discovery responses dating back nearly three years.

Addressing Mr. Lee's supervision would not force Mirae to "reopen discovery wholesale into internal policies, oversight, and training" because Mirae does not need discovery from Ryze to learn its internal policies and, as noted above, placed Mr. Lee's supervision as an issue in the record when it filed this lawsuit. ECF No. 648 at 14; ECF No. 4-1 at 2-5 ¶¶ 5, 7-8, 11-12, 16. In its letters rogatory, Mirae proposes that Mr. Park be examined over whether he supervised Mr. Lee, whether he reviewed Mirae's loan-approval policies with him, and why he approved Mr. Lee's overseas trips. ECF No. 613-1 at 27, 30, 35; ECF No. 621 at 1-2. And the only departed witnesses Mirae identifies, Messrs. Yang and Park, remain subject to examination in this case.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

ECF No. 648 at 14. Nor does Mirae need discovery from Ryze to learn what it told the police and its regulator, as Mirae is the party withholding those records. *See supra* Argument § II. Mirae did not produce its representative's April 9, 2024 statement to the Seoul Gwangjin Police until May 31, 2026, seven months after discovery closed, and it still has not produced the two earlier sessions of that examination. ECF No. 549 at 8-9 ¶¶ 28, 34(a); ECF No. 648 at 9. In the attorney declaration supporting this motion, Mirae attaches only meet-and-confer emails and identifies no missing policy, document request, or uninvestigated witness. ECF No. 648-1 at 1-3.

**B. Rule 403 Does Not Permit a Blanket Bar Because This Evidence Is Central to Agency and Jury Instructions Prevent Any Misuse.**

Although Mirae claims that this evidence will cause "Unfair Prejudice," "Jury Confusion," and a "Waste of Time" requiring a "trial within a trial," whether Mirae clothed Mr. Lee with authority and failed to intervene is the trial. ECF No. 648 at 21-24. The evidence therefore has high probative value: it shows what Mirae assigned Mr. Lee to do, what its executives knew across nineteen months of dealings, and why Mirae failed to halt him—facts that go to agency, foreseeability, and Mirae's defense that its internal controls and carefully enforced "hierarchical and multi-layered" structure insulate it from any responsibility for Mr. Lee's conduct. ECF No. 21 ¶¶ 25-26, 29-34, 46; ECF No. 367-1 ¶¶ 11-27, 47, 56-60. Rule 403 permits exclusion only when unfair prejudice, confusion, or waste of time substantially outweighs that value, and Mirae assumes the evidence has "no relevant probative value in this action." Fed. R. Evid. 403; ECF No. 648 at 21.[5] Mirae relies on *In re Exxon Valdez*, where the Ninth Circuit upheld the exclusion of evidence that was "remote in time" and would have required a side trial on unrelated allegations. 270 F.3d 1215, 1253 (9th Cir. 2001); ECF No. 648 at 23. Here, Mirae's oversight of Mr. Lee occurred during the Ryze transaction, and Mirae has disclosed the witnesses on it. ECF No. 373-4 at 4-5.

---

[5] Mirae invokes *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990), and *Old Chief v. United States*, 519 U.S. 172, 180 (1997). ECF No. 648 at 22. Both were criminal prosecutions addressing inflammatory propensity evidence, whereas here Nevada agency law makes this evidence a proper basis for decision.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

The jury instructions and the verdict form answer Mirae's fear that jurors will "assign liability on the basis of perceived corporate failings." ECF No. 648 at 22. Mirae never mentions them. The Court will instruct the jury to find the facts from the evidence, to apply the law as the Court gives it, and to set aside personal likes, dislikes, and sympathy, with a corporation entitled to the same fair consideration as any other party. The Court will also instruct the jury on the claims it must decide, the elements of each, and who bears the burden of proving them, and will give the jury a verdict form asking whether each claim was proved. *See In re Nat'l Consumer Mortg., LLC*, No. 2:10-cv-00930-PMP-PAL, 2013 WL 164247, at *5 (D. Nev. Jan. 14, 2013) (rejecting a Rule 403 objection to regulatory evidence offered to rebut a defense because the jury would be instructed on the actual claims). Those questions include "whether the parties had authority to execute the loan transactions at issue." ECF No. 648 at 23. Carelessness and acquiescence are ways to prove apparent authority, and unless a claim titled "negligence" is added, none will appear in those instructions or on that form. Mirae's fear assumes a jury that would disregard the Court's instructions and return a verdict on a claim that was never submitted to it and does not appear on the verdict form. As the Supreme Court has held, juries are presumed to follow their instructions. *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009); *see* Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules.

Finally, because Mirae identifies no specific exhibit or testimony for the Court to evaluate in context, any objection to a particular question or document belongs at trial. When a party "does not identify what testimony she anticipates and seeks to exclude," this Court has "no context to make a pre-trial ruling." *Calvert v. Ellis*, No. 2:13-cv-00464-APG-NJK, 2016 WL 153044, at *6 (D. Nev. Jan. 12, 2016). As this Court explained in *Minden v. Allstate Property & Casualty Insurance Co.* when declining to police phrasing in advance of trial, "[t]he universe of objectionable phrasings is expansive, and I will not now endeavor to decide matters that require the benefit of verbatim analysis and context to be properly considered." No. 2:21-cv-00151-APG-BNW, ECF No. 169 at 8 (D. Nev. June 5, 2024) (quoting *Rosas v. GEICO Cas. Co.*, No. 2:18-cv-01200-APG-NJK, 2022 WL 2439575, at *1 (D. Nev. Jan. 26, 2022)). Denying this motion "merely

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
702.562.8820

means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1168 (D. Nev. 2014) (quotation omitted) (cited at ECF No. 648 at 10).

## CONCLUSION

Ryze respectfully requests that the Court deny Mirae's motion *in limine* (ECF No. 648) or, in the alternative, defer ruling until trial so that questions of foundation, relevance, and potential prejudice can be resolved in proper context through specific objections to particular evidence.

Dated: November 3, 2026.

Respectfully submitted,

*/s/ Michael R. Owens*

DENNIS L. KENNEDY
Nevada Bar No. 1462
TAYLER D. BINGHAM
Nevada Bar No. 15870
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: (702) 562-8820
Facsimile: (702) 562-8821
DKennedy@BaileyKennedy.com
TBingham@BaileyKennedy.com

John M. Edgar (PHV)
John F. Edgar (PHV)
Michael R. Owens (PHV)
Alexander C. Melin (PHV)
**EDGAR LAW FIRM LLC**
2600 Grand Boulevard, Ste. 440
Kansas City, Missouri 64108
Telephone: (816) 531-0033
jme@edgarlawfirm.com
jfe@edgarlawfirm.com
mro@edgarlawfirm.com
acm@edgarlawfirm.com

JAMES C. SHAH (PHV)
BRUCE D. PARKE (PHV)
ANNA K. D'AGOSTINO (PHV)
CHRISTOPHER A. MILLER (PHV)
**MILLER SHAH LLP**
jcshah@millershah.com
bdparke@millershah.com
akdagostino@millershah.com
camiller@millershah.com
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

*Attorneys for Defendants/Counterclaimants Ryze Renewables Holdings, LLC and Ryze Renewables Nevada, LLC*